Diane P. Sullivan (appearance *pro hac vice*)
Adam S. Tolin (appearance *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
17 Hulfish St., Suite 201
Princeton, NJ 08542
Tel:  609-986-1120
diane.sullivan@weil.com

David R. Singh (appearance *pro hac vice*)
Bambo Obaro (appearance *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Tel:  650-802-3000
david.singh@weil.com
bambo.obaro@weil.com

Patricia Lee Refo (SBN 017032)
Brianna L. Long (SBN 032309)
SNELL & WILMER LLP
One Arizona Center
400 East Van Buren Street, Suite 1900
Phoenix, AZ 85004
Tel:  602-382-6100
prefo@swlaw.com
bllong@swlaw.com

Attorneys for Defendants
Walgreens Boots Alliance, Inc. and
Walgreen Arizona Drug Company

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| In re<br><br>Arizona THERANOS, INC., Litigation | Case No. 2:16-cv-02138-PHX-HRH<br>(Consolidated with:<br>        No. 2:16-cv-2373-HRH<br>        No. 2:16-cv-2660-HRH<br>        - and -<br>        No. 2:16-cv-2775-HRH)<br><br>**DEFENDANTS WALGREENS BOOTS ALLIANCE, INC. AND WALGREEN ARIZONA DRUG COMPANY'S JOINDER AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

1

**TABLE OF CONTENTS**

2   I.     JOINDER ...................................................................................................... 1

3   II.    INTRODUCTION ......................................................................................... 1

4   III.   FACTUAL BACKGROUND ........................................................................ 2

5   IV.    LEGAL STANDARD FOR MOTION TO DISMISS UNDER RULE
           12(B)(6) ...................................................................................................... 5

6
    V.     PLAINTIFFS FAIL TO STATE A COGNIZABLE CLAIM AGAINST
7          WALGREENS ............................................................................................. 6

8          A.     Plaintiffs Fail to State A Claim For Battery Or Medical Battery
                  Against Walgreens  (Counts III and XVI) ........................................ 6
9
                  1.     Plaintiffs Have Failed To Allege That Walgreens Caused A
10                       Harmful Or Offensive Contact With Plaintiffs ..................... 7

11                2.     Plaintiffs' Battery Claims Must Be Dismissed Because They
                         Have Not Alleged Plausible Facts Establishing A Lack of
12                       Consent .................................................................................. 8

13                3.     Plaintiffs Have Not Pled That Defendants Made Any
                         Misrepresentations That Go To The Nature Of The Invasion
14                       Of Their Interests Or The Extent Of The Harm To Be
                         Expected ............................................................................... 10
15
           B.     Plaintiffs Fail to State a Claim for a Violation of the Human Subjects
16                Act (Count XVII) ........................................................................... 13

17         C.     Plaintiffs Fail To State A Cause Of Action For Aiding And Abetting
                  A Fraud Against Walgreens  (Count VIII) ...................................... 15
18
           D.     Plaintiffs Fail To State A Cause Of Action For Conspiracy (Civil or
19                RICO) Against Walgreens (Counts IX and X) ................................ 18

20         E.     Plaintiffs Have Not Alleged Facts Establishing A Joint Venture or
                  Agency Relationship Between Walgreens and Theranos ................ 20
21
    VI.    CONCLUSION ........................................................................................... 22
22

23

24

25

26

27

28

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*BAE Sys. Mobility & Prot. Sys., Inc. V. ArmorWorks Enterprises, LLC*,
   No. CV-08-1697-PHX-JAT, 2011 WL 1192987 (D. Ariz. Mar. 28, 2011) ............... 17

*Barba v. Seung Heun Lee*,
   No. CV 09-1115-PHX-SRB, 2009 WL 8747368 (D. Ariz. Nov. 4, 2009)................. 19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................................... 5

*Bohnert v. Mitchell*,
   No. CV-08-2303-PHX-LOA, 2010 WL 4269569 (D. Ariz. Oct. 26, 2010)................. 7

*Brown v. John C. Lincoln Health Network*,
   No. 1 CA-CV 14-0814, 2016 WL 2893739 (Ariz. Ct. App. May 17, 2016)............... 6

*Cathemer v. Hunter*,
   27 Ariz. App. 780, 558 P.2d 975 (1976)................................................................... 9

*Cobbs v. Grant*,
   8 Cal.3d 229, 104 Cal. Rptr. 505, 502 P.2d 1 (1972) .................................................. 8

*Daum v. SpineCare Med. Grp., Inc.*,
   52 Cal. App. 4th 1285, 61 Cal. Rptr. 2d 260 (1997)........................................ 9, 10, 12

*Dawson v. Withycombe*,
   216 Ariz. 84, 163 P.3d 1034 (Ct. App. 2007)........................................... 15, 16, 17, 18

*Doan v. Singh*,
   617 F. App'x 684 (9th Cir. 2015) ........................................................................... 10

*Duncan v. Scottsdale Med. Imaging, Ltd.*,
   205 Ariz. 306, 70 P.3d 435 (2003)........................................................... 6, 8, 9, 11

*Epstein v. Wash. Energy Co.*,
   83 F.3d 1136 (9th Cir. 1996) ................................................................................... 16

*Fayer v. Vaughn*,
   649 F.3d 1061 (9th Cir. 2011) ................................................................................... 6

*Federico v. Maric*,
   224 Ariz. 34, 226 P.3d 403 (Ct. App. 2010)............................................................ 17

*Gorney v. Meaney*,
   214 Ariz. 226, 150 P.3d 799 (Ct. App. 2007)................................................................ 8

*Hales v. Pittman*,
   118 Ariz. 305, 576 P.2d 493 (1978)............................................................................... 6

*Hamilton v. Tiffany & Bosco PA*,
   No. CV-14-00708-PHX-GMS, 2014 WL 4162362 (D. Ariz. Aug. 20, 2014) ............. 6

*Hearns v. R.J. Reynolds Tobacco Co.*,
   279 F. Supp. 2d 1096 (D. Ariz. 2003) ....................................................................... 18

*Hillis v. Heineman*,
   2009 WL 2222709 (D. Ariz. July 23, 2009).............................................................. 19

*Huntman v. Danek Medical, Inc.*,
   No. 97–2155–IEG (RBB), 1998 WL 663362 (S.D. Cal. July 24, 1998).................... 14

*Johnson v. Am.'s Wholesale Lender*, No. CV-14-00201-PHX-SRB, 2014 WL 12550550
   (D. Ariz. Apr. 3, 2014)............................................................................................... 18

*Johnson v. Pankratz*,
   196 Ariz. 621, 2 P.3d 1266 (Ct. App. 2000)................................................................ 7

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ................................................................................... 10

*Kidron v. Movie Acquisition Corp.*,
   40 Cal. App. 4th 1571 (1995) ..................................................................................... 19

*Marceau v. Int'l Bhd. of Elec. Workers*,
   618 F. Supp. 2d 1127 (D. Ariz. 2009) ....................................................................... 18

*Minotto v. Van Cott*,
   No. 1 CA-CV 15-0159, 2016 WL 3030129 (Ariz. Ct. App. May 26, 2016).............. 17

