Diane P. Sullivan (appearance *pro hac vice*)
Adam S. Tolin (appearance *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
17 Hulfish St., Suite 201
Princeton, NJ 08542
Tel: 609-986-1120
diane.sullivan@weil.com
adam.tolin@weil.com

David R. Singh (appearance *pro hac vice*)
Bambo Obaro (appearance *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Tel: 650-802-3000
david.singh@weil.com
bambo.obaro@weil.com

Patricia Lee Refo (SBN 017032)
Brianna L. Long (SBN 032309)
SNELL & WILMER LLP
One Arizona Center
400 East Van Buren Street, Suite 1900
Phoenix, AZ 85004
Tel: 602-382-6000
prefo@swlaw.com
bllong@swlaw.com

Attorneys for Defendants
Walgreens Boots Alliance, Inc. and
Walgreen Arizona Drug Company

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>Arizona Theranos, Inc., Litigation | Case No. 2:16-cv-02138-PHX-HRH<br>(Consolidated with:<br>No. 2:16-cv-2373-HRH<br>No. 2:16-cv-2660-HRH<br>- and -<br>No. 2:16-cv-2775-HRH)<br><br>**DEFENDANTS WALGREENS BOOTS ALLIANCE, INC. AND WALGREEN ARIZONA DRUG COMPANY'S JOINDER AND REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS** |

**TABLE OF CONTENTS**

I. JOINDER ............................................................................................................. 1

II. INTRODUCTION ............................................................................................... 1

III. PLAINTIFFS FAIL TO STATE A CLAIM FOR BATTERY OR MEDICAL BATTERY AGAINST WALGREENS (COUNTS III and XVI) ........ 2

    A. Plaintiffs' Consent Was Effective ............................................................ 2

    B. Plaintiffs Have Failed To Allege That Walgreens Caused A Harmful Or Offensive Contact With Plaintiffs ........................................... 6

IV. PLAINTIFF A.R.'S HUMAN SUBJECTS ACT CLAIM (COUNT XVII) FAILS BECAUSE THE BLOOD TESTS ARE NOT "MEDICAL EXPERIMENTS" UNDER THE HUMAN SUBJECTS ACT ................................ 7

V. PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION FOR AIDING AND ABETTING AGAINST WALGREENS (COUNT VIII) ............................... 8

VI. PLAINTIFFS FAIL TO STATE A CLAIM FOR CIVIL CONSPIRACY (COUNT IX) . ...................................................................................................... 9

VII. PLAINTIFFS HAVE NOT ALLEGED FACTS ESTABLISHING A JOINT VENTURE OR AGENCY RELATIONSHIP BETWEEN WALGREENS AND THERANOS ........................................................................ 10

VIII. CONCLUSION .................................................................................................. 12

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Coffee Assocs., Inc.*,
  Civ. A. No. 12950, 1993 WL 512505 (Del. Ch. Dec. 3, 1993) .................................. 11

*Daum v. SpineCare Med. Grp., Inc.*,
  52 Cal. App. 4th 1285 (1997) ............................................................................... 4, 5

*Dawson v. Withycombe*,
  163 P.3d 1034 (Ariz. Ct. App. 2007) ......................................................................... 9

*Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*,
  702 A.2d 1228 (Del. 1997) ...................................................................................... 11

*Freedman v. Superior Court*,
  214 Cal. App. 3d 734 (1989) ..................................................................................... 3

*Hillis v. Heineman*,
  No. CV-09-73-PHX-DGC, 2009 WL 2222709 (D. Ariz. July 23, 2009) ................. 10

*Kidron v. Movie Acquisition Corp.*,
  40 Cal. App. 4th 1571 (1995) .................................................................................. 10

*McPeak v. Ariz.*,
  No. 2:15-CV-0027-HRH, 2015 WL 4647906 (D. Ariz. Aug. 5, 2015) .................... 12

*Norton v. K-Sea Transp. Partners L.P.*,
  67 A.3d 354 (Del. 2013) .......................................................................................... 11

