1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Lewis Roca Rothgerber Christie LLP**
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

**Dan W. Goldfine** (State Bar No. 018788)
Direct Dial: 602.262.5392
Email:  dgoldfine@lrrc.com
**Lindsey Herzog** (State Bar No. 032514)
Direct Dial: 602.262.5360
Direct Fax: 602.262.5747
Email:  lherzog@lrrc.com
Attorneys for Defendants
Walgreens Boots Alliance, Inc. and
Walgreen Arizona Drug Company

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

In re:

Arizona THERANOS, INC., Litigation,

No. 2:16-cv-2138-HRH
(Consolidated with)
No. 2:16-cv-2373-HRH
No. 2:16-cv-2660-HRH
No. 2:16-cv-2775-HRH
-and-
No. 2:16-cv-3599

**DEFENDANT WALGREENS'S MOTION TO DISMISS THE SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Plaintiffs attempt, for the third time, to allege claims against Defendants Walgreens Boots Alliance, Inc. and Walgreen Arizona Drug Company (collectively "Walgreens") based on its business relationship with Theranos.  In Plaintiffs' Second Amended Consolidated Class Action Complaint ("SAC") (Doc. 159), Plaintiffs mischaracterize Walgreens as a knowing participant in a scheme to sell unreliable blood tests and perform research on unwilling participants.  But what the allegations describe is Theranos's failed attempt to provide a revolutionary service.  Walgreens did not try to swindle or experiment upon the unsuspecting public.  Under FRCP 8, 9(b), 12(b)(1), and 12(b)(6), Walgreens moves to dismiss all claims asserted against it in the SAC.

I.     Count 1 (Arizona Consumer Fraud Act ("CFA")) should be dismissed because Plaintiffs: (1) assert moot claims; (2) have not pled these claims with the particularity required by Rule 9(b); (3) have not adequately alleged reliance; and (4) have not adequately alleged a duty to disclose.

II.    Count 2 (common law fraud) should be dismissed because Plaintiffs: (1) have not pled these claims with the particularity required by Rule 9(b); (2) have not adequately alleged knowledge; (3) have not adequately alleged reliance; and (4) have not adequately alleged Walgreens had a duty to disclose.

III.   Count 3 (battery) should be dismissed because Plaintiffs consented and have not adequately alleged Walgreens intended to obtain this consent by deception.

IV.    Count 4 (negligence) should be dismissed because Plaintiffs have not adequately alleged Walgreens breached a duty of care.

V.     Count 5 (negligent misrepresentation) should be dismissed because Plaintiffs: (1) have not adequately alleged Walgreens breached a duty to disclose; and (2) have not pled these claims with the particularity required by Rule 9(b).

VI.    Count 6 (breach of contract) should be dismissed because Plaintiffs: (1) have not alleged the existence of a contract with ascertainable terms and (2) have not adequately alleged that Walgreens breached the terms of an implied agreement.

VII.   Count 7 (unjust enrichment) should be dismissed because: (1) the Arizona Plaintiffs' claims are moot and (2) Plaintiffs have not adequately alleged the underlying claims supporting this claim.

VIII.  Count 8 (aiding and abetting fraud) should be dismissed because Plaintiffs have not adequately alleged Walgreens knew of any fraud.

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

1

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

IX.  Count 9 (violations of the Racketeer Influenced and Corrupt Organizations Act) should be dismissed because Plaintiffs: (1) have not adequately alleged a RICO enterprise; (2) have not adequately alleged that Walgreens conducted or participated in the conduct of the alleged enterprise's affairs; and (3) have not adequately alleged the requisite predicate acts.

X.  Count 10 (violations of California's Unfair Competition Law ("UCL")) should be dismissed because Plaintiff A.R.: (1) has not pled this claim with the particularity required by Rule 9(b); (2) has not adequately alleged reliance; and (3) has not adequately alleged a duty to disclose.

XI.  Count 11 (violations of California's False Advertising Law ("FAL")) should be dismissed because Plaintiff A.R.: (1) has not adequately alleged reliance; and (2) has not pled this claim with the particularity required by Rule 9(b).

XII.  Count 12 (violations of California's Consumer Legal Remedies Act ("CLRA")) should be dismissed because Plaintiff A.R.: (1) has not adequately alleged reliance; (2) has not pled this claim with the particularity required by Rule 9(b); and (3) has not adequately alleged a duty to disclose.

XIII.  Count 13 (deceit under California Civil Code §§ 1709-1710) should be dismissed because Plaintiff A.R.: (1) has not adequately alleged knowledge; (2) has not pled this claim with particularity; and (3) has not adequately alleged reliance.

XIV.  Count 14 (medical battery) should be dismissed because Plaintiffs consented and do not adequately allege Walgreens intended to obtain this consent by deception.

## I.  **ARGUMENT**

### A.  **The Arizona Plaintiffs' Claims For Unjust Enrichment And Under The CFA Are Barred Because They Have Obtained A Full Recovery**

The Court should dismiss the Arizona Plaintiffs' unjust enrichment and CFA claims as moot. The Arizona Attorney General ("AG") already obtained full restitution of at least $4,652,000 under the CFA on the Arizona Plaintiffs' behalf.

In April 2017, the Arizona Attorney General sued Theranos in Maricopa County Superior Court, alleging violations of the CFA. Consent Decree at 1:18-19.[1] The AG settled its claims. Under the consent decree, Theranos agreed to "provide full reimbursement to Arizona consumers who purchased Defendant's blood testing services."

---

[1] *See* Consent Decree, Ex. A to Defendants' Request for Judicial Notice (Doc. 165).

2

Consent Decree ¶ 5.  Theranos agreed to pay $4,652,000[2] in restitution for all its Arizona blood test consumers, and to pay $200,000 in civil penalties.  *Id*. at ¶¶ 2-3.  Theranos also agreed to pay $25,000 in attorney's fees.  *Id*. at ¶ 6.  Theranos paid in full and agreed not to operate any CLIA labs in Arizona for two years.  *Id.* at ¶¶ 7-8.

To sue, a plaintiff must allege a concrete injury-in-fact fairly traceable to the defendant's conduct and redressable by the court.  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103-04 (1998); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1543 (2016).  A plaintiff may have standing to pursue some claims or remedies but not others.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983).  Even if a plaintiff has standing at the start of litigation, claims will be rendered moot if remedied before conclusion of the lawsuit.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."); *see also Doucet v. Int'l Hair Inst. LLC*, No.: 17CV823-LAB, 2017 WL 5563987, at *9 n.7 (S.D. Cal. Nov. 20, 2017) ("Standing is measured as of the commencement of the suit, while mootness can arise during the suit.")

Plaintiffs lack standing when they have received a full refund for the alleged injury before the commencement of the suit.  *See Becker v. Skype Inc.*, No. 5:12-CV-06477, 2014 WL 556697, at *2 (N.D. Cal. Feb. 10, 2014) (collecting cases).  Plaintiffs' claims are likewise moot when they receive a full refund during pendency of the suit.  *See Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1145 (9th Cir. 2016) (noting that "a claim becomes moot once the plaintiff actually receives all of the relief" sought on a claim and that the "deposit of money in a court could be treated as the equivalent of an actual payment").

