1  Christopher T. Casamassima (Admitted *Pro Hac Vice*)
   chris.casamassima@wilmerhale.com
2  Michael A. Mugmon (Admitted *Pro Hac Vice*)
   michael.mugmon@wilmerhale.com
3  Matthew D. Benedetto (Admitted *Pro Hac Vice*)
   matthew.benedetto@wilmerhale.com
4  Katie Moran (Admitted *Pro Hac Vice*)
   katie.moran@wilmerhale.com
5  WILMER CUTLER PICKERING HALE AND DORR LLP
   350 South Grand Avenue, Suite 2100
6  Los Angeles, CA 90071
   Telephone: +1 213 443 5300
7
   *Counsel for Defendant Theranos, Inc.*
8
   Stephen C. Neal (Admitted *Pro Hac Vice*)
9  nealsc@cooley.com
   Kathleen H. Goodhart (Admitted *Pro Hac Vice*)
10 kgoodhart@cooley.com
   COOLEY LLP
11 3175 Hanover Street
   Palo Alto, CA 94304
12 Telephone: +1 650 843 5000
13 *Counsel for Defendant Elizabeth Holmes*
14 Stephen M. Rummage (Admitted *Pro Hac Vice*)
   steverummage@dwt.com
15 Ben Byer
   benbyer@dwt.com (Admitted *Pro Hac Vice*)
16 DAVIS WRIGHT TREMAINE LLP
   1201 Third Avenue, Suite 2200
17 Seattle, WA 98101-3045
   Telephone: + 1 206 757 8136
18
   *Counsel for Defendant Ramesh Balwani*
19
                    **UNITED STATES DISTRICT COURT**
20                       **DISTRICT OF ARIZONA**
21
   In re:                                **No. 2:16-cv-2138-HRH**
22 Arizona THERANOS, INC.,                 **(Consolidated with)**
   Litigation                            **No. 2:16-cv-2373-HRH**
23                                        **No. 2:16-cv-2660-HRH**
                                          **No. 2:16-cv-2775-HRH**
24                                                 **-and-**
                                          **No. 2:16-cv-3599-HRH**
25
                                          **MOTION OF THERANOS,**
26                                        **ELIZABETH HOLMES, AND RAMESH**
                                          **BALWANI TO DISMISS PLAINTIFFS'**
27                                        **SECOND AMENDED CONSOLIDATED**
                                          **CLASS ACTION COMPLAINT AND**
28                                        **MEMORANDUM IN SUPPORT**
                                          **THEREOF**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

MOTION ............................................................................................................. 3

SUMMARY OF MATERIAL AMENDMENTS TO THE COMPLAINT .................... 4

ARGUMENT ....................................................................................................... 5

I.  Theranos' Consent Decree With the Arizona Attorney General Renders the
    Arizona Plaintiffs' Claims Duplicative and Precludes Their Double Recovery ... 5

II. Plaintiffs Do Not Adequately Plead a Claim for Any Plaintiff Outside of the
    Edison Subclass ........................................................................................... 7

III. The Edison Subclass Claims Grounded in Fraud Do Not Meet Rules 8 or 9 ....... 9

VI. Plaintiffs' RICO Claim Fails as It Does Not Plead an Enterprise or a Loss to
    Plaintiffs' Business or Property ..................................................................... 18

A.  Plaintiffs' RICO Claim Fails to Plead an Enterprise ......................................... 19

B.  Plaintiffs Fail to Plead Injury to Their Business or Property ............................. 21

VII. Plaintiffs' Have Failed to Amend Their Negligence Claim to Address the
     Grounds of the Dismissal of This Claim in Their First Amended Complaint .... 22

VIII. Plaintiff's Unjust Enrichment Claim Is Not Actionable Under California Law
      and Must Fail in Light of the Arizona Consent Decree ................................... 23

IX. Plaintiffs' Breach of Contract Claims Must Fail as Plaintiffs Have Not
    Adequately Pled the Terms of Their Alleged Contracts ................................... 23

CONCLUSION ................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adelman v. Rheem Mfg. Co.*,
No. 2:15-cv-00190 JWS, 2015 U.S. Dist. LEXIS 107265 (D. Ariz. Aug. 14, 2015) ..........10

*Allman v. Phillip Morris, Inc.*,
865 F. Supp. 665 (S.D. Cal. 1994) ...................................................................................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................8, 10, 23

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................11

*Berg v. First State Ins. Co.*,
915 F.2d 460 (9th Cir. 1990) ...................................................................................21

*Boyle v. United States*,
556 U.S. 938 (2009) ...................................................................................19

*Canyon Cty. v. Syngenta Seeds, Inc.*,
519 F.3d 969 (9th Cir. 2008) ...................................................................................21

*City & Cty. of S.F. v. Philip Morris, Inc.*,
957 F. Supp. 1130 (N.D. Cal. 1997) ...................................................................................22

*In re Flash Memory Antitrust Litig.*,
643 F. Supp. 2d 1133 (N.D. Cal. 2009) ...................................................................................15

*Frezza v. Google Inc.*,
No. 5:12-cv-00237-RMW, 2013 U.S. Dist. LEXIS 57462 (N.D. Cal. Apr. 22, 2013)........24

*Gen. Tel. Co. v. EEOC*,
446 U.S. 318 (1980) ...................................................................................6

*Gomez v. Guthy-Renker, LLC*,
No. EDCV 14-01425, 2015 U.S. Dist. LEXIS 90725, at *22 (C.D. Cal. July 13, 2015)
...................................................................................20

*Graham-Sult v. Clainos*,
756 F.3d 724 (9th Cir. 2014) ...................................................................................23

*Grimmett v. Brown*,
75 F.3d 506 (9th Cir. 1996) ...................................................................................19

*In re Herbalife Sec. Litig.*,
   No. CV 95-400 SVW, 1996 U.S. Dist. LEXIS 11484, at *11 n.4 (C.D. Cal. Jan. 24,
   1996)........................................................................................................................................9

*Herremans v. BMW of N. Am.*,
   LLC, No. CV 14-02363 MMM, 2014 U.S. Dist. LEXIS 145957 (C.D. Cal. Oct. 3, 2014) ..8

*Howard v. JPMorgan Chase Bank, N.A.*,
   No. CV12-0952-PHX DGC, 2012 U.S. Dist. LEXIS 178035 (D. Ariz. Dec. 17, 2012) .....10

*In re Jamster Mktg. Litig.*,
   No. 05-cv-0819 JM (CAB), 2009 U.S. Dist. LEXIS 43592 (S.D. Cal. May 22, 2009).......19

*Kearney v. Equilon Enters., LLC*,
   65 F. Supp. 3d 1033 (D. Or. 2014) ......................................................................................24

*Kloepping v. Fireman's Fund*,
   No. C 94-2684 TEH, 1996 U.S. Dist. LEXIS 1786 (N.D. Cal. Feb. 13, 1996) ....................6

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*,
   940 F.2d 397 (9th Cir. 1991)...........................................................................................8, 10

*Lima v. Gateway, Inc.*,
   710 F. Supp. 2d 1000 (C.D. Cal. 2010) ...............................................................................10

*Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*,
   431 F.3d 353 (9th Cir. 2005)................................................................................................19

*Lorona v. Ariz. Summit Law Sch., LLC*,
   188 F. Supp. 3d 927 (D. Ariz. 2016) ....................................................................................10

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993).......................................................................................................8

*Osher v. JNI Corp.*,
   256 F. Supp. 2d 1144 (S.D. Cal. 2003) ................................................................................10

*Pfau v. Mortenson*,
   858 F. Supp. 2d 1150 (D. Mont. 2012) *aff'd*, 542 Fed. Appx. 557 (9th Cir. 2013)............10

*Reid v. Unilever U.S., Inc.*,
   964 F. Supp. 2d 893 (N.D. Ill. 2013) ...................................................................................23

*Resnick v. Hyundai Motor Am., Inc.*,
   No. CV 16-00593-BRO, 2016 U.S. Dist. LEXIS 160179 (C.D. Cal. Nov. 14, 2016)..........8

*Sateriale v. R.J. Reynolds Tobacco Co.*,
   697 F.3d 777 (9th Cir. 2012).................................................................................................24

*Shaw v. Nissan N. Am., Inc.*,
   220 F. Supp. 3d 1046 (C.D. Cal. 2016).........................................................................19, 20

*Smith v. LG Elecs. U.S.A., Inc.*,
    No. C 13-4361 PJH, 2014 U.S. Dist. LEXIS 31577 (N.D. Cal. Mar. 11, 2014).................17