*Odom v. Microsoft Corp.*,
   486 F.3d 541 (9th Cir. 2007) ..................................................................................... 11

*People v. Austin*,
   23 Cal. App. 4th 1596 (1994) ..................................................................................... 19

*People v. Palmer*,
   24 Cal. 4th 856, 15 P.3d 234 (2001) .......................................................................... 19

*Perez v. Nidek Co.*,
   711 F.3d 1109 (9th Cir. 2013) ............................................................................. 13, 14

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

*Rice v. Brakel*,
    233 Ariz. 140, 310 P.3d 16 (Ct. App. 2013) ...................................................... 9, 11, 12

*S. Union Co. v. Sw. Gas Corp.*,
    165 F. Supp. 2d 1010 (D. Ariz. 2001) ................................................................ 19

*Shaw v. Hahn*,
    56 F.3d 1128 (9th Cir. 1995) ................................................................................ 6

*Stern v. Charles Schwab & Co.*,
    No. CV-09-1229-PHX-DGC, 2009 WL 3352408 (D. Ariz. Oct. 16, 2009) .............. 17

*Tilousi v. Arizona State University*,
    No. 04-CV-1290-PCT-FJM, 2005 WL 6199562 (D. Ariz. Mar. 3, 2005) ................ 12

*Wyatt v. Union Mortgage Co.*,
    24 Cal. 3d 773 (1979) ........................................................................................ 19

**Statutes**

California Health and Safety Code ................................................................................ 13, 14

Federal Rules of Civil Procedure 9(b) .......................................................................... 10

Federal Rule of Civil Procedure 12(b)(6) ................................................................ 5, 6, 22

Food, Drug, and Cosmetic Act ................................................................................ 2, 14, 15

Human Subjects Act .............................................................................................. 2, 13, 14, 15

RICO ...................................................................................................................... 18

**Other Authorities**

Restatement (Second) of Torts § 13 (1965) ...................................................................... 7

Restatement (Second) of Torts § 14 (1965) ...................................................................... 7

Restatement (Second) of Torts § 892B(2) ...................................................................... 11

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
(602) 382-6000

iv

1    **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

2    **I.    JOINDER**

3    Defendants Walgreens Boots Alliance, Inc. and Walgreen Arizona Drug Company

4    (collectively "Walgreens") concur and join in Theranos's Motion to Dismiss.  The bases

5    for dismissal specified therein are equally applicable to Walgreens.  Walgreens also writes

6    separately here to raise additional reasons why Plaintiffs' First Amended Consolidated

7    Class Action Complaint (hereinafter "Amended Complaint" or "ACAC") does not allege

8    plausible facts sufficient to state a claim against Walgreens.

9    **II.    INTRODUCTION**

10   The Amended Complaint is Plaintiffs' second attempt at stating a claim upon

11   which relief can be granted.  But it suffers from the same fatal deficiencies as Plaintiffs'

12   initial complaint.   Even worse, it overreaches beyond their initial complaint, with

13   implausible new claims intended to ratchet up the potential attorneys' fee award in a case

14   with only limited putative damages at issue and transform a simple case of alleged

15   consumer fraud into a personal injury action.  Specifically, faced with the reality that

16   Theranos collected only a relatively modest amount of money from the putative class,

17   plaintiffs now seek damages for emotional and personal injury resulting from purported

18   battery, medical battery, and unlawful medical experimentation.  With no factual or legal

19   basis, Plaintiffs assert these claims against not only Theranos, but also against Walgreens.

20   As set forth below, Plaintiffs have not alleged sufficient facts to support these claims

21   against any defendant, much less Walgreens, and the claims should be dismissed.

22   First, Plaintiffs' battery and medical battery claims, which are based on an

23   implausible new theory of liability, fail because the allegations in the Amended Complaint

24   concede that Plaintiffs consented to the blood draws and Plaintiffs have failed to allege

25   sufficient plausible facts to support a claim that their consent was ineffective.  Because

26   Arizona and California law is unequivocal that consent defeats a claim of battery and/or

27   medical battery, Plaintiffs' admitted consent to the very procedure that was performed

28   defeats their battery and medical battery claims.

*Snell & Wilmer*
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

- 1 -

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

Second, Plaintiffs' California Protection of Human Subjects in Medical Experiment Act (the "Human Subjects Act") claim fails because Plaintiff A.R.[1] was not subjected to a "medical experiment" within the meaning of the Human Subject Act given that (1) the blood draws and tests at issue were reasonably related to maintaining or improving the patient's health and (2) neither Walgreens nor Theranos were engaged in a clinical trial under the Food, Drug, and Cosmetic Act ("FDCA") or state law.

Third, Plaintiffs' aiding and abetting and civil conspiracy claims against Walgreens fail because Plaintiffs did not plead any facts, much less plausible ones, to establish that Walgreens had actual knowledge of the commission of the purported fraud by Theranos, or to even support an inference of such knowledge.  At best, Plaintiffs allege that Walgreens should have investigated further, or had reason to suspect, that Theranos's blood testing technology was unreliable (assuming it was).  But such allegations do not establish an aiding and abetting or civil conspiracy cause of action, which requires allegations of plausible facts establishing actual knowledge of an underlying tort.

Accordingly, Walgreens respectfully requests that the Court dismiss Plaintiffs' Amended Complaint in its entirety for the reasons set forth in Theranos's Motion to Dismiss as well as this separate Motion.

## III.    FACTUAL BACKGROUND[2]

Walgreens is a pharmacy-led health and well-being enterprise, which, among other segments, operates the Walgreens retail pharmacy chain in the United States.  *See* ACAC ¶24.  Walgreens entered into a contractual relationship with Theranos to supply Theranos's proprietary blood testing technology on-site at certain Walgreens stores in Arizona and California.  *Id.* ¶41.  Plaintiffs allege that Theranos, a blood testing company, was founded in 2003 by Elizabeth Holmes and that Theranos claimed to have developed "disruptive" technology to make blood testing faster and less invasive.  *Id.* ¶31,

---

[1]    The Amended Complaint asserts this claim only on behalf of Plaintiff A.R.  *See* ACAC ¶ 505.
[2]    This statement of facts is based on the allegations in Plaintiffs' Amended Complaint, which are assumed true solely for purposes of this Motion.

Snell & Wilmer

L.L.P.

LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

40. Plaintiffs allege that Theranos purported to have developed technology to test blood through its "Edison" device, which was allegedly able to reliably conduct hundreds of blood tests outside a lab with a few drops of blood from a patient's finger. *Id.* ¶32. Theranos sold its new "tiny blood test" at Wellness Centers at Walgreens pharmacies in Arizona and California and at Theranos-owned Wellness Centers in Arizona and California. *Id.* ¶23. Plaintiffs allege that the tests offered at the Wellness Centers were prematurely marketed and sold to consumers while the tests were still in the "beta" stage in order to assist in research and further product development. *Id.* ¶¶5, 34. Plaintiffs also allege that while they each voluntarily submitted to the administration of one or more blood draws of some kind, the draws were taken without their effective consent because "Defendants" "misrepresented and concealed the essential purpose of the blood draws and other clinical procedures." *Id.* ¶¶115, 496.