*Paul v. Deloitte & Touche, LLP*,
  974 A.2d 140 (Del. 2009) ........................................................................................ 11

*People v. Austin*,
  23 Cal. App. 4th 1596 (1994) .................................................................................. 10

*People v. Palmer*,
  24 Cal. 4th 856, 15 P.3d 234 (2001) ........................................................................ 10

*Perez v. Nidek Co.*,
  711 F.3d 1109 (9th Cir. 2013) ............................................................................... 7, 8

*Rains v. Superior Court*,
  150 Cal. App. 3d 933 (1984) ............................................................................ 2, 3, 4

*Satellite Fin. Planning Corp. v. First Nat. Bank of Wilmington*,
   633 F. Supp. 386 (D. Del. 1986) .............................................................................. 12

*Stern v. Charles Schwab & Co.*,
   No. CV-09-1229-PHX-DGC, 2009 WL 3352408 (D. Ariz. Oct. 16, 2009) ................. 9

*Tilousi v. Arizona State University*,
   No. 04-CV-1290-PCT-FJM, 2005 WL 6199562 (D. Ariz. Mar. 3, 2005) ................ 5, 6

**Statutes**

Cal. Health & Safety Code § 24174(b) ............................................................................... 1

Cal. Health & Safety Code § 24174(c) ............................................................................... 1

Cal. Health & Safety Code § 111590 .................................................................................. 7

Cal. Health & Safety Code § 111595 .................................................................................. 7

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 12

Restatement (Second) of Torts § 55 cmt. ....................................................................... 3, 4

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I. JOINDER

Defendants Walgreens Boots Alliance, Inc. and Walgreen Arizona Drug Company (collectively, "Walgreens") concur and join in Theranos's Reply to the Motion to Dismiss. Walgreens also writes separately here to address arguments raised by Plaintiffs in response to Walgreens' Motion to Dismiss.

## II. INTRODUCTION

Nowhere in their 122-page complaint or 57-page opposition do Plaintiffs allege any plausible facts which establish that Walgreens—a more than 100-year-old company—knowingly marketed or sold Theranos blood tests that were not market-ready so that Theranos could clandestinely conduct product development research. No such facts exist. As such, Plaintiffs resort to alleging that Walgreens ignored "red flags." But such allegations do not establish the awareness and intent necessary to support Plaintiffs' wild conspiracy theory. Plaintiffs' battery, violation of the Human Subjects Act, civil conspiracy, and aiding and abetting claims also fail for a number of additional reasons.

First, the battery claim fails because Plaintiffs do not dispute that they consented to the blood draws (*i.e.*, the allegedly offensive touching). Instead, they argue that their consent was ineffective because it was procured through false pretense. However, Plaintiffs' cited authority is easily distinguishable because, unlike the acts of battery in those cases (*e.g.*, inflicting violence on psychiatric patients), the administration of a blood draw was necessary to conduct blood tests, and Plaintiffs have not alleged any plausible facts establishing that Walgreens' purpose was to conduct beta tests to further Theranos' product development efforts, and not to benefit Plaintiffs.

Second, Plaintiffs' Human Subjects Act claim fails because the blood tests are not medical experiments under the Human Subjects Act. As an initial matter, Plaintiffs essentially concede that the blood tests cannot be considered "experimental" under §§ 24174(b) or 24174(c) of the Human Subjects Act. Plaintiffs instead argue that the blood tests were medical experiments because they were not reasonably related to maintaining or improving the health of, or otherwise benefiting, the patient. However,

1

1  Plaintiffs' own allegations, which they cannot now disavow, contradict and foreclose this
2  argument.

3  Third, Plaintiffs' attempt to save their civil conspiracy and aiding and abetting
4  claims by reference to the Master Services Agreement (the "MSA") is unavailing. The
5  MSA specifies only lawful objectives, including making blood tests "less invasive, faster
6  and far more accessible, effective and actionable." Singh. Decl., at Ex. A, at 3.
7  Moreover, it provides that "[e]ach party will comply with all applicable laws, ordinances,
8  rules, and regulations governing its duties or responsibilities under this Agreement . . . ."
9  *Id.* at 18. Plaintiffs need to allege more than an agreement to engage in lawful business
10 activity to state a viable civil conspiracy or aiding and abetting claim.