The Arizona Consumer Fraud Act authorizes the Court to "make such orders or judgments as may be necessary to:

. . .

---

[2] The parties agreed that the $4,652,000 was equal to the total monetary amount paid by Arizona consumers for Theranos blood testing, and that if the amount later turned out to be higher, Theranos would pay the difference.  *Id*. at ¶¶ 3-4.

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

3.  Require that any profits, gain, gross receipts or other **benefit obtained by means of any practice in this article declared to be unlawful** be disgorged and paid to the state for deposit in the consumer remediation subaccount of the consumer restitution and remediation revolving fund established by § 44-1531.02."

Ariz. Rev. Stat. Ann. § 44-1528.  Similarly, the elements of unjust enrichment are that: "(1) plaintiff conferred a benefit upon the defendant; (2) defendant's benefit is at plaintiff's expense; and (3) it would be unjust to allow defendant to keep the benefit."  *USLife Title Co. of Arizona v. Gutkin*, 732 P.2d 579, 584 (Ariz. Ct. App. 1986).

The Arizona Plaintiffs allege, as the basis for their CFA and unjust enrichment claims, fraudulent misrepresentations and omissions about the reliability of Theranos blood tests Plaintiffs purchased at Walgreens stores.  The AG sued Theranos for restitution, and Theranos unconditionally relinquished at least $4,652,000 to the AG as full restitution for the Arizona Plaintiffs.  Consent Decree ¶ 7.  Plaintiffs here sue for the same relief, invoking the same statute (CFA), for an injury already redressed.  The Arizona Plaintiffs will be reimbursed the full cost of their Theranos blood tests. Their unjust enrichment and CFA claims are therefore moot, and they should be dismissed.

**B.     All Of Plaintiffs' Claims Against Walgreens That Sound In Fraud Should Be Dismissed**

Plaintiffs bring numerous claims against Walgreens that sound in fraud: a claim for violation of the Arizona CFA (First Cause of Action), fraud (Second Cause of Action), battery and medical battery (Third and Fourteenth Causes of Action), negligent misrepresentation (Fifth Cause of Action), aiding and abetting fraud (Eighth Cause of Action), violation of the RICO statute (Ninth Cause of Action), and violations of California statutes sounding in fraud (Tenth, Eleventh, Twelfth, and Thirteenth Causes of Action).  The Court previously acknowledged that Plaintiffs must plead these causes of action with particularity as required by Rule 9(b).  Doc. 139 at 7, 9, 27, 41, 48; Doc. 157 at 10.  Each of these claims fail.

*i.     Plaintiffs' Claims Sounding In Fraud Must Be Dismissed To The Extent They Are Based On Affirmative Misrepresentations*

4

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

For each of their claims sounding in fraud, Plaintiffs conflate Walgreens with Theranos.  In the rare instances where Plaintiffs allege that Walgreens made purportedly false statements, the SAC fails to allege that Walgreens made the statements with knowledge of their falsity or that Plaintiffs relied on those statements.

The SAC continues to lump Walgreens and Theranos together, resulting in allegations that do not place Walgreens "in a position to defend its particular conduct."  *See* Order at 12; SAC ¶¶ 66, 70, 73, 75, 77, 80, 87, 97, 105, 107.  Plaintiffs allege "Theranos and Walgreens caused" certain billboards to be erected in Arizona.  SAC ¶ 87.  But these billboards bear only the Theranos name, *see id.*, and the SAC does not allege what involvement, if any, Walgreens had in their creation or display.  Plaintiffs also allege that "Theranos and Walgreens" distributed social media and television commercials.  SAC ¶ 97.  But the SAC alleges that the only cited commercial appeared only on the Theranos twitter page, *see id.*, and the SAC does not allege what involvement, if any, Walgreens had in its creation or dissemination.[3]

The SAC alleges that Walgreens made numerous *representations*, on websites, in press releases and in pamphlets available at Walgreens stores, regarding the size, affordability, and convenience of the tiny blood draws.  *See, e.g.,* SAC ¶¶ 88, 89, 100.  But, again, the SAC does not allege these representations were false or how they were false.  While there are group-pled allegations of misrepresentations heard or received by Plaintiffs, the SAC omits any allegation of a specific misrepresentation that Walgreens—as opposed to Theranos—made.[4]

---

[3] Plaintiffs' unsupported, broad allegation that "[t]his broad marketing campaign, including the content thereof, was jointly designed, approved, and implemented by Theranos and Walgreens, such that the representations made pursuant to this broad campaign are appropriately attributable to both companies" is insufficient.  SAC ¶ 80.  The Court explicitly stated that the SAC would need to make specific allegations against specific defendants.  Doc. 139 at 12.  Plaintiffs ignore the Court's direction regarding Walgreens.

[4] The sole alleged misrepresentations that Plaintiffs allege was made by Walgreens and potentially viewed by any Plaintiff was a statement from the Walgreens website that, "Now, for the first time, [Theranos's] high-complexity CLIA-certified laboratory can perform your tests quickly and accurately using tiny samples."  SAC ¶ 93.  To the extent this qualifies as a "misrepresentation," it was clearly information provided by Theranos, not Walgreens.

### a.   *Plaintiffs have not alleged that Walgreens knowingly made any affirmative misrepresentations*

Plaintiffs' claims for common law fraud and deceit under California law fail because Plaintiffs do not plausibly allege that Walgreens knew the alleged misrepresentations were false.  *See Arei II Cases*, 157 Cal. Rptr. 3d 368, 382 (Ct. App. 2013) (listing "knowledge of falsity" as an element of fraud); *Diaz v. Fed. Express Corp.*, 373 F. Supp. 2d 1034, 1067 (C.D. Cal. 2005) (noting that elements of common law fraud apply to a claim for deceit under California law); *Peery v. Hansen*, 585 P.2d 574, 577 (Ariz. Ct. App. 1978) ("[K]nowledge of [a representation's] falsity or ignorance of its truth" is an element of fraud.).

Plaintiffs allege that Theranos misled Walgreens and that Walgreens believed Theranos to the tune of $140,000,000.  *See* SAC ¶ 49.  As Plaintiffs allege, Theranos led Walgreens executives to believe they were seeing actual Edison data, and that data was "actually really good."  SAC   ¶ 62, Ex. 7.  But what is missing are any allegations that transformed Walgreens's state of knowledge from that of being deceived to that of having actual knowledge that Theranos was deceiving Plaintiffs.  There is nothing in the SAC in this regard.

Scienter by association is not sufficient.  The SAC indicates that Theranos was a secretive technology company, and that Walgreens reasonably believed the Theranos blood tests were reliable.  Plaintiffs allege that Theranos agreed to provide an Edison device to John Hopkins scientists to test on Walgreens's behalf, but that they later only produced a prototype with results that could not be compared to other tests.  SAC ¶ 57.  They also allege that Walgreens sent a delegation to a meeting at Theranos HQ, "the purpose of which was to gain a firsthand view of the Theranos business and its capabilities," but that Theranos did not grant Walgreens's consulting lab experts access to the lab or the Edison technology.  SAC ¶¶ 58-59.  Plaintiffs also allege Walgreens sent executives to Theranos to review quality-control data, and Theranos did not allow them into the lab, but showed them data they were led to believe was from the Edison device.  SAC ¶ 62.