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    903 F. Supp. 2d 942 (S.D. Cal. 2012) .................................................................17

*Stationary Eng'rs Local 39 Health & Welfare Tr. Fund v. Philip Morris, Inc.*,
    No. C-97-01519 DLJ, 1998 U.S. Dist. LEXIS 8302 (N.D. Cal. Apr. 30, 1998) ................22

*Sun City Pet Mkt., LLC v. Honest Kitchen, Inc.*,
    No. CV-17-00121-PHX-DGC, 2017 U.S. Dist. LEXIS 78278 (D. Ariz. May 23, 2017)....24

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices & Prods. Liab. Litig.*,
    890 F. Supp. 2d 1210 (C.D. Cal. 2011) ..............................................................15

*In re Toyota Motor Corp. Unintended Acceleration Mktg.*,
    826 F. Supp. 2d 1180 (C.D. Cal. 2011) ..........................................................18, 20

*Tracton v. Viva Labs, Inc.*,
    No. 16-cv-2772-BTM-KSC, 2017 U.S. Dist. LEXIS 151178 (S.D. Cal. Sep. 18, 2017)....18

*EEOC v. U.S. Steel Corp.*,
    921 F.2d 489 (3d Cir. 1990) .............................................................................6

*Von Grabe v. Sprint PCS*,
    312 F. Supp. 2d 1285 (S.D. Cal. 2003) .............................................................16

*Walker v. Gates*,
    No. CV 01-10904 GAF, 2002 U.S. Dist. LEXIS 27443 (C.D. Cal. May 22, 2002)...........21

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012)..........................................................................17

**State Cases**

*Bridgestone/Firestone N. Am. Tire, L.L.C. v. Naranjo*,
    79 P.3d 1206 (Ariz. Ct. App. 2003) ...................................................................7

*Duncan v. Scottsdale Med. Imaging, LTD.*,
    70 P.3d 435 (Ariz. 2003)........................................................................12, 13, 15

*In re Estate of Kampen*,
    135 Cal. Rptr. 3d 410 (Cal. Ct. App. 2011) ......................................................25

*First Am. Title Ins. Co. v. Johnson Bank*,
    372 P.3d 292 (Ariz. 2016)................................................................................24

*Freedman v. Superior Court*,
    363 Cal. Rptr. 1 (Cal. Ct. App. 1989) ..............................................................13

MOTION TO DISMISS SAC

*Moore v. Regents of Univ. of Cal.*,
    51 Cal. 3d 120 (1990)..................................................................................14

*Oasis W. Realty, LLC v. Goldman*,
    250 P.3d 1115 (Cal. Ct. App. 2011).............................................................24

*Rogus v. Lords*,
    804 P.2d 133 (Ariz. Ct. App. 1991) .............................................................24

*Saxena v. Goffney*,
    71 Cal. Rptr. 3d 469 (Cal. Ct. App. 2008) .............................................12, 13

*Slakey Bros. Sacramento, Inc. v. Parker*,
    71 Cal. Rptr. 269 (Cal. Ct. App. 1968) ........................................................18

*Tabler v. Indus. Comm'n of Ariz.*,
    47 P.3d 1156 (Ariz. Ct. App. 2002) .............................................................25

*USLife Title Co. of Ariz. v. Gutkin*,
    732 P.2d 579 (Ariz. Ct. App. 1986) .............................................................23

**Federal Statutes**

18 U.S.C. § 1961(4) ...........................................................................................18

18 U.S.C. § 1962(c) ...........................................................................................18

**Other Authorities**

Restatement (Second) of Torts § 892A ..............................................................14

Restatement (Second) of Torts § 892B ..............................................................14

MOTION TO DISMISS SAC

## INTRODUCTION

Plaintiffs' Second Amended Consolidated Class Action Complaint ("SAC") is their third attempt to allege viable claims against the Defendants.  In the SAC, Plaintiffs bring 14 causes of action—all of which, other than stray pieces of a few claims, have already been dismissed by this Court.  To cure the defects that the Court previously identified, Plaintiffs have tried to add facts and make class modifications to this latest pleading.  This effort has not changed a thing:  the SAC remains deficient.

For the first time, the Plaintiffs have split the purported class into two fundamentally distinct pools of potential class members:  (1) a so-called "Edison Subclass" comprised of those who received the alleged "tiny blood draws" that were used in connection with Theranos' proprietary blood analyzer, known as the "Edison;"[1] and (2) those other individuals who received venous—or traditional—blood draws.  (Those subclasses are then further divided into Arizona and California subclasses.)  Most of the SAC's additional allegations involve the Edison Subclass and essentially contend that:  (i) research and development for the Edison was the concealed "true purpose" for the "tiny blood draws," rather than the generation of results for the clinical laboratory tests ordered by Plaintiffs or their doctors; and (ii) Theranos misrepresented that it could obtain accurate results on the Edison device.  *See, e.g.*, SAC ¶¶ 8-9; 85-87; 179-207.

Plaintiffs' amendments, however, include no factual predicate for asserting that conventional **venous** blood draws were intended to be used for research and development.  Therefore, not a single consumer defined to be outside the Edison Subclass could have been deceived by or relied upon any alleged misrepresentation concerning Theranos' fingerstick blood draws or the Edison, because they did not receive either a fingerstick draw or an Edison-run test.  Indeed, Plaintiffs concede that venous blood samples were processed on traditional testing equipment.  And they have

---

[1]    *See* SAC ¶¶ 179 (defining "tiny" blood draws as involving a needle being stuck "into the subject's finger"); 376 (defining the "Edison subclass" as including "[a]ll purchasers of Theranos testing services who were subjected to 'tiny' blood draws.").

not sufficiently alleged any hidden research and development purpose for those tests. Without a plausible hidden motive, Plaintiffs' fraud-related claims brought on behalf of the non-Edison Subclass fail.

As for the claims brought by the so-called Edison Subclass, Plaintiffs' new allegations—including the identification and naming of the Edison Subclass itself—demonstrate that this case is fundamentally far smaller, and focused on a much narrower set of facts, than the Plaintiffs' kitchen-sink pleading would otherwise suggest. Plaintiffs' entire theory of the case revolves around the notion of an undisclosed research and development agenda that logically can only involve the Edison, and as pleaded here, the Edison Subclass.

But even the Edison Subclass's claims face an insurmountable challenge: Theranos' consent decree ("Arizona Consent Decree") with the Arizona Attorney General ("AAG") has already resolved the claims that Plaintiffs assert in the SAC, and Theranos has provided full restitution to all Arizona consumers.

The consent decree resolved the AAG's *parens patriae* claims against Theranos under the Arizona Consumer Fraud Act ("ACFA").[2]  And pursuant to the Arizona Consent Decree, Theranos has already paid $4.652 million—the total amount that ***all*** Arizona consumers spent on Theranos tests, regardless of whether their tests were invalidated—into a fund to be distributed by the AAG to those consumers.  As a result, the Court should dismiss, at a minimum:  (i) the ACFA claim (because it is duplicative of the claim brought, and the relief obtained, by the AAG); (ii) any request for disgorgement or restitution; (iii) Plaintiffs' unjust enrichment claim under Arizona law; and (iv) the Racketeer Influenced and Corrupt Organizations Act ("RICO") claim.  All that remain are claims for alleged emotional distress damages (which cannot possibly be litigated on a class basis).

---

[2]     *See* Arizona Consent Decree, Exhibit A to Defendants' Request for Judicial Notice (Dkt. 165), *also available at* https://www.azag.gov/sites/default/files/sites/all/docs/press-release/press-release-files/2017_Files/judgments/FINAL_Theranos_Consent_Decree.pdf.

For the reasons described above, and many others, Plaintiffs' SAC remains deficient and should be dismissed with prejudice.  In addition, rather than repeat arguments advanced by Walgreens that pertain to Theranos here, Theranos hereby joins in and refers the Court to arguments made by Walgreens in its Motion to Dismiss regarding the Arizona Consent Decree and the deficiencies of the RICO, unjust enrichment, and breach of contract claims.

## MOTION

Accordingly, pursuant to Federal Rules of Civil Procedure 8, 9(b), 12(b)(1), and 12(b)(6), Defendant Theranos, Inc. moves to dismiss all of Plaintiffs' claims (Counts 1-14) in their Second Amended Consolidated Class Action Complaint.  The grounds for dismissal addressed in this memorandum are as follows:

I.    Count 1 (violation of the Arizona Consumer Fraud Act) should be dismissed for three reasons:  (1) Plaintiffs lack standing in light of the Arizona Consent Decree, (2) Plaintiffs have not pled these claims with particularity under Rule 9(b), and (3) Plaintiffs have failed to adequately plead reliance.