The vast majority of the Amended Complaint improperly conflates Walgreens, Theranos, Elizabeth Holmes, and Ramesh "Sunny" Balwani, referring to them collectively as "Defendants." Indeed, while Plaintiffs recite a long story about the purported inaccuracy or unreliability of Theranos's blood testing technology, the alleged fact that the Theranos tests were used to gather data for use in research and development, and how Plaintiffs were allegedly battered and physically injured as a result of the blood tests; the factual allegations directed at Walgreens specifically are sparse.

The crux of the very few allegations against Walgreens is that it housed the Wellness Centers at its pharmacies pursuant to a contract between Theranos and Walgreens, and that Walgreens was aware of "red flags" with the technology before and during its contractual relationship with Theranos. *See generally id.* ¶¶ 44-50. But even Plaintiffs admit that Walgreens engaged third parties in an effort to verify the reliability of the technology and did not have the right to review the blood testing data collected in the Wellness Centers after they were up and running. *Id.* ¶¶45, 46. Plaintiffs acknowledge that before entering into the contract with Theranos, Walgreens enlisted the assistance of a Johns Hopkins University scientist to evaluate the Edison blood test, and also sent "a

delegation" to Theranos's lab, including an outside consulting firm, Collaborate LLC, to independently verify the accuracy of the lab testing technology. *Id.* Plaintiffs further allege that Walgreens "sent two executives and a retired Quest Diagnostics Corp. executive to Theranos to review quality-control data" to follow-up on the prior work done by the Johns Hopkins scientist and Collaborate LLC. *Id.* ¶50. Plaintiffs then contend that these efforts raised "red flags" and allege that Walgreens ignored them. *Id.* ¶¶43, 48. But Plaintiffs do not plead any specific facts demonstrating that Walgreens was actually aware that Theranos's blood testing technology was inaccurate or unreliable or being used to gather research data. *See generally id.* Indeed, Plaintiffs do not allege a **single fact** that supports the conclusory allegation that Walgreens was aware of red flags regarding the **reliability** of the tests. *Id.*

On the contrary, Plaintiffs assert that Walgreens was repeatedly denied access to the information necessary to reach such conclusions. "Although a Johns Hopkins University scientist had requested, on Walgreens's behalf, that Theranos provide his researchers with an Edison device so that they could verify the technology for Walgreens . . . the device was never provided. Instead, Walgreens got a prototype which the Johns Hopkins team tried to evaluate, but the prototype was useless. . . . As a result, there was no way to compare results from the prototype Edison device to the results of other commercially-available tests." *Id.* ¶45. In addition, as to the efforts by an independent party, Collaborate LLC, the consulting lab experts were "chaperoned during the entire visit, including during visits to the restroom, and were not allowed access to Theranos's lab area or Edison technology." *Id.* ¶47. And further, as to the visit to Theranos by Walgreens's executives and a retired Quest executive, Plaintiffs allege that "[a]ccording to reports, the retired Quest executive stated that they were not allowed inside Theranos's lab, and while they were led to believe the data they reviewed was from an Edison device, Theranos did not confirm that it was." *Id.* ¶50.[3] Finally, Plaintiffs concede that

---

[3] The only "specific allegations" Plaintiffs make regarding Walgreens's knowledge of Theranos's own activities is that Walgreens allegedly did discover problems with "Theranos's information management systems meant to keep track of patients." *Id.* ¶47.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Walgreens did not have the right to review the clinical data collected at the Wellness Centers—a fact that undercuts the argument that Walgreens was aware of any reliability issues with the test results. *Id.* ¶52.

Thus, even according to Plaintiffs' own allegations, Walgreens engaged in considerable due diligence, but was denied access to the information that would have proven Theranos's blood testing technology to be flawed (assuming it is) and that the tests were being used to gather data for further research and development. Moreover, although the Amended Complaint generally alleges that "Walgreens agreed *to make available* Walgreens employees who would facilitate the sale and performance of Theranos testing services" (*see, e.g., id.* ¶411 (emphasis added)) and that "Defendants" collectively performed blood draws at the Wellness Centers (*see id.* ¶492), Plaintiffs do not specifically allege that a Walgreens employee physically performed any of the named Plaintiff's blood draws, and it is implausible that the five separate defendants collectively performed the task of administering the blood draws on the named Plaintiffs.

As described below and in Theranos's Motion, Plaintiffs' Amended Complaint must be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## IV.   LEGAL STANDARD FOR MOTION TO DISMISS UNDER RULE 12(B)(6)

A complaint must be dismissed for failure to state a claim under Rule 12(b)(6) if the plaintiff either fails to state a cognizable legal theory or has not alleged sufficient facts to support a cognizable legal theory. *See* Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). The complaint must allege facts which, when taken as true, raise more than a speculative right to relief. *Twombly*, 550 U.S. at 555. The Court need not accept as true allegations

---

However, even if this allegation were true, it is not an allegation regarding the reliability of the testing.

contradicted by judicially noticeable facts, *see Hamilton v. Tiffany & Bosco PA*, No. CV-14-00708-PHX-GMS, 2014 WL 4162362, at \*2 (D. Ariz. Aug. 20, 2014); rather, "[i]n deciding whether to dismiss a claim under Fed. R. Civ. P. 12(b)(6), a court may look beyond the plaintiff's complaint to matters of public record." *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).  Nor do courts "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (internal citation omitted).

## V.     PLAINTIFFS FAIL TO STATE A COGNIZABLE CLAIM AGAINST WALGREENS

### A.     Plaintiffs Fail to State A Claim For Battery Or Medical Battery Against Walgreens  (Counts III and XVI)

To state a claim for common law battery, a plaintiff must allege that a defendant "intentionally engage[d] in an act that result[ed] in harmful or offensive contact with the person of another." *Duncan v. Scottsdale Med. Imaging, Ltd.*, 205 Ariz. 306, 309, 70 P.3d 435, 438 (2003) (citing Restatement (Second) of Torts §§ 13, 18 (1965)); *see also Brown v. John C. Lincoln Health Network*, No. 1 CA-CV 14-0814, 2016 WL 2893739, at \*2 (Ariz. Ct. App. May 17, 2016), *review denied* (Feb. 14, 2017).  Moreover, in Arizona, "a health care provider commits a common law battery on a patient if a medical procedure is performed without the patient's consent." *Duncan*, 205 Ariz. at 309, 70 P.3d at 438 (citing *Hales v. Pittman*, 118 Ariz. 305, 310, 576 P.2d 493, 498 (1978)).  Accordingly, neither a battery nor a medical battery claim can stand "when consent is given." *Id.*

Here Plaintiffs have failed to state a cause of action for battery or medical battery against Walgreens because Plaintiffs have not alleged that Walgreens (as opposed to Theranos, another defendant, or some other individual or entity) actually performed the blood draws at issue.  Additionally, Plaintiffs have conceded that each named Plaintiff *did* consent to have his or her blood drawn and they have failed to allege plausible facts sufficient to establish that their consent was ineffective.  Therefore, Plaintiffs' battery and medical battery claims against Walgreens must be dismissed.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
(602) 382-6000

1. **Plaintiffs Have Failed To Allege That Walgreens Caused A Harmful Or Offensive Contact With Plaintiffs**

To establish a battery claim, a plaintiff must allege that the defendant "intentionally caused a harmful or offensive contact with the plaintiff to occur." *Johnson v. Pankratz*, 196 Ariz. 621, 623, 2 P.3d 1266, 1268 (Ct. App. 2000); *see also* Restatement (Second) of Torts § 13 (1965).  As such, a plaintiff must allege that a defendant actually committed an "offensive touching" or, at least, caused a contact with the plaintiff.  *Bohnert v. Mitchell*, No. CV-08-2303-PHX-LOA, 2010 WL 4269569, at *11 (D. Ariz. Oct. 26, 2010) ("[T]o establish the tort of battery, Plaintiff must show that [defendant] 'intentionally caused a harmful or offensive contact' with Plaintiff's person." (internal citations omitted)).