11 Lastly, although they repeatedly assert that there was a joint venture and/or agency
12 relationship between Walgreens and Theranos, Plaintiffs fail to respond to Walgreens'
13 argument that the unambiguous language of the MSA (which Plaintiffs allege is the basis
14 of the joint venture or agency relationship) provides that Theranos is an independent
15 contractor and that the Agreement "will not be construed to create any other relationship,
16 as partners, joint venturers, principal and agent, or otherwise." Therefore, the Court can
17 and should dismiss Plaintiff's joint venture and agency theories as a matter of law.

18 Accordingly, the Court should grant Walgreens' Motion to Dismiss.

### III. PLAINTIFFS FAIL TO STATE A CLAIM FOR BATTERY OR MEDICAL BATTERY AGAINST WALGREENS (COUNTS III AND XVI)

#### A. Plaintiffs' Consent Was Effective

22 Plaintiffs do not contest that they consented to the blood draws that are the basis of
23 their battery claims. Amended Complaint ¶¶ 339, 492. Instead, Plaintiffs assert that,
24 because Defendants procured their consent by allegedly misrepresenting the purpose of
25 the blood draw, Plaintiffs' consent was ineffective. Opp. at 10:12-11:12. In support of
26 this argument, Plaintiffs rely extensively on a California case applying California law:
27 *Rains v. Superior Court*, 150 Cal. App. 3d 933 (1984). *See* Opp. at 13:11-14:4.

28 In *Rains*, psychiatric patients asserted battery claims relating to an in-patient

2

psychiatric treatment program which used physical violence during the course of treatment. *Rains*, 150 Cal. App. 3d at 936. Plaintiffs alleged that they were fraudulently induced to consent to the treatment program because, rather than intending to provide any therapeutic relief, defendants employed violence "to subjugate plaintiffs, to coerce plaintiffs to remain in the residential program, to serve defendants for no compensation, to give defendants donations, to recruit new patients, and to believe their well-being depended upon remaining in the program and loyally serving defendants to the exclusion of the outside world." *Id.* In defining the scope of the issue before it, the *Rains* court stated that "[w]hether a viable cause for battery has been or might be pleaded turns upon whether plaintiffs' consent to use of physical violence by defendants as a therapeutic treatment may be vitiated by allegations that defendant psychiatrists actually did not administer such violence for **any** therapeutic purposes but for the improper ulterior purpose of subjugating plaintiffs and controlling their behavior to defendants' personal advantage." *Id.* (emphasis added).[1] The court held that the plaintiffs' consent may be vitiated by allegations that defendant psychiatrists did not administer violence for **any** therapeutic purposes. *Id*. at 940. In support of its holding, the court relied on the language of the Restatement Second of Torts, Section 55, comment b and Prosser on Torts (4th ed. 1971) section 18, which both provide that if a physician engages in conduct which is **unnecessary** to the treatment of his patient, assent to such conduct in the mistaken belief that it is a **necessary** part of the treatment is not effective.[2] *Id.* at 938-39.

The *Rains* case is distinguishable in several material respects:

First, *Rains'* central holding is that a battery claim is confined to cases where the

---

[1] "'[T]herapeutic' is used in these [medical battery] cases to distinguish drugs or treatments which are intended to affect treatment and cure, as distinguished from applications which do not have that objective." *Freedman v. Superior Court*, 214 Cal. App. 3d 734, 739 (1989).

[2] *See* Restatement (Second) of Torts § 55 cmt. b (1965) ("[I]f a physician indulges in familiarities which are unnecessary to the treatment of his patient, assent to them in the mistaken belief that they are a necessary part of the treatment is not effective as consent."); *see also* Prosser on Torts (4th ed. 1971) section 18 ("[A] physician may be liable for inducing an innocent girl to submit to indecent liberties, when he knows that she is ignorant of the fact that they are unnecessary for medical treatment.").