Lewis Roca
ROTHGERBER CHRISTIE

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Theranos's secretive behavior as alleged does not lead to an inference that Walgreens actually knew, or even suspected, that Theranos's representations regarding its blood testing results were not precisely as Walgreens thought them to be.  Some of the very articles cited by Plaintiffs recognize that secrecy is a hallmark of some of the most successful tech startups.[5]  Defendant Holmes justified Theranos's secrecy by saying it was "trying to protect itself from competitors."[6]  SAC ¶ 40 n.6.  That a tech startup with proprietary technology kept its technology secret cannot plausibly have put Walgreens on notice that the test results were less accurate than Theranos represented.  The SAC also alleges that in April 2015, the Arizona Department of Health Services "identified multiple deficiencies at Theranos's Scottsdale laboratory."  SAC ¶ 136.  But the cited article, published over six months later in November 2015, states that "Theranos officials said the inspection findings were routine and all issues were addressed or corrected within days or weeks of the April inspection."  *Id.*  Plaintiffs do not allege that Walgreens knew anything to the contrary.

Plaintiffs also allege that a whistleblower notified the New York state public-health lab in March of 2014 that Theranos may have manipulated proficiency testing, but Plaintiffs allege none of this information was even available to Walgreens until the Wall Street Journal ("WSJ") published an article about it on October 16, 2015.  SAC ¶ 135, Ex. 3.  Given the 18-month time lag from the purported whistleblower complaint to New York health authorities, as reported in the WSJ, and ***that New York health authorities took no action over that period***, the October 15, 2015 WSJ article hardly permits an inference that Walgreens had actual knowledge that the representations it was allegedly making on its website were false.

---

[5] For instance, the SAC cited to a 2014 New Yorker article, wherein a former associate director at the Federal Drug Administration said he believed that Theranos should publish its data, but acknowledged that Theranos was "trying to apply the Steve Jobs way of keeping everything secret until the iPhone was released."  *See* SAC ¶ 40 (citing article).

[6] *Id.*

7

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

At the times Plaintiffs B.B. (Oct. 3, 2014), R.C. (Feb. 2015) and S.L. (Feb. 19, 2015) allege they purchased Theranos blood tests, they only allege Walgreens knew that Theranos was keeping its Edison device and lab secret.  SAC ¶¶ 224, 302, 362.  At the times D.L. (June 1, 2015), A.R. (June 19, 2015) and S.J. (July 2015) allege they purchased Theranos blood tests, the only additional fact Plaintiffs allege Walgreens knew was that AZDHS found deficiencies in the Scottsdale lab, which, according to the allegations of the SAC, Theranos had promptly corrected before Walgreens learned of the AZDHS report.  SAC ¶¶ 210, 261, 340.

The SAC also alleges that on November 10, 2015, the WSJ published an article stating the Safeway-Theranos deal fizzled.  SAC ¶ 63, Ex. 8.  The article discusses Safeway executives' concerns about missed deadlines, and about some inaccurate blood tests. *Id*.  But the article notes that Defendant Holmes reassured Safeway's chief executive and that he "continued to support the partnership with Theranos."  SAC Ex. 8 at 5.

All named Plaintiffs purchased their tests before January 25, 2016.[7]  Plaintiffs do not allege Walgreens knew Theranos's blood tests were unreliable before then.  Per Plaintiffs' own allegations, the last moment any underlying fraud could be committed was when Plaintiffs received the blood draws.  Allegations of events on or after January 25, 2016 are irrelevant to allegations that Walgreens possessed the requisite actual knowledge to commit fraud, because Plaintiffs had already made their purchases.  At the time of the alleged false statements, the SAC fails to establish that Walgreens possessed actual knowledge that any such statement or omission was false or misleading.

b.  *Plaintiffs have not alleged that they relied on any alleged misrepresentation by Walgreens*

Plaintiffs must allege that they relied on Walgreens's allegedly false statements or misleading omissions—not Walgreens's general marketing and not Theranos's alleged

---

[7] CMS sent its next letter to Theranos on January 25.  SAC ¶ 140.  Plaintiffs allege that B.P. received venipunctures "starting in or around early 2016," but do not plead the date with the particularity required to establish the underlying tort of fraud.  SAC  ¶ 243; *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

8

false statements or misleading omissions.  *Peery v. Hansen*, 585 P.2d 574, 577 (Ariz. Ct. App. 1978) (listing elements of fraud); *Arei II Cases*, 157 Cal. Rptr. 3d 368, 382 (Ct. App. 2013) (listing elements of fraud); *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 825-26 (D. Ariz. 2016) (CFA claim requires actual reliance); *Yastrab v. Apple Inc*., 173 F. Supp. 3d 972, 977 (N.D. Cal. 2016) (CLRA claim requires reliance); *Smith v. LG El-ecs. U.S.A., Inc.*, No. C13–4361-PJH, 2014 WL 989742, at *10 (N.D. Cal. Mar. 11, 2014) (FAL claim requires reliance) (citation omitted); *Diaz.*, 373 F. Supp. 2d at 1067 (common law fraud elements apply to California deceit statute).  The SAC does not so allege.

No Plaintiff has alleged that he or she relied on any statements Walgreens made to the press in deciding to use Theranos's blood testing services.  Plaintiffs allege that they "expected tests conducted at Walgreens to be trustworthy and reliable."  SAC ¶¶ 211, 225, 239, 262, 277, 291, 303, 324, 340, 362.  The allegations related to consumer expec-tations do not support a claim for fraud, fraud by omission or negligent misrepresenta-tion.  *See Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267, 1286-89 (C.D. Cal. 2016) (refusing to apply "consumer expectations" test because the crux of fraud is a defendant's deceitful conduct).  Nor do Plaintiffs' assertions regarding their expectations impose an additional duty of care on Walgreens.  Duty derives from the relation between individu-als, not from particular conduct, *Lasley v. Shrake's Country Club Pharmacy, Inc*., 880 P.2d 1129, 1132 (Ariz. Ct. App. 1994), and there is no reason to expand Walgreens's du-ty of care simply because Walgreens has a commercial reputation for excellence.

Plaintiffs A.R., B.P., and D.L., allege that they viewed leaflets, signage, or other unidentified "materials" in a Walgreens store prior to their blood draws.  SAC ¶¶ 211, 239, 262.  Plaintiffs M.P., R.C., R.G., and S.J. allege that they viewed "marketing . . . at the Walgreens store."  SAC ¶¶ 291, 303, 340.  These vague allegations about unidentified leaflets, signage and general marketing materials do not meet the particularity require-ments of Rule 9(b).  *See, e.g., Opperman v. Path*, 87 F. Supp. 3d 1018, 1046-47 (N.D. Cal. 2014).  These allegations do not specify the contents of the alleged materials, and

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

while some materials are referenced by the SAC, Plaintiffs A.R., B.P., and D.L. do not allege that they reviewed similar materials.