II.    Count 2 (common law fraud) should be dismissed for four reasons:  (1) Plaintiffs lack standing in light of the Arizona Consent Decree, (2) Plaintiffs have not pled these claims with particularity under Rule 9(b), (3) Plaintiffs have failed to adequately plead reliance, and (4) Plaintiffs have failed to plead Defendants' knowledge of falsity.

III.    Count 3 (battery) should be dismissed for two reasons:  (1) Plaintiffs consented to the physical act of the blood draws and have not adequately alleged that Theranos intended to obtain this consent via deception, and (2) Plaintiffs have improperly sought to bring an informed consent action, which sounds in negligence, under a battery cause of action.

IV.    Count 4 (negligence) should be dismissed for two reasons:  (1) Plaintiffs have failed to cure the deficiencies in their First Amended Complaint with respect to the non-Edison Subclass, and (2) Plaintiffs have failed to allege a plausible negligence action with respect to the Edison Subclass.

V.    Count 5 (negligent misrepresentation) should be dismissed because Plaintiffs have failed to plead this claim with particularity under Rule 9(b).

VI.    Count 6 (breach of contract) should be dismissed because Plaintiffs have failed to allege an enforceable contract with sufficient specificity of terms.

VII.    Count 7 (unjust enrichment) should be dismissed for two reasons:  (1) the

1   Arizona Plaintiffs lack standing in light of the Arizona Consent Decree, and (2)
2   the cause of action for "unjust enrichment" is not actionable under California
3   law.

VIII. Count 8 (aiding and abetting fraud) should be dismissed for the reasons stated
4      in Defendant Walgreens' Motion to Dismiss.

IX.  Count 9 (violation of the Racketeer Influenced and Corrupt Organizations Act)
     should be dismissed for two reasons:  (1) Plaintiffs have failed to plead a RICO
     enterprise, and (2) Plaintiffs have failed to plead the requisite injury to their
     "business or property."

X.   Counts 10-13 (violations of the California Unfair Competition Law, False
     Advertising Law, Consumer Legal Remedies Act, and sections 1709-1710 of
     the California Civil Code) should be dismissed for four reasons:  (1) no named
     California Plaintiff alleges he or she received Edison testing, (2) the only
     named California Plaintiff fails to plead his claims with the particularity
     required by Rule 9(b), (3) the only named California Plaintiff fails to allege
     reliance, and (4) the only named California Plaintiff fails to plausibly allege
     that Theranos had reason to know its non-Edison tests were unreliable at the
     time they were performed.

XI.  Count 14 (medical battery) should be dismissed for two reasons:  (1) because
     Plaintiffs consented to the physical act of the blood draws and have not
     adequately alleged that Theranos intended to obtain this consent via deception,
     and (2) because Plaintiffs have improperly sought to bring an informed consent
     action, which sounds in negligence, under a battery cause of action.

**SUMMARY OF MATERIAL AMENDMENTS TO THE COMPLAINT**

Given the Court's order on the First Amended Complaint ("FAC") and its
familiarity with the pleadings, the relevant allegations for this motion are the
amendments that Plaintiffs made in the SAC responding to the Court's dismissal.
Plaintiffs have failed to repair their claims.

Plaintiffs have added details on Defendants' alleged "affirmative
misrepresentations," mainly through a description of Defendants' so-called "pervasive"
marketing campaign.  *See* SAC ¶¶ 79-108.  Plaintiffs allege the marketing campaign
was devoted to portraying Theranos' "tiny blood draws" as being market-ready and used
for "legitimate testing purposes."  SAC ¶¶ 85-86.  Yet the examples of these
advertisements largely tout Theranos' ability to perform blood tests on small samples, or

inform consumers where they can obtain Theranos testing—nothing about testing protocols or "reliability," the Edison, or how Theranos processed blood samples. *See, e.g.*, SAC ¶¶ 85-92. And given the focus of the alleged marketing on "tiny blood draws," the allegations do not apply to any Theranos consumer who received a venous draw (*i.e.*, those outside the Edison Subclass).

Plaintiffs have also added allegations in an effort to bolster the battery claims brought by the Edison Subclass. Plaintiffs allege the members of the Edison Subclass submitted to Theranos' "tiny blood draws" under false pretenses. SAC ¶ 183. Plaintiffs allege a fantastical research and development scheme that purportedly was the "essential nature and purpose" of these fingerstick draws. SAC ¶ 184. Plaintiffs allege that, although Defendants represented to the public that the Edison device was "ready-for-market" and could produce reliable test results, SAC ¶ 186, Defendants concealed from consumers the fact that the Edison device was "not ready-for-market," was "still in-development," "still in prototype," and was not capable of serving the purpose of "legitimate blood testing." SAC ¶¶ 186-190. The "essential nature and purposes" of the "tiny blood draws" were, in Plaintiffs' view, to "help research and development" of the Edison technology and to "woo and placate investors" and others by giving them the impression that Defendants had a "market-ready, breakthrough technology and service." SAC ¶¶ 190; 207. Nowhere does the SAC allege that Theranos' non-Edison devices were "still in development" or not capable of legitimate blood testing.

## ARGUMENT

I.  **THERANOS' CONSENT DECREE WITH THE ARIZONA ATTORNEY GENERAL RENDERS THE ARIZONA PLAINTIFFS' CLAIMS DUPLICATIVE AND PRECLUDES THEIR DOUBLE RECOVERY**

None of Plaintiffs' amendments in the SAC matter in light of the fatal impact on the SAC of Theranos' consent decree with the Arizona Attorney General, which already resolved the claims that the Arizona Plaintiffs are again asserting. The AAG alleged that (a) between 2013 and 2016, Theranos sold blood tests to Arizona consumers, (b) Theranos ultimately voided or corrected roughly 10.6% of its test results, (c) the sale of

the blood tests were made without the informed consent of the consumers because Theranos misrepresented, omitted, and concealed material information regarding its testing service's methodology, accuracy, reliability, and essential purpose; and (d) Theranos intended consumers to rely on its misrepresentations, omissions, and concealments in deciding to purchase its testing services.  Arizona Consent Decree at 2.

The AAG intended "to extinguish all existing or potential claims under the [ACFA] or for breach of contract, fraud, battery, negligence, negligent misrepresentation, unjust enrichment, or civil RICO violations arising from the conduct" described in the decree.  *Id*. at 3. That is this case.  There is no daylight between the claims resolved by the AAG and the claims pursued by the Arizona Plaintiffs.

To resolve the AAG's allegations on behalf of the Arizona Plaintiffs, Theranos agreed to provide full restitution to its Arizona consumers for all monies paid for Theranos' blood testing services.  *Id.*  It "goes without saying that the courts can and should preclude double recovery by an individual." *Gen. Tel. Co. v. EEOC*, 446 U.S. 318 (1980); *see also EEOC v. U.S. Steel Corp.*, 921 F.2d 489, 495 (3d Cir. 1990) (individuals who litigated their own claims were precluded by res judicata from obtaining individual relief in a subsequent EEOC action based on the same claims).  The Arizona Plaintiffs here are the direct beneficiaries of the AAG's recovery from Theranos.  They are receiving full reimbursement—without having to pay attorneys' fees—for the cost of their Theranos tests.  Accordingly, the Arizona Plaintiffs should be foreclosed from recycling the same allegations made by the AAG in an effort to obtain the same recovery that the AAG already obtained on their behalf.  *See, e.g.*, *Bridgestone/Firestone N. Am. Tire, L.L.C. v. Naranjo*, 79 P.3d 1206, 1209 (Ariz. Ct. App. 2003) (noting, in a personal injury and wrongful death action in which plaintiffs received "full payment on their total compensatory damages," that "[a]ny further recovery from [a separate action] for the same injuries would result in an impermissible double recovery or unjust enrichment"); *see also Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 U.S. Dist. LEXIS 1786, at *16 (N.D. Cal. Feb. 13, 1996) (In fraud

1   actions, "the injured party may not obtain double recovery for the same wrong.").[3]

2   **II.   PLAINTIFFS DO NOT ADEQUATELY PLEAD A CLAIM FOR ANY**
3   **PLAINTIFF OUTSIDE OF THE EDISON SUBCLASS**

4          Plaintiffs' theory boils down to a fraudulent scheme in which Defendants

5   knowingly rushed a proprietary analyzer (the "Edison") to market prematurely in an

6   effort to perform "research and development" on the device and convince consumers the

7   Edison technology worked, when they knew it did not.  The Edison processed

8   fingerstick samples ("tiny blood draws").  SAC ¶ 39.  All of the Plaintiffs who allege

9   that they received "tiny blood draws" for testing on the Edison are part of the so-called

10  "Edison Subclass."  *See* SAC ¶¶ 179; 376.  But all of the Plaintiffs who do not allege

11  that they received "tiny blood draws" have a fundamental pleading problem:  the SAC

12  fails to adequately allege fraud on any Plaintiff whose blood was not taken by a "tiny

13  blood draw."  That cuts an entire subclass from this case.