Here, Plaintiffs have failed to allege that Walgreens "caused a harmful or offensive contact" upon the Plaintiffs, or even that Walgreens made contact with the Plaintiffs.[4] Rather, Plaintiffs allege that the Defendants, collectively, committed a battery and/or medical battery.  Plaintiffs claim that they submitted to blood draws "performed by *Defendants* which involved *Defendants* penetrating their skin and tissue to draw blood. . . ."  *See* ACAC ¶339.  Moreover, while Plaintiffs literally allege that the Defendants, *collectively*, performed the blood draws, it is implausible that the five separate Defendants performed Plaintiffs' blood draws together; the task of performing a blood draw is a discrete task which could not have been performed collectively, much less by five defendants (including three separate corporate defendants).  Accordingly, because Plaintiffs have failed to allege that Walgreens (as opposed to Theranos or another actor) actually made *any* physical contact or touching with the Plaintiffs, they have failed to state

---

[4]     Restatement (Second) of Torts § 14 (1965) states that "[t]o make the actor liable for a battery, the harmful bodily contact must be caused by an act done by the person whose liability is in question."  The word "act" as used in this section "denote[s] an exertion of the will manifested in the external world." *Id*. at cmt. b. As such, this provision aims to distinguish "purely reflexive" movements from those acts carried out with the intention to cause harm to another.  *Id*.  This principle is illustrated with the following example: "A pushes B against C, knocking C down and breaking his leg.  A, and not B, is subject to liability to C."  *Id*.  Applying this standard here, Plaintiffs have failed to allege plausible facts sufficient to state a claim that Walgreens "caused" Theranos or another party to commit an offensive or harmful contact.

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
(602) 382-6000

a *prima facie* claim for the intentional tort of battery and medical battery as against Walgreens.

### 2. Plaintiffs' Battery Claims Must Be Dismissed Because They Have Not Alleged Plausible Facts Establishing A Lack of Consent

A claim for medical battery is not the same as a claim for medical malpractice based upon a lack of informed consent. The former is an intentional tort where the provider allegedly performs a medical procedure to which the patient has not consented and the latter is a claim that a healthcare provider did not adequately disclose the risks and alternative treatments prior to performing the procedure. *See Gorney v. Meaney*, 214 Ariz. 226, 228, 150 P.3d 799, 801 n.1 (Ct. App. 2007). Here, although Counts Three and Sixteen of the Amended Complaint are entitled "Battery" and "Medical Battery," respectively, these claims are inappropriately premised on an alleged lack of informed consent, not a complete lack of consent. Therefore, Plaintiffs have wholly failed to state a cause of action for the intentional torts of battery and medical battery.

In *Duncan v. Scottsdale*, a seminal case addressing a "medical battery" claim, the Arizona Supreme Court held that an action for the *lack of consent* sounds in battery, while a claim for *lack of informed consent* sounds in negligence. 205 Ariz. at 310, 70 P.3d at 439. In so doing, the Court adopted the reasoning of the California Supreme Court in *Cobbs v. Grant,* 8 Cal.3d 229, 104 Cal. Rptr. 505, 502 P.2d 1 (1972)—"a health care provider commits a common law battery on a patient if a medical procedure is performed without the patient's consent. A battery claim is defeated, however, when consent is given." *Id*. at 309, 70 P.3d at 438 (internal citations omitted). In other words, a battery claim is reserved for only those cases where a medical procedure was performed *without* the patient's consent. *Id*.

To be effective, the consent "must be 'to the particular conduct, or substantially the same conduct.'" *Id*. at 311, 70 P.3d at 440 (quoting Restatement (Second) of Torts § 892A(2)(b)). The Court in *Duncan* held that "when the patient gives permission to perform one type of treatment and the doctor performs another, the requisite element of

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

1   deliberate intent to deviate from the consent given is present." *Id.* at 310, 70 P.3d at 439.

2   For example, "a patient who agrees to a blood test . . . does not thereby consent to a spinal

3   puncture, or the removal of his tonsils." *Cathemer v. Hunter*, 27 Ariz. App. 780, 783, 558

4   P.2d 975, 978 (1976).   On the other hand, when a patient consents to a blood test and a

5   blood test is subsequently performed, he or she has, indeed, consented to that procedure or

6   one that is substantially the same. *See Rice v. Brakel*, 233 Ariz. 140, 143–44, 310 P.3d

7   16, 19–20 (Ct. App. 2013) (holding that the plaintiff failed to establish a genuine issue of

8   material fact as to his alleged lack of consent  since it was "undisputed that he signed a

9   consent for the operation he received to be performed by [the defendant]").

10       Plaintiffs' battery and medical battery claims here fail because Plaintiffs admit that

11   they consented to the very "touching" that forms the basis of their battery claims,

12   conceding that they "submitted to blood draws performed by Defendants which involved

13   Defendants penetrating their skin and tissue to draw blood."  ACAC ¶¶339, 492.  In other

14   words, Plaintiffs consented to a blood draw either by finger prick or through a

15   conventional venous blood draw, and those are precisely the procedures that were

16   administered to Plaintiffs by an unspecified defendant or other actor.  As such, Plaintiffs

17   have not, and cannot, allege that the procedures to which they consented and which were

18   administered constituted a different procedure or one that was performed in a substantially

19   different manner than that to which they consented. *Duncan,* 205 Ariz. at 311.  Even

20   standing alone, this is a sufficient basis to dismiss Plaintiffs' battery and medical battery

21   claims. *See Duncan*, at 309, 70 P.3d at 438 ("A battery claim is defeated, however, when

22   consent is given.").[5]

23   _____

[5]       Plaintiffs' consent in this case is distinguishable from the limited consent given by

24   the patient in *Duncan*.  In *Duncan*, the issue was not whether plaintiff consented to the

25   touching — an injection — but rather whether plaintiff consented to receive the specific

     drug that was administered.  The patient had consented to the administration of painkillers

26   by injection; however, she specifically rejected the use of the drug fentanyl, and instructed

     that only morphine or demerol could be used.  205 Ariz. at 308, 70 P.3d at 437. The nurse

27   explicitly misrepresented to the patient that he would be administering morphine, when in

     actuality he administered fentanyl.  *Id*. at 308-309.  Here, Plaintiffs do not allege that their

28   consent to the blood draw was conditioned on the promise that their blood samples would