3

1  defendant conducted a wholly unnecessary medical test for an "improper ulterior
2  purpose." Plaintiffs here admit that at least one purpose of the blood draws was to benefit
3  consumers. For example, Plaintiffs allege that, because Theranos knew that results from
4  the Edison machine were not accurate, Theranos used instruments from other companies
5  to conduct some of its tests and outsourced some of its complex tests to third-party
6  university-affiliated labs. *See* Amended Complaint ¶¶ 97, 100. In contrast, in *Rains*, the
7  defendants' conduct was never intended to provide **any** therapeutic relief. *Rains*, 150 Cal.
8  App. 3d at 936.

9  Second, Plaintiffs have not alleged any plausible facts which suggest that
10 **Walgreens** did not intend for the blood draws to have therapeutic benefit to consumers.
11 Even standing alone, this is a sufficient basis to dismiss Plaintiffs' battery and medial
12 battery claims against Walgreens.

13 Third, the *Rains* court based its decision upon the language of the Restatement
14 Second of Torts, Section 55, comment b and Prosser on Torts (4th ed. 1971) section 18,
15 which both provide that if a physician engages in conduct which is unnecessary to the
16 treatment of his patient, assent to such conduct in the belief that it is a necessary part of
17 the treatment is not effective as consent. *Id*. at 938-39. Here, because a blood draw is
18 necessary for a blood test, the rationale underlying the *Rains*' decision is simply
19 inapplicable.

20 *Daum v. SpineCare Med. Grp., Inc*., 52 Cal. App. 4th 1285 (1997), which
21 Walgreens cites in its opening brief, is a more factually analogous and instructive
22 California case. In that case, plaintiff Edwin Daum conceded that he consented to the
23 touching that formed the basis of his battery claim—surgery using the Wiltse II implant.
24 *Id*. at 1293. Nevertheless, like Plaintiffs here, he alleged that the defendant failed to
25 disclose the investigational status of the Wiltse II implant device. *Id*. The court rejected
26 plaintiff's argument and held that "Mr. Daum agreed to surgery using the Wiltse II
27 implant, and that is what Dr. Goldthwaite performed. Any failure to disclose the
28 investigational status of the device did not involve intentional deviation by Dr.

4

Goldthwaite from the consent given by Mr. Daum. Therefore, under *Cobbs*, Dr. Goldthwaite can only be charged with negligence in failing to meet his duty of full disclosure." *Id*. at 1313.

Plaintiffs attempt to distinguish *Daum* by arguing that "the plaintiff knew the purpose of his spinal surgery, and also had signed a written consent acknowledging that the spinal rod being implanted was still being investigated and that his implant would be part of an FDA study," whereas Plaintiffs here were never told about the alleged investigational status of Theranos' services. Opp. at 15:13-19. Plaintiffs' distinction is specious. As an initial matter, the central issue in *Daum* was whether Mr. Daum gave informed consent for the use of the investigational device. *Daum*, 52 Cal. App. 4th at 1293. On that issue, after the trial court improperly instructed the jury that the standard of care must be determined solely from expert testimony, the appellate court held that "when the duty to disclose certain information is imposed by statute or regulation, it is error to require the jury to consider only expert testimony in determining whether communication of that information was necessary for the patent's informed consent." *Id*. Furthermore, and more importantly, in ruling on Mr. Daum's battery claim, the *Daum* court did not rely on, or even reference, the fact that Mr. Daum was allegedly informed about the investigational status of the implant device. On the contrary, in ruling that the trial court correctly refused to give a jury instruction on the battery claim, the court stated that "[a]ny failure to disclose the investigational status of the device does not involve intentional deviation by Dr. Goldthwaite from the consent given by Mr. Daum" because Mr. Daum agreed to surgery using the Wiltse II implant. *Id*. at 1313. Like Mr. Daum, Plaintiffs here consented to the alleged offensive touching that is the basis of their battery claims and any failure to disclose the alleged investigational status of Theranos' services is insufficient to state a battery claim.