As this Court has previously acknowledged, "where a fraud claim is based upon . . . an advertising campaign that is alleged to be misleading . . . it is sufficient for the plaintiff to provide a representative selection of the advertisements or other statements to indicate the language upon which the implied misrepresentations are based." Doc. 139 at 14-15 (quoting *Morgan v. AT&T Wireless Servs., Inc.*, 99 Cal. Rptr. 3d 768, 790 (Ct. App. 2009)).   But the "representative selection" of leaflets allegedly available in Walgreens stores simply state that the blood tests Theranos administered are "tiny."  *See* SAC ¶¶ 89, 91.  These leaflets contain no representations regarding the reliability or accuracy of the blood tests.[8]  The representative sample of "signage" in the SAC does not even contain any description of the blood tests, but instead simply reads "drop off + pick up Theranos lab testing."  SAC ¶ 90.  None of the Walgreens marketing materials Plaintiffs A.R., B.P., D.L., M.P., R.C., R.G. or S.J. allege they viewed constitute representations regarding the reliability or accuracy of the blood testing.[9]

Plaintiffs L.M. and S.L. do not allege they viewed any Walgreens marketing materials.  SAC ¶¶ 277, 363.  Plaintiffs' assertion that misrepresentations allegedly made by Theranos can be attributed to Walgreens is unfounded.  In the FAC, Plaintiffs attempted to allege Theranos and Walgreens had a joint venture or agency relationship, and thus each should be liable for the conduct of the other.  FAC ¶107.  The Court rejected this argument, and dismissed with prejudice any claims based on a joint venture or agency theory of liability.  Doc. 139 at 56.  Plaintiffs removed the reference to joint venture or agency relationship, but still assert Walgreens should be liable for Theranos's statements, without presenting *any* theory of liability.  SAC ¶80.  This is an impermissible attempt to

---

[8] Additionally, as to those Plaintiffs who did not receive tiny blood draws (including the sole California plaintiff, A.R.), these representations are irrelevant and Plaintiffs cannot plausibly allege that they relied on them.

[9] Furthermore, even if they were representations, it is unclear how Plaintiffs could have *relied* on these representations when they had already made the decision to have their blood tested by Theranos before viewing the materials.

re-allege claims already dismissed with prejudice.  In sum, all but one of the Plaintiffs[10] fail to allege reliance on a statement or misleading omission Walgreens made.

       *c.*    *Plaintiff A.R. has not adequately alleged his claims based on California consumer protection statutes*

Because Plaintiff A.R. is the only named plaintiff with standing to assert claims under California consumer protection statutes,[11] his claims warrant a brief additional fo-cus.[12]  Plaintiff A.R. states that his claims under California Consumer Protection Statutes are based on "affirmative misrepresentations" made by Theranos and Walgreens.   See SAC ¶¶ 536, 550, 561, 577.  However, Plaintiff A.R. provides no facts demonstrating that he reviewed or relied upon affirmative misrepresentations made by Walgreens. The narrative section of the SAC states:

> In choosing to have his blood tested by Theranos, [Plaintiff A.R.] relied on marketing by Theranos and Walgreens regarding the reliability of their services, including, he specifically recalls, leaflets that he had seen in the Walgreens store before having his blood drawn.

SAC ¶ 211.  The SAC does not specify the contents, timing or medium of the alleged marketing on which Plaintiff A.R. relied.  Plaintiff A.R. states he "specifically recalls" reviewing a leaflet, but he does not specify the leaflet's contents.  The SAC refers to "leaflets" in one other place, see SAC ¶ 89, but does not allege that Plaintiff A.R. reviewed a similar leaflet.[13]  Even had Plaintiff A.R. reviewed a similar leaflet, he could

---

[10] Only Plaintiff B.B. alleges she viewed the Walgreens website or the joint press releases published by Theranos.  SAC ¶ 225.  As explained in Section B(i)(a), Plaintiff B.B. had her blood drawn in October of 2014.  Her fraud claim can only survive if she relied upon a representation Walgreens knew to be false.  The SAC does not allege facts suggesting Walgreens knew Theranos' test results were unreliable in October of 2014.  So Plaintiff B.B.'s claims sounding in fraud should be dismissed as well.

[11] *See* Doc. 139 at 45 ("The Arizona plaintiffs do not have standing to bring claims under California's consumer protection statutes.").

[12] In the tenth through fourteenth causes of action, Plaintiff A.R., on behalf of himself and the California subclass, seeks relief pursuant to four California consumer protection statutes: California's UCL, California's FAL, California's CLRA and for deceit in violation of California Civil Code §§ 1709-1710.  Plaintiff A.R. claims that Walgreens is liable for making affirmative misrepresentations and concealing material information from consumers. See, e.g., SAC ¶¶ 536, 554, 567-68, 580.

[13] Because a claim under the FAL must be based upon an affirmative misrepresentation, *see Hodsdon*, 162 F. Supp. 3d at 1023, the eleventh cause of action should be dismissed.

Lewis Roca
ROTHGERBER CHRISTIE

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

not have relied upon any "misrepresentation" contained in this leaflet because the leaflet advertises the size of the blood draws, not their reliability.  Plaintiff A.R. has not adequately plead reliance, a required element under the FAL, CLRA and to plead statutory deceit.  *See Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 977 (N.D. Cal. 2016) (citation omitted) ("misrepresentation, reliance, and damages" are the elements of a CLRA claim); *Smith v. LG Elecs. U.S.A., Inc.*, 2014 WL 989742, at *10 (N.D. Cal. Mar. 11, 2014) (noting that reliance is an element under the FAL); *Diaz v. Fed. Express Corp.*, 373 F. Supp. 2d 1034, 1067 (C.D. Cal. 2005) (discussing elements of statutory deceit).

### ii. Plaintiffs' Fraud By Omission Claims Also Fail Because Walgreens Had No Duty To Disclose

For Plaintiffs' fraud, CFA, and California statutory claims,[14] an omission by Walgreens can only constitute fraud if Walgreens had a duty to disclose.  *Loomis v. U.S. Bank Home Mortg.*, 912 F. Supp. 2d 848, 856 (D. Ariz. 2012) (explaining that a duty to disclose is necessary to plead a fraud by omission claim under common law fraud or the CFA); *Andren v. Alere, Inc.*, 207 F. Supp. 3d 1133, 1141 (S.D. Cal. 2016) (explaining that a duty to disclose is necessary to plead a fraud by omission claim); *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) (refusing to find a violation of the UCL, CLRA or the California fraud statute because plaintiff demonstrated no duty to disclose).  Walgreens had no such duty.

Plaintiffs vaguely allege that "Walgreens, Theranos, Holmes, and Balwani" owed them a duty to disclose, but have not alleged any basis for Walgreens's duty.  SAC ¶ 400.  Under California law, the duty to disclose can arise: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact."  *Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d

---

[14] Plaintiffs' claims under the FAL (Eleventh Cause of Action) cannot be based on an omission.  *See Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1026 (N.D. Cal. 2016).

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

1267, 1284 (C.D. Cal. 2016). Arizona follows the Restatement of Torts, which explains, in relevant part that a defendant must disclose "(b) matters known to him *that he knows* to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and (c) subsequently acquired information *that he knows* will make untrue or misleading a previous representation." Restatement (Second) of Torts § 551 (1977) (emphasis added); *see Loomis*, 912 F. Supp. 2d at 857.