14         This Court has already found it implausible that Theranos' venipuncture testing

15  was part of a secret research and development scheme.  *See* Dkt. 157 at 8-9 (finding

16  these allegations implausible and dismissing with prejudice Plaintiffs' battery and

17  medical battery claims to the extent they were based on venipuncture draws).  For the

18  same reasons, Plaintiffs' claims in the SAC fail.

19          In the SAC, Plaintiffs still fail to allege sufficient facts that show the purpose of

20  venous blood draws—which were not processed on Edison devices—was research and

21  development.  *See* Dkt. 157 at 8.  Indeed, Plaintiffs' alleged facts establish that venous

22  blood draws were ***not*** used for research and development, but were run on traditional

23  clinical analyzers.  *See, e.g.*, SAC ¶¶ 131 (acknowledging that Scottsdale lab did not

24  house any Edison devices); 132 (conceding the Scottsdale lab "performed analyses on

25  venipuncture tests," which was alleged to be "over 90 percent of Theranos's testing").

26         To be sure, Plaintiffs continue to state the same conclusion in the SAC, as they

27  _____

28  [3]     The absence of any remaining compensable harms also deprives the Plaintiffs of
        standing to assert a ACFA claim, as described in Walgreens' Memorandum in Support
        of Its Motion to Dismiss.

did in the FAC, that Plaintiffs who received venipuncture draws (and whose test results therefore were generated by a non-Edison device) had their blood drawn for research and development.  *See, e.g.,* SAC ¶¶ 213 (Plaintiff A.R.), 227 (Plaintiff B.B.), 264 (Plaintiff D.L.), 279 (Plaintiff L.M.), 292 (Plaintiff M.P.), 327 (Plaintiff R.G.), and 365 (Plaintiff S.L.).  But these non-Edison Plaintiffs fail to identify any affirmative misrepresentations about the testing on which they relied, and which were false.  *See, e.g.*, *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991).  It is difficult to envision a response Defendants can make to these fraud claims other than a general denial.  *See, e.g.*, *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (dismissing complaint because it "offers no specific facts demonstrating wrongdoing which [the defendant] could deny or otherwise controvert").  This deficient pleading also means that the non-Edison plaintiffs have failed to plead crucial elements of fraud:  knowledge and reliance.  *See, e.g.*, *Herremans v. BMW of N. Am., LLC*, No. CV 14-02363 MMM (PJWx), 2014 U.S. Dist. LEXIS 145957, at *50-59, *59 n.89 (C.D. Cal. Oct. 3, 2014) (dismissing fraud claim arising out of an alleged defect in vehicle's water pump, making the water pump "unreliable," on the ground that plaintiff had not adequately alleged defendant knew of the defect at the time of sale); *see also Resnick v. Hyundai Motor Am., Inc.*, No. CV 16-00593-BRO (PJWx), 2016 U.S. Dist. LEXIS 160179, at *45 (C.D. Cal. Nov. 14, 2016) (no reliance where plaintiffs "failed to establish that they were aware of the alleged misrepresentations at the time they purchased their vehicles.").

As best Defendants can tell, Plaintiffs are actually alleging that, because a certain number of non-Edison test results have now been voided, Defendants must have known at the time that these tests were "unreliable."  These allegations simply fail to move Plaintiffs' pleading from "possibility" to "plausibility."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009).  Plaintiffs do not plead any facts to show that Defendants knew at the time that non-Edison tests were performed that they were "unready" or "unreliable."  Nor do Plaintiffs allege any facts tending to negate the obvious alternative explanation

for Theranos' non-Edison tests:  Theranos intended to offer accurate blood testing services that extended beyond the Edison device, but problems in the execution of its clinical lab services led Theranos, out of an abundance of caution, to void a portion of its test results regardless of the clinical analyzer that was used to process the blood sample.

By alleging that subsequent concerns with some of Theranos' tests prove that Defendants knew, at the time they were sold, that tests performed on non-Edison equipment were "unreliable," Plaintiffs are impermissibly attempting to plead "fraud by hindsight." *See, e.g.*, *In re Herbalife Sec. Litig.*, CV 95-400 SVW (GHKx), 1996 U.S. Dist. LEXIS 11484, at *11 n.4 (C.D. Cal. Jan. 24, 1996) ("'Fraud by hindsight' denotes the fallacious argument that when a firm 'bathes itself in a rosy light' and then later 'discloses that things are less than rosy,' 'the difference ***must be*** attributed to fraud.'"). That cannot save the non-Edison Subclass's claims.

In sum, Plaintiffs' amendments in the SAC focus on the alleged "true purpose" of Theranos' Edison testing—research and development for the Edison—and alleged affirmative misrepresentations about Theranos' abilities to test small samples.  But they do nothing to resurrect any of the dismissed claims brought on behalf of Plaintiffs and putative class members who are not in the Edison Subclass.  The Court should once again dismiss those claims with prejudice.

## III.   THE EDISON SUBCLASS CLAIMS GROUNDED IN FRAUD DO NOT MEET RULES 8 OR 9

Notwithstanding the additional allegations in the SAC regarding the Edison Subclass, the Court still should dismiss the Edison Subclass's claims premised on misrepresentations (the ACFA, common-law fraud, negligent misrepresentation, battery and medical battery, California statutory, and RICO claims) for failure to comply with Rules 8 and 9(b).  The Court previously dismissed under Rule 9(b) the ACFA and common-law fraud claims to the extent they were based on affirmative misrepresentations, because Plaintiffs had failed to adequately demarcate the conduct

1    attributed to each Defendant.  Dkt. 139 at 12.  Although Plaintiffs attempt in their SAC

2    to ascribe conduct to individual defendants, they do not cure the glaring deficiencies in

3    their fraud pleading.

4         There is no dispute that the majority of claims in the SAC require proof of fraud

5    or sound in fraud, and therefore are subject to Rule 9(b).  *See, e.g.*, *Lorona v. Ariz.*

6    *Summit Law Sch.*, *LLC*, 188 F. Supp. 3d 927, 935 (D. Ariz. 2016) (applying Rule 9(b) to

7    the ACFA); *Adelman v. Rheem Mfg. Co.*, No. 2:15-cv-00190 JWS, 2015 U.S. Dist.

8    LEXIS 107265, at *16 (D. Ariz. Aug. 14, 2015) (noting that "Rule 9(b)'s particularity

9    requirement applies to state law fraud causes of action brought in federal court");

10   *Howard v. JPMorgan Chase Bank, N.A.*, No. CV12-0952-PHX DGC, 2012 U.S. Dist.

11   LEXIS 178035, at *6 (D. Ariz. Dec. 17, 2012) ("A claim for negligent

12   misrepresentation must meet the particularity requirements of Rule 9(b)."); *Pfau v.*

13   *Mortenson*, 858 F. Supp. 2d 1150, 1155-56 (D. Mont. 2012) ("All RICO claims

14   involving fraud must be alleged with particularity under Rule 9(b)") *aff'd*, 542 Fed.

15   Appx. 557 (9th Cir. 2013); *Lima v. Gateway, Inc.*, 710 F. Supp. 2d 1000, 1006-07 (C.D.

16   Cal. 2010) (Rule 9 applies to UCL, FAL, and CLRA claims when grounded in fraud).

17        Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances

18   constituting fraud or mistake shall be stated with particularity."  To meet this

19   requirement, the complaint "must specify the time, place, and content of any false or

20   misleading statements and explain why the statements were false or misleading when

21   made."  *Osher v. JNI Corp.*, 256 F. Supp. 2d 1144, 1152 (S.D. Cal. 2003).  A plaintiff

22   must set forth "with particularity the time, place, and manner of each act of fraud, plus

23   the role of each defendant in each scheme."  *Lancaster Cmty. Hosp.*, 940 F.2d at 405.