     *not* be used for any other purpose.  Nor do they allege that Walgreens expressly told them

     that their blood samples would not be used for any experimental purpose. *See Daum v.*

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

As alleged in the Amended Complaint, Plaintiffs' claim is *not* that Walgreens committed an intentional tort "where the provider performs a medical procedure to which the patient has not consented." Indeed, by Plaintiffs' own admissions, each patient voluntarily reported to the Wellness Centers to have their blood tested, they consented to either a finger prick or venous blood draw being performed, and their blood was indeed tested in that manner.  Plaintiffs' complaint is that they were allegedly not adequately informed of Theranos's purported plan to use their blood samples to further develop the Edison technology.  *See* ACAC ¶340.  As such, the gravamen of Plaintiffs' claim is that their blood samples were used by Theranos in a manner that was not disclosed to them *subsequent to* the exact procedure to which they gave explicit consent was performed. Critically, however, Plaintiffs do *not* allege that the procedure they received deviated from that to which they consented.  Their allegations thus fall well short of stating a claim of battery.  *See, e.g.*, *Daum v. SpineCare Med. Grp., Inc.*, 61 Cal. Rptr. 2d 260, 276 (1997) (finding that where the plaintiff consented to surgery using a certain implant, and that implant was used, "[a]ny failure to disclose the investigational status of the device did not involve intentional deviation by [the doctor] from the consent given by [plaintiff]").

### 3. Plaintiffs Have Not Pled That Defendants Made Any Misrepresentations That Go To The Nature Of The Invasion Of Their Interests Or The Extent Of The Harm To Be Expected

Acknowledging that they did consent to have their blood drawn, Plaintiffs contend that Defendants induced them to consent to the blood draws through fraud, concealment, and substantial misrepresentations about the procedures they consented to.  *See* ACAC ¶342.[6]  However, because the alleged misrepresentations Plaintiffs rely upon do not relate

*SpineCare Med. Grp., Inc*., 52 Cal. App. 4th 1285, 1313, 61 Cal. Rptr. 2d 260, 276 (1997) (finding that where the plaintiff consented to surgery using a certain implant, and that implant was used, "[a]ny failure to disclose the investigational status of the device did not involve intentional deviation by [the doctor] from the consent given by [plaintiff]").

[6]  As detailed in Theranos's Motion to Dismiss, Plaintiffs' battery and medical battery claims are "grounded in fraud," and are therefore subject to Rule 9(b)'s heightened pleading standard.  *See Doan v. Singh*, 617 F. App'x 684, 685 (9th Cir. 2015).  Yet, to the extent that Plaintiffs allege that their consent was not effective because Defendants' fraudulent representations induced that consent (ACAC ¶342), Plaintiffs failed to allege the "who, what, when, where, and how" of the allegedly fraudulent conduct. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  Plaintiffs have not adequately pled

to the actual procedure performed on Plaintiffs or the nature of harm to be expected from the procedure, this contention also fails and cannot salvage Plaintiffs' battery claims. Although courts have held that consent may be ineffective in certain cases if induced by fraud or misrepresentation, for the consent to be rendered ineffective, the allegedly misleading statement must relate to the "nature of the invasion of his interests or the extent of the harm to be expected from it." *Duncan*, 205 Ariz. at 311, 70 P.3d at 440 (quoting Restatement (Second) of Torts § 892B(2)); *see also Rice*, 233 Ariz. at 143–44, 310 P.3d at 19–20.  This conclusion is also supported by the Restatement (Second) of Torts § 892B(2), which states:

> If the person consenting to the conduct of another is induced to consent by a substantial mistake *concerning the nature of the invasion of his interests or the extent of the harm to be expected from it* and the mistake is known to the other or is induced by the other's misrepresentation, the consent is not effective for the unexpected invasion or harm.

*Id.* (emphasis added).  Indeed, in *Rice v. Brakel,* the court expressly declined to "create an alternative and automatic source of liability under a battery cause of action when a patient claims that a doctor failed to disclose, without specific inquiry from the patient, indeterminate factors before performing a procedure, arguably creating a mistake of fact or misrepresentation that vitiates the patient's consent."  233 Ariz. at 144, 310 P.3d at 20 (finding that plaintiff had "cited no affidavit or deposition testimony stating that [defendant] misrepresented the nature of the procedure to him, that he did not generally consent to [defendant] performing the procedure, or that [defendant] exceeded the scope of the procedure to which he consented").  The court explained that "[t]o do so would essentially circumvent the informed consent doctrine, which our supreme court has stated

---

who made the alleged misrepresentations, when they were made, and the content of those statements.  *See Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007).  Rather, Plaintiffs baldly allege that the Defendants, collectively, induced them to consent to the blood draws through fraud, concealment, and misrepresentations about the procedures to which they consented.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

unequivocally must be pleaded under a negligence theory." *Id.* (citing *Duncan*, 205 Ariz. at 310, 70 P.3d at 439).

*Tilousi v. Arizona State University* is also directly on point.   In *Tilousi*, the defendants obtained blood samples from the plaintiff tribe members "ostensibly to be used to study diabetes within the tribe." No. 04-CV-1290-PCT-FJM, 2005 WL 6199562, at *1 (D. Ariz. Mar. 3, 2005).  The plaintiffs, however, alleged that the samples were actually used "for research on unrelated topics such as schizophrenia, inbreeding, and ancient human population migrations."  *Id.*  Plaintiffs alleged that they would not have consented to provide their blood samples had they known they would be used in other studies.  *Id.* The court rejected plaintiffs' position, finding instead that the plaintiffs—like the named plaintiffs here—"consented to having blood drawn and were fully aware of the character of the contact."  *Id.* at *2.  Thus, the Court concluded that plaintiffs' consent was "not made ineffective even if defendants did make fraudulent representations to induce that consent."  *Id*; s*ee also Daum*, 61 Cal. Rptr. 2d at 276 (holding that where the plaintiff consented to surgery using a certain implant, and that implant was used, "[a]ny failure to disclose the investigational status of the device did not involve intentional deviation by [the doctor] from the consent given by [plaintiff]").

As in *Tilousi* and *Daum*, Plaintiffs here have utterly failed to allege any facts that would support a finding that their express consent was ineffective.  In support of their claims, Plaintiffs contend that Defendants failed to disclose that they had "prematurely rushed Theranos testing services to market, the procedures that Plaintiffs and the Class submitted to were experimental in nature and being use by Defendants for research and product development, and the essential purpose of the blood draws and procedures that Plaintiffs and the Class submitted to was to aid in Defendant's research and product development."  *See* ACAC ¶340.  However, none of these statements relate to the "nature of the invasion of [Plaintiffs'] interests or the extent of the harm to be expected" from the administration of the blood draws.  Indeed, none of the statements identified by Plaintiffs relate to the actual blood draw procedure being performed or any side effects or harm that

1   would directly result from the procedure. Accordingly, Plaintiffs' contentions that

2   Defendants induced them to consent to the blood draws through fraud, concealment, and

3   substantial misrepresentations about the procedures they consented to do not salvage

4   Plaintiffs' battery claims.

5       **B.    Plaintiffs Fail to State a Claim for a Violation of the Human Subjects**

6   **Act (Count XVII)**

7       To state a claim under the Human Subjects Act, a plaintiff must allege that, without

8   obtaining the requisite consent, (a) the treatment provided was not "reasonably related to

9   maintaining or improving the health of the subject or otherwise directly benefiting the

10  subject"; (b) the treatment involved "investigational use of a drug or device as provided in

11  Sections 111590 and 111595 [of the California Health and Safety Code]"; or (c) defendant

12  withheld medical treatment from a human subject "for any purpose other than

13  maintenance or improvement" of the patient's health.  *Perez v. Nidek Co.*, 711 F.3d 1109,

14  1114 (9th Cir. 2013) (citing Cal. Health & Safety Code § 24174).  Here, Plaintiffs have

15  failed to allege that Plaintiff A.R.'s blood draws satisfy any of the above definitions of a

16  "medical experiment" such that Walgreens was obligated to obtain the statutorily

17  mandated consent.