Plaintiffs' attempt to distinguish *Tilousi v. Arizona State University*, No. 04-CV-1290-PCT-FJM, 2005 WL 6199562 (D. Ariz. Mar. 3, 2005), an Arizona case about blood draws, is equally baseless. In *Tilousi*, the plaintiffs alleged that they consented to the

5

defendants collecting their blood based on representations that the blood samples collected would be used solely to research and study diabetes. *Id*. at 2. However, rather than using the blood samples for the purpose for which the plaintiffs consented, the defendants used the blood samples for research on unrelated topics such as schizophrenia, inbreeding, and ancient human population migrations. *Id*. at 1-2. The *Tilousi* plaintiffs alleged that the defendants lacked informed consent to use plaintiffs' blood samples in this manner. *Id*. at 2. The district court rejected this argument and held that the "[p]laintiffs consented to having [their] blood drawn and were fully aware of the character of the contact. Thus their consent is not made ineffective even if defendants did make fraudulent representations to induce that consent." *Id.* Plaintiffs attempt to distinguish *Tilousi* by arguing that the plaintiffs knew that their blood was to be used for research while the Plaintiffs here did not know their blood samples would be used for research. Opp. at 24:5-15:2. However, the reasoning of the *Tilousi* opinion does not support Plaintiffs' interpretation. Indeed, in holding that the *Tilousi* plaintiffs consented to the conduct of the defendants, the *Tilousi* court focused on the nature of the contact—a blood draw—and determined that since the plaintiffs had consented to the blood draw, the plaintiffs could not argue that their consent was ineffective based on the defendants' misrepresentations about the purpose of the blood draw. This is the same argument Plaintiffs assert here and the Court should similarly reject it.

**B.  Plaintiffs Have Failed To Allege That Walgreens Caused A Harmful Or Offensive Contact With Plaintiffs**

None of the named Plaintiffs have alleged which defendant administered their blood draws. Instead, Plaintiffs argue that their allegations that "Defendants" performed the blood draws are sufficient. Opp. at 19:1-20:5. Not so. Even if Walgreens, for example, administered a blood draw for some unnamed consumer, each named Plaintiff's claims against each defendant rises and falls on whether that plaintiff has alleged the prima facie elements of a battery claim against each defendant. Moreover, as explained *infra* in Section VII, Plaintiffs' backstop argument that "Theranos was acting as the agent

6

and co-venturer of Walgreens, [and] that Walgreens was acting as agent and co-venturer of Theranos," is baseless (as is apparent from Plaintiffs' failure to even respond to Walgreens' arguments on this point) and cannot save Plaintiffs' deficient battery claims.

### IV. PLAINTIFF A.R.'S HUMAN SUBJECTS ACT CLAIM (COUNT VXII) FAILS BECAUSE THE BLOOD TESTS ARE NOT "MEDICAL EXPERIMENTS" UNDER THE HUMAN SUBJECTS ACT

To state a claim under the Human Subjects Act, a plaintiff must allege that, without obtaining the requisite consent, (a) the treatment provided was not "reasonably related to maintaining or improving the health of the subject or otherwise directly benefiting the subject"; (b) the treatment involved "investigational use of a drug or device as provided in Sections 111590 and 111595 [of the California Health and Safety Code]"; or (c) defendant withheld medical treatment from a human subject "for any purpose other than maintenance or improvement" of the patient's health. *Perez v. Nidek Co.*, 711 F.3d 1109, 1114 (9th Cir. 2013) (quoting Cal. Health & Safety Code § 24174). Plaintiffs do not dispute that they have not met the second or third prong, but instead contend that the blood tests were not reasonably related to maintaining or improving the health of the patient or otherwise benefiting the patient. Opp. at 40:12-42:6. However, this argument is inconsistent with the allegations in Plaintiffs' own complaint. Specifically, Plaintiffs allege that the blood tests offered by Theranos "included tests concerning critical medical and health issues including, but not limited to cancer, heart disease, diabetes, kidney disease, auto-immune disorders, and viruses." Amended Complaint ¶ 30. Recognizing this fatal inconsistency, Plaintiffs argue that the allegation in paragraph 30 of their complaint should be "disregarded" because "it is contrary to Plaintiffs' allegations that these tests were, if anything, dangerous to the health of A.R. and the other subjects . . . ." Opp. at 43:8-17 (citing *Corzo v. Maricopa Cty. Cmty. Coll.* Dist., No. 15-2552, 2016 WL 3392264, at *1 (D. Ariz. June 14, 2016), and *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001)). However, Plaintiffs' authority merely establishes that a court may disregard a <u>defendant's</u> contentions which are contrary to the plaintiff's complaint—not that plaintiffs