Walgreens had no fiduciary relationship with Plaintiffs. Crucial to the remaining circumstances under which a duty to disclose could arise is *exclusive knowledge* of the material information. *See, e.g., Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007). Plaintiffs list the information all Defendants supposedly concealed in ¶ 398 of the SAC. But the SAC does not allege Walgreens *actually knew* this information, or when Walgreens was supposed to have acquired it. The SAC alleges facts undermining certain items on this list. Plaintiffs allege that Walgreens was led to believe it had been provided with data from an Edison device and that Walgreens's consulting lab experts were denied access to Theranos's lab area and Edison technology. *See* SAC ¶¶ 59, 62; Section B(i)(a).

Plaintiffs' "red flags" tactic fails as well. Walgreens knows of no authority supporting an obligation to disclose "red flags" under the Arizona or California statutes or case law. *See, e.g., Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61, 71-72 (S.D.N.Y. 2010), *aff'd sub nom. Saltz v. First Frontier, L.P.*, 485 F. App'x 461 (2d Cir. 2012) (noting that courts routinely reject claims based on publicly available "red flags" and omitting any discussion of a duty to disclose) (citation omitted).

### iii.    *Plaintiffs' UCL Claim Fails For Lack Of Particularity*

Plaintiff A.R. also erroneously alleges that Walgreens violated the "unlawful" and "unfair" prongs of the UCL. "An act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 839 (Ct. App. 2006).

Plaintiff A.R. must plead his unfairness claim with particularity because it relates to a uniform course of fraudulent conduct.  *Andren*, 207 F. Supp. 3d at 1140. Plaintiff A.R. does not allege what conduct by Walgreens, as opposed to conduct by "defendants" constitutes an unfair practice.  *See* Doc. 139 at 12 (noting that general references to "defendants" are inadequate under Rule 9(b)).  Failing to plead with particularity is fatal and Plaintiff's UCL claim should be dismissed. [15]

### iv.   Plaintiffs' Aiding And Abetting Claim Must Be Dismissed For Failure To Plead The Requisite Knowledge

The Court should dismiss Plaintiffs' aiding and abetting fraud claims because Plaintiffs do ***not*** plausibly allege that Walgreens ***actually*** knew Theranos, Holmes or Balwani were committing fraud.  Under Arizona and California law, a plaintiff must plausibly allege that the defendant knew "that the primary tortfeasor's conduct constitute[d] a breach of duty." *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 38 P.3d 12, 23 (Ariz. 2002); *Hunter v. Citibank, N.A.*, No. C09-02079, 2010 WL 2509933, at *18 (N.D. Cal. Feb. 3, 2010).  This standard is high, and Plaintiffs "must [] prove that the Defendant had ***actual knowledge*** that a fraud either 'had been' or 'would in fact' be committed." *Colson v. Maghami*, No. CV 08-2150, 2010 WL 2744682, at *8 (D. Ariz. 2010) (emphasis added) (quoting *Dawson v. Withycombe*, 163 P.3d 1034, 1053 (Ariz. Ct. App. 2007)); *see also Casey v. U.S. Bank Nat'l Ass'n*, 26 Cal. Rptr. 3d 401, 407 (Cal. Ct. App. 2005) ("A defendant can be held liable as a cotortfeasor… only if he or she knew that a tort had been, or was to be, committed, and acted with the intent of facilitating the commission of that tort.") (internal quotations and italics omitted).  Allegations of negligence or that Walgreens should have done more do not satisfy the knowledge requirement. *See Dawson*, 163 P.3d at 1052; *see also Aetna Cas. and Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 536 (6th Cir. 2006) ("[E]vidence establishing negligence, i.e., that a [defendant] should have known, will not

---

[15] With respect to the unlawful prong, Plaintiff has not stated a claim for any unlawful conduct.  Walgreens directs the Court to the sections of this motion to dismiss addressing Plaintiffs other claims.  *See* Sections B, C, D, E, and G.

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

suffice.") (internal quotations omitted).  "[A]n inference of knowledge will not be made lightly."  *Federico v. Maric*, 226 P.3d 403, 405 (Ariz. Ct. App. 2010).

A defendant does not have ***actual knowledge*** merely because it has notice of suspicious activity.  *Stern v. Charles Schwab & Co., Inc.*, No. CV 09-1229, 2009 WL 3352408, at *7 (D. Ariz. Oct. 16, 2009) ("Arizona cases . . . make clear . . . that mere knowledge of suspicious activity is not enough."); *accord Casey*, 26 Cal. Rptr. 3d at 407-09.  In *Stern*, this District held that a bank did not have ***actual knowledge*** of its customers' Ponzi scheme, even assuming it knew the customers: (1) had a meager financial history; (2) were unemployed; (3) deposited over $10 million from "random" third parties "without any justifiable purpose"; (4) transferred smaller dollar amounts back to the accounts of those third parties "without any justifiable purpose"; (5) spent some of the money on luxuries; and (6) sent money to their children.  *Stern v. Charles Schwab & Co*., No. CV-09-1229, 2010 WL 1250732, at *10 (D. Ariz. Mar. 24, 2010).  The court noted the complaint alleged the bank "knew of red flags," but held this was not enough to infer knowledge for aiding and abetting purposes.  *Id.* at *11.

As detailed in Section B(i)(a), Plaintiffs have, at best, alleged Walgreens knew Theranos was secretive.  But Walgreens may only be liable for aiding and abetting if it knew of Theranos's alleged fraud when it provided substantial assistance.  *Arizona Laborers*, 38 P.3d at 23; *Howard v. Sup. Ct.*, 3 Cal. Rptr. 2d 575 (Cal. Ct. App. 1992).

## C. Plaintiffs' RICO Claims Against Walgreens Should Be Dismissed

In the SAC, Plaintiffs try to transform Walgreens's legitimate business relationship with Theranos into the conduct of a RICO enterprise.  This attempt fails.  The SAC does not plausibly allege the existence of a RICO enterprise or that Walgreens "conducted or participated in the conduct of" any RICO enterprise.  *See* 18 U.S.C. §1962(c).

### i. Plaintiffs Have Not Alleged A RICO Enterprise

Plaintiffs' complaint purports to allege an association-in-fact enterprise.  SAC ¶ 521.  "To show the existence of [a RICO enterprise], plaintiffs must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

necessary to accomplish the purpose." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (citing *Boyle v. United States*, 556 U.S. 938, 946 (2009)).  Plaintiffs must allege that the "common purpose" was to engage in illegal conduct.  *See Capitol Indem. Corp. v. Canon*, 29 F.3d 630 (9th Cir. 1994); *United States v. Hewes*, 729 F.2d 1302, 1311 (11th Cir. 1984) (explaining that Plaintiffs must allege a "common purpose of [conducting] illegal activity"); *D.M. Robinson Chiropractic, S.C. v. Encompass Ins. Co. of Am.*, No. 10 C 8159, 2013 WL 1286696, at *11 (N.D. Ill. Mar. 28, 2013) (explaining that plaintiffs must "lay out the common purposes of a criminal enterprise.").

Other than a conclusory and general allegation, SAC ¶ 525, Plaintiffs' allegations as to Walgreens simply describe Walgreens's attempt to fulfill its obligations under the Master Services Agreement (MSA), [16] which described a legitimate business deal with Theranos.