24   And the plausibility requirements inherent in Rule 8 still apply.  *Iqbal*, 556 U.S. at 687.

25        Plaintiffs have sought to plead affirmative misrepresentations through allegations

26   concerning Theranos' advertising campaign, but this campaign alone does not satisfy

27   Rule 8 or 9.  The advertising allegations fail to support any conclusion other than the

28   simple assertion that Theranos' advertisements (like all advertisements) encouraged

members of the public to purchase its product.  The advertising, while promoting Theranos' fingerstick blood draws, says nothing about which clinical analyzer ran patient blood samples—Edison or commercial devices.  *See* SAC ¶¶ 79-119.  Plaintiffs therefore cannot allege that advertising about the efficacy *of the Edison device* was material to their decision to purchase Theranos testing.  The advertising pled by Plaintiffs is thus far too general to satisfy Rule 9(b), let alone to support their theory of the research and development "purpose" of the Edison.

Moreover, Plaintiffs allege the essential purpose of Theranos' "tiny blood draws" was not "legitimate blood testing," SAC ¶¶ 448, 604, but rather the research and development of the Edison, an "unready" technology, SAC ¶¶ 449, 605.  Plaintiffs' theory, however, is not plausible under *Twombly* and *Iqbal*.  Plaintiffs ignore that most retail patients had doctors who received the lab results and could construe them, and that providing retail patients and doctors inaccurate test results cannot be a successful business strategy.  Doctors that saw inaccurate Theranos test results would have sent their patients to other laboratories the next time blood testing was required and would have encouraged their colleagues to do the same, not to mention complain publicly. Plaintiffs' core theory presumes that this massive scheme would go undetected (by patients, by doctors) and would in fact result in Theranos achieving traction in a regulated and competitive industry, all the while it continued to conceal (successfully) that its test results were wholly unreliable.

Plaintiffs' theory also presumes that Theranos plausibly believed it could compete in the lab testing space while knowingly offering unreliable blood tests whose unreliability no retail patient or doctor would ever discover or complain about.  As such, Plaintiffs' theory of the case for the Edison Subclass flouts common sense.  It fails to cross the line from "conceivable" to "plausible," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and is the type of baseless allegation Rule 8 was designed to bar.

1
2
3
4

**IV.    PLAINTIFFS' BATTERY AND MEDICAL BATTERY CLAIMS FAIL BECAUSE THE ALLEGATION THAT THE "ESSENTIAL PURPOSE" OF THERANOS TESTING WAS RESEARCH AND DEVELOPMENT IS IMPLAUSIBLE, CONCLUSORY, AND NOT SUPPORTED UNDER CALIFORNIA OR ARIZONA LAW**

5        Plaintiffs have added allegations to their SAC in a last-ditch effort to support

6   their battery and medical battery theories for the Edison Subclass.  But those allegations,

7   even when viewed charitably to Plaintiffs, demonstrate that they have at most stated an

8   informed consent claim—sounding in negligence—against Theranos, and Theranos

9   alone, on behalf of the Edison Subclass.[4]

10       First, the purported Edison Subclass's allegations against Defendants Holmes and

11  Balwani are deficient.  Plaintiffs do not connect the two individuals to the testing itself,

12  or to the alleged concealment of the "true purpose" of the "tiny blood draws."  As for

13  Theranos, the law does not allow for a battery claim on the facts Plaintiffs allege.  In

14  *Cobbs v. Grant*, whose holding was adopted by the Arizona Supreme Court, the

15  California Supreme Court considered the issue of informed consent to medical

16  procedures and delineated the line between causes of action that sounded in battery and

17  ones that sound in negligence.  502 P.2d 1 (Cal. 1972); *see also Duncan v. Scottsdale*

18  *Med. Imaging, LTD.*, 70 P.3d 435 (Ariz. 2003).  *Cobbs* explained that a battery action

19  lies in cases "[w]here a doctor obtains consent of the patient to perform one type of

20  treatment and subsequently performs a substantially different treatment for which

21  consent is not obtained."  502 P.2d at 7.  However, an action "should be pleaded in

22  negligence" when the doctor performs a treatment to which the plaintiff consents but

23  fails to disclose pertinent information about the treatment.  *Id*. at 7-8; *see also Saxena v.*

24  *Goffney*, 71 Cal. Rptr. 3d 469, 484-85 (Cal. Ct. App. 2008).

25       Here Plaintiffs admit they consented to the act of having their blood drawn.

26  Under a battery cause of action, Plaintiffs must allege more than that their consent was

27

28  [4]      Plaintiffs' negligence claim, however, remains subject to *Twombly* and *Iqbal*'s plausibility requirements.  As discussed *supra* in Sections II and III and *infra* in Section VII, Plaintiffs' allegations still fail these threshold screens.

1   uninformed, because "battery and lack of informed consent are separate causes of

2   action." *Saxena*, 71 Cal. Rptr. 3d at 475.  A claim based on lack of informed consent

3   sounds in negligence and is not battery.  *See id.*; *see also Duncan*, 70 P.3d at 439 ("The

4   inconsistent use of ['informed consent'] terminology [by Arizona courts] has blurred the

5   distinction between 'lack of informed consent,' which should be pled in negligence, and

6   'lack of consent,' which should be pled in battery.").  Plaintiffs have sought to allege

7   that their consent was vitiated by fraud or misrepresentation.  *See, e.g.*, SAC ¶¶ 183-

8   207; 245-49; 307-10; 344-48.  But in reality, Plaintiffs are attempting to recast an

9   informed consent theory as battery.

10       California law is clear that if the "essential character" of a treatment is

11  therapeutic, such as the obtaining of blood test results for diagnostic purposes, consent

12  is not vitiated even if the plaintiff was induced to consent to the treatment via

13  "deception."  *See Freedman v. Superior Court*, 363 Cal. Rptr. 1 (Cal. Ct. App. 1989).

14  As *Freedman* emphasized (and this Court noted, *see* Dkt. 139 at 23 n.68), the term

15  "therapeutic" characterizes "drugs or treatments which are intended to affect treatment

16  and cure, as distinguished from applications which do not have that objective.  That the

17  intent was misguided or the utilization of the particular therapy inappropriate does not

18  detract from the characterization of the application as 'therapeutic.'"  *Id*. at 4.

19       Further, in *Daum v. SpineCare Med. Grp.*, the California Court of Appeal

20  rejected a proposed battery instruction arising out of the surgical implantation of a

21  "fixation device" in the plaintiff's back.  61 Cal. Rptr. 2d 260, 263 (Cal. Ct. App. 1997).

22  The plaintiff argued that, although he consented to the use of the fixation device, he was

23  not informed that the device was considered "investigational or experimental" by the

24  FDA.  *Id*.  The appeals court rejected the plaintiff's battery claim, noting that he "agreed

25  to surgery using the [fixation device]," and that this surgery was performed.  *Id* at 276.

26  The alleged failure of defendants to inform him of the "investigational status of the

27  device" thus sounded in negligence, not battery.  *Id*.  Taken together, these cases stand

28  for the proposition that consent is not vitiated if the "essential character" of the

1  treatment is a therapeutic one, even if the procedure is in development or is being

2  researched.

3        The Restatement (Second) of Torts § 892A is also instructive, stating that consent

4  must be to "particular conduct, or substantially the same conduct."  Here, Plaintiffs

5  consented to blood draws at Walgreens locations to obtain results for particular blood

6  tests they or their doctor requested for therapeutic purposes.  They received both the

7  blood draw and the results.  The actionable conduct is the **blood draw**.  Even accepting

8  their allegations as true (*i.e.*, that Theranos purportedly concealed an R&D purpose to

9  the blood draws), Plaintiffs plead no more than that they consented to the "particular

10  conduct" of having their blood drawn:  the blood draw, even if it had a hidden research

11  and development purpose, is "substantially the same conduct," because the hidden

12  purpose is not "conduct."

13        This is not a case of Plaintiffs' "substantial mistake concerning the nature of the

14  invasion or the extent of harm to be expected from it," which is covered by Restatement

15  (Second) of Torts § 892B (dealing with consent given under "mistake, misrepresentation

16  or duress"); Plaintiffs have not alleged that.  Nor could Plaintiffs plead mistake about

17  the "nature of the invasion," because they saw and consented to the particular invasive

18  blood draw (fingerstick or venous) they received.  Plaintiffs' theory cannot be equated

19  with "substantial mistake" because the omission of information about a "research"

20  purpose sounds in negligence under *Moore*, not battery, as Plaintiffs' theory alleges.