18      While Plaintiffs describe the Theranos blood tests as "experimental," such that

19  Defendants were obligated to comply with certain disclosure requirements of the Human

20  Subjects Act (the "Act"), the procedure was simply not "experimental" under § 24174(a)

21  of the Act, which requires a showing that the defendant engaged in the "practice or

22  research of medicine in a manner not reasonably related to maintaining or improving the

23  health of the subject or otherwise directly benefiting the subject."  Cal. Health & Safety

24  Code § 24174(a).  As an initial matter, and as Plaintiffs concede, the tests offered by

25  Theranos "included tests concerning critical medical and health issues including, but not

26  limited to cancer, heart disease, diabetes, kidney disease, auto-immune disorders, and

27  viruses."  ACAC ¶30.  Therefore, the tests were "reasonably related to maintaining or

28  improving the health of the subject or otherwise directly benefiting the subject."

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

1      The Ninth Circuit's decision in *Perez v. Nidek Co.* is instructive on this point.  *See*

2   711 F.3d at 1112–16.  In *Perez*, the plaintiff sought and received laser eye surgery to

3   correct farsightedness.  *Id.* at 1112.  Plaintiff alleged that at the time of the surgery, he did

4   not know that the FDA had not approved the laser for this use.  *Id.*  Plaintiff further

5   alleged that the defendant–doctors engaged in a scheme to modify the approved laser eye

6   surgery to enable it to correct farsightedness before it was approved for that purpose.  *Id*.

7   The Ninth Circuit held that the laser eye surgeries fell "well outside the scope of

8   subsection (a) [of the Act]" since the plaintiff conceded that the surgeries had a

9   therapeutic purpose. *Id.* at 1115.

10      The blood tests also cannot be considered "experimental" under § 24174(b) of the

11   Human Subjects Act, which defines "medical experiment" as  "[t]he investigational use of

12   a drug or device as provided in Sections 111590 and 111595 [of the California Health and

13   Safety Code]."   The sections referenced in § 24174(b)—111590 and 111595—govern,

14   respectively, investigations (commonly referred to as "clinical trials") conducted in

15   accordance with the requirements of the United States Federal Food, Drug, and Cosmetic

16   Act ("FDCA") and investigations conducted under conditions specified by state law.  *See*

17   *Perez*, 711 F.3d at 1116.  In *Perez*, the court also rejected the plaintiffs' claims that the

18   defendants violated Section 24174(b) of the Act.   The plaintiffs claimed that the

19   defendants "knew and understood that the Lasers were being used on Plaintiffs and the

20   Class without their informed consent to be subjected to the investigational use of the

21   Laser, and without including them in a sanctioned clinical trial." *Id.*  The court observed

22   that plaintiffs' undoing was in admitting that they were *not* participants in an officially

23   sanctioned clinical trial.  *Id.* (citing *Huntman v. Danek Medical, Inc.*, No. 97–2155–IEG

24   (RBB), 1998 WL 663362, at *6–*7 (S.D. Cal. July 24, 1998) (finding that, because there

25   was no evidence that the plaintiff was part of an Investigational Device Exemption, the

26   defendant did not need to comply with the informed consent provisions of the

27   Investigational Device Exemption regulations)).  In other words, Section 24174(b), "by its

28   terms, applies only to investigations conducted under the requirements of the FDCA or

state law" and, therefore, the disclosure requirements also only apply to such investigations. *Id.*

Here, Plaintiffs have failed to allege that either Theranos or Walgreens was conducting an investigation pursuant to the requirements of the FDCA or state law. Plaintiffs merely allege in a conclusory fashion that the blood draws were "devices" employed for "medical experiments." *See* ACAC ¶¶509-511. This allegation is insufficient to deem the blood draws "experimental" under the Section 24174(b) of the Human Subject Act.

In short, because the blood draws were "reasonably related to maintaining or improving the health" of Plaintiff A.R., and because Walgreens was not conducting an investigation of the blood tests under the FDCA or state laws, Walgreens was not required to comply with the disclosure standards set forth in the Act. Therefore, any failure to do so does not constitute a violation of the Human Subjects Act.

### C.    Plaintiffs Fail To State A Cause Of Action For Aiding And Abetting A Fraud Against Walgreens  (Count VIII)

Plaintiffs' aiding and abetting claim is predicated on Theranos, Holmes and Balwani's alleged torts. For all of the reasons set forth in Theranos's Motion to Dismiss, Plaintiffs fail to adequately plead a tort against Theranos, Holmes and Balwani (the "Theranos Defendants"). Accordingly, the aiding and abetting claim against Walgreens must be dismissed. *See Dawson v. Withycombe*, 216 Ariz. 84, 102, 163 P.3d 1034, 1052 (Ct. App. 2007) (noting that an aiding and abetting claim requires an underlying tort). But even if Plaintiffs did sufficiently plead a tort claim against any of the Theranos Defendants, which they have not, their aiding and abetting claim against Walgreens should still fail.

To state a claim for aiding and abetting a tort, a plaintiff must plead that:  (1) the primary tortfeasor committed a tort that caused injury to the plaintiff; (2) ***the defendant knew that the primary tortfeasor's conduct constituted a breach of duty***; and (3) the defendant substantially assisted or encouraged the primary tortfeasor in the achievement

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

of the breach.  *See Dawson*, 216 Ariz. at 102, 162 P.3d at 1052 (emphasis added).  Because "this theory of liability depends upon proof of scienter, it must be shown that the defendants *knew* the conduct they allegedly aided and abetted was a tort."  *Id.* (emphasis added).

Plaintiffs' allegations in support of their aiding and abetting claim against Walgreens do not come close to meeting this standard.  Rather, Plaintiffs' allegations actually preclude their claim.  Indeed, while Plaintiffs conclusorily assert that Walgreens "knew that . . . Theranos's testing was not reliable," ACAC ¶396, the facts alleged in the Amended Complaint suggest that Walgreens lacked the means to obtain such knowledge.  Plaintiffs allege that Walgreens was not provided the requisite information to determine if Theranos's blood testing technology was accurate and reliable.  *See* ACAC at 36.  Specifically, Plaintiffs allege that, in response to Walgreens's request to evaluate the Edison device, Theranos refused to provide the device and provided a "prototype."  *Id.*  According to Plaintiffs, "[a]s a result[,] there was no way [for Walgreens] to compare results from the prototype Edison device to the results of other commercially-available tests."  *Id.*  By asserting that Walgreens was denied the knowledge and information to establish the reliability of Theranos's blood test technology, Plaintiffs are precluded from asserting that Walgreens had actual knowledge of the Theranos Defendants' alleged wrongdoing and their aiding and abetting claim must be dismissed.