7

may disavow the allegations of their own complaint. Indeed, *Corzo* expressly held that "the Court may still consider any internal discrepancies or factual conflicts it finds within the complaint that undermine its plausibility." No. CV-15-02552-PHX-ESW, 2016 WL 3392264, at *1.

Plaintiffs attempt to distinguish *Perez v. Nidek Co.*, 711 F.3d 1109 (9th Cir. 2013), on the grounds that "the plaintiffs [in *Perez*] did not even claim the defendant had 'any research goal whatsoever.'" Opp. at 44:11-13. However, *Perez* is squarely on point. Just as here, the *Perez* plaintiffs alleged that they were subjected to a procedure that was still in its development stage and that defendants did not inform them of the experimental nature of the procedure. *See Perez*, 711 F.3d at 1112. Furthermore, just as the plaintiffs in *Perez* conceded that the procedures were undertaken to attempt to correct farsightedness, Plaintiffs here admit that the blood tests offered by Theranos related to "critical medical and health issues including, but not limited to cancer, heart disease, diabetes, kidney disease, auto-immune disorders, and viruses." Amended Compliant ¶ 30; *see also Perez*, 711 F.3d at 1115. Based on the allegations in *Perez*, the court held that "[w]ithout doubt, the hyperopic surgeries at issue . . . were 'reasonably related' to 'improving [Perez's] health' and 'directly benefiting' him." *Perez*, 711 F.3d at 1115. Similarly here, the blood tests were reasonably related to various "critical medical and health issues." Therefore, Plaintiff A.R.'s Human Subjects Act Claim should be dismissed.

## V. PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION FOR AIDING AND ABETTING AGAINST WALGREENS (COUNT VIII)

In response to Walgreens' argument that Plaintiffs have not pled plausible facts establishing the knowledge element of their aiding and abetting claim, Plaintiffs argue that knowledge may be satisfied by "'general awareness' of the primary tortfeasor's misconduct." Opp. at 32:6-9 (citing *Dawson v. Withycombe*, 163 P.3d 1034, 1052 (Ariz. Ct. App. 2007)). While the *Dawson* court did state that the knowledge element of an aiding and abetting claim may be satisfied by showing a "general awareness" of the

primary tortfeasor's misconduct, it clarified that, to meet this standard, the plaintiff must allege that the defendant knew of the actual underlying tort. 163 P.3d at 1053. An allegation that:

> Turner and Withycombe were aware of Futech's financial condition and of Goett's dishonest character, and were aware that he was soliciting funds from Dawson, indicates poor judgment and risky business practices. It does not, however, rise to the level of scienter required for aiding and abetting, specifically that they were aware that Goett did or would in fact use fraudulent statements as a means of procuring the loan. To infer awareness of the fraudulent scheme from Dawson's characterization of what Turner and Withycombe knew and thought is to pile inference upon inference, which stretches the evidence presented beyond the bounds of circumstantial evidence.

*Id*. Plaintiffs here similarly attempt to pile inference upon inference and unreasonably stretch their sparse factual allegations regarding Walgreens' knowledge. Indeed, Plaintiffs' allegations suggest that Walgreens was unaware of Theranos's alleged unlawful conduct and lacked the means to become aware. *See* Amended Complaint ¶ 36. Nor are Plaintiffs' allegations that "red flags" put Walgreens "on notice" of Theranos's alleged wrongdoing sufficient to establish the knowledge element. It is well settled that "[k]nowledge of suspicious activity is not enough." *Stern v. Charles Schwab & Co.*, No. CV-09-1229-PHX-DGC, 2009 WL 3352408, at *8 (D. Ariz. Oct. 16, 2009). Moreover, Plaintiffs allege no facts, much less plausible ones, to support their assertion that Walgreens was deliberately ignorant. Opp. at 31:1-5. Therefore, Plaintiffs' aiding and abetting claim should be dismissed.