The SAC alleges the purposes pursued by Walgreens via the "Program Objectives" of the MSA.  These purposes were:

a.  Make testing less invasive, faster and far more accessible, effective, and actionable by introducing a more cost-effective, blood testing service at Walgreens stores and Walgreens's other clinical operations nationwide . . .

b.  Empower Walgreens to play a more active role in patient health management and well-being…

c.  Generate health care cost savings by reducing direct out-of-pocket costs of lab tests and visits.

d.  Early intervention and reduced hospitalization through early detection of the onset of disease.

e.  Introduce a new revenue stream for Walgreens through this disruptive technology and associate services.

---

[16] The Court can consider the full terms of the MSA in ruling on Walgreens's 12(b)(6) motion pursuant to the incorporation by reference doctrine.  "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."  *PageMasters, Inc. v. Autodesk, Inc.*, No. CV-08-00553-PHX-RCB, 2009 WL 825810, at *1 (D. Ariz. Mar. 30, 2009) (citing *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).  Plaintiffs refer extensively to the nature of the contractual relationship between Theranos and Walgreens and discuss specific terms of the contract, but do not attach the MSA to the SAC.  *See, e.g.*, SAC ¶¶ 51, 181.

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

16

MSA Schedule A ¶ 2.  All of Walgreens's alleged actions followed their continued pursuit of these Program Objectives.  As this Court ruled, Plaintiffs have "conceded that the express agreement between Theranos and Walgreens is the [MSA], which only defines a lawful commercial relationship between Theranos and Walgreens.  It would be ***implausible***, in light of the MSA, for there to be an express agreement… for an unlawful purpose."  Doc. 139 at 39 (emphasis added).  Similarly, the Court ruled, "It is ***implausible*** that Walgreens and Theranos would enter into an express agreement for a legitimate purpose and then defendants would reach a tacit understanding to commit fraud."  *Id.* at 40 (emphasis added).

Both Theranos and Walgreens sought to make money through the sale of blood tests as described in the MSA.  But that they were pursuing financial profits does not transform their legitimate business agreement into a RICO enterprise.  *D.M. Robinson*, 2013 WL 1286696, at *9 ("[T]he shared goal of financial profit, by each party conducting its own business, does not qualify as a 'common purpose' under RICO.").  If a plaintiff could plead a RICO enterprise based on any commercial relationship involving the pursuit of financial gain, the "enterprise" element of a RICO claim would be meaningless, a result contrary to the rules enunciated in *Boyle* and *Eclectic Properties*.  *Boyle*, 556 U.S. at 946-47; *Eclectic Props.*, 751 F.3d at 997.

As this Court recently explained, "[w]hen considering plausibility, courts must also consider an 'obvious alternative explanation' for defendant's behavior."  Doc. 157 (quoting *Eclectic Props.*, 751 F.3d at 996).  Because the SAC posits "two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation."  *Id.*  "Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible."  *Id.*  That more is missing.

### ii. Plaintiffs Have Not Alleged That Walgreens Conducted Or Participated In The Conduct Of The Alleged Enterprise's Affairs

Even had Plaintiffs alleged the existence of a separate RICO enterprise, they have not alleged that Walgreens "conduct[ed] or participate[d] . . . in the conduct of such enterprise's affairs" rather than simply conducting its "own affairs" as a company operating drug stores and pharmacies.  18 U.S.C. §1962(c); *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).

The Supreme Court addressed the *repeated* use of the word "conduct" in §1962(c) in *Reves* and concluded that "as both a noun and verb in this subsection 'conduct' requires an element of direction."  *Reves*, 507 U.S. at 178; *see also Walter v. Drayson*, 538 F.3d 1244, 1247 (9th Cir. 2008) ("*Reves* is the controlling authority on the point of what constitutes 'conduct.'").  The Court explained that § 1962(c) liability "depends on a showing that the defendants conducted or participated in the '*enterprise's* affairs,' not just their *own* affairs."  *Reves*, 507 U.S. at 185 (emphasis in original).  This is commonly referred to as the "operation and management" test.  *See, e.g., Walter*, 538 F.3d at 1246.

Mere involvement in an alleged enterprise cannot result in liability under § 1962(c).  *Compare Walter*, 538 F.3d at 1249 (dismissing complaint where "the pleadings show that [Defendant] and her firm were part of the enterprise but fail to show that she or her firm had some part in directing it's affairs") (internal quotation marks omitted), *with Marceau v. Int'l Bhd. Of Elec. Workers*, 618 F. Supp. 2d 1127, 1170 (D. Ariz. 2009) (explaining that corporate defendant which "owned and ran" operation and was "directly involved" in alleged wrongdoing had conducted the enterprise's affairs).

The Seventh Circuit applied the operation and management test to a RICO claim involving Golden Rule Insurance Company and the Federation of American Consumers (the "Federation") and Travelers, a nonprofit organization that provided members with discounts on insurance.  *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 394 (7th Cir. 2009).  Crichton's RICO claim against Golden Rule alleged the Federation as the RICO enterprise and that Golden Rule had conducted and participated in the conduct of the

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

Federation's affairs.  *Id.* at 399.  Crichton alleged Golden Rule helped the Federation draft new bylaws, assisted in setting dues, and controlled marketing information disseminated by the Federation about Golden Rule's products.  *Id.*  The Seventh Circuit held that Crichton had not alleged Golden Rule's conduct or participation in the alleged enterprise, explaining, "[a]llegations that a defendant had a business relationship with the putative RICO enterprise or that a defendant performed services for that enterprise do not suffice." *Id.*  The Seventh Circuit also rejected Crichton's claim of an association-in-fact enterprise, finding that Crichton had "done no more than describe the ordinary operation of a garden-variety marketing arrangement."  *Id.* at 400.  *See also Nestlé Purina Petcare Co. v. Blue Buffalo Co. Ltd.*, 181 F. Supp. 3d 618, 628 (E.D. Mo. 2016) (dismissing RICO claim where the complaint "merely allege[d] the existence of a commercial partnership that would benefit each defendant's own self-interests."); *Missaghi v. Apple Inc.*, No. CV1302003GAFAJWX, 2013 WL 12200086, at *7 (C.D. Cal. Nov. 1, 2013) (dismissing RICO claim where complaint alleged "only that the defendants had a commercial relationship, not that they had joined together to create a distinct entity for purposes of committing illegal acts") (internal citation and quotation marks omitted).

Here, Plaintiffs' SAC contains no allegations inconsistent with Walgreens's pursuit of profit *for itself*, and not for any alleged enterprise.  Like the plaintiff in *Crichton*, Plaintiffs have alleged nothing more than a business relationship between Walgreens and Theranos.  The allegations of the SAC clarify to the extent there was any RICO enterprise, Walgreens was explicitly and intentionally excluded from that enterprise.  *See, e.g.,* SAC ¶ 59 (Walgreens denied access to Theranos technology); SAC ¶ 62 (same).