21        At most, Plaintiffs have pled that they were not fully informed about the status of

22  the Edison device as one that was "in development."  Those allegations, if plausible,

23  would sound in negligence, not battery.  *See Daum*, 61 Cal. Rptr. 2d at 276.  Under

24  California law, the failure of a physician to disclose "personal interests unrelated to the

25  patient's health, whether research or economic, that may affect the physician's

26  professional judgment . . . may give rise to a cause of action for performing medical

27  procedures without informed consent or breach of fiduciary duty."  *Moore v. Regents of

28  Univ. of Cal.*, 51 Cal. 3d 120, 129 (1990).  If Plaintiffs were right, any informed consent

action would be transmuted into a battery merely by a plaintiff's alleging a hidden "research" interest.  But that is not the law, and that ignores the careful delineation between negligence and battery that both the California and Arizona Supreme Courts have made.  *See Cobbs*, 502 P.2d at 7-8; *Duncan*, 70 P.3d at 439.  The Court should reject Plaintiffs' pleading artifice and dismiss the battery claim.

**V.   PLAINTIFFS' CALIFORNIA STATUTORY CLAIMS MUST BE DISMISSED FOR LACK OF STANDING, BECAUSE PLAINTIFF A.R. STILL FAILS TO PLEAD HIS CLAIMS WITH PARTICULARITY AND PLAINTIFFS HAVE FAILED TO PLEAD FACTS SHOWING THE NON-EDISON TESTS WERE UNRELIABLE AT THE TIME THEY WERE PERFORMED**

As this Court has held, the named Arizona plaintiffs do not have standing to assert claims under California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), Consumer Legal Remedies Act ("CLRA"), and California statutory deceit (Cal. Civ. Code §§ 1709-10).  *See* Dkt. 139 at 43-45.  And when a "representative plaintiff is lacking for a particular state, all claims based on that state's laws are subject to dismissal." *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1164 (N.D. Cal. 2009).   As a result, Plaintiffs' California claims rise and fall with the allegations of the lone California Plaintiff, A.R.

A.R., however, ***does not allege*** he received a "tiny blood draw" via fingerstick for testing on the Edison device.  *See* SAC ¶¶ 213-23.  Plaintiffs' California claims can therefore apply only to non-Edison testing received by California consumers.  These claims fail for all of the reasons described in Section II, *supra*, in addition to the reasons below.

First, Plaintiffs have failed to address the Rule 9(b) problems that caused this Court to dismiss Plaintiff A.R.'s California claims.  *See* Dkt. 139 at 50.  Rule 9(b) applies to Plaintiff A.R.'s UCL, FAL, CLRA, and California statutory deceit claims. *See In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices & Prods. Liab. Litig.*, 890 F. Supp. 2d 1210, 1217 (C.D. Cal. 2011) (fraud was an essential element of UCL, FAL, and CLRA claims and these claims were thus subject to Rule 9(b) because

plaintiffs alleged Toyota knew of a braking defect in certain vehicles but nevertheless advertised these vehicles as safe); *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1305 (S.D. Cal. 2003) (applying Rule 9(b) to California statutory deceit claim).

Despite the Court's ruling, A.R. added only ***one sentence*** to his allegations in the SAC to fix this Rule 9 problem.  The FAC notes A.R. purchased tests "[o]n or around June 19, 2015" at a Walgreens store in Palo Alto, California, and that he "relied on the representations in Defendants' materials regarding the reliability of Defendants' services."  FAC ¶¶ 161-162. The SAC makes the same allegations and adds only that A.R.'s "blood was drawn at this Walgreens store" and that the materials he relied on included, "he specifically recalls, leaflets that he had seen in the Walgreens store before having his blood drawn."  SAC ¶¶ 210-211.

There are many problems with this one added sentence.  First, A.R. alleges that he was "referred to Theranos by his medical care provider."  SAC ¶ 211.  This puts into doubt whether A.R. relied materially on Defendants' representations at all.  In addition, merely adding that A.R. relied on "leaflets"—after making the decision in consultation with his doctor to obtain Theranos testing—does nothing to satisfy Rule 9.  Whose leaflets were these?  Theranos or Walgreens?  What did they say?  Was anything in the leaflets false?  Plaintiffs make only one other reference in their SAC (at ¶ 89) to a "leaflet," but do not allege they are the same leaflets.  Nonetheless, even assuming they are, these leaflets touted "the blood tests that just need a tiny sample" and provided the location of the local Walgreens where a consumer could obtain Theranos testing.  SAC ¶ 89.  But A.R. ***did not receive*** a "tiny" fingerstick draw; he received a traditional venipuncture draw.  SAC ¶ 213.  A.R. could not have been misled by, nor relied on, any representation about fingerstick testing in the leaflet, which, in any case, Plaintiffs do not even allege was false.  A.R.'s California claims, grounded in fraud, must be dismissed.

District courts in this circuit have repeatedly held that, to be liable under California's UCL, FAL, and CLRA, a defendant must have been aware of, or had reason

to know, facts which were concealed from the plaintiff, or of which the plaintiff was not made aware.  *See Smith v. LG Elecs. U.S.A., Inc.*, No. C 13-4361 PJH, 2014 U.S. Dist. LEXIS 31577, at *36 (N.D. Cal. Mar. 11, 2014) (dismissing UCL, FAL, and CLRA causes of action in a purported class action based on allegedly defective washing machines when the plaintiff "alleged no facts—as opposed to mere conclusory assertions—that defendants were aware of or had any reason to know of the excessive noise and/or vibration at the time of sale, which is a requirement under the UCL, FAL, and CLRA.").  Here, the UCL, FAL, and CLRA claims thus also fail because Plaintiffs do not allege that Defendants concealed from Plaintiffs their knowledge, ***at the time that testing on non-Edison machines was performed***, that this testing was unreliable.  Any post-hoc reasoning—allegations, for instance, concerning test results that were voided years after the tests were purchased by consumers or subsequent agency action—does not establish Defendants' scienter at the time of sale.

Plaintiffs' statutory deceit claim under California Civil Code § 1709 *et. seq.* fails for this same reason, because the statute requires that Defendants have the requisite intent at the time of the sale.  *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1146 (9th Cir. 2012) (rejecting arguments that a defendant's alleged omission of information about a design defect in its products amounted to violations of the CLRA, California fraud, and California statutory deceit statutes, because "the fraud and deceit statutes have an intent requirement" and "[p]laintiffs must show that [defendant] was aware of the alleged defect at the time" defendants' products were sold).

Plaintiff A.R.'s deficient allegations mean his California statutory claims also fail for a separate, but related, reason—A.R. cannot establish he relied on a misrepresentation or nondisclosure.  For a plaintiff to have standing under the UCL, FAL, and CLRA, the plaintiff must plead and prove reliance.  *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 969 (S.D. Cal. 2012) ("For fraud-based claims under [the UCL, FAL, and CLRA] the named Class members must allege actual reliance to have standing.").  Nothing in the SAC supplies

1   this necessary ingredient of A.R.'s California statutory claims.  As discussed above,

2   Plaintiff A.R. states in a conclusory manner that he relied on representations in

3   "marketing" including "leaflets," but says no more.  To plead and prove "actual

4   reliance," A.R. must show "the defendant's misrepresentation or nondisclosure was an

5   immediate cause of the plaintiff's injury-producing conduct."  *Tracton v. Viva Labs,*

6   *Inc.*, No. 16-cv-2772-BTM-KSC, 2017 U.S. Dist. LEXIS 151178, at *17 (S.D. Cal. Sep.

7   18, 2017) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009)).  But A.R. has

8   not (and cannot) allege that Defendants' misrepresentations were the "immediate cause"

9   of his decision to purchase Theranos testing, because he has not pled any facts which

10  would establish he was exposed to any such misrepresentation.

11      Plaintiff A.R.'s California statutory deceit claim suffers from this same vital

12  deficiency, as "[a]n essential element in recovery for deceit is proof of the plaintiff's

13  justifiable reliance on the defendant's fraudulent representations."  *Slakey Bros.*

14  *Sacramento, Inc. v. Parker*, 71 Cal. Rptr. 269, 271 (Cal. Ct. App. 1968).  Absent this

15  reliance, A.R.'s statutory deceit claim falls short.

16      Because Plaintiffs' California statutory claims must be dismissed as to the non-

17  Edison Plaintiffs for the reasons discussed above, and because no other named plaintiff

18  has standing to assert them, Plaintiffs' California statutory claims (Counts 10-13) must

19  be dismissed in their entirety.