In an attempt to circumvent this fatal flaw, Plaintiffs assert that "Walgreens knew and/or knowingly and deliberately failed to discover, that Theranos's testing was not reliable, and that Theranos laboratories were not compliant with applicable laws and regulatory standards, and presented an immediate danger to patient safety."  ACAC ¶288.  But that conclusory allegation does not salvage Plaintiffs' aiding and abetting claim.  *See Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").  While courts applying Arizona law can infer that a defendant had knowledge of the tort, "an inference of knowledge will not be

- 16 -

made lightly." *Federico v. Maric*, 224 Ariz. 34, 36, 226 P.3d 403, 405 (Ct. App. 2010). Moreover, "[k]nowledge of suspicious activity is not enough." *Stern v. Charles Schwab & Co.*, No. CV-09-1229-PHX-DGC, 2009 WL 3352408, at *8 (D. Ariz. Oct. 16, 2009).

Nor are Plaintiffs' allegations that Walgreens had "doubts" about and/or failed to "verify" the accuracy of the tests sufficient to state an aiding and abetting claim. *See id.* ("These alleged facts, taken as true, show no more than did the facts in *Dawson*. They may suggest that Wells Fargo engaged in poor business practices, but they do not show that Wells Fargo knew, generally or specifically, that the Bennetts were perpetrating a fraud. Knowledge of suspicious activity is not enough. The Sterns have failed to plead the scienter required for aiding and abetting liability under Arizona law."); *Minotto v. Van Cott*, No. 1 CA-CV 15-0159, 2016 WL 3030129, at *4 (Ariz. Ct. App. May 26, 2016) (dismissing plaintiff's aiding and abetting claim where the complaint did not affirmatively plead that the defendant "*knew*" the primary tortfeasor's statements were false, only that the defendant "*should have known*" (emphasis in original)); *cf. BAE Sys. Mobility & Prot. Sys., Inc. v. ArmorWorks Enterprises, LLC*, No. CV-08-1697-PHX-JAT, 2011 WL 1192987, at *11 (D. Ariz. Mar. 28, 2011) (holding that plaintiff's evidence presented in support of its aiding and abetting a fraud claim was insufficient to survive summary judgment because "[e]ven if Armor Holdings was aware of the representations made by Alanx, there is no evidence establishing that Armor Holdings knew those representations were in pursuit of a fraudulent scheme"). Plaintiffs' claim that Walgreens allegedly "looked the other way" is similarly insufficient. *See Dawson*, 216 Ariz. at 103, 162 P.3d at 1053 ("To infer awareness of the fraudulent scheme from [Plaintiff's] characterization of what [Defendants] knew and thought is to pile inference upon inference, which stretches the evidence presented beyond the bounds of circumstantial evidence.").

*Dawson* is a factually similar and instructive case. In *Dawson*, the plaintiff brought suit against Goett, the CEO of Futech Interactive Products, Inc., alleging that he fraudulently misrepresented the company's financial prospects so that the plaintiff would

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

- 17 -

issue the company a loan.  *See id.*  Plaintiff also brought an aiding and abetting claim against two other directors of the company, Turner and Withycombe, alleging that "they knew Goett was dishonest and that [the company] was in poor financial condition and they nonetheless sent Goett out to procure a loan."  *Id.*  The court held that the fact "[t]hat Turner and Withycombe were aware of [the company's] financial condition and of Goett's dishonest character, and were aware that he was soliciting funds from Dawson, indicates poor judgment and risky business practices.  It does not, however, rise to the level of scienter required for aiding and abetting, specifically that they were *aware* that Goett *did or would in fact* use fraudulent statements as a means of procuring the loan."  *Id*. (emphasis in original).  The *Dawson* court held that the evidence presented was insufficient to establish that the directors had the requisite knowledge to prove aiding and abetting.  *Id*.

In short, Plaintiffs have not alleged facts or circumstances sufficient to show that Walgreens actually knew that Theranos's conduct in selling its blood tests was fraudulent, assuming that it was, and such knowledge cannot be inferred on these facts.  Accordingly, Plaintiffs' aiding abetting claim should be dismissed.

**D.     Plaintiffs Fail To State A Cause Of Action For Conspiracy (Civil or RICO) Against Walgreens (Counts IX and X)**

As detailed in Section IV of Theranos's Motion, Plaintiffs' conspiracy claims fail because (1) Plaintiffs have failed to allege that an underlying tort was committed (*Johnson v. Am.'s Wholesale Lender*, No. CV-14-00201-PHX-SRB, 2014 WL 12550550, at *3 (D. Ariz. Apr. 3, 2014) ("Under Arizona law, there is no independent tort for conspiracy.")), and (2) Plaintiffs have failed to sufficiently allege that Defendants entered into an agreement to accomplish an unlawful goal.  *Marceau v. Int'l Bhd. of Elec. Workers*, 618 F. Supp. 2d 1127, 1171 (D. Ariz. 2009) ("Importantly, a conspirator must have been aware of the essential nature and scope of the enterprise and intended to participate in it." (internal citations omitted)); *Hearns v. R.J. Reynolds Tobacco Co.*, 279 F. Supp. 2d 1096, 1117 (D. Ariz. 2003) ("[F]or a civil conspiracy to occur, two or more people must agree to

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

1   accomplish an unlawful purpose or to accomplish a lawful object by unlawful means,

2   causing damages."); *Barba v. Seung Heun Lee*, No. CV 09-1115-PHX-SRB, 2009 WL

3   8747368, at *8 (D. Ariz. Nov. 4, 2009) (finding that plaintiff failed to allege any facts

4   showing that "Defendants actually agreed with each other to commit tortious acts").

5       With respect to the agreement element, while Plaintiffs allege that the parties

6   entered into a lawful commercial partnership to sell blood tests inside Walgreens' stores

7   (ACAC ¶ 41) and that Walgreens was generally aware of Theranos' alleged misconduct

8   (*id*. ¶288), Plaintiffs do not allege that Walgreens "actually *agreed*" with Theranos to

9   defraud consumers. *Hillis v. Heineman*, 2009 WL 2222709, at *4 (D. Ariz. July 23, 2009)

10  (emphasis in original). This is fatal to Plaintiffs' conspiracy claims.

11      Additionally, as with Plaintiffs' aiding and abetting claim, Plaintiffs have failed to

12  plead any plausible facts establishing that Walgreens had actual knowledge of the

13  Theranos Defendants' alleged torts. To state a claim for conspiracy, Plaintiffs must plead

14  that Walgreens had knowledge that the underlying acts were wrong or tortious. *See S.*

15  *Union Co. v. Sw. Gas Corp*., 165 F. Supp. 2d 1010, 1020 (D. Ariz. 2001). "To be liable

16  for tortious conduct by a coconspirator, '[t]he conspiring defendants must also have

17  ***actual knowledge*** that a tort is planned and concur in the tortious scheme with knowledge

18  of its unlawful purpose." *Id.* (emphasis added) (quoting *Kidron v. Movie Acquisition*

19  *Corp.*, 40 Cal. App. 4th 1571, 1582 (1995) (noting that there are no appreciable and

20  critical differences between California and Arizona conspiracy law)). In other words,

21  Plaintiffs must allege that "[t]he conspiring defendants [had] actual knowledge that a tort

22  [was] planned and concur in the tortious scheme with knowledge of its unlawful purpose."