## VI. PLAINTIFFS' FAIL TO STATE A CAUSE OF ACTION FOR CIVIL CONSPIRACY (COUNT IX).

To state a claim for civil conspiracy, Plaintiffs must allege plausible facts establishing that Defendants entered into an agreement to accomplish an unlawful goal. In an attempt to do so, Plaintiffs reference the MSA. Opp. at 34:10-11. However, the MSA specifies only lawful objectives, including making blood tests "less invasive, faster and far more accessible, effective and actionable." Singh. Decl., at Ex. A, at 3.

1    Moreover, it expressly provides that "[e]ach party will comply with all applicable laws,
2    ordinances, rules, and regulations governing its duties or responsibilities under this
3    Agreement, including, but not limited to, all United States and foreign export control laws
4    or regulations." *Id.* at 18.  Thus, the MSA is not an agreement to accomplish an unlawful
5    goal as is necessary to state a civil conspiracy claim.

6    Furthermore, while Plaintiffs continue to assert that Walgreens was generally
7    aware of Theranos's alleged misconduct (Opp. at 34:16-23), Plaintiffs do not allege that
8    Walgreens "actually agreed" with Theranos to defraud consumers.  *See Hillis v.*
9    *Heineman*, No. CV-09-73-PHX-DGC, 2009 WL 2222709, at *4 (D. Ariz. July 23, 2009).
10   To successfully plead a civil conspiracy claim, Plaintiffs must allege that "[t]he conspiring
11   defendants [had] actual knowledge that a tort [was] planned and concur[ed] in the tortious
12   scheme with knowledge of its unlawful purpose." *Kidron v. Movie Acquisition Corp.*, 40
13   Cal. App. 4th 1571, 1582 (1995) (citing *Wyatt v. Union Mortg. Co.*, 24 Cal. 3d 773, 784-
14   86 (1979) ("a plaintiff is entitled to damages from those defendants who concurred in the
15   tortious scheme with knowledge of its unlawful purpose")); *People v. Austin*, 23 Cal. App.
16   4th 1596 (1994) ("without knowledge of the illegal purpose there is no basis for inferring
17   an agreement"), disapproved on other grounds by *People v. Palmer*, 24 Cal. 4th 856, 15
18   P.3d 234 (2001)).  Plaintiffs have not met this standard.

### VII. PLAINTIFFS HAVE NOT ALLEGED FACTS ESTABLISHING A JOINT VENTURE OR AGENCY RELATIONSHIP BETWEEN WALGREENS AND THERANOS

22   Plaintiffs' claim that there was a joint venture between Walgreens and Theranos is
23   predicated on the MSA between Theranos and Walgreens.  *See, e.g.*, Amended Compliant
24   ¶¶ 41, 42, 52, 407, 411; *see also* Opp. at 52:12-53:15.  However, as explained above, the
25   plain language of the MSA provides that "Theranos is an independent contractor and the
26   relationship of the parties under this Agreement will not be construed to create any other
27   relationship, as partners, joint venturers, principal and argent or otherwise."  Singh. Decl.,
28   at Ex. A, § 26(a).  Plaintiffs fail to even address this provision or its import in their

opposition brief.