### iii.    *Plaintiffs Have Not Adequately Alleged Mail Or Wire Fraud*

According to Plaintiffs, the "enterprise's affairs" involve the commission of mail and wire fraud.  SAC ¶ 526.  Plaintiffs do not adequately allege mail fraud.[17]  Plaintiffs

---

[17] Plaintiffs still have not alleged mail fraud with particularity.  Plaintiffs previously argued that they alleged mail fraud because they alleged blood samples were sent through the mail.  The Court held the allegations said nothing about sending blood through the mail, but said that the blood samples were "couriered," and the allegations did not "iden-

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

1   also have not adequately alleged a wire fraud claim against Walgreens because they do

2   not allege facts indicating Walgreens acted with "specific intent to defraud." *Eclectic*

3   *Props.*, 751 F.3d at 997; *see also* Section B. The wire fraud allegations as to Walgreens

4   are limited to Walgreens's promotion of Theranos's product. The Ninth Circuit has

5   found participation in advertising an insufficient basis upon which to find RICO liability

6   under § 1962(c). *Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776, 780 (9th Cir. 1996).

7       Walgreens was not involved in the "conduct" of any alleged enterprise's fraudu-

8   lent affairs, and it did not *direct* the alleged RICO enterprise's affairs. *See Reves*, 507

9   U.S. at 178. The allegations of the SAC indicate only that Walgreens acted to conduct its

10  own affairs and to further the legitimate purposes fully described in the MSA. Plaintiffs

11  have again failed to provide the "something more" required to make their claims plausi-

12  ble given this "obvious alternative explanation." *Eclectic Props.*, 751 F.3d at 996.

### D.    The SAC Fails To State A Claim For Relief For Negligent Misrepresentation Against Defendant Walgreens

15      Plaintiffs allege that Walgreens and Theranos made false statements of fact and

16  failed to exercise "reasonable diligence" prior to making the statements. SAC ¶¶ 471-

17  484. Plaintiffs' negligent misrepresentation claims should be dismissed for failure to al-

18  lege that Defendants owed Plaintiffs a duty of care in making their misrepresentations.

19      A "claim of negligent misrepresentation fails absent an assertion of facts to show

20  that the party making the representation owed a duty to a party who justifiably relied on

21  the statement." *Lemad Corp. v. Miravista Holdings, L.L.C.*, No. 1 CA–CV 12–0619,

22  2014 WL 4649593, at *4 (Ariz. Ct. App. Sept. 18, 2014) (citing *Van Buren v. Pima Cmty.*

23  *Coll. Dist. Bd.*, 546 P.2d 821, 823 (1976)); *Eddy v. Sharp,* 245 Cal. Rptr. 211, 213 (Ct.

24  App. 1988) ("[R]esponsibility for negligent misrepresentation rests upon the existence of

25  tify when any particular blood samples were sent nor d[id] it delineate which defendant

26  was responsible for sending any particular blood sample through the mail." Doc. 139 at
    42. Plaintiffs replaced the word "couriered" with "shipped." SAC ¶ 131. The allegation

27  still fails to "identify when… samples were sent" and "delineate which defendant was
    responsible for sending any particular blood sample through the mail." *See* Doc. 139 at

28  42. All of Plaintiffs' mail fraud claims should thus be dismissed with prejudice and can-
    not form the basis for Plaintiffs' RICO claim.

a legal duty.").  The only reference to a duty in the fifth cause of action is the allegation that "Walgreens and Theranos had a duty to disclose all facts material to" the decision to use Theranos's testing.  ¶¶ 477.  This duty, however, relates to non-disclosure and the fifth cause of action makes no reference to omissions or non-disclosure.

A duty to exercise reasonable diligence is not imposed simply because of a business transaction.  *See Lemad*, 2014 WL 4649593, at *4; *Eddy*, 245 Cal. Rptr. at 213; *see also* SAC ¶ 474 (noting the false statements were "provided in the context of a business transaction").  A pharmacy, like Walgreens, owes customers a narrow duty of care, which does not extend to a duty to investigate the viability of third-party medical providers' products.  *See* Section E.

Even if Plaintiffs adequately alleged Walgreens owed them a duty of care, Plaintiffs do not allege the misrepresentations with particularity.[18]  Plaintiffs' fifth cause of action merely refers to the false statements described in the first cause of action.  SAC ¶ 473; Section B.

### E.  The SAC Fails To State A Claim For Relief For Negligence Against Defendant Walgreens

Plaintiffs allege that Walgreens and Theranos were negligent in providing blood testing services to Plaintiffs.[19]  SAC ¶¶ 460-470.  Plaintiffs allege that Walgreens owed them two duties: first, to provide testing services that were safe, reliable and compliant with applicable laws and regulations; second, to investigate to ensure Theranos's services were reliable and safe before offering those services.  SAC ¶¶ 462, 465.  Walgreens did not owe Plaintiffs either duty because Walgreens did not offer blood testing; Walgreens offered blood draws for ***Theranos's blood testing services*** to Plaintiffs.[20]  *See* SAC ¶ 31.

---

[18] Under both Arizona and California law, a claim for negligent misrepresentation is a species of fraud and must be pled with particularity under Rule 9(b).  *See* Doc. 139 at 27.

[19] In order to make out a claim for negligence, a plaintiff must prove four elements: "duty; breach of duty; legal cause; and damages."  *Friedman v. Merck & Co.*, 131 Cal. Rptr. 2d 885, 890 (2003); *see also Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007).

[20] There is no allegation that the blood draws—as opposed to testing—were unsafe, unreliable or illegal.

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

A pharmacy plays a unique role as a mediator between doctors, patients, and other third-party providers of medical services.  The duty owed by a pharmacy "has been construed narrowly."  *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 989 (N.D. Cal. 2016).  While pharmacies "have a duty of care to accurately fill a prescription," pharmacies are not required to warn customers about known side effects of prescription drugs.[21] *See id.* (collecting cases).  Courts refuse to impose strict products liability against pharmacies because such liability would discourage the carrying of essential medications. *See Murphy v. E. R. Squibb & Sons, Inc.*, 710 P.2d 247, 253 (Cal. 1985) ("If pharmacies were held strictly liable for the drugs they dispense, some of them . . . might restrict availability."); *see also Coyle by Coyle v. Richardson-Merrell, Inc.,* 584 A.2d 1383, 1387 (Pa. 1991) (rejecting strict liability against pharmacists); *Madison v. Am. Home Prod. Corp.*, 595 S.E.2d 493, 496 (S.C. 2004) (same).

There is no support for imposing an obligation on a pharmacy, like Walgreens, to investigate and verify the efficacy of third-party-designed medical products, like Theranos testing.  Pharmacies cannot regulate drug companies, second-guess doctors, investigate side effects or independently corroborate medical testing.  Walgreens's duty of care is limited to performing services conducted by pharmacy staff within the pharmacy's narrow role—the blood draws and storing the blood.  Plaintiffs do not allege either service was negligently performed.

**F.    The SAC Fails To State A Claim For Breach Of Contract**

Plaintiffs' sixth cause of action alleges Defendants Walgreens and Theranos breached a contract with Plaintiffs. SAC ¶¶ 485-496.  But Plaintiffs fail to allege the existence of a contract between Walgreens and Plaintiffs with ascertainable terms.  Nor does the SAC describe a breach of the implied contract between Walgreens and Plaintiffs.

---

[21] Arizona courts have found that a pharmacist has a duty to warn a patient regarding drug interactions and addictive properties of prescription drugs.  *See, e.g., Lasley v. Shrake's Country Club Pharmacy, Inc.,* 880 P.2d 1129, 1134 (Ct. App. 1994).  However, there is not a general duty to warn or found that a pharmacy is strictly liable for defects in prescription drugs.