20  **VI.  PLAINTIFFS' RICO CLAIM FAILS AS IT DOES NOT PLEAD AN
21       ENTERPRISE OR A LOSS TO PLAINTIFFS' BUSINESS OR PROPERTY**

22      Plaintiffs allege Defendants violated 18 U.S.C. § 1962(c), which "makes it

23  'unlawful for any person employed by or associated with any enterprise . . . to conduct

24  or participate . . . in the conduct of such enterprise's affairs through a pattern of

25  racketeering activity or collection of unlawful debt.'"  *In re Toyota Motor Corp.*

26  *Unintended Acceleration Mktg.*, 826 F. Supp. 2d 1180, 1202 (C.D. Cal. 2011) (quoting

27  18 U.S.C. § 1962(c)).  The elements of a section 1962(c) violation are the same as those

28  in a general civil RICO claim, which are:  "(1) conduct (2) of an enterprise (3) through a

pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's 'business or property.'" *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996).

### A.    Plaintiffs' RICO Claim Fails to Plead an Enterprise

The RICO Act encompasses two types of enterprises:  legal entities, and "association in fact" enterprises.  18 U.S.C. § 1961(4); *see also Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1053 (C.D. Cal. 2016).  An "association in fact" enterprise, which Plaintiffs purport to allege, SAC ¶ 521, is "a group of persons associated together for a common purpose of engaging in a course of conduct."  *Boyle v. United States*, 556 U.S. 938, 944 (2009) (internal quotations and citation omitted).  The Supreme Court has explained that an association-in-fact enterprise "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  *Id.* at 946.

Here, Plaintiffs have failed to allege adequately that the Defendants worked together to achieve a "common purpose."  Courts in this circuit have held that a plaintiff must demonstrate a common purpose beyond the defendants' pursuit of their own primary business activities.  *See, e.g., In re Jamster Mktg. Litig.*, No. 05-cv-0819 JM (CAB), 2009 U.S. Dist. LEXIS 43592, at *16 (S.D. Cal. May 22, 2009) (no common purpose pled).   Plaintiffs allege the "common purpose" of Defendants' purported enterprise was to "perpetuate fraud."  But stripped of this conclusory allegation, the SAC merely alleges that Walgreens and Theranos entered into a commercial relationship to further their own separate business interests—as a pharmacy and laboratory service provider.[5]

Plaintiffs' allegations resemble RICO claims dismissed in two other cases in this circuit.  In *Shaw v. Nissan North America, Inc.*, the court considered a putative

---

[5]    Walgreens' participation in the alleged enterprise is necessary.  A RICO enterprise cannot consist of only a corporation and its employees. *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005).

consumer class action arising out of allegations that Nissan, together with its supplier

BorgWarner Inc., conspired to "design, manufacture, distribute, test, and sell" vehicles

equipped with a defective timing chain tensioner system (a component in a vehicle's

engine) manufactured and supplied by BorgWarner.  220 F. Supp. 3d at 1050-54.

Plaintiffs alleged that Nissan and its supplier formed an association-in-fact enterprise to

conceal this component's defects.  *Id*. at 1051.  The court dismissed the RICO claim,

concluding that plaintiffs failed to demonstrate a common purpose, and instead merely

described an association of entities in a manner related to their own business activities.

*Id*. at 1057.

This same conclusion was reached in an earlier case in which plaintiffs asserted

that defendant Toyota Motor Corporation, together with its subsidiaries and

manufacturers, formed an enterprise with the common purpose of "design[ing],

build[ing], and sell[ing] defective Toyota vehicles prone to SUA [sudden unintended

acceleration]."  *In re Toyota Motor Corp.*, 826 F. Supp. 2d at 1199.  Plaintiffs alleged

that this association-in-fact enterprise sought to sell these "unreasonably dangerous"

Toyota vehicles through false statements of fact and material omissions.  *Id*.  As in

*Shaw*, the court dismissed this claim, noting that plaintiffs had only alleged that the

defendants were "associated in a manner directly related to their own primary business

activities," which was insufficient to state a section 1962(c) claim.  *Id*. at 1202.

This Court has already expressly dismissed two related claims with prejudice—

conspiracy to commit fraud and RICO conspiracy claims—holding that Plaintiffs could

not plausibly allege there was an express or tacit agreement between Theranos and

Walgreens for an unlawful purpose.  *See* Dkt. 139 at 37-40.  "Courts have

overwhelmingly rejected attempts to characterize routine commercial relationships as

RICO enterprises," *Gomez v. Guthy-Renker, LLC*, No. EDCV 14-01425 JGB (KKx),

2015 U.S. Dist. LEXIS 90725, at *22 (C.D. Cal. July 13, 2015), and Plaintiffs have

alleged no more here.  As a result, Plaintiffs' RICO claim fails.

1

**B.      Plaintiffs Fail to Plead Injury to Their Business or Property**

2      Only injuries to "business or property" are actionable under RICO.  *Walker v.*

3  *Gates*, No. CV 01-10904 GAF (PJWx), 2002 U.S. Dist. LEXIS 27443, at *23 (C.D. Cal.

4  May 22, 2002).  These injuries must be tangible and "concrete."  *Canyon Cty. v.*

5  *Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008).  But as noted above, Theranos

6  has agreed to refund all Arizona consumers all monies they paid for Theranos testing.

7  Any other derivative financial losses purportedly suffered by the Arizona Plaintiffs are

8  simply not compensable.

9      It is well-settled that personal injury is not compensable under RICO.  *See Berg*

10  *v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990) ("We follow the Eleventh

11  Circuit and hold that, as a matter of law, personal injury, including emotional distress, is

12  not compensable under section 1964(c) of RICO.").  Plaintiffs, however, claim they

13  have been injured by alleged inaccurate testing, and they plead a variety of personal

14  injuries stemming from this testing, such as pain, emotional distress, stress, and anxiety.

15  *See, e.g.*, SAC ¶¶ 216-222 (Plaintiff A.R.), 236 (Plaintiff B.B.), 259 (Plaintiff B.P.), 274

16  (Plaintiff D.L.), 288 (Plaintiff L.M.), 300 (Plaintiff M.P.), 322 (Plaintiff R.C.), 337

17  (Plaintiff R.G.), 353-360 (Plaintiff S.J.), 374 (Plaintiff S.L.).

18      These are precisely the sorts of alleged injuries RICO does not redress.  For

19  example, one court has held that RICO does not permit recovery by individual smokers

20  for personal injuries, including medical expenses.  *Allman v. Phillip Morris, Inc.*, 865 F.

21  Supp. 665, 667-69 (S.D. Cal. 1994).  In *Allman*, plaintiffs sought to represent a class of

22  smokers who either had been prescribed, or may have been prescribed in the future, a

23  "Nicotine patch."  *Id.* at 667.  Plaintiffs claimed they were not seeking recovery for

24  "personal" injuries such as "damages for their addiction, for pain and suffering, for fear

25  of cancer," *id.* at 668, but instead only their "out-of-pocket expenses . . . incurred in

26  treating their addictions, specifically the cost of the Nicotine Patch and related medical

27  expenses."  *Id.*  The court rejected this argument, noting that the core injury was

28  personal and that "pecuniary consequences of personal injuries are not recoverable

1   under RICO," which Congress enacted to "thwart the organized criminal invasion and

2   acquisition of legitimate business enterprises and property." *Id*.  Other cases in this

3   circuit have reached the same conclusion. *See, e.g.*, *City & Cty. of S.F. v. Philip Morris,*

4   *Inc.*, 957 F. Supp. 1130, 1139 (N.D. Cal. 1997); *Stationary Eng'rs Local 39 Health &*

5   *Welfare Tr. Fund v. Philip Morris, Inc.*, No. C-97-01519 DLJ, 1998 U.S. Dist. LEXIS

6   8302, at *16 (N.D. Cal. Apr. 30, 1998).

7        Just so here.  Any alleged harm by Plaintiffs that is not reimbursed through the

8   Arizona Consent Decree would flow from purported personal injuries, which are not

9   recoverable under RICO.  The Arizona Plaintiffs' RICO claims should thus be

10  dismissed in their entirety.

11  **VII.   PLAINTIFFS HAVE FAILED TO AMEND THEIR NEGLIGENCE**
            **CLAIM TO ADDRESS THE GROUNDS OF THE DISMISSAL OF THIS**
12          **CLAIM IN THEIR FIRST AMENDED COMPLAINT**

13       This Court previously dismissed Plaintiffs' negligence claim under Rule 8, on the

14  ground that it was, for the most part, based on allegations that would support a negligent

15  misrepresentation claim. *See* Dkt. 139 at 25-26.  This Court admonished Plaintiffs that,

16  in repleading their negligence claim, it must not be based on allegations of

17  misrepresentations or omissions, which are the grist of a negligent misrepresentation

18  claim. *Id*. at 26.  Plaintiffs have not cured this fundamental deficiency.