23  *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1582 (1995) (citing *Wyatt v.*

24  *Union Mortgage Co.*, 24 Cal. 3d 773, 784-86 (1979) ("a plaintiff is entitled to damages

25  from those defendants who concurred in the tortious scheme with knowledge of its

26  unlawful purpose")); *People v. Austin*, 23 Cal. App. 4th 1596 (1994), *disapproved on*

27  *other grounds by People v. Palmer*, 24 Cal. 4th 856, 15 P.3d 234 (2001) ("without

28  knowledge of the illegal purpose there is no basis for inferring an agreement")). As with

their aiding and abetting claim, Plaintiffs have failed to adequately allege that Walgreens was actually aware of the Theranos Defendants' alleged torts.  To the contrary, Plaintiffs themselves allege that Walgreens was kept in the dark by the Theranos Defendants, and the Theranos Defendants prevented Walgreens from independently verifying the tests. *See* ACAC ¶¶ 44–50, 52.

Therefore, Plaintiffs have failed to plead plausible facts establishing an agreement to accomplish an unlawful objective or that Walgreens had actual knowledge of the Theranos Defendants' alleged torts, and Plaintiffs' conspiracy claims against Walgreens should be dismissed.

### E.    Plaintiffs Have Not Alleged Facts Establishing A Joint Venture or Agency Relationship Between Walgreens and Theranos

In an apparent attempt to buttress their sparse allegations against Walgreens, Plaintiffs make a single conclusory allegation in the Amended Complaint that, "[b]ased upon information and belief, . . . Theranos was acting as the agent and co-venturer of Walgreens, [and] that Walgreens was acting as agent and co-venturer of Theranos." *See* ACAC ¶ 27.  However, Plaintiffs allege no plausible facts in support of this allegation, and allegations based upon "information and belief" without sufficient factual content to make the claim plausible are insufficient to survive a motion to dismiss.  *See Kerr v. First Franklin*, 2012 WL 4359082, at *2 (D. Ariz. 2012) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to state a claim upon which relief can be granted. Moreover, in deciding a 12(b)(6) motion to dismiss, the court is not bound to accept as true a legal conclusion couched as a factual allegation.") (internal citations and quotations omitted); *see also Becker v. Wells Fargo Bank*, No. 2:12-cv-501 KJM CDK, 2013 WL 3242249, *3 (E.D. Cal. June 25, 2013) ("Even a claim made on information and belief must contain sufficient factual content that makes the claim plausible.").  Moreover, Plaintiffs do not allege plausible facts sufficient to establish a joint venture or agency relationship between Walgreens and Arizona under applicable law.  The agreement between Walgreen Co. and Theranos – the Amended and

Restated Theranos Master Services Agreement dated June 5, 2012 (the "MSA") – is governed by Delaware law. *See* Declaration of David R. Singh in Support of the Motion to Dismiss filed concurrently herewith ("Singh Decl."), at Ex. A, § 26. Under Delaware law, an essential element of a joint venture is an agreement to enter into a joint venture. *See In re Coffee Associates, Inc.*, Civ. A. No. 12950, 19 Del. J. Corp. L. 1165, *5 (Del. Ch. Dec. 3, 1993); *Satellite Fin. Planning Corp. v. First Nat. Bank of Wilmington*, 633 F. Supp. 386, 401 (D. Del. 1986) (ruling on a motion to dismiss that "[t]he Operating Agreement also created no partnership or joint venture between plaintiffs and defendants. . . . Here the Operating Agreement plainly describes Satellite Financial as an 'independent contractor'"). Moreover, the parties' intention under the plain language of an agreement controls. *See Salamone v. Gorman*, 106 A.3d 354 (Del. 2014) ("Under standard rules of contract interpretation, a court must determine the intent of the parties from the language of the contract."). Here, the MSA unambiguously states that "the relationship of the parties under this Agreement will not be construed to create any other relationship, as partners, joint venturers, principal and agent, or otherwise" and it contains a merger provision specifying that the MSA constitutes the entire agreement between the parties and that no agreement or understanding varying or extending the same shall be binding upon either party unless in a written document signed by both parties. Singh Decl., at Ex. A, § 26(a)-(b).[7] Therefore, given Plaintiffs' failure to allege plausible facts establishing a joint venture or agency relationship and the unambiguous language of the MSA, Plaintiffs' allegations of a joint venture or agency relationship are baseless and Plaintiffs may not survive a motion to dismiss by attempting to impute alleged conduct by Theranos, Holmes, and/or Balwani to Walgreens.

---

[7]     The court can consider the full terms of the MSA in ruling on Walgreens's 12(b)(6) motion pursuant to the incorporation by reference doctrine. "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *PageMasters, Inc. v. Autodesk, Inc.*, No. CV-08-00553-PHX-RCB, 2009 WL 825810, at *1 (D. Ariz. Mar. 30, 2009) (citing *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003)). Plaintiffs refer extensively to the nature of the contractual relationship between Theranos and Walgreens and discuss specific terms of the contract, but do not attach the MSA to the Amended Complaint. *See, e.g.*, ACAC ¶ 41, 52.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

1

## VI.    CONCLUSION

2

3        For the foregoing reasons, in addition to the reasons set forth in Theranos's Motion

4    to Dismiss, Walgreens respectfully requests that the Court dismiss Plaintiffs' Amended

5    Consolidated Class Action Complaint in its entirety pursuant to Rule 12(b)(6).

6    DATED this 17 day of March, 2017.

7

8                                    By:    _____*/s/ David R. Singh*_____

9                                          David R. Singh (*Pro Hac Vice*)
                                          Bambo Obaro (*Pro Hac Vice*)
10                                         WEIL, GOTSHAL & MANGES LLP
                                          201 Redwood Shores Parkway
11                                         Redwood Shores, CA 94065

12                                         Diane Sullivan (*Pro Hac Vice*)
                                          Adam S. Tolin (*Pro Hac Vice*)
13                                         WEIL, GOTSHAL & MANGES LLP
                                          17 Hulfish St., Suite 201
14                                         Princeton, NJ 08542

15                                         Patricia Lee Refo
                                          Brianna L. Long
16                                         SNELL & WILMER LLP
                                          One Arizona Center
17                                         400 E. Van Buren St., Suite 1900
                                          Phoenix, AZ  85004-2202

18                                         *Attorneys for Walgreens Boots Alliance, Inc.*
                                          *and Walgreen Arizona Drug Company*
19

20

21

22

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of March, 2017, I electronically transmitted the foregoing document to the U.S. District Court Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing of the foregoing was electronically sent to the CM/ECF registrants in this matter.

*/s/ Amber Miller*

- 23 -