Nor do Plaintiffs conduct any choice of law analysis or respond to Walgreens' argument that the choice of law provision in the MSA specifies Delaware law. Walgreens' Motion to Dismiss at 20:28-21:3. To create a joint venture under Delaware law, there must be an agreement among the parties to enter into a joint venture. *See In re Coffee Assocs., Inc.*, Civ. A. No. 12950, 1993 WL 512505, *5 (Del. Ch. Dec. 3, 1993). Under Delaware law, as discussed in Walgreens' motion, the parties' intention under the plain language of their agreement controls. *See Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 145 (Del. 2009). Courts look to "the four corners of the contract," and not extrinsic evidence, "to conclude whether the intent of the parties can be determined from its express language." *Id.*; *see also Norton v. K-Sea Transp. Partners L.P.*, 67 A.3d 354, 365 (Del. 2013) ("Because Section 7.9(a) is unambiguous, we will not rely on extrinsic evidence to aid our interpretation of the LPA."). Here, the plain and unambiguous language of § 26 of the MSA forecloses any argument that it created a joint venture or agency relationship.

Nor does Plaintiffs' reference to other provisions of the MSA specifying that the parties will develop a business plan and dedicated resources (*see* Opp. at 53:5-15) create any ambiguity, as construing these provisions to establish a joint venture would conflict with the more specific, plain language of § 26. *See Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1231 (Del. 1997) ("I conclude that Eagle's interpretation of the Agreement–an interpretation which does not give meaning to every provision of the contract and an interpretation which is internally inconsistent–is not the interpretation that would have been placed on the contract by a reasonable person in the position of the parties at the time of contracting."). Furthermore, the MSA contains a merger clause specifying that the MSA is the entire agreement between the parties and supersedes all prior agreements, and that no agreement varying the terms of the agreement shall be binding unless in a written document signed by the parties. *See* Singh Decl., at Ex. A, §§ 26(a)-(b). Accordingly, Plaintiffs' joint venture and agency theories fail as a matter of

11

law. *Satellite Fin. Planning Corp. v. First Nat. Bank of Wilmington*, 633 F. Supp. 386, 401 (D. Del. 1986) (ruling on a motion to dismiss that "[t]he Operating Agreement also created no partnership or joint venture between plaintiffs and defendants. . . . Here the Operating Agreement plainly describes Satellite Financial as an 'independent contractor'"); *see also McPeak v. Ariz.*, No. 2:15-CV-0027-HRH, 2015 WL 4647906, at *8 (D. Ariz. Aug. 5, 2015) (Holland, J.) (rejecting joint venture theory as implausible in ruling on a motion to dismiss).

Moreover, even if analyzed under Arizona law, Plaintiffs' argument fails. In *McPeak v. Ariz.*, a case Plaintiffs rely on, the court noted that Arizona courts have held that a prerequisite to a joint venture or enterprise is an equal right of control the conduct of the purported joint venture. *Id.* at *8. Plaintiffs allege no plausible facts establishing that Walgreens had an equal right to control over the purported joint venture. In fact, they repeatedly allege the opposite. For example, Plaintiffs allege that, under the parties' final agreement, Walgreens did not have the right to review Theranos' clinical data or financial records. Amended Complaint ¶ 52. Because Walgreens did not have an equal right of control over the purported joint venture, Plaintiffs' joint venture and agency theories fail as a matter of law.

## VIII. CONCLUSION

Walgreens respectfully requests that the Court dismiss Plaintiffs' Amended Consolidated Class Action Complaint in its entirety pursuant to Rule 12(b)(6).

12

DATED this 15th day of May, 2017.

By: */s/ David R. Singh*

David R. Singh (*Pro Hac Vice*)
Bambo Obaro (*Pro Hac Vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065

Diane Sullivan (*Pro Hac Vice*)
Adam S. Tolin (*Pro Hac Vice*)
WEIL, GOTSHAL & MANGES LLP
17 Hulfish St., Suite 201
Princeton, NJ 08542

Patricia Lee Refo
Brianna L. Long
SNELL & WILMER LLP
One Arizona Center
400 E. Van Buren St., Suite 1900
Phoenix, AZ  85004-2202

*Attorneys for Walgreens Boots Alliance, Inc. and Walgreen Arizona Drug Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of March, 2017, I electronically transmitted the foregoing document to the U.S. District Court Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing of the foregoing was electronically sent to the CM/ECF registrants in this matter.

*/s/ Amber Miller*