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

A breach of contract claim requires proof of the existence of a contract.  *Thomas v. Montelucia Villas, LLC*, 302 P.3d 617, 621 (Ariz. 2013).  A plaintiff must plead facts that establish a contract with "sufficient specification of terms so that the obligations involved can be ascertained." *Longnecker v. Am. Express Co.*, 23 F. Supp. 3d 1099, 1106 (D. Ariz. 2014).  The SAC, however, provides that "[t]he promises and obligations by Walgreens and Theranos were set forth in pervasive marketing materials disseminated by Walgreens and Theranos."  SAC ¶ 488.  The SAC provides no other source of terms for the contract between Plaintiffs and Walgreens.  While the Court previously acknowledged that marketing materials may supplement the terms of a contract between parties, the marketing materials, standing alone, do not constitute an agreement between Plaintiffs and Defendants.  *See* Doc 139 at 30.

Even if Plaintiffs had adequately alleged the existence of a contract, the SAC does not allege facts demonstrating that Walgreens breached the terms of the implied agreement.  The SAC states that Defendants Walgreens and Theranos breached the contract with Plaintiffs by failing to provide effective testing services.  SAC ¶ 493.  However, the SAC does not allege that Walgreens informed Plaintiffs that Walgreens would perform the blood tests.  The SAC consistently describes a division of labor between Walgreens and Theranos.  *See* SAC ¶ 159 (describing Walgreens's obligations under the agreement with Theranos); *id.*, Ex. 12 (Theranos direct testing form describing test services as offered by Theranos).  The allegations in the SAC clarify that Walgreens offered Theranos's testing services and facilitated access to Theranos's blood testing services.  Walgreens performed its obligations under the terms of that contract with Plaintiffs by drawing Plaintiffs' blood, storing the blood and ensuring the blood was delivered to Theranos.  As to these contractual duties, there is no alleged breach.

### G.   The SAC Fails To State A Claim For Relief For Battery Or Medical Battery Against Defendant Walgreens

Plaintiffs B.P., R.C. and S.J. ("the Edison Plaintiffs") bring claims against Theranos and Walgreens for battery and medical battery related to "tiny" blood draws

conducted at Arizona Walgreens.  SAC ¶¶ 430-59, 584-616.  This Court has ruled that the only viable theory to support these claims is that the "essential purpose" of the "tiny" blood draws was Theranos's research and development.  *See* Doc. 157 at 8.

To make out a claim for battery or medical battery under Arizona law, the Edison Plaintiffs must plead facts showing that their consent to the "tiny" blood draws was "induced by misrepresentation."[22]  *Duncan v. Scottsdale Med. Imaging, Ltd.*, 70 P.3d 435, 440 (Ariz. 2003).  That misrepresentation must be made with intent to deceive.  *See Duncan,* 70 P.3d at 441 ("Nurse Fink allegedly told Duncan she would receive a morphine injection, when in fact *he knew* it to be fentanyl.") (emphasis added); *see also Brown v. John C. Lincoln Health Network*, No. 1 CA-CV 14-0814, 2016 WL 2893739, at *2 (Ariz. Ct. App. May 17, 2016), review denied (Feb. 14, 2017) (granting summary judgment where "no evidence was presented to the superior court that [medical provider] *purposefully* lied to, or misled.") (emphasis added); Black's Law Dictionary (10th ed. 2014) (defining misrepresentation as "making a false or misleading assertion about something, usu[ally] with the intent to deceive").  For Walgreens to have intended to deceive the Edison Plaintiffs, Walgreens must have known of Theranos's "essential purpose" in conducting the "tiny" blood draws.

However, the SAC does not allege that Walgreens ever knew that the purported "essential purpose" of the "tiny" blood draws was for Theranos to test or calibrate the Edison device.  While the SAC alleges that Walgreens knew the Edison was not ready-for-market, this does not suggest Walgreens knew of Theranos's purported "essential purpose."  The SAC's allegations are insufficient to show that Walgreens knew the "essential purpose" of the "tiny" blood draws was Theranos's research and development of the Edison device.  Common sense informs this Court that this is implausible given the MSA.  Not only does the MSA describe a contractual relationship for which Walgreens paid

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

---

[22] Each of the Edison Plaintiffs was subjected to tiny blood draws exclusively in Arizona, *see* SAC ¶¶ 238, 302, 339, accordingly Arizona law governs the Edison Plaintiffs' battery and medical battery claims.

dearly, the MSA describes at length what the "essential purpose" was.  If the RICO enterprise's "essential purpose" was Theranos's research and development of the Edison device, it defies the MSA and other allegations that Walgreens knew of that "essential purpose" and is otherwise implausible as to Walgreens.

That Walgreens allegedly knew of defects in Theranos's testing is irrelevant to the Edison Plaintiffs' battery claims because they do not relate to Theranos's alleged "essential purpose" of the "tiny" blood draws.  The Edison Plaintiff's claims related to "red flags" sound in negligence or negligent misrepresentation.  *See Rice*, 310 P.3d at 20.  The lack of factual allegations describing Walgreens's knowledge of Theranos's "essential purpose" in conducting the "tiny" blood draws and utter implausibility of such knowledge given the SAC's allegations about the MSA are fatal to the Edison Plaintiffs' claims for battery and medical battery against Walgreens.

### H.    Plaintiff A.R.'s Unjust Enrichment Claims Should Be Dismissed

Plaintiff A.R.'s unjust enrichment claim should be dismissed because it is derivative of Plaintiff A.R.'s other failed claims.  Under California law, unjust enrichment is not a cause of action.  *See Graham-Sult v. Clainos*, 756 F.3d 724, 750 (9th Cir. 2014).  Instead, it is a "principle underlying various doctrines and remedies, including quasi-contract." *Jogani v. Superior Ct.*, 81 Cal. Rptr. 3d 503, 512 (Cal. Ct. App. 2008); *see also Melchior v. New Line Productions, Inc.* 106 Cal. App. 4th 779, 793 (Cal. Ct. App. 2003).  Plaintiff A.R. may not therefore sustain an action for unjust enrichment if his underlying claims have been dismissed.  *See Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 975 (N.D. Cal. 2008) (dismissing a plaintiff's unjust enrichment claim because his fraud-based claims under the CLRA, UCL, and FAL were dismissed); *see also Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 989 (N.D. Cal. 2009) ("[Unjust enrichment] will depend upon the viability of the Plaintiffs' other claims.").

## II.    CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Second Amended Complaint as to Defendant Walgreens with prejudice.

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

DATED this 1st day of December, 2017.

LEWIS ROCA ROTHGERBER CHRISTIE LLP


By: */s/ Dan W. Goldfine*
    Dan W. Goldfine
    Email:  dgoldfine@lrrc.com
    Lindsey Herzog
    Email:  lherzog@lrrc.com
Attorneys for Defendants Walgreens Boots Alliance, Inc. and Walgreen Arizona Drug Company

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

201 East Washington Street, Suite 1200

Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

**CERTIFICATE OF SERVICE**

I hereby certify that on December 1, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all parties.

*/s/ Dan W. Goldfine*