19       The gravamen of the SAC remains the misrepresentations and omissions

20  Plaintiffs allege induced them to purchase Theranos testing services.  Outside this, and a

21  number of conclusory statements, Plaintiffs have not pled facts supporting a negligence

22  claim for the non-Edison Subclass.  Plaintiffs fail to plead facts showing that tests not

23  being run on Theranos' proprietary Edison device (which were in some cases

24  outsourced to other labs entirely) were "unreliable," or plead how Theranos breached a

25  duty to the non-Edison Subclass, which was never told or promised which analyzer

26  would be used to conduct patient testing (the same can be said for all consumers).  *See*

27  Section II, *supra*.  And while Plaintiffs have added conclusory allegations of sinister

28  motivations for Theranos' Edison-based testing, these allegations fail to satisfy the

plausibility requirements of Rule 8.  *See Iqbal*, 556 U.S. at 687; *see* Section III, *supra*.

Any amendment with respect to the Edison Subclass reverts to some type of alleged

misrepresentation or omission made by Defendants, which runs afoul of this Court's

ruling in previously dismissing the negligence cause of action.  Plaintiffs' negligence

claim thus continues to fall short of Rule 8's requirements, and must be dismissed.

## VIII.   PLAINTIFFS' UNJUST ENRICHMENT CLAIM IS NOT ACTIONABLE UNDER CALIFORNIA LAW AND MUST FAIL IN LIGHT OF THE ARIZONA CONSENT DECREE

To the extent Plaintiffs seek damages for "unjust enrichment," this claim has

historically not been actionable under California law.  *See Graham-Sult v. Clainos*, 756

F.3d 724, 750 (9th Cir. 2014) (no cause of action for unjust enrichment in California).  It

is a legally recognized claim in Arizona.  However, the Arizona Plaintiffs' unjust

enrichment claims here are also not viable.

To prevail on a theory of unjust enrichment under Arizona law, a plaintiff must

establish that "(1) plaintiff conferred a benefit upon the defendant; (2) defendant's

benefit is at plaintiff's expense; and (3) it would be unjust to allow defendant to keep the

benefit."  *USLife Title Co. of Ariz. v. Gutkin*, 732 P.2d 579, 584 (Ariz. Ct. App. 1986).

As described above, Theranos entered into a consent decree with the AAG, in which the

Company agreed to reimburse Arizona consumers the total amount they paid for all

Theranos blood testing services—regardless of whether the test results were voided.

Consequently, because the Arizona Plaintiffs cannot show it would be "unjust to allow

defendant[s]" to keep a benefit (money) they no longer hold, their unjust enrichment

claim fails.  *See Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 922 (N.D. Ill. 2013)

(no unjust enrichment when defendant tendered more than a full refund of the purchase

price of a hair treatment).

## IX.   PLAINTIFFS' BREACH OF CONTRACT CLAIMS MUST FAIL AS PLAINTIFFS HAVE NOT ADEQUATELY PLED THE TERMS OF THEIR ALLEGED CONTRACTS

The Court held that Plaintiffs failed to plead a breach of contract claim in their

FAC.  *See* Dkt. 139 at 30-31.  Plaintiffs' SAC does not rectify the deficiencies found by

1   the Court, and accordingly, their claim still fails.

2       Under both California and Arizona law, a plaintiff seeking to bring a breach of

3   contract claim must establish the existence of a contract.  *See, e.g.*, *First Am. Title Ins.*

4   *Co. v. Johnson Bank*, 372 P.3d 292, 297 (Ariz. 2016) (identifying the elements of a

5   breach of contract claim as "(1) the existence of a contract; (2) breach; and (3) resulting

6   damages") (quoting *Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975)); *see also Oasis*

7   *W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. Ct. App. 2011) ("[T]he elements

8   of a cause of action for breach of contract are (1) the existence of the contract, (2)

9   plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4)

10  the resulting damages to the plaintiff.").

11      "It is a well-established rule that an advertisement generally does not constitute

12  an offer." *Frezza v. Google Inc.*, No. 5:12-cv-00237-RMW, 2013 U.S. Dist. LEXIS

13  57462, at *7 (N.D. Cal. Apr. 22, 2013); *see also Sun City Pet Mkt., LLC v. Honest*

14  *Kitchen, Inc.*, No. CV-17-00121-PHX-DGC, 2017 U.S. Dist. LEXIS 78278, at *7 (D.

15  Ariz. May 23, 2017) (advertisements "are 'not ordinarily intended or understood as

16  offers to sell . . . even though the terms of suggested bargains may be stated in some

17  detail.") (quoting Restatement (Second) of Contracts § 26 cmt b (1981)).  Indeed, one of

18  the reasons that advertisements do not generally constitute offers is that advertisements

19  leave the terms of a potential contract incomplete.  *Kearney v. Equilon Enters., LLC*, 65

20  F. Supp. 3d 1033, 1037 (D. Or. 2014).  To have an enforceable contract, there must be

21  "sufficient specification of terms so that the obligations involved can be ascertained."

22  *Rogus v. Lords*, 804 P.2d 133, 135 (Ariz. Ct. App. 1991); *see also Sateriale v. R.J.*

23  *Reynolds Tobacco Co.*, 697 F.3d 777, 789 (9th Cir. 2012) (under California law, a

24  contract "must be sufficiently definite" so as to allow a court to ascertain the parties'

25  obligations and determine whether a breach has occurred).  For example, an

26  advertisement can constitute an offer if it "is 'clear, definite, and explicit, and leaves

27  nothing open for negotiation." *Kearney*, 65 F. Supp. 3d at 1038 (citation omitted).

28  That, however, is not what Plaintiffs alleged.

1    Plaintiffs allege an advertising campaign by Theranos that encouraged consumers

2   to consider Theranos for their blood-testing needs.  They have also set forth examples of

3   advertisements touting Theranos' ability to perform tests on small samples.  *See* SAC ¶¶

4   79-89.  These are neither contracts nor contractual terms—for the Edison or non-Edison

5   Subclasses.  Many of these advertisements merely note that Theranos could run blood

6   tests on "tiny" samples, or provide information on where an individual could receive a

7   Theranos test.  *See, e.g.*, SAC ¶¶ 87-93.  The essential terms of a contract are not

8   contained in the alleged advertisements.  Because Plaintiffs have merely set forth a

9   scattershot description of different advertisements without anything close to the required

10  contractual elements, they have failed to allege an enforceable contract.  *See, e.g.*, *In re*

11  *Estate of Kampen,* 135 Cal. Rptr. 3d 410, 425 (Cal. Ct. App. 2011) (noting that "a

12  contract requires an offer and acceptance"); *see also Tabler v. Indus. Comm'n of Ariz.*,

13  47 P.3d 1156, 1158 (Ariz. Ct. App. 2002) (noting that an enforceable contract requires

14  the existence of an offer, acceptance, and consideration).[6]

15    Plaintiffs do not—and cannot—allege the required elements of a breach of

16  contract claim.  The Court should dismiss the claim with prejudice.

17                                **CONCLUSION**

18    For the foregoing reasons, the Court should dismiss Plaintiffs' SAC with

19  prejudice.

20

21  DATED:  December 1, 2017              Respectfully submitted,

22                                       WILMER CUTLER PICKERING
                                         HALE AND DORR LLP
23

24                                  By:  */s/ Christopher T. Casamassima*
                                         Christopher T. Casamassima
25

26

---

27  [6]    Moreover, the Edison Subclass cannot complain of a breach of the advertisement

28  "contract" describing "tiny blood draws" because they, in fact, received them.  And the
    non-Edison Plaintiffs, who did not receive the "tiny blood draws" described in these
    advertisements, consented to venous draws.

Christopher T. Casamassima
Michael A. Mugmon
Matthew D. Benedetto
Katie Moran
WILMER CUTLER PICKERING
HALE AND DORR LLP

*Counsel for Defendant Theranos, Inc.*

Stephen C. Neal
Kathleen H. Goodhart
COOLEY LLP

*Counsel for Defendant Elizabeth Holmes*

Stephen M. Rummage
Ben Byer
DAVIS WRIGHT TREMAINE LLP

*Counsel for Defendant Ramesh Balwani*

1

**<u>CERTIFICATE OF SERVICE</u>**

2

3        I hereby certify that on December 1, 2017, I electronically transmitted the

4    foregoing document to the Clerk's Office using the CM/ECF System for filing and

5    transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

6

7

                            By:   _/s/  Christopher T. Casamassima_
8                                   Christopher T. Casamassima

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28