1  Christopher T. Casamassima (Admitted *Pro Hac Vice*)
   chris.casamassima@wilmerhale.com
2  Michael A. Mugmon (Admitted *Pro Hac Vice*)
   michael.mugmon@wilmerhale.com
3  Matthew D. Benedetto (Admitted *Pro Hac Vice*)
   matthew.benedetto@wilmerhale.com
4  Katie Moran (Admitted *Pro Hac Vice*)
   katie.moran@wilmerhale.com
5  WILMER CUTLER PICKERING
     HALE AND DORR LLP
6  350 South Grand Avenue, Suite 2100
   Los Angeles, CA 90071
7  Telephone: +1 213 443 5300

8  *Counsel for Defendant Theranos, Inc.*

9  Stephen C. Neal (Admitted *Pro Hac Vice*)
   nealsc@cooley.com
10 Kathleen H. Goodhart (Admitted *Pro Hac Vice*)
   kgoodhart@cooley.com
11 COOLEY LLP
   3175 Hanover Street
12 Palo Alto, CA 94304
   Telephone: +1 650 843 5000
13
   *Counsel for Defendant Elizabeth Holmes*
14
15 Stephen M. Rummage (Admitted *Pro Hac Vice*)
   steverummage@dwt.com
   Ben Byer
16 benbyer@dwt.com (Admitted *Pro Hac Vice*)
   DAVIS WRIGHT TREMAINE LLP
17 1201 Third Avenue, Suite 2200
   Seattle, WA 98101-3045
18 Telephone: + 1 206 757 8136

19 *Counsel for Defendant Ramesh Balwani*

20              **UNITED STATES DISTRICT COURT**

21                  **DISTRICT OF ARIZONA**

22 | In re: | **No. 2:16-cv-2138-HRH** |
|        | **(Consolidated with)** |
23 | Arizona THERANOS, INC., | **No. 2:16-cv-2660-HRH** |
|  | **No. 2:16-cv-2775-HRH** |
24 | Litigation | **-and-** |
|  | **No. 2:16-cv-3599-HRH** |
25
26 |  | **ANSWER TO SECOND AMENDED** |
|  | **CONSOLIDATED CLASS ACTION** |
|  | **COMPLAINT BY THERANOS,** |
27 |  | **HOLMES AND BALWANI** |

28

Defendants Theranos, Inc. ("Theranos"), Elizabeth Holmes ("Holmes") and Ramesh Balwani ("Balwani," and, together with Theranos and Holmes, "Defendants"), by and through their undersigned counsel, hereby answer and respond as follows to the Second Amended Class Action Complaint for Violations of the Arizona Consumer Fraud Act; the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)) ("RICO"); California's Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.*; California's False Advertising Law, California Business & Professions Code §§ 17500, *et seq.*; California's Consumer Legal Remedies Act, California Civil Code §§ 1750 *et seq.*; California statutory deceit, California Civil Code §§ 1709-1710; and common law claims for fraud, battery, negligence, negligent misrepresentation, breach of contract, unjust enrichment, and medical battery causes of action ("Complaint") filed by Plaintiffs A.R., B.B., B.P., D.L., L.M., M.P., R.C., R.G., S.J., and S.L. ("Plaintiffs") in the above-captioned action ("Action").

Defendants deny each and every allegation in the Complaint, including without limitation allegations appearing in headings, subheadings, and footnotes, except as expressly admitted herein, and specifically deny that Plaintiffs are entitled to the relief sought in their Prayer for Relief.  Defendants reserve the right to amend and/or supplement this Answer.

**ANSWER TO SPECIFIC ALLEGATIONS**

**I.      INTRODUCTION**

**COMPLAINT ¶ 1**

Plaintiffs bring this Second Amended Consolidated Class Action Complaint against Defendants Theranos, Inc. ("Theranos"), Walgreens Boots Alliance, Inc. and Walgreen Arizona Drug Company (collectively, "Walgreens"), Elizabeth Holmes ("Holmes"), and Ramesh Balwani ("Balwani").

**ANSWER TO COMPLAINT ¶ 1**

No response is required to the allegations in Paragraph 1, which purports to

1    describe the complaint and the parties involved.

2    **COMPLAINT ¶ 2**

3        This class action lawsuit concerns a massive fraud perpetrated on hundreds of

4    thousands of consumers of Theranos testing services and the public, and battery

5    committed by Walgreens and Theranos against tens of thousands of consumers

6    subjected to so-called "tiny" blood draws under false pretenses.

7    **ANSWER TO COMPLAINT ¶ 2**

8        Defendants deny the allegations in Paragraph 2.

9    **COMPLAINT ¶ 3**

10       For years, Walgreens and Theranos marketed and sold blood testing services

11   they knew were unreliable, not ready-for-market, and failed to meet even basic

12   industry standards.  Walgreens and Theranos sold these services and administered the

13   corresponding blood draws primarily at numerous Walgreens pharmacies in Arizona

14   and California, and also at a few Theranos-owned Wellness Centers.

15   **ANSWER TO COMPLAINT ¶ 3**

16       Defendants admit Walgreens and Theranos entered into a contractual

17   relationship.  Defendants further admit that Theranos marketed and sold blood testing

18   services, and that pursuant to this offering, blood draws were administered at

19   Walgreens pharmacies in Arizona and California, and at stand-alone Theranos

20   Wellness Centers.  Defendants deny the remaining allegations in Paragraph 3.

21   **COMPLAINT ¶ 4**

22       With respect to the "tiny" blood draws in particular, the subjects agreed to

23   submit to these blood draws under false pretenses and substantially mistaken belief as

24   to their essential nature and purpose.  Defendants Walgreens and Theranos knowingly

25   and intentionally concealed vital information from consumers, their doctors, and the

26   public at large, including that the "Edison" "tiny" blood technology was, throughout

27   the time the "tiny" blood draws were being administered, still in-development, not

28   ready-for-market, and nowhere near in a position to serve the purpose of providing

reliable blood test results.  Walgreens and Theranos further embarked on a pervasive promotional campaign that misrepresented and clearly portrayed the "tiny" blood tests as being market-ready and serving the purpose of providing reliable blood test results. Simply put, the "tiny" blood draws that Theranos and Walgreens administered to these consumers were not intended by Theranos and Walgreens to provide, and could not serve the purpose of providing, reliable blood test results to the subjects (hereinafter, "legitimate blood testing").

**ANSWER TO COMPLAINT ¶ 4**

Defendants admit Walgreens and Theranos entered into a contractual relationship.  Defendants further admit that Theranos advertised its blood testing services, including its capillary (fingerstick) blood draws.  Defendants deny the remaining allegations in Paragraph 4.

**COMPLAINT ¶ 5**

With respect to both the Edison and non-Edison "tests," Defendants Walgreens, Theranos, Holmes and Balwani each concealed material information about the unreliability of all of the testing services, and about the grossly deficient nature of the testing facilities and equipment.

**ANSWER TO COMPLAINT ¶ 5**

Defendants deny the allegations in Paragraph 5.

**COMPLAINT ¶ 6**

Walgreens and Theranos also made pervasive misrepresentations, including through their broad marketing campaign, falsely touting the services as being market ready and reliable, meeting the highest standards of reliability, industry-leading in quality, and developed and validated under, and compliant with, federal guidelines.

**ANSWER TO COMPLAINT ¶ 6**

Defendants deny the allegations in Paragraph 6.

**COMPLAINT ¶ 7**

Walgreens and Theranos aggressively promoted and portrayed Theranos tests as

being ready-for-market, and encouraged consumers and their doctors to use and rely on them in making important health and treatment decisions, including, but not limited to, regarding such critical health and treatment matters as cancer, HIV, diabetes, kidney disease, and heart disease.

**ANSWER TO COMPLAINT ¶ 7**

Defendants admit that Theranos advertised Theranos testing services, which encouraged members of the public to consider Theranos testing services.  Defendants deny Plaintiffs' framing of these issues, and deny the remaining allegations in Paragraph 7.

**COMPLAINT ¶ 8**

In reality, as each of the Defendants contemporaneously knew but the consumers could not, Theranos tests were dangerously unreliable, had not been validated as advertised, and did not meet federal guidelines as advertised.  Multiple regulatory investigations and many thousands of voided tests now confirm this.

**ANSWER TO COMPLAINT ¶ 8**

Defendants deny the allegations in Paragraph 8.

**COMPLAINT ¶ 9**

With respect to the Edison technology in particular, each of the Defendants knew throughout the time the "tiny" blood draws were being administered—that the Edison technology was still in development, not ready-for-market, and nowhere near in a position to serve, and was not intended by Walgreens and Theranos to serve, the purpose of legitimate blood testing that the subjects believed to be the purpose of their blood draws.  Nevertheless, in a hurry to begin marketing and administering these "tiny" blood draws, and thereby assist in researching and developing the still-in-development technology, to advance the narrative that Theranos's "disruptive" technology had "revolutionized" the medical testing industry, and to woo and placate investors, potential investors, and co-investors by giving the false impression that they had a market-ready, breakthrough product, Walgreens and Theranos prematurely

marketed, sold, and administered, the "tiny" blood draws to tens of thousands of unwitting consumers who were, in essence, subjected to beta testing and product development research without their knowledge or consent—a course of conduct that would be wrong in any context but is shockingly improper and dangerous in the context of blood testing.

**ANSWER TO COMPLAINT ¶ 9**

Defendants deny the allegations in Paragraph 9.

**COMPLAINT ¶ 10**

Defendants' scheme started to unravel when various governmental agencies and others began investigating Theranos's "tests" and facilities.  After the Center for Medicare and Medicaid Services cited Theranos's Newark, California lab for numerous deficiencies in 2016, Theranos informed regulators that it voided "all" blood-testing results from the Edison devices.  Other investigations and reports have revealed numerous other serious deficiencies and problems regarding Theranos's tests (including beyond Edison), including the manipulation of test results, the dilution of blood samples used in testing, and deficiencies at both of Theranos's testing facilities. Numerous additional test results, in addition to the tens of thousands of voided Edison-device tests, have now been voided or belatedly "corrected" by Theranos, including results that were "corrected" several months (or even years) after the blood draws and tests were conducted and the results relied upon by the consumers.  Defendant Holmes, Theranos's founder and CEO, was banned from owning or operating a blood-testing business for at least two years.  Defendant Balwani, Theranos's second in command, was banned as well, and Theranos's license to operate a lab was revoked.  Continuing the fallout, Walgreens sued Theranos for breach of contract, and Theranos, Holmes, and Balwani were all sued by multiple investors for misrepresenting and concealing the truth about Theranos's technology and testing, and in particular regarding the readiness of the Edison technology.

1    **ANSWER TO COMPLAINT ¶ 10**

2            Defendants admit that Theranos' Newark, California laboratory was inspected

3    by the Centers for Medicare and Medicaid Services on multiple occasions, and, after

4    one survey in 2015, was cited for deficiencies in 2016.  Defendants further admit that

5    Theranos voided test results obtained via the Theranos Sample Processing Unit

6    ("TSPU").  Defendants further admit that Theranos engaged in limited voiding and

7    correcting of other tests not run on Theranos' proprietary analyzers.  Defendants admit

8    that Theranos, its former lab director, and Balwani entered into a settlement agreement

9    with CMS that resolved legal and regulatory proceedings between CMS and Theranos,

10   and that, pursuant to this settlement, Holmes and Balwani, among others, would not

11   operate or direct any laboratory subject to CLIA for two years.  Defendants admit

12   Theranos notified CMS it decided to close its CLIA laboratories and surrender the

13   associated CLIA certificates.  Defendants admit Walgreens and Theranos have settled

14   an action for breach of contract, and that Theranos, Holmes, and Balwani have been

15   named in other lawsuits, one of which has now been settled.  Defendants deny

16   Plaintiffs' characterization of the findings of the investigations and reports alleged by

17   Plaintiffs, and deny Plaintiffs' framing of the issues.  Defendants deny the remaining

18   allegations in Paragraph 10.

19   **COMPLAINT ¶ 11**

20           Before Defendants' scheme collapsed, hundreds of thousands of consumers,

21   including Plaintiffs, were deceived by Defendants' misconduct and paid for and were

22   subjected to Theranos "tests."  Defendants have failed to deliver the products and

23   services they promised and that their customers reasonably expected, and have

24   endangered their customers' health and well-being, the very thing they promised to

25   promote and protect.

26   **ANSWER TO COMPLAINT ¶ 11**

27           Defendants deny the allegations in Paragraph 11.

28

**COMPLAINT ¶ 12**

None of the consumers who obtained test results from Theranos received what they paid for and what they reasonably expected.  None of them received tests that they could reasonably rely on given the numerous problems alleged herein that have come to light.

**ANSWER TO COMPLAINT ¶ 12**

Defendants deny the allegations in Paragraph 12.

**COMPLAINT ¶ 13**

Moreover, the tens of thousands of consumers who submitted to the "tiny" blood draws (i.e., involving the finger-stick devices), including Plaintiffs B.P., R.C., and S.J. did so under false pretenses and substantially mistaken about the essential nature and purpose of those blood draws, and were all victims of battery.

**ANSWER TO COMPLAINT ¶ 13**

No response is required to Paragraph 13, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 13.

**COMPLAINT ¶ 14**

Worse yet, as a result of the unreliable and inaccurate Theranos test results, many consumers have been subjected to unnecessary or potentially harmful treatments, and/or have been denied the opportunity to seek treatment for treatable conditions.

**ANSWER TO COMPLAINT ¶ 14**

Defendants deny the allegations in Paragraph 14.

**COMPLAINT ¶ 15**

As described in further detail below, Plaintiffs, for themselves and all others similarly situated, (i.e., the members of the Class and Subclasses described and defined herein), bring this action for, inter alia, damages, restitution, punitive damages, statutory damages, and other monetary relief, and requiring Defendants to provide adequate notice to their customers, pursuant to the Arizona Consumer Fraud Statute A.R.S. §§ 44-1521 *et seq*.; California Business and Professional Code §§ 17200, *et*

ANSWER TO PLAINTIFFS' SECOND
AMENDED COMPLAINT

1  *seq.*; California Business and Professional Code §§ 17500, *et seq.*; California Civil

2  Code §§ 1750, *et seq.*; California Civil Code §§ 1709-1710; Civil RICO 18 U.S.C. §§

3  1962(c); and common law causes of action for fraud, negligent misrepresentation,

4  unjust enrichment, aiding and abetting fraud, battery, and medical battery.

5  **ANSWER TO COMPLAINT ¶ 15**

6       No response is required to the allegations in this paragraph, which purports to

7  describe the Complaint.  To the extent a response is required, Defendants deny the

8  allegations in Paragraph 15.

9              **II.     JURISDICTION AND VENUE**

10  **COMPLAINT ¶ 16**

11       This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

12  § 1332(d)(2) because at least one member of the Class is a citizen of a state that is

13  different from at least one of the Defendants and because the aggregate amount in

14  controversy exceeds $5,000,000 exclusive of costs and interest, and there are more

15  than 100 members in each of the proposed Class and Subclasses.

16  **ANSWER TO COMPLAINT ¶ 16**

17       No response is required to Paragraph 16, which consists of conclusions of law.

18  To the extent a response is required, Defendants lack knowledge or information of the

19  allegations in Paragraph 16 sufficient to form a belief as to their truth and therefore

20  deny them on that basis.

21  **COMPLAINT ¶ 17**

22       This Court has personal jurisdiction over Theranos, Walgreens, Holmes, and

23  Balwani because each of these Defendants has conducted business in the State of

24  Arizona, and because each Defendant has committed acts and omissions complained of

25  herein in the State of Arizona.

26  **ANSWER TO COMPLAINT ¶ 17**

27       No response is required to Paragraph 17, which consists of conclusions of law.

28

**COMPLAINT ¶ 18**

Venue as to Defendants is proper in this judicial district because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District. Venue is also proper because Defendants have conducted, and continue to conduct, business within this District.

**ANSWER TO COMPLAINT ¶ 18**

No response is required to Paragraph 18, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 18.

### III.    PARTIES

**COMPLAINT ¶ 19**

Plaintiff A.R. is a resident and citizen of San Jose, California and is using his initials to protect his privacy in this litigation.

**ANSWER TO COMPLAINT ¶ 19**

Defendants lack knowledge or information of the allegations in Paragraph 19 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 20**

Plaintiff B.B. is a resident and citizen of Chandler, Arizona, and is using her initials to protect her privacy in this litigation.

**ANSWER TO COMPLAINT ¶ 20**

Defendants lack knowledge or information of the allegations in Paragraph 20 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 21**

Plaintiff B.P. is a resident and citizen of Phoenix, Arizona and is using his initials to protect his privacy in this litigation.

**ANSWER TO COMPLAINT ¶ 21**

Defendants lack knowledge or information of the allegations in Paragraph 21 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 22**

Plaintiff D.L. is a resident and citizen of Maricopa, Arizona and is using her initials to protect her privacy in this litigation.

**ANSWER TO COMPLAINT ¶ 22**

Defendants lack knowledge or information of the allegations in Paragraph 22 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 23**

Plaintiff L.M. is a resident and citizen of Chandler, Arizona and is using her initials to protect her privacy in this litigation.

**ANSWER TO COMPLAINT ¶ 23**

Defendants lack knowledge or information of the allegations in Paragraph 23 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 24**

Plaintiff M.P. is a resident and citizen of Scottsdale, Arizona and is using his initials to protect his privacy in this litigation.

**ANSWER TO COMPLAINT ¶ 24**

Defendants lack knowledge or information of the allegations in Paragraph 24 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 25**

Plaintiff R.C. is a resident and citizen of Sun City West, Arizona and is using his initials to protect his privacy in this litigation.

**ANSWER TO COMPLAINT ¶ 25**

No response is required to Paragraph 25, as pursuant to Docket No. 186, Plaintiff R.C. has voluntarily dismissed his claims in this action, and pursuant to Docket No. 187, R.C. has thus been terminated as a plaintiff in this case.  To the extent a response is required, Defendants lack knowledge or information of the allegations in Paragraph 25 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 26**

Plaintiff R.G. is a resident and citizen of Gilbert, Arizona and is using his initials to protect his privacy in this litigation.

**ANSWER TO COMPLAINT ¶ 26**

Defendants lack knowledge or information of the allegations in Paragraph 26 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 27**

Plaintiff S.J. is a resident and citizen of Mesa, Arizona and is using her initials to protect her privacy in this litigation.

**ANSWER TO COMPLAINT ¶ 27**

Defendants lack knowledge or information of the allegations in Paragraph 27 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 28**

Plaintiff S.L. is a resident and citizen of Chandler, Arizona and is using his initials to protect his privacy in this litigation.

**ANSWER TO COMPLAINT ¶ 28**

Defendants lack knowledge or information of the allegations in Paragraph 28 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 29**

Defendant Theranos, Inc. ("Theranos") is based in Palo Alto, California. Theranos operates, or during the relevant time period operated, two laboratories: one in Newark, California, and another in Scottsdale, Arizona.  Predominantly in Walgreens pharmacies in Arizona and California, and also in a few Theranos-owned Wellness Centers in Arizona and California, Theranos, along with Walgreens, sold blood and other clinical testing services to individuals.

**ANSWER TO COMPLAINT ¶ 29**

Defendants answer that Theranos has its principal place of business in Newark, California.  Defendants admit that Theranos previously operated two laboratories:  one

in Newark, California, and another in Scottsdale, Arizona.  Defendants admit that
Theranos and Walgreens offered clinical lab testing services to the public through
Walgreens locations in Arizona and California, as well as in select stand-alone
Theranos Wellness Centers in these states.

**COMPLAINT ¶ 30**

According to reports, since 2013, Theranos has conducted 6.1 million
diagnostic tests.

**ANSWER TO COMPLAINT ¶ 30**

Defendants lack knowledge or information regarding purported unnamed
"reports" in Paragraph 30 and therefore deny the allegations in Paragraph 30 on that
basis.

**COMPLAINT ¶ 31**

Defendant Walgreens Boots Alliance, Inc., of Deerfield, Illinois, is a global
pharmacy led health and well-being enterprise, which, among other segments, operates
the Walgreens retail pharmacy chain in the United States.  Defendant Walgreen
Arizona Drug Company, an Arizona corporation, is a wholly-owned subsidiary of
Walgreens Boots Alliance, Inc. involved in operating Walgreens retail stores in
Arizona.  Walgreens Boots Alliance, Inc. and Walgreen Arizona Drug Company are
referred to collectively herein as "Walgreens."  In numerous Walgreens pharmacies in
Arizona and California, Walgreens, along with Theranos, sold blood and other clinical
testing services to individuals.  The vast majority of the services sold by Walgreens
and Theranos, including the vast majority of the so-called "tiny" blood draws, occurred
at Walgreens pharmacies.

**ANSWER TO COMPLAINT ¶ 31**

Defendants lack knowledge or information of the allegations in Paragraph 31
with respect to Walgreens corporate formalities and therefore deny them on that basis.
Defendants admit that Theranos and Walgreens entered into a contractual relationship
to offer Theranos testing services to individuals at Walgreens locations, and that

1   Theranos and Walgreens offered Theranos testing services through Walgreens stores in

2   Arizona and California.  Defendants deny the remaining allegations in Paragraph 31.

3   **COMPLAINT ¶ 32**

4         Defendant Elizabeth Holmes, a citizen and resident of California, is the founder

5   of Theranos and at all relevant times has been Theranos's Chief Executive Officer.

6   Holmes has had a primary role in, and in significant part has personally directed,

7   Theranos's misconduct as alleged herein.  Further, Holmes personally made material

8   misrepresentations and omissions as alleged herein.  On information and belief,

9   Holmes has personally received millions, if not billions, of dollars in compensation as

10  a result of the business and revenue generated through the misconduct alleged herein.

11  **ANSWER TO COMPLAINT ¶ 32**

12        Defendants admit that Elizabeth Holmes is a citizen and resident of California,

13  the founder of Theranos, and is currently Theranos' Chief Executive Officer.

14  Defendants deny the remaining allegations in Paragraph 32, and deny Plaintiffs'

15  framing of the issues.

16  **COMPLAINT ¶ 33**

17        Defendant Ramesh "Sunny" Balwani, a resident of California, is the former

18  President and Chief Operating Officer of Theranos, and was Theranos's second in

19  command, behind Defendant Holmes, before he resigned from Theranos in 2016 amid

20  the various investigations.  Balwani had a primary role in Theranos's misconduct

21  alleged herein.  Mr. Balwani personally directed misconduct alleged herein.  Further,

22  Balwani personally made material misrepresentations and omissions as alleged herein.

23  On information and belief, Balwani has personally received millions of dollars in

24  compensation as a result of the business and revenue generated through the misconduct

25  alleged herein.

26  **ANSWER TO COMPLAINT ¶ 33**

27        Defendants admit that Ramesh Balwani is the former President and Chief

28  Operating Officer of Theranos, is a resident of California, and resigned from Theranos

in 2016.  Defendants deny the remaining allegations in Paragraph 33, and deny Plaintiffs' framing of the issues.

**COMPLAINT ¶ 34**

Each of the acts and/or omissions of each Defendant alleged herein were made known to, and ratified by, each of the other Defendants.

**ANSWER TO COMPLAINT ¶ 34**

Defendants deny the allegations in Paragraph 34.

### IV.    FACTUAL BACKGROUND

**SUBHEADING A**

The Critical Importance of Reliable Blood Tests

**ANSWER TO SUBHEADING A**

No response is required to Subheading A, which purports to describe the role of blood tests to the public.

**COMPLAINT ¶ 35**

Blood tests and other clinical lab tests ("test results") are an everyday and invaluable part of the practice of modern medicine.  Test results can offer crucial details about an individual's health, and doctors rely on test results to detect everything from cholesterol and glucose levels to infections, blood cell counts, and cancer.

**ANSWER TO COMPLAINT ¶ 35**

No response is required to Paragraph 35, which purports to describe the role of blood tests to the public.  To the extent a response is required, Defendants admit that blood tests and other clinical lab tests can offer details about an individual's health and are used by doctors in some circumstances.  Defendants lack sufficient knowledge or information of the remaining allegations in this Paragraph sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 36**

Test results aid in the process of medical diagnosis and treatment decisions, and in some cases are a prerequisite for additional medical tests.  Because test results are

such a foundational part of medical treatment, test results that are unreliable or inaccurate can be catastrophic: serious conditions may go undetected, patients may not receive the treatments and medications that they need, and patients may be misdiagnosed and receive treatments or medications that they have no need for.  It is absolutely critical that consumers be able to rely on test results.

**ANSWER TO COMPLAINT ¶ 36**

No response is required to Paragraph 36, which purports to describe the role of blood tests to the public.  To the extent a response is required, Defendants admit that test results can aid in the process of medical diagnosis and treatment, and in some cases serve as a prerequisite for additional tests.  Defendants lack sufficient knowledge or information of the remaining allegations in this Paragraph sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 37**

As the Theranos "direct testing menu" (Ex. 2 hereto) reflects, the "tests" offered by Theranos and Walgreens at their Wellness Centers, including at Walgreens stores and in the Theranos-owned facilities, included more than 200 different medical tests and combinations of tests (panels).  These included tests concerning critical medical and health issues including, but not limited to, cancer, heart disease, diabetes, kidney disease, auto-immune disorders, and viruses.  *Id.*

**ANSWER TO COMPLAINT ¶ 37**

Defendants admit that Theranos published a "direct testing menu" that could be used by Arizona consumers to order Theranos tests in some circumstances. Defendants further answer that Theranos published this "direct testing menu" following the passage of Arizona House Bill 2645, which allowed healthcare consumers to purchase medical lab testing without a doctor's order.  Defendants further answer that, to the extent the allegations in Paragraph 37 are based on the text of written documents, Defendants admit that, to the extent such allegations accurately quote the text of the documents, such text exists, and otherwise deny them.

1  Defendants deny the remaining allegations in Paragraph 37.

2  **COMPLAINT ¶ 38**

3      Theranos was founded in 2003 by Elizabeth Holmes, then a sophomore at

4  Stanford studying chemical engineering, who dropped out a few months later to focus

5  on Theranos.  As CEO, Holmes has maintained that she developed the idea for

6  Theranos as a result of her self-professed phobia of needles.  According to published

7  reports, Theranos initially focused on development of a hand-held device that would

8  use a tiny needle to obtain a small drop of blood for analysis.  By 2008, the project had

9  grown into attempting to develop what is now known as the "Edison" device.

10  **ANSWER TO COMPLAINT ¶ 38**

11      Defendants admit that Theranos was founded by Elizabeth Holmes.  Defendants

12  further admit that Ms. Holmes was then a sophomore at Stanford University who left

13  college and founded her company.  Defendants lack knowledge or information

14  regarding purported unnamed "reports" in Paragraph 38 and therefore deny the

15  allegations in Paragraph 38 on that basis.  Defendants deny the remaining allegations

16  in Paragraph 38.

17  **COMPLAINT ¶ 39**

18      In contrast to the standard-sized needle and numerous tubes required in a typical

19  venipuncture blood draw, Theranos claimed that its Edison device could eliminate the

20  need for laboratories altogether.  The Edison device (which Theranos never allowed to

21  be photographed) was supposedly able to take a few drops of blood from a patient's

22  finger placed into a "nanotainer" capsule, and reliably conduct hundreds of blood tests,

23  all outside a lab.  This concept would have enabled Theranos to conduct all testing

24  outside of the laboratory in the Wellness Centers and thus—according to statements

25  made by Theranos, Walgreens, Holmes, and Balwani—revolutionize testing by

26  significantly reducing the time and costs involved.

27  **ANSWER TO COMPLAINT ¶ 39**

28      Defendants admit that Theranos developed proprietary technologies for

1  collecting, storing, and processing microsamples of blood and other sample types,

2  including but not limited to proprietary analyzers, capillary tubes, and capillary storage

3  containers.  Defendants further admit that Theranos entered into a contractual

4  agreement with Walgreens.  Defendants deny the remaining allegations in Paragraph

5  39.

6  **COMPLAINT ¶ 40**

7      Neither Holmes nor any of the other Defendants ever explained to the public the

8  science or technology underlying the Edison device, and they, in fact, refused to

9  provide any meaningful explanation based on the claimed need to protect Theranos's

10  intellectual property.  Despite the industry practice for companies to publish their

11  results and allow for peer review by experts in the field when launching a new medical

12  product, Theranos has still never published its data or allowed for peer review.  One

13  writer described Holmes's explanation of what Edison does as "comically vague" after

14  she explained, "[a] chemistry is performed so that a chemical reaction occurs and

15  generates a signal from the chemical interaction with the sample, which is translated

16  into a result, which is then reviewed by certified laboratory personnel."

17  **ANSWER TO COMPLAINT ¶ 40**

18      Defendants answer that, to the extent that the allegations in Paragraph 40 are

19  based on the text of written documents, Defendants admit that, to the extent such

20  allegations accurately quote the text of the documents, such text exists, and otherwise

21  deny them.  Defendants deny that Plaintiffs' characterization of these documents is

22  accurate, and deny Plaintiffs' framing of these issues.  Defendants deny the remaining

23  allegations in Paragraph 40.

24  **COMPLAINT ¶ 41**

25      Despite the fact that the Edison technology was, to put it generously, still in

26  development and not ready-for-market, and nowhere near in a position to serve the

27  purpose of legitimate blood testing, Theranos and Walgreens prematurely rushed the

28  "tiny" blood "tests" to market.

1  **ANSWER TO COMPLAINT ¶ 41**

2      Defendants deny the allegations in Paragraph 41.

3  **COMPLAINT ¶ 42**

4      In connection with the launch of Theranos testing to the consumer public,

5  Theranos and Walgreens embarked on a large-scale media campaign designed to, inter

6  alia, let the medical profession and the consuming public know that the Edison

7  technology was revolutionary and ready for public use for the full range of medical

8  testing offered.  In a September 8, 2013 interview with the *Wall Street Journal*, for

9  example, Holmes boasted that Theranos was able to "run any combination of tests,

10 including sets of follow-on tests" quickly from a single tiny blood sample.

11 **ANSWER TO COMPLAINT ¶ 42**

12     Defendants admit that Theranos issued public statements regarding Theranos

13 testing services.  Defendants further answer that, to the extent that the allegations in

14 Paragraph 42 are based on the text of written documents, Defendants admit that, to the

15 extent such allegations accurately quote the text of the documents, such text exists, and

16 otherwise deny them.  Defendants deny that Plaintiffs' characterization of these

17 documents is accurate, and deny Plaintiffs' framing of these issues.  Defendants deny

18 the remaining allegations in Paragraph 42.

19 **COMPLAINT ¶ 43**

20     Various press releases and other statements to the media during that time period

21 trumpeted the same themes.  For example, a September 9, 2013 joint press release by

22 Theranos and Walgreens stated: "For the first time, Theranos is introducing CLIA

23 certified laboratory services with the ability to run its tests on micro-samples.

24 Theranos's proprietary laboratory infrastructure minimizes human error through

25 extensive automation to produce high quality results.  Test results are available to

26 physicians in a matter of hours, enabling fast diagnoses to help informed treatment

27 choices. . . . For the past 10 years, Theranos has worked relentlessly to reach a point at

28 which we could help make actionable information accessible to physicians and patients

at the time it matters most."  A second joint press release by Theranos and Walgreens, issued on November 13, 2013 and excerpted below, included many of the same themes.

**ANSWER TO COMPLAINT ¶ 43**

Defendants answer that, to the extent that the allegations in Paragraph 43 are based on the text of written documents, Defendants admit that, to the extent such allegations accurately quote the text of the documents, such text exists, and otherwise deny them.  Defendants deny that Plaintiffs' characterization of these documents is accurate, and deny Plaintiffs' framing of these issues.  Defendants deny the remaining allegations in Paragraph 43.

**COMPLAINT ¶ 44**

Theranos's website similarly claimed, at around this same time, that its "laboratory can perform your tests quickly and accurately on samples as small as a single drop."

**ANSWER TO COMPLAINT ¶ 44**

Defendants answer that, to the extent that the allegations in Paragraph 44 are based on the text of written documents and/or a historical image of the Theranos website, Defendants admit that, to the extent such allegations accurately quote and reflect the text of the documents or the Theranos website, such text existed at one point in time, and otherwise deny them.  Defendants deny the remaining allegations in Paragraph 44.

**COMPLAINT ¶ 45**

In a recorded interview with Medscape's Eric J. Topol, M.D., Holmes reaffirmed her claims that Theranos tests were validated, run on tiny samples, and more accurate than traditional blood tests: "We spent many years redeveloping every test that is recognized by Medicare in the form of a CPT (Current Procedural Terminology) code to be able to run it on a tiny sample" . . . "we focused a great deal on these tests and validated and verified them over the years, building an infrastructure

that was highly automated and standardized such that the quality of the data that we generate could be used in an actionable manner."

**ANSWER TO COMPLAINT ¶ 45**

Defendants answer that, to the extent that the allegations in Paragraph 45 are based on the text of written documents, Defendants admit that, to the extent such allegations accurately quote the text of the documents, such text exists, and otherwise deny them. Defendants deny that Plaintiffs' characterization of these documents is accurate, and deny Plaintiffs' framing of these issues. Defendants deny the remaining allegations in Paragraph 45.

**COMPLAINT ¶ 46**

Balwani also publicly spread the misleading claims that Theranos testing, including Edison, was safe, reliable, and ready for use by the public. In a presentation before the Arizona Senate Health and Human Services Committee on March 12, 2014, Balwani stated that Theranos was "able to provide a majority of the testing from only two or three drops of blood," and although those drops of blood could be taken from a traditional venipuncture, "most likely patients will prefer a simple finger stick, and we are able to do that." Later in 2014, Balwani emphasized Theranos's supposedly ready and working technological advancement (i.e., Edison) in an interview with the *The New Yorker*, claiming that "[o]ur platform is about automation. . . We have automated the process from start to finish."

**ANSWER TO COMPLAINT ¶ 46**

Defendants answer that, to the extent that the allegations in Paragraph 46 are based on the text of written documents or recordings, Defendants admit that, to the extent such allegations accurately quote the text of the documents or recordings, such text exists, and otherwise deny them. Defendants deny that Plaintiffs' characterization of these documents and recordings is accurate, and deny Plaintiffs' framing of these issues. Defendants deny the remaining allegations in Paragraph 46.

1   **COMPLAINT ¶ 47**

2       Based on such representations by Holmes, Balwani, Theranos, and Walgreens,

3   and based on a pervasive joint-marketing campaign by Theranos and Walgreens

4   discussed in detail below, people believed that Theranos testing was ready-for-market

5   and that the Edison technology was a true disruptive technology breakthrough.

6   Holmes was hailed as the next Steve Jobs, and by 2014, Theranos was valued at $9

7   billion—approximately the same as each of its two largest and long established

8   competitors in the medical testing industry.

9   **ANSWER TO COMPLAINT ¶ 47**

10      Defendants admit that Theranos was at one time valued at approximately $9

11  billion and was reported as such by the media.  Defendants further answer that, to the

12  extent that the allegations in Paragraph 47 are based on the text of written documents,

13  Defendants admit that, to the extent such allegations accurately quote the text of the

14  documents, such text exists, and otherwise deny them.  Defendants deny that

15  Plaintiffs' characterization of these documents is accurate, and deny Plaintiffs' framing

16  of these issues.  Defendants deny the remaining allegations of Paragraph 47.

17  **COMPLAINT ¶ 48**

18      In reality, as described in further detail herein, none of the testing services that

19  Theranos and Walgreens offered were reliable or certified, as each of the Defendants

20  had stated and suggested.  With respect to the Edison technology in particular, the

21  technology was simply not ready-for-market or anywhere near ready to serve the

22  purpose of legitimate blood testing at any time the "tiny" blood draws were being

23  administered.  Walgreens and Theranos knew this, but nevertheless prematurely rushed

24  the "tiny" blood "tests" to market to, inter alia: further the research and development

25  of this as-yet undeveloped technology, promote the narrative that Edison was a

26  "disruptive" technology, and to woo and/or satisfy investors, potential investors, and

27  co-investors by making it appear that Edison was a market-ready, breakthrough

28  technology and not, at best, an ambitious idea that was still-in-development.

**ANSWER TO COMPLAINT ¶ 48**

Defendants deny the allegations in Paragraph 48.

**SUBHEADING C**

Theranos and Walgreens Join Forces

**ANSWER TO SUBHEADING C**

No response is required to Subheading C, but Defendants admit that Theranos and Walgreens entered into a contractual relationship to offer Theranos testing services to individuals at Walgreens locations and otherwise deny Subheading C.

**COMPLAINT ¶ 49**

By 2011, Theranos was in talks with both Safeway and Walgreens to offer Theranos testing in their stores.  In or around 2012, Theranos entered into a partnership agreement with Walgreens, under which Walgreens invested $140 million in Theranos, $100 million of which was characterized as an "Innovation Fee," and the two companies agreed to place and operate clinics, which it called "Wellness Centers," at Walgreens Pharmacies in Arizona and California.  Following the launch of the partnership in 2013, Theranos and Walgreens planned to build Wellness Centers in Walgreens stores nationwide.

**ANSWER TO COMPLAINT ¶ 49**

Defendants admit that Theranos engaged in negotiations with Safeway and Walgreens to offer Theranos testing in their stores as early as 2010.  Defendants further admit that Theranos and Walgreens entered into a contractual relationship to offer Theranos testing services to individuals at Walgreens locations, and that Walgreens paid Theranos a $100 million "Innovation Fee," as well as an additional $40 million, pursuant to terms contained in contractual documents, which speak for themselves.  Defendants deny the remaining allegations in Paragraph 49.

**COMPLAINT ¶ 50**

Under their partnership agreement, Theranos and Walgreens opened a total of 40 Wellness Centers within Walgreens pharmacy stores in Arizona, and one in a

Walgreens pharmacy in California, to sell the majority of the "tests."

**ANSWER TO COMPLAINT ¶ 50**

Defendants admit that Theranos and Walgreens entered into a contractual relationship to offer Theranos testing services to individuals at Walgreens locations, and that there were a total of 40 Wellness Centers within Walgreens stores in Arizona, and one in a Walgreens store in California, which offered Theranos testing services. Defendants deny the remaining allegations in Paragraph 50, and deny Plaintiffs' framing of the issues.

**COMPLAINT ¶ 51**

The agreement between Walgreens and Theranos ("Master Services Agreement" or "MSA") lists the two companies' respective tasks regarding the services offered to consumers in the Walgreens store locations.  Among other tasks, the MSA provides that Walgreens personnel (called "Walgreen Technicians") were responsible for the following tasks:

    a.  "handl[ing] the patients";

    b.  physically administering the "tiny" blood draws (["Walgreen Technicians will draw blood using the finger stick technique"]);

    c.  "collecting the proper other specimens according to directions provided by Theranos";

    d.  collecting demographic and insurance information, and co-pays; and

    e.  "properly stor[ing] and prepar[ing] the specimen for pick-up".

**ANSWER TO COMPLAINT ¶ 51**

Defendants admit that Theranos and Walgreens entered into a "Master Services Agreement" that was intended at the time it was signed by both parties to define the scope of the parties' commercial relationship.  Defendants further answer that, to the extent that the allegations in Paragraph 51 are based on the text of written documents, Defendants admit that, to the extent such allegations accurately quote the text of the documents, such text exists, and otherwise deny them.  Defendants deny that

1  Plaintiffs' characterization of these documents is accurate, and deny Plaintiffs' framing

2  of these issues.  Defendants deny the remaining allegations in Paragraph 51.

3  **COMPLAINT ¶ 52**

4      Pursuant to the MSA, Theranos's tasks included providing training and other

5  assistance to the Walgreens personnel performing the "laboratory patient services," as

6  well as testing the samples collected.

7  **ANSWER TO COMPLAINT ¶ 52**

8      Defendants admit that pursuant to the terms of the parties' Master Services

9  Agreement, Theranos provided training to Walgreens personnel, and performed testing

10  on the samples collected.  Defendants deny the remaining allegations in Paragraph 52.

11  **COMPLAINT ¶ 53**

12      Jay Rosan, Senior Vice President of Health Innovation at Walgreens, explained

13  that with respect to arrangements like the one with Theranos:

14          We're focused on pharmacy innovation and health, healthcare services

15          and e-commerce and it's led, we do the thing called co-production. . .

16          We're co-producing things together.

17  **ANSWER TO COMPLAINT ¶ 53**

18      Defendants answer that, to the extent that the allegations in Paragraph 53 are

19  based on the text of written documents or recordings, Defendants admit that, to the

20  extent such allegations accurately quote the text of these documents or recordings,

21  such text or recordings exist, and otherwise deny them.  Defendants deny Plaintiffs'

22  framing of the issues, and deny the remaining allegations in Paragraph 53.

23  **COMPLAINT ¶ 54**

24      At all times that Theranos testing services were being sold in Walgreens stores,

25  Walgreens knew and/or should have known that the tests could not reasonably be

26  relied on by consumers and their doctors in making health and treatment decisions.

27  Walgreens was aware of numerous serious red flags about the tests that put it on notice

28  about the unreliability of the tests, and deliberately chose to ignore, not follow up on,

1  and conceal that information.  With respect to the Edison technology, Walgreens knew

2  that Edison was still in development, not ready-for-market, and not ready to serve the

3  purpose of legitimate blood testing.  To the extent Walgreens lacked any more detailed

4  knowledge, it was by virtue of its own deliberate decision to ignore and/or avoid such

5  details.

6  **ANSWER TO COMPLAINT ¶ 54**

7  Defendants lack knowledge or information of the allegations in Paragraph 54

8  sufficient to form a belief as to their truth, and therefore deny them on that basis.

9  **COMPLAINT ¶ 55**

10  Walgreens' knowledge regarding these problems and regarding the unready

11  state of Edison, was reinforced by complaints it received from customers who had

12  blood draws at Walgreens stores and received "test results" that were significantly out-

13  of-whack.

14  **ANSWER TO COMPLAINT ¶ 55**

15  Defendants deny the allegations in Paragraph 55.

16  **COMPLAINT ¶ 56**

17  Before entering into the partnership with Theranos, Walgreens' Chief Medical

18  Officer neither reviewed Theranos's technology nor independently validated or

19  verified the accuracy, reliability, or results of the tests.  Nevertheless, and despite the

20  fact that Walgreens executives had expressed doubts about the reliability of Theranos

21  tests and the quality of its equipment and/or facilities, Walgreens reportedly said it was

22  "confident in the quality of Theranos's services," in 2015.

23  **ANSWER TO COMPLAINT ¶ 56**

24  Defendants lack knowledge or information of the allegations in the first

25  sentence of Paragraph 56 sufficient to form a belief as to their truth, and therefore deny

26  them on that basis.  Defendants further answer that, to the extent that the allegations in

27  Paragraph 56 are based on the text of written documents, Defendants admit that, to the

28  extent such allegations accurately quote the text of the documents, such text exists, and

otherwise deny them.  Defendants deny that Plaintiffs' characterization of these documents is accurate, and deny Plaintiffs' framing of these issues.  Defendants deny the remaining allegations in Paragraph 56.

**COMPLAINT ¶ 57**

In fact, although a Johns Hopkins University scientist had requested, on Walgreens' behalf, that Theranos provide his researchers with an Edison device so that they could verify the technology for Walgreens, and Holmes initially agreed to provide one, the device was never provided.  Instead, Walgreens got a prototype which the Johns Hopkins team tried to evaluate, but the prototype was useless when evaluating the accuracy and reliability of the tests because it produced results such as "low" or "high" rather than numeric values that could be compared to other labs' tests.  As a result, there was no way to compare results from the prototype Edison device to the results of other commercially-available tests.

**ANSWER TO COMPLAINT ¶ 57**

Defendants admit that Walgreens commissioned Johns Hopkins University to perform due diligence on Theranos' proprietary technology.  Defendants further answer that, to the extent the allegations in Paragraph 57 are based on the text of written documents, Defendants admit that, to the extent such allegations accurately quote the text of the documents, such text exists, and otherwise deny them. Defendants deny that Plaintiffs' characterization of these documents is accurate, and deny Plaintiffs' framing of these issues.  Defendants deny the remaining allegations of Paragraph 57.

**COMPLAINT ¶ 58**

In the summer of 2011, just after Theranos and Walgreens signed an initial letter of agreement, Walgreens sent a delegation, including its finance chief, internal auditor, and lab experts from a consulting firm called Colaborate, LLC, to a meeting at Theranos headquarters in Palo Alto, the purpose of which was to gain a firsthand view of the Theranos business and its capabilities.

**ANSWER TO COMPLAINT ¶ 58**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58 and therefore deny them on that basis.

**COMPLAINT ¶ 59**

At that meeting, however, the consulting lab experts were chaperoned during the entire visit, including during visits to the restroom, and were not allowed access to Theranos's lab area or Edison technology.  Despite the lack of access, Walgreens did discover problems with Theranos's information management systems meant to keep track of patients.

**ANSWER TO COMPLAINT ¶ 59**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59 and therefore deny them on that basis.

**COMPLAINT ¶ 60**

According to published reports, throughout the process, despite their concerns and the numerous red flags they identified, Walgreens executives nevertheless looked the other way.  They deliberately did not press for further verification, and instead went ahead with the Theranos partnership, despite their concerns and known problems about the reliability of Theranos's facilities and tests.  Walgreens apparently was afraid that Theranos would respond to its questions by choosing another retail chain to work with as a partner.

**ANSWER TO COMPLAINT ¶ 60**

Defendants lack knowledge or information regarding purported unnamed "reports" in Paragraph 60 and therefore deny the allegations in Paragraph 60 on that basis.  Defendants deny the remaining allegations in Paragraph 60.

**COMPLAINT ¶ 61**

Later in 2011, Colaborate, LLC, issued a report concluding that Walgreens needed more information to assess the proposed partnership with Theranos.

1

**ANSWER TO COMPLAINT ¶ 61**

2

Defendants lack knowledge or information sufficient to form a belief as to the

3

truth of the allegations in Paragraph 61 and therefore deny them on that basis.

4

**COMPLAINT ¶ 62**

5

Similarly, in October 2012, Walgreens sent two executives and a retired Quest

6

Diagnostics Corp. executive to Theranos to review quality-control data.  According to

7

reports, the retired Quest executive stated that they were not allowed inside Theranos's

8

lab, and while they were led to believe the data they reviewed was from an Edison

9

device, Theranos did not confirm that it was.  Walgreens continued to work on the

10

partnership agreement despite the lack of access to the technology and despite its

11

concerns about the reliability of Theranos's facilities and tests.

12

**ANSWER TO COMPLAINT ¶ 62**

13

Defendants admit that Walgreens representatives visited Theranos in October

14

2012.  Defendants lack knowledge or information regarding purported unnamed

15

"reports" in Paragraph 62 and therefore deny the allegations in Paragraph 62 on that

16

basis.  Defendants deny the remaining allegations in Paragraph 62.

17

**COMPLAINT ¶ 63**

18

According to published reports, Walgreens executives were privy to

19

information that Safeway, Inc. had also agreed to host Theranos testing sites at some of

20

its stores.  According to reports, Safeway dissolved its partnership with Theranos

21

before it began hosting Theranos testing sites in Safeway stores due, in part, to its due

22

diligence that raised questions about the accuracy of Theranos's testing.  For example,

23

the unreliability of Theranos tests became apparent after Safeway employees in

24

Pleasanton, California had their blood tested by both Theranos and another

25

conventional lab, and the test results differed significantly.

26

**ANSWER TO COMPLAINT ¶ 63**

27

Defendants lack knowledge or information regarding purported unnamed

28

"reports" in Paragraph 63 and therefore deny the allegations in Paragraph 63 on that

ANSWER TO PLAINTIFFS' SECOND
AMENDED COMPLAINT

1    basis.  Defendants deny the remaining allegations in Paragraph 63.

2    **COMPLAINT ¶ 64**

3         In response to pressure from Theranos, despite its concerns and knowledge

4    about problems, Walgreens ceded even more control to Theranos in the final

5    agreement reached between Walgreens and Theranos, and Walgreens gave up the right

6    to review Theranos's clinical data or financial records.

7    **ANSWER TO COMPLAINT ¶ 64**

8         Defendants answer that, to the extent the allegations in Paragraph 64 are based

9    on the text of written documents, Defendants admit that, to the extent such allegations

10   accurately quote the text of the documents, such text exists, and otherwise deny them.

11   Defendants deny the remaining allegations in Paragraph 64.

12   **SUBHEADING D**

13        Defendants Intentionally Concealed the Truth From Consumers

14   **ANSWER TO SUBHEADING D**

15        Defendants deny the allegations in Subheading D.

16   **COMPLAINT ¶ 65**

17        Theranos, Walgreens, Balwani, and Holmes each intentionally concealed

18   known problems regarding Theranos testing equipment and facilities, and regarding

19   the unreliability and un-readiness of Theranos testing.  The information that each of

20   the Defendants concealed was highly material information, and included information

21   pertinent to both the Edison technology and non-Edison tests.

22   **ANSWER TO COMPLAINT ¶ 65**

23        Defendants deny the allegations in Paragraph 65.

24   **COMPLAINT ¶ 66**

25        For example, each of the Defendants knew, but concealed, that: (a) Theranos's

26   laboratories were not in compliance with federal guidelines; (b) Theranos's Edison

27   device lacked regulatory approval; (c) with the exception of a single approved test,

28   Theranos tests had not been approved by the FDA despite attempts to get such

approval for more than 100 tests; (d) internal testing and data showed that Theranos's technology, including but not limited to Edison, was unreliable; (e) Theranos's testing equipment, including Edison, had failed proficiency testing and Theranos manipulated the testing process in an attempt to cover that up; (f) for some tests that were to be conducted on "tiny" blood samples, Theranos even went so far as to *dilute* the samples prior to conducting the "tests"; (g) Theranos testing was not ready-for-market; (h) the Edison technology was still in development and not nearly in a position to serve the purpose, and not intended by Theranos and Walgreens to serve the purpose, of legitimate blood testing; (i) the consumers subjected to the "tiny" blood draws were being used, in essence, to experimentally beta test Edison and for other research and product development purposes; (j) inspections by regulators had revealed a wide range of serious deficiencies at Theranos; and (k) Walgreens had identified numerous red flags regarding the reliability of Theranos testing, but had nevertheless gone ahead with offering the tests in its stores while deliberately failing to conduct any meaningful investigation or to follow up regarding the problems and concerns identified.

**ANSWER TO COMPLAINT ¶ 66**

Defendants deny the allegations in Paragraph 66.

**COMPLAINT ¶ 67**

With respect to the undisclosed material information, all such information was known by Theranos.  Theranos knowingly engaged in and assisted the concealment of material information as alleged herein.

**ANSWER TO COMPLAINT ¶ 67**

Defendants deny the allegations in Paragraph 67.

**COMPLAINT ¶ 68**

With respect to the undisclosed material information, all such information was known by Walgreens and/or would have been known but for Walgreens' deliberate choice to ignore and/or not obtain such information or conduct a reasonable investigation.  Walgreens knowingly engaged in and assisted the concealment of

material information as alleged herein.

**ANSWER TO COMPLAINT ¶ 68**

Defendants answer that they lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 68.

**COMPLAINT ¶ 69**

Holmes and Balwani were personally privy to the material undisclosed information by virtue of their extensive, hands-on involvement in these matters and their respective roles as leader and second in command, at Theranos.  Holmes and Balwani knowingly engaged in and assisted the concealment of material information as alleged herein.

**ANSWER TO COMPLAINT ¶ 69**

Defendants deny the allegations in Paragraph 69.

**COMPLAINT ¶ 70**

All of the Defendants went to great lengths to conceal the truth about Theranos testing.  For example, Theranos refused to allow its Edison device to be photographed; would not permit peer review of its testing or technology, even though that is customary in the medical testing and health care industry; and refused to even provide meaningful explanations when asked about how its technology worked.  All of the Defendants affirmatively covered up reliability problems when they were identified internally, and concealed and downplayed the fact that Theranos and Walgreens had phased out, and then ultimately discontinued entirely in or around the summer of 2015, use of the "tiny" blood draws and Edison, a decision, on information and belief, that was related to increased regulatory scrutiny of the Edison technology.

**ANSWER TO COMPLAINT ¶ 70**

Defendants deny the allegations in Paragraph 70.

**COMPLAINT ¶ 71**

When the discontinuation of the Edison device occurred, Holmes, for example, misrepresented the reason.  Walgreens, via its divisional vice-president, Nimesh

Jhaveri, told reporters: "TRUST me.  If the results are not there we would hear."

**ANSWER TO COMPLAINT ¶ 71**

Defendants deny the first sentence of Paragraph 71.  Defendants further answer that, to the extent the allegations in the second sentence of Paragraph 71 are based on the text of written documents, Defendants admit that, to the extent such allegations accurately quote the text of written documents, such text exists, and otherwise deny them.  Defendants deny that Plaintiffs' characterization of the documents is accurate, and deny Plaintiffs' framing of these issues.  Defendants deny the remaining allegations in Paragraph 71.

**COMPLAINT ¶ 72**

When concerns were raised internally by Theranos employees, Theranos executives minimized, mocked, and threatened the employees.  And when media outlets began questioning things, Theranos and Holmes repeatedly attacked the sources and falsely denied there were any problems.  For example, when the *Wall Street Journal* published a story raising alleged issues about Theranos testing in October 2015, Theranos responded by issuing a press release which stated, in part: "Today's Wall Street Journal story about Theranos is factually and scientifically erroneous and grounded in baseless assertions by inexperienced and disgruntled former employees and industry incumbents."  On Twitter, Theranos and Holmes claimed: "We got FDA clearance of the exact system that @WSJ is questioning"; "3.5 million successful tests, tens of thousands of patients, 1 article w/ anonymous sources"; and "We offered to bring our technology to @WSJ offices … and they denied that request to show it to them."  Theranos further disseminated the following via Twitter:

[ ]

**ANSWER TO COMPLAINT ¶ 72**

Defendants deny the first and second sentences of Paragraph 72.  Defendants admit that Theranos issued a press release following the publication of *The Wall Street Journal* article on October 16, 2015, referenced in Paragraph 72, which speaks for

itself.  Defendants admit that Theranos and Elizabeth Holmes posted messages on Twitter in response to articles about the Company in *The Wall Street Journal*, which speak for themselves.  Defendants further answer that, to the extent the allegations in Paragraph 72 are based on the text of written documents, Defendants admit that, to the extent such allegations accurately quote the text of the documents, such texts exists, and otherwise deny them.  Defendants deny that Plaintiffs' characterization of the documents is accurate, and deny Plaintiffs' framing of these issues.  Defendants deny the remaining allegations in Paragraph 72.

**COMPLAINT ¶ 73**

Each of the Defendants intentionally concealed material information from Plaintiffs and the proposed Class members.

**ANSWER TO COMPLAINT ¶ 73**

Defendants deny the allegations in Paragraph 73.

**COMPLAINT ¶ 74**

Walgreens, Theranos, Holmes, and Balwani each had a duty to Plaintiffs and the proposed Class members, all of whom were consumers of Theranos "tests," to disclose material information concerning the unreliability of Theranos testing, the true state of Edison, and the true purposes of the "tiny" blood draws.  Defendants breached their duty.

**ANSWER TO COMPLAINT ¶ 74**

No response is required to Paragraph 74, which consists of conclusions of law.  To the extent any response is required, Defendants deny the allegations in Paragraph 74.

**COMPLAINT ¶ 75**

The information Walgreens, Theranos, Holmes, and Balwani did not disclose was within the exclusive possession of Defendants, who were in a position of significantly far superior knowledge, particularly in light of their concealment of information.

**ANSWER TO COMPLAINT ¶ 75**

Defendants deny the allegations in Paragraph 75.

**COMPLAINT ¶ 76**

Moreover, the scientific and technical nature of blood and other clinical testing is such that each of the Defendants knew that consumers depended and relied on Defendants to provide accurate and complete material information for the consumers' use in making decisions.

**ANSWER TO COMPLAINT ¶ 76**

Defendants deny the allegations in Paragraph 76.

**COMPLAINT ¶ 77**

The Defendants' duties to disclose also arose from the fact that they made numerous misleading and/or partial statements to consumers and the public about and suggesting, inter alia, the readiness, quality, reliability, and regulatory approval and compliance of Theranos testing.  In promoting Theranos testing, Defendants (including Theranos, Walgreens, and Holmes and Balwani personally) repeatedly made statements, in marketing and elsewhere, suggesting that the testing was accurate, reliable, and of the highest-quality.  Each Defendant also expressly stated and implied that Theranos testing was validated by, and compliant with, federal regulations and guidelines.  Defendants had a duty to disclose material information regarding the unreliability of Theranos testing and the fact that such testing was not ready-for-market, because Defendants' affirmative representations were misleading and likely to deceive consumers in the absence of full disclosure.

**ANSWER TO COMPLAINT ¶ 77**

Defendants deny the allegations in Paragraph 77.

**COMPLAINT ¶ 78**

Defendants' duty to disclose also arose from the very nature of the information in question.  Given the critical role that blood testing and other clinical testing plays in monitoring one's health and in making health and treatment decisions, and the

1   corresponding importance of consumers' ability to rely on their test results, Theranos,

2   Walgreens, Holmes and Balwani each knew that the information not disclosed was

3   highly material and that reasonable consumers would not have entered into the

4   transactions in question, and would not have agreed to have their blood drawn and

5   "tested" by Theranos or Walgreens, had the true information about Theranos testing

6   been disclosed, and knew that consumers submitting to Theranos blood testing were

7   doing so based on mistaken facts, without material information and, in fact, with

8   misleading information disseminated by Defendants.

9   **ANSWER TO COMPLAINT ¶ 78**

10      Defendants deny the allegations in Paragraph 78.

11  **SUBHEADING E**

12      Defendants Falsely Promoted Theranos Testing as Reliable and Made Other

13  Affirmative Misrepresentations

14  **ANSWER TO SUBHEADING E**

15      Defendants deny the allegations in Subheading E.

16  **COMPLAINT ¶ 79**

17      Not only did Theranos, Walgreens, Holmes, and Balwani all conceal material

18  information, but each of them made material affirmative misrepresentations as well.

19  **ANSWER TO COMPLAINT ¶ 79**

20      Defendants deny the allegations in Paragraph 79.

21  **COMPLAINT ¶ 80**

22      Leading up to and throughout the time blood draws were being administered at

23  the Walgreens stores and other Wellness Centers, Theranos and Walgreens engaged in

24  a pervasive marketing campaign promoting the testing services—including specifically

25  promoting the "tiny" blood test technology throughout the time "tiny" blood draws

26  were being administered—to consumers and medical professionals.  This broad

27  marketing campaign, including the content thereof, was jointly designed, approved,

28  and implemented by Theranos and Walgreens, such that the representations made

1    pursuant to this broad campaign are appropriately attributable to both companies.

2    **ANSWER TO COMPLAINT ¶ 80**

3    Defendants admit that Theranos marketed Theranos testing services.

4    Defendants deny the remaining allegations in Paragraph 80.

5    **COMPLAINT ¶ 81**

6    This marketing was pervasive throughout the geographic areas where the

7    Theranos testing services were offered, and included signs and materials in the

8    Walgreens stores and Theranos Wellness Centers where the services were sold,

9    prominent billboards, electronic advertisements, advertisements on the Theranos and

10    Walgreens websites, television and social media-based commercials, and at the

11    Phoenix Sky Harbor International Airport.

12    **ANSWER TO COMPLAINT ¶ 81**

13    Defendants admit that Theranos marketing materials were present at the

14    Theranos Wellness Centers where the services were sold, that at various times

15    Theranos advertised via billboards, electronic advertisements, television commercials,

16    and social media, that Theranos at one time advertised at the Phoenix Sky Harbor

17    International Airport, and that information on Theranos was available on the Theranos

18    web site.  Defendants deny the remaining allegations in Paragraph 81.

19    **COMPLAINT ¶ 82**

20    As a story in Newsweek summarized it: "In 2015, advertisements for

21    Theranos—which promised comprehensive biometric data using only a few drops of

22    blood—were everywhere in Arizona.  They were on television during commercial

23    breaks and on billboards along Interstate 10 through Phoenix.  They were above

24    Phoenix Sky Harbor International Airport terminals and pharmacy aisles in Walgreens

25    stores.  They shared the message that Theranos was here to revolutionize medical lab

26    tests and advocate on behalf of Arizonans' right to know their own bodies."

27    **ANSWER TO COMPLAINT ¶ 82**

28    Defendants answer that to the extent that the allegations in Paragraph 82 are

1   based on the text of written documents, Defendants admit that, to the extent such

2   allegations accurately quote the text of the documents, such texts exists, and otherwise

3   deny them.  Defendants deny that Plaintiffs' characterization of the documents is

4   accurate, and deny Plaintiffs' framing of these issues.  Defendants deny the remaining

5   allegations in Paragraph 82.

6   **COMPLAINT ¶ 83**

7       Theranos's and Walgreens' marketing campaign was so pervasive that all

8   Plaintiffs and members of the proposed Class, and their medical providers, were

9   exposed to them.  Walgreens and Theranos intended for consumers, the public at large,

10  and medical providers, including in the pertinent geographic areas, to be exposed to

11  this marketing and to rely on it.

12  **ANSWER TO COMPLAINT ¶ 83**

13      Defendants lack knowledge or information of the allegations in the first

14  sentence of Paragraph 83 sufficient to form a belief as to their truth and therefore deny

15  them on that basis.  Defendants deny the remaining allegations in Paragraph 83.

16  **COMPLAINT ¶ 84**

17      Plaintiffs and the Class were exposed to this marketing campaign and

18  reasonably relied on it.

19  **ANSWER TO COMPLAINT ¶ 84**

20      No response is required to Paragraph 84, which consists of conclusions of law.

21  To the extent any response is required, Defendants answer that Defendants lack

22  knowledge or information of the allegations in Paragraph 84 sufficient to form a belief

23  as to their truth and therefore deny them on that basis.

24  **COMPLAINT ¶ 85**

25      Absolutely fundamental, at the very center of ***all*** of this broad marketing

26  campaign (indeed, the ***entire premise*** of the marketing), was the portrayal—both

27  explicitly and implicitly—of the "tiny" blood draws, and of the services generally, as

28  being market-ready and for legitimate testing purposes.  Through this marketing,

Theranos and Walgreens promoted the services as providing reliable test results, and encouraged consumers to have their blood drawn for that purpose.

**ANSWER TO COMPLAINT ¶ 85**

Defendants deny the allegations in Paragraph 85.

**COMPLAINT ¶ 86**

At the very least, with respect to the "tiny" blood draws and Edison, these representations and portrayals were untrue, and Theranos and Walgreens knew it, since Edison was still in-development and nowhere near ready to serve the purpose of legitimate blood testing.

**ANSWER TO COMPLAINT ¶ 86**

Defendants deny the allegations in Paragraph 86.

**COMPLAINT ¶ 87**

For example, during the time the "tiny" blood draws were being offered and administered, Theranos and Walgreens caused the following prominent billboards to be erected in high-visibility areas in Arizona:

[ ]

**ANSWER TO COMPLAINT ¶ 87**

Defendants admit that Theranos advertised via billboards in Arizona, the contents of which speak for themselves.  Defendants deny the remaining allegations in Paragraph 87.

**COMPLAINT ¶ 88**

During the time the "tiny" blood draws were being offered and administered, Theranos and Walgreens also disseminated mass advertising in the relevant geographic area, promoting the "tiny" blood "tests" through targeted online and mobile advertisements, including ads that provided consumers with the location of nearby Walgreens stores where they could get these blood "tests."  For example:

[ ]

**ANSWER TO COMPLAINT ¶ 88**

Defendants admit that Theranos advertised its services, including via online advertisements, the contents of which speak for themselves. Defendants deny the remaining allegations in Paragraph 88.

**COMPLAINT ¶ 89**

Theranos and Walgreens broadly distributed leaflets in the pertinent geographic areas, prominently featuring the Walgreens logo, advertising "the blood tests that just need a tiny sample," and providing the location of the local Walgreens where consumers could get these services, where on arrival they should "Check in at the pharmacy at Walgreens."

[ ]

**ANSWER TO COMPLAINT ¶ 89**

Defendants admit that Theranos advertised its services, including via leaflets, the contents of which speak for themselves. Defendants deny the remaining allegations in Paragraph 89.

**COMPLAINT ¶ 90**

At the Walgreens stores and Theranos facilities where the services were being offered, Theranos and Walgreens hung large, highly visible signs promoting the "testing" services. An example of one of these signs at a Walgreens store, typical of what was used throughout the time the services were being offered, is below.

[ ]

**ANSWER TO COMPLAINT ¶ 90**

Defendants admit that Theranos advertised its services, including via signage at Walgreens locations which offered Theranos testing. Such signage speaks for itself. Defendants deny the remaining allegations in Paragraph 90.

**COMPLAINT ¶ 91**

Customers who visited the Walgreens stores and Theranos Wellness Centers when the "tiny" blood draws were being offered, received a brochure provided by

ANSWER TO PLAINTIFFS' SECOND
AMENDED COMPLAINT

Walgreens and Theranos, stating the "blood tests that need just a tiny sample," and showing a picture of the nanotainer device:

[ ]

**ANSWER TO COMPLAINT ¶ 91**

Defendants admit that Theranos advertised its services, including via brochures at Walgreens locations which offered Theranos testing, the contents of which speak for themselves.  Defendants deny the remaining allegations in Paragraph 91.

**COMPLAINT ¶ 92**

Throughout the time that the "tiny" blood "tests" were being offered in Walgreens stores, Walgreens' website promoted the "blood tests" that could be run on "just a tiny sample," alongside images of the "tiny" collection vials, and stating that the technology supported "better, more informed treatment."

**ANSWER TO COMPLAINT ¶ 92**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 92, and therefore deny them on that basis.

**COMPLAINT ¶ 93**

Walgreens' website further claimed, during this same time period, that Theranos's "high-complexity CLIA-certified laboratory can perform your tests quickly and accurately using tiny samples," and "can perform tests on any sample type, including blood, urine, and other samples.  It's fast, easy, and the highest level of quality."  Walgreens' website further touted that consumers could fit these "tests" into their "busy schedule" because they were available at local Walgreens' locations.

[ ]

**ANSWER TO COMPLAINT ¶ 93**

Defendants lack knowledge or information of the allegations in Paragraph 93 sufficient to form a belief as to their truth, and therefore deny them on that basis.

**COMPLAINT ¶ 94**

On another advertisement on its website during this same time period,

Walgreens stated that Theranos had "reinvented" testing with its technology, directly benefiting consumers of this testing by dramatically reducing the time it takes to analyze samples because its technology enabled a "more timely diagnosis to support better, more informed treatment."

**ANSWER TO COMPLAINT ¶ 94**

Defendants lack knowledge or information of the allegations in Paragraph 94 sufficient to form a belief as to their truth, and therefore deny them on that basis.

**COMPLAINT ¶ 95**

Other marketing materials by Theranos and Walgreens that appeared on the Theranos website, in the Walgreens stores and Theranos Wellness Centers, and elsewhere throughout the time the "tiny" blood draws were being administered, specifically highlighted the "tiny blood test" technology and described Theranos and Walgreens' offerings as "revolutionary" and a "new way" of testing.  For example:

[ ]

**ANSWER TO COMPLAINT ¶ 95**

Defendants admit that Theranos advertised its services, including Theranos' proprietary technologies and fingerstick blood draws, the contents of which speak for themselves.  Defendants further answer that, to the extent the allegations in Paragraph 95 are based on the text of written documents and/or historical images of the Theranos website, Defendants admit that, to the extent such allegations accurately quote and reflect the text of the documents or the Theranos website, such text existed at one point in time, and otherwise deny them.  Defendants deny the remaining allegations in Paragraph 95.

**COMPLAINT ¶ 96**

Similarly, according to reports, until at least October 2015, promotional materials from Theranos promised that "usually only three tiny micro vials" of blood would be collected "instead of the six or more large ones," because "many" of Theranos's tests required no more than "a few drops of blood."  Theranos reportedly

1    deleted the highlighted portions of the materials below in mid-2015 to supposedly

2    improve its "marketing accuracy," after it moved away from Edison testing following

3    a surprise inspection by the FDA.

4    **ANSWER TO COMPLAINT ¶ 96**

5           Defendants lack knowledge or information regarding purported unnamed

6    "reports" in Paragraph 96 and therefore deny the allegations in Paragraph 96 on that

7    basis.  Defendants further answer that, to the extent the allegations in Paragraph 96 are

8    based on the text of written documents, Defendants admit that, to the extent such

9    allegations accurately quote the text of the documents, such text existed at one point in

10   time, and otherwise deny them.  Defendants deny the remaining allegations in

11   Paragraph 96.

12   **COMPLAINT ¶ 97**

13          Theranos and Walgreens also widely disseminated social media commercials

14   and television commercials, directed at consumers in Arizona and California, during

15   the time the "tiny" blood draws were being administered, promoting to consumers the

16   "tiny" blood technology and the reliable blood tests that could be run using same.

17   These commercials encouraged patients to rely on Theranos test results, including

18   from "tiny" blood draws, to make decisions concerning their health, for example by

19   suggesting that patients could get "the information that [they] needed to know what to

20   do for [themselves] and for [their] bodies" from a finger-stick blood draw.  The exact

21   timing when these advertisements aired is within the knowledge of Theranos and

22   Walgreens, but on information and belief they aired for at least a substantial portion of

23   the time the "tiny" blood draws were being administered.

24   **ANSWER TO COMPLAINT ¶ 97**

25          Defendants admit that Theranos advertised its services on social media and on

26   television, the contents of which speak for themselves.  Defendants deny the remaining

27   allegations in Paragraph 97.

28

1    **COMPLAINT ¶ 98**

2        In addition to the signs at the Walgreens stores and Theranos Wellness Centers,

3    Walgreens and Theranos provided materials in the stores regarding the services that

4    likewise clearly portrayed the services as being for legitimate and reliable testing

5    purposes.  These materials are described in more detail below.

6    **ANSWER TO COMPLAINT ¶ 98**

7        Defendants admit that Theranos advertised its services at Theranos Wellness

8    Centers, the contents of which speak for themselves.  Defendants deny the remaining

9    allegations in Paragraph 98.

10   **COMPLAINT ¶ 99**

11       In close proximity to their introduction of the "tiny" blood "testing" at the

12   Walgreens stores, Theranos and Walgreens also issued joint press releases that were

13   intended for mass distribution, and which received considerable general media

14   coverage in the pertinent geographic areas and in the medical press.

15   **ANSWER TO COMPLAINT ¶ 99**

16       Defendants admit that Theranos and Walgreens issued joint press releases at

17   certain times, the contents of which speak for themselves.  Defendants lack knowledge

18   or information of the remaining allegations in Paragraph 99 sufficient to form a belief

19   as to their truth, and therefore deny them on that basis.

20   **COMPLAINT ¶ 100**

21       When the Theranos-Walgreens partnership was publicly announced in

22   September 2013, a joint press release from Theranos and Walgreens stated that the

23   deal would offer consumers access to "less invasive and more affordable clinician-

24   directed lab-testing, from blood samples as small as a few drops, or 1/1000 the size of

25   a typical blood draw."  The joint press release touted Theranos's "CLIA-certified

26   laboratory services," and promised that its "proprietary laboratory infrastructure

27   minimizes human error through extensive automation to produce high quality results."

28

---

**ANSWER TO COMPLAINT ¶ 100**

Defendants admit that Theranos and Walgreens issued joint press releases at certain times, the contents of which speak for themselves.  Defendants further answer that, to the extent the allegations in Paragraph 100 are based on the text of written documents, Defendants admit that, to the extent such allegations accurately quote the text of the documents, such text exists, and otherwise deny them.  Defendants deny the remaining allegations in Paragraph 100.

**COMPLAINT ¶ 101**

It further stated, "[t]his is the next step in Walgreens' efforts to transform community pharmacy, giving our patients and customers convenient access to the comprehensive care they need, right in their communities."

**ANSWER TO COMPLAINT ¶ 101**

Defendants answer that, to the extent the allegations in Paragraph 101 are based on the text of written documents, Defendants admit that, to the extent such allegations accurately quote the text of the documents, such text exists, and otherwise deny them.

**COMPLAINT ¶ 102**

In November 2013, Theranos and Walgreens issued another joint press release, announcing the opening of Theranos Wellness Centers in Walgreens stores in Arizona, which repeated the claims about "micro-samples, collected by certified phlebotomists or trained Walgreens technicians" would "enable[e] fast diagnoses to help make informed treatment choices."

**ANSWER TO COMPLAINT ¶ 102**

Defendants admit that Theranos and Walgreens issued joint press releases at certain times, the contents of which speak for themselves.  Defendants further answer that, to the extent the allegations in Paragraph 102 are based on the text of written documents, Defendants admit that, to the extent such allegations accurately quote the text of the documents, such text exists, and otherwise deny them.  Defendants deny the remaining allegations in Paragraph 102.

**COMPLAINT ¶ 103**

That same month, on or around November 27, 2013, in an interview by Fox Business News, which portrayed Theranos tests as "more efficient and more accurate" than other lab tests, and featured images of the "nanotainer" device, Holmes stated that Theranos was "able to make it possible to do any of our laboratory tests from a tiny droplet of blood . . . [and had] now changed the experience for people everywhere . . . ."

[ ]

**ANSWER TO COMPLAINT ¶ 103**

Defendants answer that, to the extent the allegations in Paragraph 103 are based on the text of written documents or recordings, Defendants admit that, to the extent such allegations accurately quote the text of the documents or recordings, such text exists, and otherwise deny them.  Defendants deny the remaining allegations in Paragraph 103.

**COMPLAINT ¶ 104**

At the very least, the two companies' pervasive marketing campaign and other representations were false and misleading as to Edison and the "tiny" blood draws, given the true state of Edison and true intended purposes of these blood draws, as alleged herein.

**ANSWER TO COMPLAINT ¶ 104**

Defendants deny the allegations in Paragraph 104.

**COMPLAINT ¶ 105**

Additionally, for both Edison and non-Edison consumers, Theranos and Walgreens aggressively promoted Theranos testing services throughout the time the services were being offered, encouraging consumers and their doctors to rely on the test results in making critical health and treatment decisions.  In addition to the pervasive marketing and joint press releases and statements described in the above paragraphs, the two companies made other pervasive representations designed to give

1   the false impression to consumers and medical providers that Theranos testing was

2   reliable and accurate, compliant with and certified by government guidelines, of the

3   highest quality, and could and should be used in making health and treatment

4   decisions.

5   **ANSWER TO COMPLAINT ¶ 105**

6     Defendants admit that Theranos advertised its blood testing services at various

7   times during which such services were offered to the public.  Defendants deny

8   Plaintiffs' characterization of these advertisements, and deny Plaintiffs' framing of the

9   issues.  Defendants deny the remaining allegations in Paragraph 105.

10  **COMPLAINT ¶ 106**

11    These or similar representations were prominent and persisted throughout the

12  time the testing services were offered by Theranos and Walgreens.

13  **ANSWER TO COMPLAINT ¶ 106**

14    Defendants admit that Theranos advertised its blood testing services at various

15  times during which such services were offered to the public.  Defendants deny

16  Plaintiffs' characterization of these advertisements, and deny Plaintiffs' framing of the

17  issues.  Defendants deny the remaining allegations in Paragraph 106.

18  **COMPLAINT ¶ 107**

19    For example, in the following marketing that appeared on Theranos's website

20  and in the Wellness Centers, Theranos and Walgreens touted that their testing services

21  would help patients "evaluate" health issues and to screen for diseases:

22    [ ]

23  **ANSWER TO COMPLAINT ¶ 107**

24    Defendants answer that, to the extent the allegations in Paragraph 107 are based

25  on the text of written documents and/or historical images of the Theranos website,

26  Defendants admit that, to the extent such text and images accurately quote and reflect

27  the text of the Theranos website at one point in time, such text existed at one point in

28  time, and otherwise deny them.  Defendants deny Plaintiffs' characterization of this

text, and deny Plaintiffs' framing of the issues.  Defendants deny the remaining allegations in Paragraph 107.

**COMPLAINT ¶ 108**

Theranos's marketing further stated that "[w]e continuously conduct proficiency testing and participate in multiple proficiency testing programs," and that all "tests are developed and validated under and to the CLSI, FDA Centers for Disease Control, and World Health Organization guidelines."

**ANSWER TO COMPLAINT ¶ 108**

Defendants answer that, to the extent the allegations in Paragraph 108 are based on the text of written documents, Defendants admit that, to the extent such allegations accurately quote the text of the documents, such text existed at one point in time, and otherwise deny them.  Defendants deny the remaining allegations in Paragraph 108.

**COMPLAINT ¶ 109**

On its website, Theranos advertised that Theranos testing was of "the highest levels of accuracy," and that the tests were "validated" under and in compliance with federal regulations and guidelines:

[ ]

**ANSWER TO COMPLAINT ¶ 109**

Defendants answer that, to the extent the allegations in Paragraph 109 are based on the text and/or historical image of the Theranos website, to the extent that the above text and image accurately quotes and reflects the text of the Theranos website at one point in time, such text existed at one point in time, and otherwise deny these allegations.

**COMPLAINT ¶ 110**

Theranos's website also advertised that Theranos's test results could be relied on by consumers and their doctors in making health decisions, that they provided "actionable health information at the time it matters" to consumers, and that they "lead the industry in transparency and quality."

1        [ ]

2    **ANSWER TO COMPLAINT ¶ 110**

3        Defendants answer that, to the extent the allegations in Paragraph 110 are based

4    on the text and/or historical image of the Theranos website, to the extent that the above

5    text and image accurately quotes and reflects the text of the Theranos website at one

6    point in time, such text existed at one point in time, and otherwise deny these

7    allegations.  Defendants deny Plaintiffs' characterization of this text, and deny

8    Plaintiffs' framing of the issues.  Defendants deny the remaining allegations in

9    Paragraph 110.

10   **COMPLAINT ¶ 111**

11       Walgreens' website stated that the Theranos technology supported "better, more

12   informed treatment."  The Theranos website similarly claimed that Theranos's

13   "laboratory can perform your tests quickly and accurately on samples as small as a

14   single drop."

15   **ANSWER TO COMPLAINT ¶ 111**

16       Defendants lack knowledge or information of the allegations in the first

17   sentence of Paragraph 111 sufficient to form a belief as to their truth and therefore

18   deny them on that basis.  Defendants further answer that, to the extent the allegations

19   in the second sentence of Paragraph 111 are based on the text and/or historical image

20   of the Theranos website, to the extent that the above text and image accurately quotes

21   and reflects the text of the Theranos website at one point in time, such text existed at

22   one point in time, and otherwise deny these allegations.  Defendants deny that

23   Plaintiffs' characterization of this text, and deny Plaintiffs' framing of the issues.

24   **COMPLAINT ¶ 112**

25       Throughout its partnership with Theranos, Walgreens endorsed the information

26   on Theranos's website, directing its customers to visit www.theranos.com for more

27   information.

28

**ANSWER TO COMPLAINT ¶ 112**

Defendants lack knowledge or information of the allegations in Paragraph 112 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 113**

At Wellness Centers where Theranos tests were offered, including in Walgreens stores, Theranos and Walgreens prominently placed disclosures that touted that Theranos's "CLIA-certified laboratory can perform your tests quickly and accurately using tiny samples."

**ANSWER TO COMPLAINT ¶ 113**

Defendants answer that, to the extent the allegations in Paragraph 113 are based on the text of written documents, Defendants admit that, to the extent such allegations accurately quote the text of the documents, such text existed at one point in time, and otherwise deny them.  Defendants deny that Plaintiffs' characterization of this text, and deny Plaintiffs' framing of the issues.  Defendants deny the remaining allegations in Paragraph 113.

**COMPLAINT ¶ 114**

Similar, additional representations were made by Theranos and Walgreens at the Wellness Centers to consumers at the point of purchase.  To obtain one or more of the testing services offered by Walgreens and Theranos, customers who did not have an order from their healthcare provider for laboratory tests needed to complete a one-page "Theranos direct testing order form."  (Ex. 11).  The testing services were marketed and sold directly to consumers, as explained in the pamphlet "a guide to direct testing."  (*Id.*).  The Theranos testing order form and guide to direct testing pamphlet both of which were approved by both Theranos and Walgreens, contained further representations and promises that Theranos tests were reliable and could and should be used in medical treatment decisions and other health decisions.  For example, the testing order form encouraged consumers to consult with their doctors for "interpretation of the test results."  The guide to direct testing touted that the Theranos

1   tests would allow consumers to "own your own health like never before," allow

2   consumers to "get vital information about their health when it matters most," allow

3   them to "become better informed earlier" and enable them to "work with their

4   physician to be proactive and address potential problems sooner."  The guide also

5   stated that consumers could use Theranos test results to monitor their vital health

6   issues such as "monitor[ing their] thyroid, blood glucose, sexual health, and more,"

7   and directed consumers to consult with their physicians using the test results once they

8   received them.

9   **ANSWER TO COMPLAINT ¶ 114**

10          Defendants admit that Theranos published a "direct testing order form" that

11   could be used by Arizona consumers to order Theranos tests in some circumstances.

12   Defendants further answer that Theranos published this "direct testing order form"

13   following the passage of Arizona House Bill 2645, which allowed healthcare

14   consumers to purchase medical lab testing without a doctor's order.  Defendants

15   further answer that Theranos also published a "guide to direct testing," which provided

16   information on Theranos and how a consumer could order tests directly from a

17   laboratory services provider.  Defendants further answer that, to the extent the

18   allegations in Paragraph 114 are based on the text of written documents, Defendants

19   admit that, to the extent such allegations accurately describe the text of the documents,

20   such text existed at one point in time, and otherwise deny them.  Defendants deny the

21   remaining allegations in Paragraph 114.

22   **COMPLAINT ¶ 115**

23          These same themes were advanced and highlighted in the joint press releases by

24   Theranos and Walgreens and in other statements to mainstream and industry media by

25   Theranos, Walgreens, Holmes, and Balwani, described above, including the theme that

26   Theranos testing was government approved and reliable.  By way of example only:

27          a.  *Theranos Files Comment In Support Of Food and Drug Administration*

28              *Oversight Of Laboratory-Developed Tests* (Mar. 6, 2015) ("[We] believe

that FDA oversight plays a critical role in ensuring that individuals and
their physicians get the most accurate test results….there are limits on
the adequacy of the peer review system….That is why we will continue
to submit our work to the FDA and why we believe the decision to do so
is essential in providing accurate results for individuals and patients.")
(Ex. 13).

b.  Theranos receives FDA clearance and review and validation of
revolutionary finger stick technology, test, and associated test system
(July 2, 2015) (Ex. 14).

c.  *Theranos Receives CLIA Waiver, Paving the Way for Greater
Accessibility of Health* Information *at the Time and Place it Matters*
(July 16, 2015) ("FDA has concluded that the Theranos test and
technology is eligible for waiver under CLIA.  The waiver means FDA
determined the Theranos test and technology is reliable and accurate and
can be used in a broader set of locations outside of a traditional CLIA
certified laboratory, including Theranos Wellness Centers.") (Ex. 15).

d.  Holmes told *The New Yorker* that Theranos "ha[s] data that show you
can get a perfect correlation between a finger stick and a venipuncture
for every test that we run."  Holmes knew that statement to be false and
misleading when she made it.

e.  Walgreens CFO, Wade Miquelon, told *The Arizona Republic* that
Theranos could perform tests "more accurately" than traditional blood
tests.

**ANSWER TO COMPLAINT ¶ 115**

Defendants deny the first sentence of Paragraph 115.  Defendants further
answer that Theranos issued the press releases referenced in subsections (a)
("Theranos Files Comment In Support Of Food and Drug Administration Oversight Of
Laboratory-Developed Tests"), (b) ("Theranos receives FDA clearance and review and

validation of revolutionary finger stick technology, test, and associated test system"),

and (c) ("*Theranos Receives CLIA Waiver, Paving the Way for Greater Accessibility of*

*Health* Information *at the Time and Place it Matters*") of Paragraph 115.  Defendants

further answer that that to the extent the allegations in subsections (a) through (c) of

Paragraph 115 are based on the text of written documents, Defendants admit that, to

the extent such allegations accurately quote the text of the documents, such text exists,

and otherwise deny them.  Defendants further answer that to the extent the allegations

in the first sentence of subsection (d) are based on the text of written documents or

recordings, Defendants admit that, to the extent such allegations accurately quote the

text of the documents or recordings, such text or recordings existed at one point in

time, and otherwise deny them.  Defendants deny the allegation in the second sentence

of subsection (d).  Defendants further answer that, to the extent the allegations in

subsection (e) are based on the text of written documents, Defendants admit that, to the

extent such allegations accurately quote the text of the documents, such text exists, and

otherwise answer that they lack knowledge or information sufficient to form a belief as

to the truth of allegations in subsection (e) of Paragraph 115.

**COMPLAINT ¶ 116**

This advertising served another purpose as well: to lobby the State of Arizona

to pass a law allowing consumers to purchase a blood test without a healthcare

provider's order.  Theranos's lobbying and advertising efforts were successful and the

bill was signed in April 2015, despite opposition from the Arizona Medical

Association.  At the bill's signing, Holmes stated that "Theranos is about access—

eliminating the need for painful needles and vials of blood, replacing that with tiny

samples taken in convenient locations at convenient hours of operation, always for a

fraction of the cost charged elsewhere—to build a health care system in which early

detection and prevention become reality.  That is why we worked to pass this law; it is

why we believe Arizona's law can and should serve as a model for the nation for direct

access testing."  The law also allowed laboratories to provide blood test results directly

to patients, bypassing involvement by doctors, who are trained to question unusual results.

**ANSWER TO COMPLAINT ¶ 116**

Defendants admit that Theranos supported the passage of Arizona House Bill 2645, which allowed healthcare consumers to purchase medical lab testing without a doctor's order.  Defendants further answer that that to the extent the allegations in Paragraph 116 are based on the text of written documents, Defendants admit that, to the extent such allegations accurately quote the text of the documents, such text exists, and otherwise deny them.  Defendants deny that Plaintiffs' characterization of the documents is accurate, and deny Plaintiffs' framing of these issues.  Defendants deny the remaining allegations in Paragraph 116.

**COMPLAINT ¶ 117**

Walgreens and Theranos jointly marketed Theranos testing services to consumers.  Decisions about the joint marketing campaign and about the other representations described herein were made by both Theranos and Walgreens.

**ANSWER TO COMPLAINT ¶ 117**

Defendants admit that Theranos marketed Theranos services to consumers. Defendants deny the remaining allegations in Paragraph 117.

**COMPLAINT ¶ 118**

Holmes and Balwani also knowingly engaged in, assisted the dissemination of, and were at all times aware of, false and misleading representations as alleged herein.

**ANSWER TO COMPLAINT ¶ 118**

Defendants deny the allegations in Paragraph 118.

**COMPLAINT ¶ 119**

Walgreens and Theranos knew and intended for consumers to rely on their representations, knew that, by the very nature of blood tests and also based on their representations, consumers who purchased and submitted to the blood draws did so under the belief that such blood draws were for legitimate and reliable testing purposes

1  and would reasonably expect the test results they received to be reliable.  Further,

2  Walgreens occupies a special position of trust as a well-established pharmacy entity, as

3  CMO and Group VP of Walgreens Dr. Harry Leider observed in November of 2015:

4  "Everybody knows Walgreens . . . We have 8,300 stores, 25,000 pharmacies, and over

5  1,000 nurse practitioners in our clinics."  Defendants accordingly knew that the

6  Theranos partnership with Walgreens, the imprimatur of Walgreens including via the

7  advertisements, and the presence of Wellness Centers in Walgreens stores, would

8  further lead customers to believe that the Theranos tests were reliable and trustworthy.

9  **ANSWER TO COMPLAINT ¶ 119**

10         Defendants admit that Theranos marketed Theranos services to consumers.

11 Defendants further answer that to the extent the allegations in Paragraph 119 are based

12 on the text of written documents, Defendants admit that, to the extent such allegations

13 accurately quote the text of the documents, such text exists, and otherwise deny them.

14 Defendants deny that Plaintiffs' characterization of the documents is accurate, and

15 deny Plaintiffs' framing of these issues.  Defendants deny the remaining allegations in

16 Paragraph 119.

17 **SUBHEADING F**

18        Theranos Tests Were Unreliable and Dangerous

19 **ANSWER TO SUBHEADING F**

20        Defendants deny the allegations in Subheading F.

21 **COMPLAINT ¶ 120**

22        Theranos's and Walgreens' pervasive marketing and other representations

23 described herein, including but not limited to: (a) their fundamental portrayal of the

24 "tiny" blood draws as being for legitimate testing purposes; and (b) their

25 representations and suggestions that Theranos tests were reliable and complaint with

26 CLIA and other federal guidelines, were knowingly false and misleading.

27 **ANSWER TO COMPLAINT ¶ 120**

28        Defendants deny the allegations in Paragraph 120.

1   **COMPLAINT ¶ 121**

2       In fact, each of the Defendants knew, at all relevant times, that: (a) the Edison

3   technology was still in development and not ready-for-market, and not nearly in a

4   position to serve the purpose, and not intended by Walgreens and Theranos to serve

5   the purpose, of providing reliable blood test results (i.e., "legitimate blood testing");

6   (b) the true essential nature and purpose of the "tiny" blood draws that subjects

7   submitted to was not, and could not have been, legitimate blood testing; and (c)

8   Theranos testing (including Edison and non-Edison) was decidedly unreliable and

9   posed a serious danger to any consumer who might rely on it.

10  **ANSWER TO COMPLAINT ¶ 121**

11      Defendants deny the allegations in Paragraph 121.

12  **COMPLAINT ¶ 122**

13      Each of Walgreens, Theranos, Holmes, and Balwani knew this information to

14  be the case at all relevant times, and yet represented otherwise to consumers and/or

15  concealed that material information from consumers for years, as alleged herein.

16  **ANSWER TO COMPLAINT ¶ 122**

17      Defendants deny the allegations in Paragraph 122.

18  **COMPLAINT ¶ 123**

19      Theranos, Holmes, and Balwani also specifically concealed this information

20  from regulatory authorities.  For example, in order to maintain CLIA certification,

21  laboratories are required to administer "proficiency testing" of samples provided by

22  CMS in order to prove that they can produce accurate results.  According to reports,

23  Theranos split some of the proficiency-testing samples it got into two pieces: One was

24  tested with Edison machines and the other with instruments from other companies.

25  When Theranos lab employees asked Balwani, by email, which results should be

26  reported back to test administrators and the government, he replied, copying Holmes,

27  that "samples should have never run on Edisons to begin with."  Balwani reportedly

28  ordered lab personnel to stop using Edison machines on any of the proficiency-testing

samples and report only the results from instruments bought from other companies. The former employees say they did what they were told but were concerned that the instructions violated federal rules, which state that a lab must handle "proficiency testing samples . . . in the same manner as it tests patient specimens" and by "using the laboratory's routine methods."

**ANSWER TO COMPLAINT ¶ 123**

Defendants admit that Theranos' Newark, California and Scottsdale, Arizona laboratories were certified under the Clinical Laboratory Improvement Amendments of 1988 ("CLIA"), which provides for regulation of clinical laboratories. Defendants further answer that to the extent the allegations in Paragraph 123 are based on the text of written documents, Defendants admit that, to the extent such allegations accurately quote the text of the documents, such text exists, and otherwise deny them. Defendants deny that Plaintiffs' characterization of the documents is accurate, and deny Plaintiffs' framing of these issues. Defendants deny the remaining allegations in Paragraph 123.

**COMPLAINT ¶ 124**

Throughout the more than one year that "tiny" blood draws were being administered in the Walgreens stores and Theranos facilities, the Edison technology was not yet beyond the prototype stage, was not ready-for-market, and was nowhere near in a position to serve the purpose of legitimate blood testing.

**ANSWER TO COMPLAINT ¶ 124**

Defendants deny the allegations in Paragraph 124.

**COMPLAINT ¶ 125**

Moreover, none of the Theranos tests (including non-Edison) were fit for their ordinary purposes and the purposes for which they were sold.

**ANSWER TO COMPLAINT ¶ 125**

Defendants deny the allegations in Paragraph 125.

**COMPLAINT ¶ 126**

Theranos tests were neither conducted in conformity with CLIA regulations, nor "validated" under or compliant with federal guidelines, as represented.

**ANSWER TO COMPLAINT ¶ 126**

Defendants deny the allegations in Paragraph 126.

**COMPLAINT ¶ 127**

Any consumer who had a Theranos test (including non-Edison) could not reasonably rely on the results of such test in light of the litany of problems that have now come to light.

**ANSWER TO COMPLAINT ¶ 127**

Defendants deny the allegations in Paragraph 127.

**COMPLAINT ¶ 128**

As Theranos, Holmes, and Balwani knew, and Walgreens knew and/or would have known at the time had it not deliberately ignored the details and conducted a reasonable inquiry, Theranos did not have the necessary FDA approval, known as a CLIA waiver, to use the Edison device for conducting on-site blood testing at the Wellness Centers, with the sole exception of a single test (Herpes Simplex HSV-1), for which Theranos obtained approval in July 2015. Theranos sought FDA approval for more than 120 of its tests, none of which have been approved at this time.

**ANSWER TO COMPLAINT ¶ 128**

Defendants admit that Theranos worked with the United States Food and Drug Administration ("FDA") to secure regulatory approval for Theranos' proprietary technologies and many different tests. Defendants further admit that Theranos obtained a CLIA Waiver for its herpes simplex 1 virus IgG (HSV-1) test, as well as its associated proprietary test system, from the FDA, thus clearing Theranos to offer this test outside its clinical laboratories. Defendants further answer that this same test (together with Theranos' proprietary test system) was submitted for "premarket review" under the Food, Drug, and Cosmetics Act, and subsequently received 510(k)

clearance from the FDA.  Defendants deny the remaining allegations in Paragraph 128.

**COMPLAINT ¶ 129**

By the end of 2014, Theranos employees reported using the Edison device for only 15 out of 205 tests.  By or around the summer of 2015, Theranos and Walgreens stopped administering "tiny" blood draws altogether, a decision that, on information and belief, coincided with increased scrutiny by regulators of the unready Edison technology.

**ANSWER TO COMPLAINT ¶ 129**

Defendants lack knowledge or information regarding purported employee "reports" in Paragraph 129 and therefore deny the first sentence in Paragraph 129 on that basis.  Defendants admit that Theranos stopped conducting capillary (fingerstick) blood draws in the latter half of 2015.  Defendants deny the remaining allegations in Paragraph 129.

**COMPLAINT ¶ 130**

In a report detailing objectionable conditions at Theranos dated September 16, 2015, the FDA informed Theranos that, among other things, the agency considered the Edison devices to be uncleared medical devices being shipped in interstate commerce between California, Arizona, and Pennsylvania.

**ANSWER TO COMPLAINT ¶ 130**

Defendants deny the allegations of Paragraph 130.

**COMPLAINT ¶ 131**

Because Theranos did not have FDA approval to conduct tests on the Edison device outside of a laboratory setting (with the limited exception for HSV-1 noted above, which approval did not even come until after or around the time Theranos and Walgreens stopped administering the "tiny" blood draws and using Edison), when Walgreens and Theranos drew "tiny" blood samples at the Wellness Centers, the samples obtained then had to be shipped to one of two centralized labs, either in Newark, California, or Scottsdale, Arizona.  The proprietary Edison devices were only

1   located in the Newark laboratory.  Accordingly, on information and belief, all the

2   finger stick blood samples were analyzed at the Newark facility, with the potential

3   exception of a limited number of samples that Theranos may have, remarkably,

4   *diluted*.  In all, tens of thousands of "tiny" blood draws were conducted on consumers

5   in the Walgreens and Theranos Wellness Centers before the "tiny" blood draws were

6   discontinued in 2015.  The vast majority of these "tiny" blood draws occurred at

7   Walgreens stores.

8   **ANSWER TO COMPLAINT ¶ 131**

9        Defendants admit Theranos operated two centralized labs, in Newark,

10  California and Scottsdale, Arizona, which performed clinical testing on patient

11  samples that were drawn at Theranos Wellness Centers.  Defendants deny the

12  remaining allegations in Paragraph 131.

13  **COMPLAINT ¶ 132**

14       The Scottsdale Lab only performed analyses on venipuncture tests.  According

15  to reports, over 90 percent of Theranos's testing was done at its Scottsdale lab.  Of the

16  universe of venipuncture tests, Theranos has also disclosed that it outsourced a limited

17  number of "highly complex" tests to third-party, university-affiliated labs.

18  **ANSWER TO COMPLAINT ¶ 132**

19       Defendants admit that at one time, approximately 90 percent of patient testing

20  was performed at Theranos' Scottsdale lab.  Defendants further admit that Theranos

21  exclusively used FDA-approved analyzers and instruments at its Scottsdale, Arizona

22  lab that were manufactured by third party companies such as Siemens Healthineers

23  AG, and that Theranos' Scottsdale, Arizona laboratory did not perform analysis of

24  Theranos' proprietary fingerstick tests.  Defendants further admit that Theranos, in

25  accordance with industry practice, outsourced certain tests to third-party "reference"

26  laboratories, which conducted testing for less-commonly-ordered tests.  Defendants

27  deny the remaining allegations in Paragraph 132.

28

1    **COMPLAINT ¶ 133**

2         In the context of a regulated laboratory, Theranos did not need FDA approval to

3    perform testing using the Edison devices (because they were not selling the Edison

4    devices), so long as Theranos's lab operations were in compliance with federal

5    guidelines and met proficiency testing and other safeguards.  However, the labs that

6    Theranos used failed to comply with such testing and guidelines.

7    **ANSWER TO COMPLAINT ¶ 133**

8         Defendants deny the allegations in Paragraph 133.

9    **COMPLAINT ¶ 134**

10        Statements by Walgreens, Theranos, Balwani, and Holmes—that testing was

11   accomplished through proprietary analysis, which was accurate and compliant with

12   federal regulations and guidelines—were false, both as to the Edison-device tests and

13   the other tests.  Simply put, the consumers who submitted to "tiny" blood draws did so

14   under entirely false pretenses and mistaken as to the essential nature and purpose of

15   what their blood draws were about, and no consumer who submitted to a Theranos

16   blood draw (Edison or non-Edison) received what they paid for and what they

17   reasonably expected.  None of them could reasonably rely on the test results they

18   received, in light of the litany of problems that have come to light.

19   **ANSWER TO COMPLAINT ¶ 134**

20        Defendants deny the allegations in Paragraph 134.

21   **SUBHEADING G**

22        Defendants' Fraudulent Scheme Unravels

23   **ANSWER TO SUBHEADING G**

24        Defendants deny the allegations in Subheading G.

25   **COMPLAINT ¶ 135**

26        In March 2014, a former Theranos employee alleged to New York State's

27   public-health lab that Theranos may have manipulated the proficiency testing process,

28   in part by intentionally excluding data that showed Theranos's technology to be

---

ANSWER TO PLAINTIFFS' SECOND
                                                        AMENDED COMPLAINT

1   unreliable.  The New York State lab responded that the practices described would be a

2   "violation of the state and federal requirements," and forwarded the allegations to the

3   Centers for Medicare and Medicaid Services ("CMS").

4   **ANSWER TO COMPLAINT ¶ 135**

5       Defendants answer that, to the extent the allegations in Paragraph 135 are based

6   on the text of written documents, Defendants admit that, to the extent such allegations

7   accurately describe the text of the documents, such text exists, and otherwise deny

8   them.  Defendants deny the remaining allegations in Paragraph 135.

9   **COMPLAINT ¶ 136**

10      In April 2015, Arizona Department of Health Services inspectors identified

11  multiple deficiencies at Theranos's Scottsdale laboratory, including serious issues with

12  Theranos's proficiency testing.  For example, in the Scottsdale facility, regulators

13  found that Theranos used mis-programmed machines to evaluate blood coagulation

14  tests, failed to properly gauge water purity in machines it used, and failed to meet

15  laboratory quality standards.

16  **ANSWER TO COMPLAINT ¶ 136**

17      Defendants admit that, as part of its initial survey of Theranos' Arizona lab, the

18  Arizona Department of Health Services conducted an inspection of Theranos' Arizona

19  lab in April 2015.  Defendants further answer that Theranos submitted a plan of

20  corrective action in response to these survey findings on May 12, 2015, and that the

21  Arizona lab obtained its certificate of compliance effective May 20, 2015.  Defendants

22  further answer that, to the extent the allegations in Paragraph 136 are based on the text

23  of written documents, Defendants admit that, to the extent such allegations accurately

24  describe the text of the documents, such text exists, and otherwise deny them.

25  Defendants deny the remaining allegations in Paragraph 136.

26  **COMPLAINT ¶ 137**

27      In September 2015, a former Theranos lab employee filed a complaint with

28  CMS alleging that Theranos instructed lab employees to keep testing patients with the

Edison devices despite indications of "major stability, precision and accuracy" problems with those devices.

**ANSWER TO COMPLAINT ¶ 137**

Defendants answer that, to the extent the allegations in Paragraph 137 are based on the text of written documents, Defendants admit that, to the extent such allegations accurately describe the text of the documents, such text exists, and otherwise deny them. Defendants lack knowledge or information regarding any purported "complaint" filed with CMS in Paragraph 137 and therefore deny the remaining allegations in Paragraph 137 on that basis.

**COMPLAINT ¶ 138**

In October 2015 the FDA released inspection reports of Theranos declaring the nanotainer to be an "uncleared medical device." The investigation also found deficiencies in Theranos's processes for handling customer complaints, monitoring quality and vetting suppliers.

**ANSWER TO COMPLAINT ¶ 138**

Defendants admit that in September 2015, Theranos received an inspection report from the FDA, the contents of which speaks for itself. Defendants deny the remaining allegations in Paragraph 138.

**COMPLAINT ¶ 139**

In January 2016, CMS cited the Theranos Newark, California lab for multiple serious deficiencies. Among other things, the report stated that in October 2014, 29 percent of quality control checks performed on the Edison devices produced results outside the acceptable range, and that in February 2015, quality checks on an Edison test measuring a hormone affecting testosterone levels failed 87 percent of the time.

**ANSWER TO COMPLAINT ¶ 139**

Defendants admit that Theranos received correspondence from CMS in January 2016, the contents of which speak for themselves. Defendants deny the remaining allegations in Paragraph 139.

1  **COMPLAINT ¶ 140**

2      The letter from CMS, dated January 25, 2016, noted that, based on a December

3  2015 survey, Theranos was found to be out of compliance with five CLIA Condition-

4  level requirements, at least one of which posed "immediate jeopardy to patient health

5  and safety," meaning the condition had "already caused, is causing, or is likely to

6  cause, at any time, serious injury or harm, or death, to individuals served by the

7  laboratory or the health and safety of the general public."

8  **ANSWER TO COMPLAINT ¶ 140**

9      Defendants admit that Theranos received correspondence from CMS in January

10  2016, the contents of which speak for themselves.  Defendants deny the remaining

11  allegations in Paragraph 140.

12  **COMPLAINT ¶ 141**

13      Inspection reports found that Edison devices in the lab often failed to meet even

14  the Company's own accuracy requirements, including a test to detect prostate cancer.

15  In one report, inspectors found that 81 of 81 final patient results of a blood clotting test

16  reported to patients on the blood thinner Warfarin were not accurate.

17  **ANSWER TO COMPLAINT ¶ 141**

18      Alleged "[i]nspection reports" in Paragraph 141 are undefined and Defendants

19  therefore deny the first sentence in Paragraph 141 on that basis.  To the extent such

20  reports exists, the contents speak for themselves.  Defendants deny the remaining

21  allegations in Paragraph 141.

22  **COMPLAINT ¶ 142**

23      In addition, the FDA observed that there were no quality audits being

24  performed at Theranos's Newark lab (where the Edison devices were located), in

25  contravention of FDA regulations.

26  **ANSWER TO COMPLAINT ¶ 142**

27      Alleged FDA observations in Paragraph 142 are undefined and Defendants

28  therefore deny the allegations in Paragraph 142 on that basis.  To the extent records of

1   such alleged observations exists, the contents speak for themselves.  Defendants deny

2   the remaining allegations in Paragraph 142.

3   **COMPLAINT ¶ 143**

4        At the very time that each of the Defendants were widely touting Theranos's

5   compliance with federal regulations, Theranos had been repeatedly sanctioned by

6   federal authorities for non-compliance, yet Defendants failed to disclose that fact and

7   in fact continued to represent that there were no problems.  After CMS issued findings

8   regarding the Newark facility, Theranos made statements to reassure the public that its

9   Scottsdale, Arizona facility was "not impacted" by the CMS findings and Theranos

10  remained "open for business, confident in our technologies, and unwavering in our

11  commitment to provide Arizonans with the care and service they deserve."

12  **ANSWER TO COMPLAINT ¶ 143**

13       Defendants deny the allegations in the first sentence of Paragraph 143.

14  Defendants further answer that, to the extent the allegations in the second sentence of

15  Paragraph 143 are based on the text of written documents, Defendants admit that, to

16  the extent such allegations accurately quote the text of the documents, such text exists.

17  Defendants further admit that the findings from the CMS survey of Theranos' Newark,

18  California lab commenced in September 2015 did not pertain to the operations of

19  Theranos' separate laboratory in Scottsdale, Arizona.  Defendants deny that Plaintiffs'

20  characterization of the documents is accurate, and deny Plaintiffs' framing of these

21  issues.  Defendants deny the remaining allegations in Paragraph 143.

22  **COMPLAINT ¶ 144**

23       On March 18, 2016, Theranos received another letter from CMS referenced,

24  "RE: PROPOSED SANCTIONS - CONDITIONS NOT MET IMMEDIATE

25  JEOPARDY," which stated that the Company had not remedied the deficiencies

26  identified by CMS in its January letter.  Outlining Theranos's failures to meet quality-

27  control standards, such as improper freezer temperatures, lack of proper

28  documentation, improper equipment calibration, and unqualified personnel, CMS

1  notified Theranos that it was out of compliance with accepted clinical laboratory

2  standards, still had not established compliance with the CLIA requirements previously

3  identified, and had not demonstrated that the laboratory had "abated immediate

4  jeopardy."  Notice of Sanctions pursuant to the Clinical Laboratory Improvement

5  Amendments of 1988 (CLIA) was provided.

6  **ANSWER TO COMPLAINT ¶ 144**

7       Defendants admit that Theranos received correspondence from CMS dated

8  March 18, 2016, the contents of which speak for themselves.  Defendants deny the

9  remaining allegations in Paragraph 144.

10  **COMPLAINT ¶ 145**

11       As these reports indicate, Theranos's laboratory operations in both Scottsdale

12  and Newark were found to be deeply flawed and deficient by government regulators.

13  According to published reports, at Theranos's Scottsdale lab, the Company performed

14  lab tests with certain Siemens lab equipment programmed to the wrong settings, and

15  failed to adequately gauge the purity of the water input into Siemens lab equipment,

16  which could affect the outcome of the results of testing run on such devices.

17  **ANSWER TO COMPLAINT ¶ 145**

18       Defendants deny the allegations in Paragraph 145.

19  **COMPLAINT ¶ 146**

20       The personnel in charge of operating Theranos's laboratories were dangerously

21  underqualified.  For example, the Director of Theranos's Newark laboratory was Dr.

22  Sunil Dhawan, a dermatologist who had no prior experience running a blood lab.

23  **ANSWER TO COMPLAINT ¶ 146**

24       Defendants deny the allegations in the first sentence of Paragraph 146.

25  Defendants further answer that Dr. Sunil Dhawan was at one time the lab director of

26  Theranos' Newark, California laboratory.  Defendants deny the remaining allegations

27  in Paragraph 146.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COMPLAINT ¶ 147**

A peer-reviewed study published March 28, 2016 by researchers at the Icahn School of Medicine at Mount Sinai showed that results for cholesterol tests done by Theranos differed enough from the two largest laboratory companies that it could negatively impact patient care.

**ANSWER TO COMPLAINT ¶ 147**

Defendants answer that to the extent such a study exists, the contents speak for themselves.  Defendants deny the remaining allegations in Paragraph 147.

**COMPLAINT ¶ 148**

Regardless, Defendants continued to conceal this critical information, to falsely market Theranos testing services as accurate and reliable, and to encourage consumers to use Theranos test results to make decisions about their health and treatment.

**ANSWER TO COMPLAINT ¶ 148**

Defendants deny the allegations in Paragraph 148.

**COMPLAINT ¶ 149**

In April 2016, Theranos revealed that it was under investigation by the U.S. Department of Justice as well as the Securities and Exchange Commission, and that the Department of Justice had requested documents.  Walgreens and the New York State Department of Health also received subpoenas.  Investigators are also examining whether Theranos misled government officials.

**ANSWER TO COMPLAINT ¶ 149**

Defendants admit that Theranos has received subpoenas from the United States Department of Justice and the U.S. Securities and Exchange Commission.  Defendants further answer that they lack knowledge or information sufficient to form a belief as to the truth of the allegations in the second and third sentences of Paragraph 149 and therefore deny them on that basis.

**COMPLAINT ¶ 150**

On June 30, 2016, members of the House Energy and Commerce Committee

1  requested briefing from Theranos regarding Theranos's failure to comply with federal

2  regulatory standards governing clinical laboratory testing, and the resulting impact on

3  patients nationwide.  The Committee expressed concern over "Theranos's disregard

4  for patient safety and its failure to immediately address concerns by federal

5  regulators," and requested "information about how company policies permitted

6  systematic violations of federal law."

7  **ANSWER TO COMPLAINT ¶ 150**

8       Defendants admit that members of the U.S. House of Representatives Energy

9  and Commerce Committee requested a briefing from Theranos.  Defendants further

10  answer that, to the extent the allegations in Paragraph 150 are based on public

11  statements or written documents, such statements or documents speak for themselves.

12  Defendants deny the remaining allegations in Paragraph 150.

13  **COMPLAINT ¶ 151**

14       On July 7, 2016, CMS issued a 33-page Notice to Theranos executives stating

15  that it was revoking the CLIA certificate of Theranos's Newark laboratory and banning

16  the owners and operator(s) of Theranos, including Holmes and Balwani, from owning

17  or running a lab for at least two years.  Citing deficiencies in Theranos's training of lab

18  personnel, quality assurance, and procedures for assessing the "patient impact" of its

19  proficiency testing, among other shortcomings, CMS also threatened to impose a

20  monetary penalty of $10,000 per day for each day of non-compliance.

21  **ANSWER TO COMPLAINT ¶ 151**

22       Defendants admit that in July 2016, CMS issued a notice to Theranos, the

23  contents of which speak for themselves.  Defendants deny the remaining allegations in

24  Paragraph 151.

25  **COMPLAINT ¶ 152**

26       As a result of revelations regarding problems with Theranos's technology and

27  laboratory standards, Theranos test results have lost all credibility within the medical

28  community.  Dr. Geoffrey Baird, a pathology professor at the University of

1   Washington, reportedly said about Theranos: "I'm incredibly confused by what these

2   people [at Theranos] are doing.  No lab is run like this."  Tim Hamill, medical director

3   of UC San Francisco's clinical labs at China Basin and Parnassus reportedly stated:

4   "The fact that there are so many [deficiencies identified by CMS] gives me the

5   impression that these guys don't know what they're doing."  Other doctors "stopped

6   steering patients to Theranos because of results they didn't trust."  In the words of one

7   Forbes reporter, "If there is working technology at Theranos . . . you wouldn't be able

8   to tell."

9   **ANSWER TO COMPLAINT ¶ 152**

10          Defendants answer that they lack knowledge or information sufficient to form a

11   belief as to the truth of the allegations in the first sentence of Paragraph 152 and

12   therefore deny them on that basis.  Defendants further answer that, to the extent the

13   allegations in Paragraph 152 are based on the text of documents, to the extent that the

14   above text accurately quotes the documents, such text exists, and otherwise deny these

15   allegations.  Defendants deny the remaining allegations in Paragraph 152.

16   **COMPLAINT ¶ 153**

17          In 2016, Theranos whistleblower Tyler Schultz stepped forward to provide a

18   disturbing, detailed account of his experience as a Theranos employee.  Mr. Schultz

19   was reportedly the first to report Defendants' fraudulent conduct to state regulators.

20   **ANSWER TO COMPLAINT ¶ 153**

21          Defendants admit that Tyler Schultz is a former Theranos employee.  His

22   alleged "account," to the extent it exists, speaks for itself.  Defendants deny the

23   remaining allegations in Paragraph 153.

24   **COMPLAINT ¶ 154**

25          Mr. Schultz was employed by Theranos as an assay validation team member

26   and was responsible for verifying and documenting the accuracy of tests run on Edison

27   devices before they were deployed in the lab for use with patients.

28

1  **ANSWER TO COMPLAINT ¶ 154**

2      Defendants admit that Mr. Schultz was employed by Theranos as an assay

3  validation team member for a period of time and deny the remaining allegations in

4  Paragraph 154.

5  **COMPLAINT ¶ 155**

6      Mr. Schultz stated that he found the results varied widely when tests were rerun

7  with the same blood samples.  In order to reduce this variability, he states that

8  Theranos routinely discarded outlying values from validation reports it compiled.

9  **ANSWER TO COMPLAINT ¶ 155**

10      Defendants answer that Mr. Schultz's alleged statements, to the extent he made

11  them, speak for themselves.  Defendants deny the remaining allegations in Paragraph

12  155.

13  **COMPLAINT ¶ 156**

14      For example, one validation report about an Edison test to detect a sexually-

15  transmitted infectious disease said the test was sensitive enough to detect the disease

16  95% of the time.  But when Mr. Shultz looked at the two sets of experiments from

17  which the report was compiled, they showed sensitivities of 65% and 80%.  Thus, if

18  100 people infected with the disease were tested only with the Edison device, as many

19  as 35 of them would likely incorrectly get a result concluding they were disease-free.

20  **ANSWER TO COMPLAINT ¶ 156**

21      Defendants answer that they lack knowledge or information sufficient to form a

22  belief as to the truth of the allegations of Paragraph 156 and therefore deny them on

23  that basis.

24  **COMPLAINT ¶ 157**

25      Mr. Schultz then moved to Theranos's production team, where he was

26  responsible for quantifying how much patient tests should be allowed to vary during

27  daily quality-control checks.  Labs are permitted to set those parameters subject to

28  them being within the bounds of accepted industry guidelines.

1  **ANSWER TO COMPLAINT ¶ 157**

2    Defendants admit that Mr. Schultz was employed in Theranos' production team

3  for a period of time and deny the remaining allegations in Paragraph 157.

4  **COMPLAINT ¶ 158**

5    Mr. Schultz observed that the Edison devices often failed Theranos's own

6  quality-control standards.  Mr. Schultz further stated that Balwani, the No. 2 executive

7  at Theranos under Holmes, pressured lab employees to ignore the failures and run

8  blood tests on the devices anyway, contrary to accepted lab practices.

9  **ANSWER TO COMPLAINT ¶ 158**

10   Mr. Schultz's purported statements, to the extent they were made, speak for

11 themselves.  Defendants lack knowledge or information of the allegations in Paragraph

12 158 sufficient to form a belief as to their truth and therefore deny them on that basis.

13 **COMPLAINT ¶ 159**

14   Mr. Schultz also states that he informed Holmes of his concerns in early 2014.

15 **ANSWER TO COMPLAINT ¶ 159**

16   Mr. Schultz's purported statements, to the extent they were made, speak for

17 themselves.  Defendants lack knowledge or information of the allegations in Paragraph

18 159 sufficient to form a belief as to their truth and therefore deny them on that basis.

19 **COMPLAINT ¶ 160**

20   Unsatisfied with the actions that Balwani and Holmes had taken, Mr. Schultz

21 states that he anonymously emailed his complaint to New York officials who

22 administered a proficiency-testing program in which Theranos was enrolled.

23 **ANSWER TO COMPLAINT ¶ 160**

24   Mr. Schultz's purported statements, to the extent they were made, speak for

25 themselves.  Defendants lack knowledge or information of the allegations in Paragraph

26 160 sufficient to form a belief as to their truth and therefore deny them on that basis.

27 **COMPLAINT ¶ 161**

28   In April 2014, Mr. Schultz again informed Holmes of the quality-control

failures.  A few days later, Balwani responded to Mr. Schultz with the following email:

> We saw your email to Elizabeth.  Before I get into specifics, let me share
> with you that had this email come from anyone else in the company, I
> would have already held them accountable for the arrogant and
> patronizing tone and reckless comments.

**ANSWER TO COMPLAINT ¶ 161**

Defendants answer that, to the extent the allegations in Paragraph 161 are based on the text of written documents, Defendants admit that, to the extent such allegations accurately quote the text of the documents, such text exists, and otherwise deny them. Defendants deny that Plaintiffs' characterization of the documents is accurate, and deny Plaintiffs' framing of these issues.  Defendants deny the remaining allegations in Paragraph 161.

**COMPLAINT ¶ 162**

Mr. Schultz resigned from his position with Theranos shortly thereafter.

**ANSWER TO COMPLAINT ¶ 162**

Defendants admit that Mr. Schultz resigned from Theranos and otherwise deny the allegations in Paragraph 162.

**COMPLAINT ¶ 163**

In a recent interview with Forbes magazine, Mr. Schultz summarized his experience with Theranos as follows: "everyone kind of knew that this thing didn't actually live up to what we were claiming."

**ANSWER TO COMPLAINT ¶ 163**

Mr. Schultz's purported statements, to the extent they were made, speak for themselves.  Defendants lack knowledge or information of the allegations in Paragraph 163 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 164**

On November 8, 2016, Walgreens filed a lawsuit against Theranos in federal court the District of Delaware, alleging that Theranos breached its contractual

1  obligations by, *inter alia,* providing testing services to Walgreens customers that

2  Theranos knew lacked accuracy or reliability, and by misrepresenting that its testing,

3  including Edison, was ready-for-market, reliable and accurate and concealing that the

4  opposite was true.

5  **ANSWER TO COMPLAINT ¶ 164**

6       Defendants admit that Walgreens filed a complaint against Theranos in federal

7  court in the District of Delaware, the contents of which speaks for itself.  Defendants

8  otherwise deny the allegations in Paragraph 164.

9  **COMPLAINT ¶ 165**

10      Partner Fund Management, which invested $96.1 million in Theranos in early

11 2014, filed a shareholder suit on October 10, 2016.  The lawsuit names Holmes,

12 Balwani, and Theranos and alleges that the three engaged in securities fraud, negligent

13 misrepresentation and violations of the Delaware deceptive trade practices act, among

14 other things, including in particular by hiding, and misleading investors and others

15 regarding, the true state of the Edison technology.

16 **ANSWER TO COMPLAINT ¶ 165**

17      Defendants admit that Partner Fund Management filed a complaint against

18 Defendants in the Delaware Court of Chancery, the contents of which speaks for itself.

19 Defendants otherwise deny the allegations in Paragraph 165.

20 **COMPLAINT ¶ 166**

21      On November 28, 2016, a second Theranos investor filed a putative class action

22 against Theranos, Holmes, and Balwani with similar allegations, including *inter alia*,

23 that they concealed material information about reliability problems and concerns with

24 Theranos tests, and affirmatively misrepresented that the Edison technology was

25 ready-for-market and reliable.

26 **ANSWER TO COMPLAINT ¶ 166**

27      Defendants admit that Colman, et al., filed a complaint against Defendants in

28 the U.S. District Court for the Northern District of California, the contents of which

1   speaks for itself.  Defendants otherwise deny the allegations in Paragraph 166.

2   **COMPLAINT ¶ 167**

3       In January 2017, it was reported that Theranos's Scottsdale, Arizona laboratory,

4   where the majority of (non-Edison) Theranos tests were conducted, had failed a

5   September 2016 inspection by CMS, thus subjecting Theranos to a new round of

6   potential sanctions.  According to reports, Theranos responded to the inspection

7   findings with a plan to correct the deficiencies found, but CMS rejected the plan as

8   deficient.  Defendants failed to disclose any of these developments.

9   **ANSWER TO COMPLAINT ¶ 167**

10       Defendants lack knowledge or information regarding purported unnamed

11   "reports" in Paragraph 167 and therefore deny the allegations in Paragraph 167 on that

12   basis.  Defendants further answer that, to the extent the allegations in Paragraph 167

13   are based on the text of written documents, Defendants admit that, to the extent such

14   allegations accurately quote the text of the documents, such text existed at one point in

15   time, and otherwise deny them.  Defendants deny the remaining allegations in

16   Paragraph 167.

17   **COMPLAINT ¶ 168**

18       In May 2016, as its scheme was collapsing, Theranos announced that it had

19   voided *all* blood tests conducted on its Edison device in 2014 and 2015 (which

20   consisted of tens of thousands of tests), and had belatedly "corrected" thousands of

21   other test results it had provided to consumers.  In December 2016, Theranos further

22   voided and/or belatedly "corrected" numerous additional test results for tests

23   conducted at its Scottsdale, Arizona laboratory.  Defendants have failed to provide

24   adequate notice or disclosure regarding the nature and extent of the tests it has already

25   voided or belatedly "corrected," leaving consumers in the dark.  Based on the limited

26   information disclosed, however, it is apparent that a very substantial portion of the

27   tests have already been voided or belatedly "corrected."  For example, the complaint in

28   Walgreens' action against Theranos indicates that the voided Edison-device "tests"

represented some 10% or more of the overall blood draws conducted at Walgreens stores.  That does not include the thousands of others that have been, and continue to be, voided and/or belatedly "corrected."

**ANSWER TO COMPLAINT ¶ 168**

Defendants answer that, to the extent the allegations in Paragraph 168 are based on the text of written documents, Defendants admit that, to the extent such allegations accurately quote the text of the documents, such text exists, and otherwise deny them. Defendants deny that Plaintiffs' characterization of the documents is accurate, and deny Plaintiffs' framing of these issues.  Defendants deny the remaining allegations in Paragraph 168.

**SUBHEADING H**

Defendants Continue to Fail to Protect Customers

**ANSWER TO SUBHEADING H**

Defendants deny the allegations in Subheading H.

**COMPLAINT ¶ 169**

Defendants' misrepresentations, omissions, and fraudulent conduct alleged herein persisted from before the tests were first offered to the public all the way through the present.

**ANSWER TO COMPLAINT ¶ 169**

Defendants deny the allegations in Paragraph 169.

**COMPLAINT ¶ 170**

Even after the highly damning CMS report became public in January 2016, Defendants still did not take immediate steps to protect the consumers who obtained testing services from Theranos.  Walgreens, for its part, failed to take immediate action even at this stage and instead gave Theranos 30 days to resolve the critical issues CMS identified at the Newark lab, and closed only a single Wellness Center.  Not only did Walgreens permit the remaining 40 Wellness Centers to remain open at that time, it made no effort to notify prospective patients about potential concerns about the

reliability of Theranos's testing, or that the Edison "tiny" blood "tests" were not truly for testing purposes.  Nor did Walgreens notify patients who had previously received Theranos's tests at the Wellness Centers that their test results may not have been accurate or reliable.

**ANSWER TO COMPLAINT ¶ 170**

Defendants deny the allegations in Paragraph 170.

**COMPLAINT ¶ 171**

Because it had no choice due to regulatory action, Theranos has now completely voided and belatedly "corrected" many thousands of its tests results.  In many cases, it took months (or even a year or more) to inform customers and their doctors that the test results should not be relied on.

**ANSWER TO COMPLAINT ¶ 171**

Defendants admit that Theranos voided test results.  Defendants deny the remaining allegations in Paragraph 171.

**COMPLAINT ¶ 172**

The belated "correction" of test results, long after Theranos and Walgreens even had access to the blood samples in question, is inconsistent with industry standards. The Wall Street Journal reported on Theranos sending so-called "corrected results" to some patients.  Disturbingly, in some instances, the "corrected" results were even more inaccurate than the initial inaccurate and unreliable results Theranos provided.

**ANSWER TO COMPLAINT ¶ 172**

Defendants answer that, to the extent the allegations in Paragraph 172 are based on the text of written documents, Defendants admit that, to the extent such allegations accurately quote the text of the documents, such text exists, and otherwise deny them. Defendants deny that Plaintiffs' characterization of the documents is accurate, and deny Plaintiffs' framing of these issues.  Defendants deny the remaining allegations in Paragraph 172.

1

**COMPLAINT ¶ 173**

2       Even beyond the many thousands of tests that have already been completely

3   voided and belatedly "corrected," no consumer who had a Theranos test could

4   reasonably rely on the results they received given the sweeping litany of compliance

5   issues and the extensive list of other accuracy and reliability problems that have come

6   to light, a list that seems to be expanding even after these lawsuits were filed.

7   **ANSWER TO COMPLAINT ¶ 173**

8       Defendants deny the allegations in Paragraph 173.

9   **COMPLAINT ¶ 174**

10      Defendants have failed to keep customers informed and notified, including but

11  not limited to by: failing to inform customers about the numerous problems when

12  Defendants were aware of them; failing to inform "tiny" blood draw subjects that the

13  true purpose of their blood draws was not legitimate blood testing and concealing the

14  true purposes; pervasively misrepresenting that Theranos tests could and should be

15  trusted when they knew that was not the case; and failing to promptly and properly

16  notify customers about voided and belatedly "corrected" tests results.  Even after their

17  scheme began collapsing under its own weight, Theranos, Walgreens, Holmes, and

18  Balwani continued to engage in a pattern of denying and downplaying the problems,

19  further leaving customers in the dark.

20  **ANSWER TO COMPLAINT ¶ 174**

21      Defendants deny the allegations in Paragraph 174.

22  **COMPLAINT ¶ 175**

23      It was not until June 14, 2016, almost six months after CMS's report first

24  became public, and years after Walgreens, Theranos, Balwani, and Holmes were aware

25  of reliability problems across the Theranos testing spectrum, that Walgreens

26  announced it was ending its relationship with Theranos.  Days later, Theranos sent

27  letters to providers encouraging them to direct patients to one of the Theranos-operated

28  Wellness Centers.  The letters assured providers that Theranos was "*open for business,*

confident in our technologies, and steadfast in our commitment to make lab tests fast, convenient, and affordable for everyone."  (emphasis in original).  The letters did not disclose, among other things, CMS's sanctions, that Edison was not market-ready when the "tiny" blood draws had been conducted and that Theranos and Walgreens had discontinued using the Edison device and finger prick draws due to scrutiny by regulators of the unready technology, the numerous other problems identified with both the Newark and Scottsdale testing facilities, that it had voided all Edison tests performed, as well as other tests, or that the tests were unreliable.  To the contrary, Theranos continued to suggest that its tests were accurate and reliable.  In the provider letters, Theranos also directed providers and their patients to Theranos's website, which also concealed the material information omitted from the provider letters.

**ANSWER TO COMPLAINT ¶ 175**

Defendants admit that Walgreens announced it was ending its partnership with Theranos in June 2016.  Defendants further answer that, to the extent the allegations in Paragraph 175 are based on the text of written documents, Defendants admit that, to the extent such allegations accurately quote the text of the documents, such text exists, speaks for itself, and otherwise deny the allegations in Paragraph 175.  Defendants deny that Plaintiffs' characterization of the documents is accurate, and deny Plaintiffs' framing of these issues.  Defendants deny the remaining allegations in Paragraph 175.

**COMPLAINT ¶ 176**

On July 19, 2016, Theranos issued a statement on the CMS findings that included further misleading statements and falsehoods:

> Q: What practices do you undertake to ensure that your test results are accurate?
>
> What processes do you use to ensure compliance and quality results?
>
> A: We undertake quality and compliance measures including the following that ensures:
>
> o   Our laboratory leadership, including our lab director and testing

personnel, are highly qualified and well trained

- o Processes are properly reviewed and maintained
- o Quality control and quality assessment programs are followed
- o Lab processes, including assay verification, calibration, equipment maintenance and environmental controls, are followed

**ANSWER TO COMPLAINT ¶ 176**

Defendants admit that Theranos issued the press release on July 19, 2016, the contents of which speak for themselves.  Defendants deny that Plaintiffs' characterization of the documents is accurate, and deny Plaintiffs' framing of these issues.  Defendants deny the remaining allegations in Paragraph 176.

**COMPLAINT ¶ 177**

Given, *inter alia,* the lack of transparency and outright fraud from the Defendants, the fundamental and sweeping nature of the numerous deficiencies that have been identified regarding Theranos testing, and the fact that both the list of serious deficiencies made public and the list of tests that have been voided and belatedly "corrected" have continued to expand with no apparent end in sight, the only reasonable conclusion for any Plaintiff or Class member here to reach is that they cannot and should not be relying on the results of their Theranos tests.

**ANSWER TO COMPLAINT ¶ 177**

Defendants deny the allegations in Paragraph 177.

**COMPLAINT ¶ 178**

Theranos has apparently not learned its lesson, despite endangering the health and lives of thousands of patients.  CMS banned Holmes and Balwani from owning or operating a blood-testing business for at least two years and revoked Theranos's license to operate a lab in California.  Yet Theranos and Holmes, apparently undeterred, are now working on developing a "miniLab" to run diagnostic tests on small amounts of blood.  One doctor, after watching Holmes's presentation at the annual meeting of the American Association for Clinical Chemistry, noted that it was

not clear how the Edison and miniLab differed, and that Holmes had not actually shown that the device could perform a large number of tests on a single drop of blood. Theranos's deception and secrecy continues; the miniLab has not been evaluated by a third party and lacks FDA approval.

**ANSWER TO COMPLAINT ¶ 178**

To the extent the allegations in Paragraph 178 are based on the text of written documents or presentations, Defendants admit that, to the extent such allegations accurately quote the text of the documents or presentations, such text or presentations exist, and otherwise deny them.  Defendants deny that Plaintiffs' characterization of the documents or presentations is accurate, and deny Plaintiffs' framing of these issues.  Defendants deny the remaining allegations in Paragraph 178.

**SUBHEADING I**

The Members of the Edison Subclass Were Subjected to Battery

**ANSWER TO SUBHEADING I**

Defendants deny the allegations in Subheading I.

**COMPLAINT ¶ 179**

The tens of thousands of members of the Edison Subclass, as defined herein, including Plaintiffs B.P., R.C., and S.J., were all subject to one or more so-called "tiny" blood draws.  For all of these "tiny" blood draws, a needle was stuck into the subject's finger, penetrating their skin and tissue, and blood was drawn from their body.

**ANSWER TO COMPLAINT ¶ 179**

Theranos admits that it provided blood testing services to Plaintiff B.P. and S.J., and further admits that certain of its customers received capillary blood draws using the fingerstick technique.  Theranos denies the remaining allegations in Paragraph 179.

Holmes and Balwani lack knowledge or information of the allegations in Paragraph 179 sufficient to form a belief as to their truth and therefore deny them on that basis.

1

**COMPLAINT ¶ 180**

2

The vast majority of these "tiny" blood draws were administered at Walgreens

3

stores, with a small portion administered at Theranos Wellness Centers.

4

**ANSWER TO COMPLAINT ¶ 180**

5

Theranos admits that capillary blood draws using the fingerstick technique were

6

administered to customers in Walgreens locations in Arizona and California.  Theranos

7

lacks knowledge or information of the remaining allegations in Paragraph 180

8

sufficient to form a belief as to their truth and therefore denies them on that basis.

9

Holmes and Balwani lack knowledge or information of the allegations in

10

Paragraph 180 sufficient to form a belief as to their truth and therefore deny them on

11

that basis.

12

**COMPLAINT ¶ 181**

13

For the "tiny" blood draws that were conducted at Walgreens stores, Plaintiffs

14

allege—including based on the MSA between Theranos and Walgreens, which

15

expressly provides that Walgreens Technicians would "draw blood using the finger

16

stick technique," the fact that the draws were conducted by personnel working in a

17

Walgreens store, and based on Plaintiffs' experiences—these blood draws were

18

administered by a Walgreens employee or an individual working for both Walgreens

19

and Theranos, often with the assistance and in the presence of a Theranos employee.

20

In all such cases, both Walgreens and Theranos did acts that resulted in the blood

21

draws and that encouraged the blood draws—including, but not limited to, through

22

their pervasive marketing of same, through their provision of the space, infrastructure,

23

personnel, and equipment used for same, and through their direct assistance and

24

involvement with the blood draws and instore interactions with the subjects.  Both

25

Defendants, including through their respective employees, caused these touchings.

26

**ANSWER TO COMPLAINT ¶ 181**

27

Defendants admit that Theranos marketed and sold blood testing services, and

28

that pursuant to this offering, corresponding blood draws were administered at

Walgreens pharmacies in Arizona and California.  Defendants deny the remaining allegations in Paragraph 181.

**COMPLAINT ¶ 182**

For the "tiny" blood draws that were conducted at Theranos Wellness Centers, Plaintiffs allege—including based on the fact that the draws were conducted by personnel working at a Theranos facility—the blood draws were administered by a Theranos employee.

**ANSWER TO COMPLAINT ¶ 182**

Defendants admit that blood draws were administered at Walgreens pharmacies in Arizona and California.  Defendants deny the remaining allegations in Paragraph 182.

**COMPLAINT ¶ 183**

The subjects submitted to the "tiny" blood draws under false pretenses, and the touchings that resulted were physically harmful, an affront to their human dignity, and would be viewed by a reasonable person as offensive under the true circumstances.

**ANSWER TO COMPLAINT ¶ 183**

Defendants deny the allegations in Paragraph 183.

**COMPLAINT ¶ 184**

Walgreens and Theranos intentionally misled Plaintiff B.P., R.C., and S.J., and the Edison Subclass about the essential nature and purpose of the blood draws to which they submitted.  In permitting Walgreens and Theranos to engage in the procedure of drawing blood from their bodies, Plaintiffs B.P., R.C., and S.J., and the Edison Subclass were mistaken and misinformed about the essential nature and purpose of such procedure and thus they did not provide, and could not have provided, consent for such procedure and intrusion.

**ANSWER TO COMPLAINT ¶ 184**

Defendants deny the allegations in Paragraph 184.

1

**COMPLAINT ¶ 185**

2

While not disclosed to consumers, the medical field, or otherwise, the Edison

3

technology was still in development and not ready-for-market throughout the time the

4

"tiny" blood tests were offered.  By testing their services on many thousands of

5

unwitting customers who thought they were purchasing a ready-for-market service,

6

Theranos and Walgreens intended to develop their product so that it might compete

7

with more established laboratories.  In essence, though not disclosed to consumers and

8

indeed represented very differently, Defendants' Wellness Centers, at least throughout

9

the time the "tiny" blood draws were being conducted, were used to gather blood

10

samples and other data for use in Defendants' research and product development.

11

**ANSWER TO COMPLAINT ¶ 185**

12

Defendants deny the allegations in Paragraph 185.

13

**COMPLAINT ¶ 186**

14

Theranos and Walgreens concealed from consumers that Edison was still in

15

development and not ready-for-market, and in fact affirmatively misled them to

16

believe such services were ready-for-market and that the corresponding "test results"

17

could and should be relied upon in making health and treatment decisions, as alleged

18

herein.  Theranos and Walgreens misrepresented and falsely portrayed the purpose of

19

these blood draws and did not disclose to Plaintiffs B.P., R.C., and S.J., and the Edison

20

Subclass that the purpose of the blood draws to which they were submitting was for

21

Defendants' use in research and product development.

22

**ANSWER TO COMPLAINT ¶ 186**

23

Defendants deny the allegations in Paragraph 186.

24

**COMPLAINT ¶ 187**

25

Plaintiffs B.P., R.C., and S.J. and the other members of the Edison Subclass

26

reasonably believed, when they agreed to submit to their "tiny" blood draws, that the

27

essential nature and purpose of such blood draws was legitimate blood testing.

28

1   **ANSWER TO COMPLAINT ¶ 187**

2       Defendants lack knowledge or information of the allegations in Paragraph 187

3   sufficient to form a belief as to their truth.

4   **COMPLAINT ¶ 188**

5       In fact, the essential nature and purpose of their "tiny" blood draws was not

6   legitimate blood testing and, indeed, could not have been legitimate blood testing

7   given that, as alleged herein and unbeknownst to the subjects at the time they agreed to

8   submit to the draws, the Edison "tiny" technology was still in development, still in

9   prototype, not ready-for-market, and nowhere near in a position to serve the purpose of

10  legitimate blood testing.  Theranos, Walgreens, Balwani, and Holmes each knew this

11  to be the case throughout the entire time "tiny" blood draws were being administered

12  at Walgreens stores and Theranos Wellness Centers.  To the extent Walgreens lacked

13  any more detailed knowledge, it was by virtue of its own deliberate choices to ignore

14  and/or avoid such details.

15  **ANSWER TO COMPLAINT ¶ 188**

16      Defendants lack knowledge or information of the allegations in the last sentence

17  of Paragraph 188 sufficient to form a belief as to their truth.  Defendants deny the

18  remaining allegations in Paragraph 188.

19  **COMPLAINT ¶ 189**

20      Simply put, the "tiny" blood draws were not intended by Walgreens and

21  Theranos to serve the purpose, and could not have served the purpose of, providing

22  reliable blood testing results (i.e., "legitimate blood testing").

23  **ANSWER TO COMPLAINT ¶ 189**

24      Defendants deny the allegations in Paragraph 189.

25  **COMPLAINT ¶ 190**

26      Unbeknownst to the Edison Subclass members, the essential nature and

27  purposes of the "tiny" blood draws were: to help research and development of the as-

28  yet- undeveloped Edison technology that both Theranos and Walgreens had an interest

1   in; to expedite and advance the narrative that the "disruptive" Edison technology had

2   "revolutionized" the medical testing industry; and to woo and placate investors,

3   potential investors, and co-investors by giving the (false) impression that they had a

4   market-ready, breakthrough technology and service.

5   **ANSWER TO COMPLAINT ¶ 190**

6       Defendants deny the allegations in Paragraph 190.

7   **COMPLAINT ¶ 191**

8       Theranos, Walgreens, Balwani, and Holmes each knew contemporaneously that

9   Plaintiffs B.P., R.C., and S.J. and the other members of the Edison Subclass were

10   operating under a substantial mistaken belief regarding the essential nature and

11   purpose of the "tiny" blood draws when they agreed to submit to them, and that any

12   consent the subjects provided was made pursuant to that mistaken belief.

13   **ANSWER TO COMPLAINT ¶ 191**

14       Defendants deny the allegations in Paragraph 191.

15   **COMPLAINT ¶ 192**

16       Theranos's and Walgreens' concealments and affirmative misrepresentations

17   substantially contributed to the Edison Subclass members' mistaken belief about the

18   essential nature and purpose of their "tiny" blood draws.  As alleged herein, both

19   companies each concealed substantial, material information from the subjects, their

20   medical providers, and the public regarding the true state and readiness of the Edison

21   technology and the "tiny" blood testing, including that Edison was still in development

22   and not ready-for-market.  *See, e.g.*, ¶¶ 65-78.  Moreover, both Theranos and

23   Walgreens knowingly and pervasively made affirmative misrepresentations—

24   including through a broad marketing campaign—clearly portraying the "tiny" blood

25   technology as market-ready and the "tiny" blood draws consumers were encouraged to

26   submit to as being for legitimate and reliable blood testing.  Indeed, that was the entire

27   fundamental premise of Defendants' advertising campaign regarding the services.

28   That was the only purpose suggested for these blood draws, and there was no

indication at all, in any of this marketing or elsewhere, that the Edison technology was not market-ready and could not actually serve the purpose of legitimate blood testing. *See, e.g.*, ¶¶ 80-119.

**ANSWER TO COMPLAINT ¶ 192**

Defendants deny the allegations in Paragraph 192.

**COMPLAINT ¶ 193**

Moreover, the very context, nature, design, and infrastructure of the Walgreens and Theranos Wellness Centers in which the "tiny" blood draws were conducted, were intended by Theranos and Walgreens—both of which designed and set up the Wellness Centers in the Walgreens facilities—to give the clear impression, and did give the clear impression, to consumers that all of the blood draws being conducted there were for legitimate blood testing purposes.  Again, there was no indication anywhere that the Edison technology was not market-ready and was not intended by Theranos and Walgreens to, and could not actually, serve the purpose of providing reliable blood test results, or that there was some different purpose for the "tiny" blood draws besides legitimate blood testing.  To the contrary, in addition to the media marketing, the testing order forms, signage, and other disclosures and materials in the Wellness Centers all clearly reinforced to consumers that the blood draws conducted therein, including the "tiny" blood draws, were about legitimate blood testing.

**ANSWER TO COMPLAINT ¶ 193**

Defendants admit that Theranos and Walgreens were involved in designing and constructing the Wellness Centers in Walgreens stores, which included signage and other materials.  Defendants deny the remaining allegations in Paragraph 193.

**COMPLAINT ¶ 194**

The very notion of offering the "tiny" blood "tests" in the market created and reinforced the belief that these tests were market-ready.  The fact that the vast majority of these "tiny" blood draws occurred in a Walgreens pharmacy, further reinforced to the subjects that the services were market-ready and the purpose was legitimate blood

testing and not product development, "keeping up appearances" for investors and co-investors, or some other undisclosed purpose, given Walgreens' prominence and the nature of its business.

**ANSWER TO COMPLAINT ¶ 194**

Defendants admit that capillary blood draws using the fingerstick technique were administered to customers in Walgreens pharmacies in Arizona and California. Defendants deny the remaining allegations in Paragraph 194.

**COMPLAINT ¶ 195**

Though Walgreens and Theranos, and their personnel present in the store, knew the "tiny" blood draw subjects reasonably believed the purpose was legitimate blood testing, by design and as a matter of policy and practice they said nothing to correct that mistaken belief and, to the contrary, reinforced that belief as alleged herein.

**ANSWER TO COMPLAINT ¶ 195**

Defendants deny the allegations in Paragraph 195.

**COMPLAINT ¶ 196**

Plaintiffs B.P., R.C., and S.J., and the Edison Subclass would not have agreed to submit to the "tiny" blood draws had they known they were not, in fact, for legitimate blood testing purposes.

**ANSWER TO COMPLAINT ¶ 196**

Defendants lack knowledge or information of the allegations in Paragraph 196 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 197**

In furtherance of this scheme by Defendants, Theranos also provided the "tiny" blood draw subjects with reports that took the form of test results.  However, these reports were not, in fact, legitimate test results that could be relied upon, but rather were used to perpetuated the false impression and belief—among the subjects, potential subjects, investors, and the public—that these "tiny" blood draws were about legitimate blood testing.  Every single one of the Edison test results has been voided.

**ANSWER TO COMPLAINT ¶ 197**

Defendants admit that Theranos reported test results to patients following their blood draw at a Walgreens location.  Defendants further admit that Theranos has voided test results obtained via the TSPU.  Defendants deny the remaining allegations in Paragraph 197.

**COMPLAINT ¶ 198**

By procuring "tiny" blood samples from thousands of unwitting consumers, who mistakenly thought they were submitting to the draws for legitimate testing purposes, Theranos and Walgreens intended to use these samples to help try to develop (or "coproduce" to use Walgreens' term) the Edison technology which had been in development for years and, to the Defendants' frustration, was still not ready.  Both Theranos and Walgreens hoped that, someday, the Edison technology might allow them to compete with more established laboratories.

**ANSWER TO COMPLAINT ¶ 198**

Defendants deny the allegations in Paragraph 198.

**COMPLAINT ¶ 199**

Offering "tiny" blood tests to the general public enabled Theranos and Walgreens to collect "tiny" blood samples from human subjects without sacrificing the time and money necessary to recruit and pay volunteers for formal clinical trials.  Indeed, by procuring thousands of "tiny" blood samples in this manner, they were able to avoid the costs associated with alternative methods for obtaining blood samples for research, such as to purchase the samples (which would be provided without personal identifying information about the subject) from facilities that have obtained research approval from ethical review boards.  On information and belief, because most samples available for research are collected through venous draws, samples taken with a finger-stick method (the type most important to the development of Edison) were particularly costly and difficult to obtain.  By disguising their product development and research agenda and activity as a legitimate, ready-for-market testing service,

ANSWER TO PLAINTIFFS' SECOND
                                            AMENDED COMPLAINT

Theranos and Walgreens not only were able to avoid these costs, but were actually able to get thousands of unwitting consumers to pay them for the "tiny" blood draws.

**ANSWER TO COMPLAINT ¶ 199**

Defendants deny the allegations in Paragraph 199.

**COMPLAINT ¶ 200**

The Wellness Center pretense also helped Theranos evade regulatory scrutiny and in particular the additional regulatory scrutiny that accompanies human testing, such as the requirement to obtain approval for such research by an Institutional Review Board (IRB) in order to protect patient safety.

**ANSWER TO COMPLAINT ¶ 200**

Defendants deny the allegations in Paragraph 200.

**COMPLAINT ¶ 201**

Theranos's disregard for IRB standards and patient safety is well-established. For example, in 2016 it was revealed that Theranos had conducted a study on a blood test for the Zika virus using data that was collected from human test subjects without any IRB approval.

**ANSWER TO COMPLAINT ¶ 201**

Defendants deny the first sentence of Paragraph 201. Defendants further answer that, to the extent the allegations in Paragraph 201 are based on the text of written documents, Defendants admit that, to the extent such allegations accurately quote the text of the documents, such text exists, and otherwise deny them. Defendants deny that Plaintiffs' characterization of these documents is accurate, and deny Plaintiffs' framing of these issues. Defendants deny the remaining allegations in Paragraph 201.

**COMPLAINT ¶ 202**

According to reports, Holmes has claimed that Theranos possesses "data that show you can get a perfect correlation between a finger stick and a venipuncture for every test that we run." Theranos has refused to identify publicly how these

comparison test results were obtained, except to say that "[t]he clinical tests were conducted by a combination of Theranos and external labs."  The fact that Theranos has belatedly "corrected" test results several months (and even years) after taking customers' blood samples indicates that customers' blood samples, submitted at Wellness Centers, were likely used in generating that data.

**ANSWER TO COMPLAINT ¶ 202**

Defendants answer that, to the extent the allegations in Paragraph 202 are based on the text of written documents, Defendants admit that, to the extent such allegations accurately quote the text of the documents, such text exists, and otherwise deny them. Defendants deny the remaining allegations in Paragraph 202.

**COMPLAINT ¶ 203**

There is additional evidence that Theranos and Walgreens were using these blood draws for research and development purposes.  For example, in the case of Plaintiff B.P., Walgreens and Theranos sometimes took blood using both finger stick and traditional methods, and sometimes used only one method or the other—for the same panel of tests.  On information and belief, Walgreens and Theranos took multiple samples in different ways to facilitate analysis of the results obtained by Theranos technology using a variety of sample types, to generate more data correlating the results of finger stick tests and venous draws, and thereby further efforts to develop Edison.

**ANSWER TO COMPLAINT ¶ 203**

Defendants deny the allegations in Paragraph 203.

**COMPLAINT ¶ 204**

Relatedly, Theranos used these blood draws to collect and analyze highly confidential health data about large numbers of people.  Like other Silicon Valley companies that collect and analyze "big data," Theranos recognized that sufficiently numerous blood samples, if combined with biographical and other information, could reveal patterns that could help Theranos to develop lucrative products.  On information

and belief, data analysis at Theranos was overseen by Balwani who reportedly said about his decision to join the Company: "When I saw what they were doing at Theranos, [] I thought this will be a really good application for machine learning, because we are going to generate a lot of data, and we'll be able to do some interesting work around that."  On information and belief, the most direct way for Theranos to obtain a data set sufficiently large to support a machine learning application was to convince, by deception, many thousands of people to submit to blood draws and provide blood samples and other valuable personal information.

**ANSWER TO COMPLAINT ¶ 204**

Defendants answer that, to the extent the allegations in Paragraph 204 are based on the text of written documents, Defendants admit that, to the extent such allegations accurately quote the text of the documents, such text exists, and otherwise deny them. Defendants deny the remaining allegations in Paragraph 204.

**COMPLAINT ¶ 205**

According to the Wall Street Journal, when a Theranos employee emailed Holmes in April 2014 to voice his concerns about quality control failures at Theranos, she forwarded the internal inquiry to Balwani, who—contrary to his representations to Arizona's Senate Health and Human Services Committee just weeks before— responded to the employee that the failures were due to the "newness of some of our processes, which we are improving every day."  "This is product development," he continued, "this is how startups are built."

**ANSWER TO COMPLAINT ¶ 205**

Defendants answer that, to the extent the allegations in Paragraph 205 are based on the text of written documents, Defendants admit that, to the extent such allegations accurately quote the text of the documents, such text exists, and otherwise deny them. Defendants deny the remaining allegations in Paragraph 205.

**COMPLAINT ¶ 206**

Theranos and Walgreens also prematurely rushed Edison and the "tiny" blood

draws to market in order to create the public misimpression that Edison was a market-ready technology.  Frustrated by the slow progress in developing Edison and the corresponding inability to capitalize on the unready technology, Theranos and Walgreens prematurely rushed Edison to market in order to expedite the narrative of Edison as "disrupting" the market and to thereby try to improve their chances of capitalizing upon the market for medical laboratory testing, a highly competitive and fast-growing market estimated to be worth $198.5 billion by 2024.  They also hoped it would woo and appease investors, potential investors, and co-investors, to whom they urgently wanted to demonstrate they had a working, viable breakthrough technology.

**ANSWER TO COMPLAINT ¶ 206**

Defendants deny the allegations in Paragraph 206.

**COMPLAINT ¶ 207**

In summary, any consent provided by Plaintiffs B.P., R.C., and S.J. and the other Edison Subclass members, to have their blood drawn pursuant to the "tiny" blood draws, was obtained under false pretenses.  They agreed to submit to these blood draws operating under a substantial mistake (which Theranos and Walgreens had contemporaneous knowledge of) regarding the essential nature and purpose of these blood draws, and their consent was obtained through fraud, concealment, and substantial misrepresentation by Theranos and Walgreens, as alleged herein.  Unbeknownst to them, they were essentially used as human guinea pigs for beta testing and Defendants' product development efforts and as pawns to promote the public impression that Defendants had a working, ready technology.  None of the Edison Subclass members knew or could have known the truth.  Had they known the truth they would not have consented to the "tiny" blood draws.  Any consent they provided for the "tiny" blood draws is vitiated and not effective.

**ANSWER TO COMPLAINT ¶ 207**

No response is required to Paragraph 207, which consists of conclusions of law. To the extent any response is required, Defendants lack knowledge or information of

the allegations concerning Plaintiffs' knowledge or state of mind in Paragraph 207

sufficient to form a belief as to their truth.  Defendants deny the remaining allegations

in Paragraph 207.

**SUBHEADING J**

Defendants' Misconduct Has Significantly Harmed Consumers

**ANSWER TO SUBHEADING J**

Defendants deny the allegations in Subheading J.

**COMPLAINT ¶ 208**

As a direct result of Defendants' misconduct alleged herein, Plaintiffs and the

other consumers who comprise the proposed Class and Subclasses in this case have

been harmed in numerous respects, including but not limited to: (a) paying—out-of-

pocket, through health insurance, or through another collateral source—for Theranos

tests that they cannot reasonably rely upon, that unknown to them were experimental

in nature, and that in some cases have already been voided or belatedly "corrected";

(b) paying for subsequent replacement testing services from other companies; (c)

paying additional money to doctors or other health professionals as a result of the

inaccurate and unreliable Theranos tests; (d) being subject to unnecessary or

potentially harmful treatments, and/or being denied the opportunity to seek treatment

for a treatable condition; (e) harm to their health, injury, and/or death, and

corresponding monetary and other damages; (f) invasion of privacy and bodily

integrity without their consent, and corresponding damages therefrom; (g) violation of

their human dignity for the Edison Subclass members and the corresponding damages

therefrom; and (h) severe emotional stress and anxiety.

**ANSWER TO COMPLAINT ¶ 208**

No response is required to Paragraph 208, which consists of conclusions of law.

To the extent any response is required, Defendants deny the allegations in Paragraph

208.

**COMPLAINT ¶ 209**

Defendants have all benefited, financially and otherwise, from their misconduct alleged herein, including but not limited to from revenue that all of the Defendants have received for Plaintiffs' and the Class members' tests, from the development of their products through research Plaintiffs and the Class members were unwittingly being used for, and additional business that Walgreens has generated as a result of having the Wellness Centers in its retail stores.  Theranos and Walgreens shared the revenues received associated with the testing services at the Walgreens facilities.  On information and belief, Holmes and Balwani, respectively, have each personally received millions of dollars as a direct result of their misconduct alleged herein.

**ANSWER TO COMPLAINT ¶ 209**

Defendants admit that, under the terms of the MSA, Walgreens was entitled to receive a fair market value fee for its services.  Defendants deny the remaining allegations in Paragraph 209.

**SUBHEADING K**

Factual Allegations Regarding Plaintiffs

**ANSWER TO SUBHEADING K**

No response is required to Subheading K, which purports to describe the complaint.

**SUBHEADING "PLAINTIFF A.R."**

Plaintiff A.R.

**ANSWER TO SUBHEADING "PLAINTIFF A.R."**

No response is required to this subheading, which purports to identify a named plaintiff in this action.

**COMPLAINT ¶ 210**

On or around June 19, 2015, Plaintiff A.R. purchased Theranos blood tests at a Walgreens Pharmacy in Palo Alto, California.  His blood was drawn at this Walgreens store.  The tests that he purchased included tests regarding protein, blood sugar,

1    cholesterol, and vitamin levels.  A.R. purchased Theranos tests to get accurate and

2    reliable results about his health.  He trusted Theranos and Walgreens to provide

3    accurate and reliable test results.

4    **ANSWER TO COMPLAINT ¶ 210**

5        Theranos admits that Plaintiff A.R. received Theranos blood tests on or around

6    June 19, 2015 at a Walgreens in Palo Alto, California.  Theranos further answers that

7    to the extent Plaintiff A.R. received Theranos blood tests, the test report(s) A.R.

8    received speak for themselves.  Theranos lacks knowledge or information of the

9    remaining allegations in Paragraph 210 sufficient to form a belief as to their truth and

10   therefore deny them on that basis.

11       Holmes and Balwani lack knowledge or information of the allegations in

12   Paragraph 210 sufficient to form a belief as to their truth and therefore deny them on

13   that basis.

14   **COMPLAINT ¶ 211**

15       A.R. had received orders from his medical care provider to have blood testing

16   performed.  A.R. was referred to Theranos by his medical care provider.  In choosing

17   to have his blood tested by Theranos, he relied on marketing by Theranos and

18   Walgreens regarding the reliability of their services, including, he specifically recalls,

19   leaflets that he had seen in the Walgreens store before having his blood drawn.  He

20   also expected tests conducted at Walgreens to be trustworthy and reliable.

21   **ANSWER TO COMPLAINT ¶ 211**

22       Defendants lack knowledge or information of the allegations in Paragraph 211

23   sufficient to form a belief as to their truth and therefore deny them on that basis.

24   **COMPLAINT ¶ 212**

25       A.R. paid approximately $41.79 out of pocket for the Theranos tests.

26   **ANSWER TO COMPLAINT ¶ 212**

27       Defendants lack knowledge or information of the allegations in Paragraph 212

28   sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 213**

When he purchased Theranos tests, one or more vials of blood were drawn from a vein in A.R.'s arm.  A.R. did not know that Defendants drew his blood for the purpose of research and product development and he did not consent to such procedure for such purpose.  He believed that the purpose of the blood draws he submitted to was legitimate blood testing.

**ANSWER TO COMPLAINT ¶ 213**

Defendants lack knowledge or information of the allegations in the first sentence of Paragraph 213 sufficient to form a belief as to their truth and therefore deny them on that basis.  Defendants deny the allegations in the second sentence of Paragraph 213.[1]  Defendants further answer that Defendants lack knowledge or information of the remaining allegations in Paragraph 213 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 214**

A.R. believed that Defendants' services were ready-for-market and reliable.  He had no contemporaneous knowledge about the unreliability and litany of problems with Theranos testing, facilities, and equipment, alleged herein.  He relied on the Defendants' omissions in this respect.  Had he known of this concealed information, he would not have submitted to this testing.

**ANSWER TO COMPLAINT ¶ 214**

Defendants answer that Defendants lack knowledge or information of the allegations in the first sentence of Paragraph 214 sufficient to form a belief as to their truth and therefore deny them on that basis.  Defendants deny the remaining allegations in Paragraph 214.

---

[1] Defendants further answer that to the extent Plaintiffs allege their states of mind, Defendants lack knowledge or information regarding Plaintiffs' states of mind sufficient to form a belief as to their truth and therefore deny all such allegations regarding Plaintiffs' statements of mind on this basis.

**COMPLAINT ¶ 215**

Having been led to believe the Theranos results were reliable, A.R. relied on them, using the results to make decisions concerning his health.

**ANSWER TO COMPLAINT ¶ 215**

Defendants lack knowledge or information of the allegations in Paragraph 215 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 216**

Approximately one year before having his blood tested by Theranos, A.R. had his blood tested by another company, and the results showed that A.R.'s blood contained a normal level of Vitamin D.  His Theranos tests indicated that his Vitamin D levels were low, his blood sugar was high, and his LDL (cholesterol) level was high, and medication was prescribed for him as a result.  The medication that A.R.'s doctor prescribed to supplement his Vitamin D levels caused excess absorption and buildup of calcium in A.R.'s blood, and caused pain and other adverse effects to A.R.

**ANSWER TO COMPLAINT ¶ 216**

Defendants lack knowledge or information of the allegations in Paragraph 216 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 217**

The Theranos tests that A.R. purchased were unreliable and/or inaccurate.

**ANSWER TO COMPLAINT ¶ 217**

Defendants deny the allegations in Paragraph 217.

**COMPLAINT ¶ 218**

After learning that his Theranos tests were unreliable and/or inaccurate, he revisited his doctor, and had his blood tested by another company.  The results reflected that he is healthier than the Theranos tests had indicated.

**ANSWER TO COMPLAINT ¶ 218**

Defendants deny that A.R.'s Theranos tests were unreliable and/or inaccurate. Defendants lack knowledge or information of the remaining allegations in Paragraph

1  218 sufficient to form a belief as to their truth and therefore deny them on that basis.

2  **COMPLAINT ¶ 219**

3      Plaintiff A.R. would not have purchased any Theranos tests if he had known

4  that the Theranos testing facilities were not as described, and that Theranos's tests

5  were inaccurate or unreliable.  Plaintiff A.R. would not have submitted to Theranos

6  tests if he had known that Walgreens and Theranos were using his blood tests for

7  research and product development.

8  **ANSWER TO COMPLAINT ¶ 219**

9      Defendants deny the allegations in Paragraph 219.

10  **COMPLAINT ¶ 220**

11      Plaintiff A.R. was injured, damaged and harmed by Defendants' misconduct.

12  **ANSWER TO COMPLAINT ¶ 220**

13      No response is required to Paragraph 220, which consists of conclusions of law.

14  To the extent a response is required, Defendants deny the allegations in Paragraph 220.

15  **COMPLAINT ¶ 221**

16      Plaintiff A.R. suffered damages as a result of Defendants' conduct, in an

17  amount to be proven at trial.

18  **ANSWER TO COMPLAINT ¶ 221**

19      No response is required to Paragraph 221, which consists of conclusions of law.

20  To the extent a response is required, Defendants deny the allegations in Paragraph 221.

21  **COMPLAINT ¶ 222**

22      In addition to the other harm described herein, Plaintiff A.R. suffered emotional

23  distress, stress, and anxiety as a result of the unreliable Theranos blood tests he

24  purchased and the invasion of his body under false pretenses and without his consent.

25  **ANSWER TO COMPLAINT ¶ 222**

26      No response is required to Paragraph 222, which consists of conclusions of law.

27  To the extent a response is required, Defendants deny the allegations in Paragraph 222.

28

**COMPLAINT ¶ 223**

Any purported consent by A.R. to have his blood drawn by Defendants was induced by fraud, concealment and misrepresentation, and was not effective.

**ANSWER TO COMPLAINT ¶ 223**

No response is required to Paragraph 223, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 223.

**SUBHEADING "PLAINTIFF B.B."**

Plaintiff B.B.

**ANSWER TO SUBHEADING "PLAINTIFF B.B."**

No response is required to this subheading, which purports to identify a named plaintiff in this action.

**COMPLAINT ¶ 224**

On or around October 3, 2014, Plaintiff B.B. purchased eight Theranos blood tests at a Walgreens Pharmacy in Gilbert, Arizona.  Her blood was drawn at a Walgreens store.  The tests that she purchased included tests regarding her thyroid. B.B. purchased Theranos tests to get accurate and reliable results about her health. She trusted Theranos and Walgreens to provide accurate and reliable test results.

**ANSWER TO COMPLAINT ¶ 224**

Theranos admits that Plaintiff B.B. received Theranos blood tests on or around October 3, 2014 at a Walgreens in Gilbert, Arizona.  Theranos further answers that to the extent Plaintiff B.B. received Theranos blood tests, the test report(s) B.B. received speak for themselves.  Theranos further answers that it lacks knowledge or information of the remaining allegations in Paragraph 224 sufficient to form a belief as to their truth and therefore denies them on that basis.

Holmes and Balwani lack knowledge or information of the allegations in Paragraph 224 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 225**

B.B. had received orders from her medical care provider to have blood testing performed. B.B. was informed by her medical care provider that Theranos was the least invasive alternative for blood testing, and also that Theranos tests were cheaper and that the Walgreens locations provided extended hours for her to get tested. In choosing to have her blood tested by Theranos, she relied on marketing by Theranos and Walgreens regarding the reliability of their services, including, she specifically recalls, on the Theranos and Walgreens websites and press releases which she read before visiting the Walgreens store. B.B. specifically recalls visiting and viewing Walgreens advertisements and representations on both companies' websites in or around early October 2014. She also expected tests conducted at Walgreens to be trustworthy and reliable.

**ANSWER TO COMPLAINT ¶ 225**

Defendants lack knowledge or information of the allegations in Paragraph 225 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 226**

B.B. paid approximately $81.04 out of pocket for the Theranos tests.

**ANSWER TO COMPLAINT ¶ 226**

Defendants lack knowledge or information of the allegations in Paragraph 226 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 227**

When she purchased Theranos tests, one or more vials of blood were drawn from a vein in B.B.'s arm. B.B did not know that Defendants drew her blood for the purpose of research and product development and she did not consent to such procedure for such purpose.

**ANSWER TO COMPLAINT ¶ 227**

Defendants lack knowledge or information of the allegations in the first sentence of Paragraph 227 sufficient to form a belief as to their truth and therefore

1   deny them on that basis.  Defendants deny the remaining allegations in Paragraph 227.

2   **COMPLAINT ¶ 228**

3       B.B. believed that Defendants' services were ready-for-market and reliable.

4   She had no contemporaneous knowledge about the unreliability and litany of problems

5   with Theranos testing, facilities, and equipment, alleged herein.  She relied on the

6   Defendants' omissions in this respect.  Had she known of this concealed information,

7   she would not have submitted to this testing.

8   **ANSWER TO COMPLAINT ¶ 228**

9       Defendants answer that Defendants lack knowledge or information of the

10  allegations in the first sentence of Paragraph 228 sufficient to form a belief as to their

11  truth and therefore deny them on that basis.  Defendants deny the remaining

12  allegations in Paragraph 228.

13  **COMPLAINT ¶ 229**

14      On information and belief, B.B.'s tests were conducted at Theranos's Newark,

15  California facility.

16  **ANSWER TO COMPLAINT ¶ 229**

17      Theranos answers that certain of B.B.'s tests were processed at Theranos'

18  Newark, California facility.  Theranos lacks knowledge or information of the

19  remaining allegations in Paragraph 229 sufficient to form a belief as to their truth and

20  therefore deny them on that basis.

21      Holmes and Balwani lack knowledge or information of the allegations in

22  Paragraph 229 sufficient to form a belief as to their truth and therefore deny them on

23  that basis.

24  **COMPLAINT ¶ 230**

25      Having been led to believe the results were reliable, B.B. relied on them, using

26  the results to make decisions concerning her health.

27  **ANSWER TO COMPLAINT ¶ 230**

28      Defendants lack knowledge or information of the allegations in Paragraph 230

1   sufficient to form a belief as to their truth and therefore deny them on that basis.

2   **COMPLAINT ¶ 231**

3       The Theranos tests that B.B. purchased were unreliable and/or inaccurate.

4   **ANSWER TO COMPLAINT ¶ 231**

5       Defendants deny the allegations in Paragraph 231.

6   **COMPLAINT ¶ 232**

7       After learning that her Theranos tests were unreliable and/or inaccurate, she had

8   her blood retested multiple times by another company.

9   **ANSWER TO COMPLAINT ¶ 232**

10      Defendants deny that B.B.'s Theranos tests were unreliable and/or inaccurate.

11  Defendants lack knowledge or information of the remaining allegations in Paragraph

12  230 sufficient to form a belief as to their truth and therefore deny them on that basis.

13  **COMPLAINT ¶ 233**

14      Plaintiff B.B. would not have purchased any Theranos test if she had known

15  that the Theranos testing facilities were not as described, and that Theranos's tests

16  were inaccurate or unreliable.  Plaintiff B.B. would not have submitted to Theranos

17  tests if she had known that Walgreens and Theranos were using her blood tests for

18  research and product development.

19  **ANSWER TO COMPLAINT ¶ 233**

20      Defendants deny the allegations in Paragraph 233.

21  **COMPLAINT ¶ 234**

22      Plaintiff B.B. was injured, damaged and harmed by Defendants' misconduct.

23  **ANSWER TO COMPLAINT ¶ 234**

24      No response is required to Paragraph 234, which consists of conclusions of law.

25  To the extent a response is required, Defendants deny the allegations in Paragraph 234.

26  **COMPLAINT ¶ 235**

27      Plaintiff B.B. suffered damages as a result of Defendants' conduct, in an

28  amount to be proven at trial.

**ANSWER TO COMPLAINT ¶ 235**

No response is required to Paragraph 235, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 235.

**COMPLAINT ¶ 236**

In addition to the other harm described herein, Plaintiff B.B. suffered emotional distress, stress, and anxiety as a result of the unreliable Theranos blood tests she purchased and the invasion of her body under false pretenses and without her consent.

**ANSWER TO COMPLAINT ¶ 236**

No response is required to Paragraph 236, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 236.

**COMPLAINT ¶ 237**

Any purported consent by B.B. to have her blood drawn by Defendants was induced by fraud, concealment and misrepresentation, and was not effective.

**ANSWER TO COMPLAINT ¶ 237**

No response is required to Paragraph 237, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 237.

**SUBHEADING "PLAINTIFF B.P."**

Plaintiff B.P.

**ANSWER TO SUBHEADING "PLAINTIFF B.P."**

No response is required to this subheading, which purports to identify a named plaintiff in this action.

**COMPLAINT ¶ 238**

Beginning approximately in early 2014, Plaintiff B.P. purchased Theranos blood tests several times at a Walgreens Pharmacy in Ahwatukee Village, Phoenix, Arizona.  In all of these instances, he had his blood drawn at this Walgreens store.  The tests that he purchased included tests regarding diabetes and cholesterol.  B.P. purchased Theranos tests to get accurate and reliable results about his health.  He trusted Theranos and Walgreens to provide accurate and reliable test results.

**ANSWER TO COMPLAINT ¶ 238**

Theranos admits that Plaintiff B.P. received Theranos blood tests on multiple occasions, beginning in May 2014, and visited a Walgreens in Phoenix, Arizona. Theranos further answers that to the extent Plaintiff B.P. received Theranos blood tests, the test report(s) B.P. received speak for themselves.  Theranos lacks knowledge or information of the remaining allegations in Paragraph 238 sufficient to form a belief as to their truth and therefore deny them on that basis.

Holmes and Balwani lack knowledge or information of the allegations in Paragraph 238 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 239**

B.P. had received orders from his medical care provider to have blood testing performed.  B.P. was informed by his physician that Theranos was the cheapest and least invasive alternative for the tests.  In choosing to have his blood tested by Theranos, he relied on marketing by Theranos and Walgreens regarding the nature and reliability of their services, including, he specifically recalls, materials that he saw at the Walgreens store before getting his blood drawn which portrayed and gave the clear impression that the services being advertised were ready, reliable, and for legitimate testing purposes.  He also expected tests conducted at Walgreens to be trustworthy and reliable.

**ANSWER TO COMPLAINT ¶ 239**

Defendants lack knowledge or information of the allegations in Paragraph 239 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 240**

B.P. paid hundreds of dollars out of pocket for the Theranos tests.

**ANSWER TO COMPLAINT ¶ 240**

Defendants lack knowledge or information of the allegations in Paragraph 240 sufficient to form a belief as to their truth and therefore deny them on that basis.

1

**COMPLAINT ¶ 241**

2       The first several times that B.P. had his blood drawn at the Walgreens store, it

3   was exclusively via "tiny" blood draws (between one and three "tiny" blood draws

4   were taken per visit).  In each case, a needle was stuck into his finger, penetrating his

5   skin and tissue, and blood was drawn from his body.  In each case, the blood draws

6   were administered by an individual who B.P. understood to be and who B.P. alleges

7   be a Walgreens employee, who worked at the Walgreens store, approached B.P. from

8   behind the Walgreens pharmacy counter and was wearing a Walgreens smock.  In each

9   case, a second individual, who B.P. understood to be and who B.P. alleges to be a

10  Theranos employee, was also present at, and assisted with and observed, the blood

11  draws.

12  **ANSWER TO COMPLAINT ¶ 241**

13      Defendants lack knowledge or information of the allegations in Paragraph 241

14  sufficient to form a belief as to their truth and therefore deny them on that basis.

15  **COMPLAINT ¶ 242**

16      Starting in or around mid-2015 and through around late 2015, each time he

17  visited the Walgreens store for these services, he was subject to both "tiny" blood

18  draws and to larger blood draws whereby one or more larger vials of blood were drawn

19  from a vein in B.P.'s arm.  For each "tiny" blood draw, a needle was stuck into his

20  finger, penetrating his skin and tissue, and blood was drawn from his body.  During

21  this time, except perhaps as noted below, the "tiny" blood draws were again

22  administered by an individual who B.P. understood to be and who B.P. alleges to be a

23  Walgreens employee, and the venous blood draws were administered by an individual

24  who B.P. understood to be a Theranos employee.  For the "tiny" blood draws, again an

25  individual who B.P. understood to be and who B.P. alleges to be a Theranos employee

26  was also present at, and assisted with and observed, the blood draws.  On one occasion

27  during this period, B.P. recalls that one "tiny" blood draw was administered by an

28  individual who was working at the Walgreens store, and who identified himself as

1  being affiliated with Theranos testing.  Plaintiff B.P. alleges that this individual was a

2  Walgreens employee or worked for both Walgreens and Theranos.

3  **ANSWER TO COMPLAINT ¶ 242**

4          Theranos denies the allegations in the first sentence of Paragraph 242.  Holmes

5  and Balwani lack knowledge or information of the allegations in the first sentence of

6  Paragraph 242 sufficient to form a belief as to their truth and therefore deny them on

7  that basis.  Defendants further answer that Defendants lack knowledge or information

8  of the remaining allegations in Paragraph 242 sufficient to form a belief as to their

9  truth and therefore deny them on that basis.

10 **COMPLAINT ¶ 243**

11         Starting in around early 2016 and through the last time he had his blood drawn

12 at the Walgreens store, B.P.'s blood draws were only via venous blood draws.  In each

13 case, these venous blood draws were performed by an individual B.P. understood to be

14 a Theranos employee.

15 **ANSWER TO COMPLAINT ¶ 243**

16         Defendants lack knowledge or information of the allegations in Paragraph 243

17 sufficient to form a belief as to their truth and therefore deny them on that basis.

18 **COMPLAINT ¶ 244**

19         Throughout his visits to the Walgreens store, and throughout the process of

20 preparing for and having his blood drawn, he was consistently led to believe that the

21 blood draws were for legitimate blood testing purposes.  No suggestion was made to

22 the contrary.

23 **ANSWER TO COMPLAINT ¶ 244**

24         Defendants lack knowledge or information of the allegations in Paragraph 244

25 sufficient to form a belief as to their truth and therefore deny them on that basis.

26 **COMPLAINT ¶ 245**

27         When B.P. agreed to submit to the "tiny" blood draws (and to the venous blood

28 draws), he understood and believed that the purpose of the blood draws was legitimate

blood testing.  His consent to these draws was based on this belief.  This belief was based on, among other things, marketing from Walgreens and Theranos that he saw before getting his blood drawn, including, he specifically recalls, at the Walgreens store, which clearly portrayed and gave the impression that the services were market-ready and reliable, and the blood draws he was submitting to as being for legitimate testing purposes.  This belief was also based on the design and nature of, and the infrastructure and signage at, the Wellness Centers where his blood draws were conducted, which gave the definitive, if not obvious, impression that the purpose of the blood draws he was submitting to was legitimate blood testing.  The fact that these services were being offered at a Walgreens store, given its prominence and the nature of its business as a pharmacy, reinforced his belief that the service was market-ready and for legitimate testing purposes.  He was also told by an individual he believed to be a Walgreens or Theranos employee, during one or more of these visits and before his blood was drawn, that they would only take the amount of blood necessary to run the tests necessary, unlike other blood testing laboratories, which the representative said took far more blood than they required for the tests.

**ANSWER TO COMPLAINT ¶ 245**

Defendants lack knowledge or information of the allegations in Paragraph 245 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 246**

As alleged herein, the essential nature and purpose of the "tiny" blood draws B.P. submitted to was not legitimate blood testing, and indeed could not have been given the decidedly unready state of Edison.  B.P. agreed to submit to the "tiny" blood draws under false pretenses and under a substantial mistaken belief as to the essential nature and purpose of the draws.

**ANSWER TO COMPLAINT ¶ 246**

No response is required to Paragraph 246, which consists of conclusions of law. To the extent any response is required, Defendants deny the allegations in Paragraph

246.

**COMPLAINT ¶ 247**

B.P. had no contemporaneous knowledge that the Edison technology was still in-development, not market-ready, and not in a position to serve the purpose of blood testing, nor did he have contemporaneous knowledge that the "tiny" blood draws he was submitting to had a nature or purpose other than legitimate blood testing. This information was concealed from him and he relied on Defendants' omissions in this respect. Had he known the truth, he would not have consented to "tiny" blood draws.

**ANSWER TO COMPLAINT ¶ 247**

Defendants deny the allegations in Paragraph 247.

**COMPLAINT ¶ 248**

B.P. did not know that Defendants drew his blood for the purpose of research and product development and he did not consent to such procedure for such purpose. He believed that the purpose of all of the blood draws he submitted to was legitimate blood testing.

**ANSWER TO COMPLAINT ¶ 248**

Defendants deny the allegations in Paragraph 248.

**COMPLAINT ¶ 249**

B.P. believed that all of the Defendants' services he got were ready-for-market and reliable. He had no contemporaneous knowledge about the unreliability and litany of problems with Theranos testing, facilities, and equipment, alleged herein. He relied on the Defendants' omissions in this respect. Had he known of this concealed information, he would not have submitted to any of this "testing."

**ANSWER TO COMPLAINT ¶ 249**

Defendants answer that Defendants lack knowledge or information of the allegations in the first sentence of Paragraph 249 sufficient to form a belief as to their truth and therefore deny them on that basis. Defendants deny the remaining allegations in Paragraph 249.

**COMPLAINT ¶ 250**

On information and belief, B.P.'s "tiny" blood samples were utilized at Theranos's Newark, California laboratory.

**ANSWER TO COMPLAINT ¶ 250**

Defendants deny the allegations in Paragraph 250.

**COMPLAINT ¶ 251**

Having been led to believe all of the "test" results were reliable, B.P. relied on them, using the results to make decisions concerning his health.

**ANSWER TO COMPLAINT ¶ 251**

Defendants lack knowledge or information of the allegations in Paragraph 251 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 252**

Based on his Theranos test results, his doctor diagnosed him with diabetes and high cholesterol, and prescribed certain medications.

**ANSWER TO COMPLAINT ¶ 252**

Defendants lack knowledge or information of the allegations in Paragraph 252 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 253**

The Theranos tests that B.P. purchased were unreliable and/or inaccurate.

**ANSWER TO COMPLAINT ¶ 253**

Defendants deny the allegations in Paragraph 253.

**COMPLAINT ¶ 254**

Subsequently, as alleged above, Theranos voided the results of all of the Edison blood tests, including B.P.'s "tiny" blood tests.

**ANSWER TO COMPLAINT ¶ 254**

Defendants admit that Theranos voided all test results obtained from the Theranos Sample Processing Unit, versions of which have been referred to in the media as the "Edison."  Theranos further admits that certain of B.P.'s test results were

voided.  Holmes and Balwani lack knowledge or information sufficient to form a belief as to whether B.P.'s blood tests were voided and therefore deny the allegations on that basis.  Defendants lack knowledge or information as to whether B.P.'s blood tests were processed on the Theranos Sample Processing Unit, versions of which have been referred to in the media as the "Edison," sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 255**

After learning that his Theranos tests were unreliable and/or inaccurate, he had his blood tested by another company.  The results reflected that he is healthier than the Theranos tests had indicated.

**ANSWER TO COMPLAINT ¶ 255**

Defendants deny that B.P.'s Theranos tests were unreliable and/or inaccurate. Defendants lack knowledge or information of the remaining allegations in Paragraph 255 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 256**

Plaintiff B.P. would not have purchased any Theranos test if he had known that the Theranos testing facilities were not as described, and that Theranos's tests were inaccurate or unreliable.  Plaintiff B.P. would not have submitted to Theranos tests if he had known that Walgreens and Theranos were using his blood tests for research and product development.

**ANSWER TO COMPLAINT ¶ 256**

Defendants deny the allegations in Paragraph 256.

**COMPLAINT ¶ 257**

Plaintiff B.P. was battered, injured, damaged and harmed by Defendants' misconduct.

**ANSWER TO COMPLAINT ¶ 257**

No response is required to Paragraph 257, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 257.

1

**COMPLAINT ¶ 258**

2

     Plaintiff B.P. suffered damages as a result of Defendants' conduct, in an amount

3

to be proven at trial.

4

**ANSWER TO COMPLAINT ¶ 258**

5

     No response is required to Paragraph 258, which consists of conclusions of law.

6

To the extent a response is required, Defendants deny the allegations in Paragraph 258.

7

**COMPLAINT ¶ 259**

8

     In addition to the other harm described herein, Plaintiff B.P. suffered pain,

9

emotional distress, stress, anxiety as a result of the unreliable Theranos blood tests he

10

purchased and the invasion of his body under false pretenses and without his consent,

11

and harm to his human dignity connected to being subjected to battery.

12

**ANSWER TO COMPLAINT ¶ 259**

13

     No response is required to Paragraph 259, which consists of conclusions of law.

14

To the extent a response is required, Defendants deny the allegations in Paragraph 259.

15

**COMPLAINT ¶ 260**

16

     Any purported consent by B.P. to have his blood drawn by Defendants was

17

induced by fraud, concealment and misrepresentation, and was not effective.

18

**ANSWER TO COMPLAINT ¶ 260**

19

     No response is required to Paragraph 260, which consists of conclusions of law.

20

To the extent a response is required, Defendants deny the allegations in Paragraph 260.

21

**SUBHEADING "PLAINTIFF D.L."**

22

     Plaintiff D.L.

23

**ANSWER TO SUBHEADING "PLAINTIFF D.L."**

24

     No response is required to this subheading, which purports to identify a named

25

plaintiff in this action.

26

**COMPLAINT ¶ 261**

27

     On or around June 1, 2015, and December 14, 2015, Plaintiff D.L. purchased

28

Theranos blood tests at a Walgreens Pharmacy in Chandler, Arizona.  In both cases,

her blood was drawn at this Walgreens store.  D.L. purchased Theranos tests to get accurate and reliable results about her health.  She trusted Theranos and Walgreens to provide accurate and reliable test results.

**ANSWER TO COMPLAINT ¶ 261**

Theranos admits that Plaintiff D.L. purchased Theranos testing on or around June 1, 2015 and December 14, 2015 and visited a Walgreens in Chandler, Arizona. Theranos further answers that to the extent Plaintiff D.L. received Theranos blood tests, the test report(s) D.L. received speak for themselves.  Theranos lacks knowledge or information of the remaining allegations in Paragraph 261 sufficient to form a belief as to their truth and therefore deny them on that basis.

Holmes and Balwani lack knowledge or information of the allegations in Paragraph 261 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 262**

D.L. had received orders from her medical care provider to have blood testing performed.  D.L. was informed by her physician that Theranos was the quickest and cheapest alternative for the tests.  In choosing to have her blood tested by Theranos, she relied on marketing by Theranos and Walgreens regarding the reliability of their services, including, she specifically recalls, signage at the Walgreens store that she saw before having her blood drawn and representations on the Theranos website in or around June and December of 2015.  D.L. expected tests conducted at Walgreens to be trustworthy and reliable.

**ANSWER TO COMPLAINT ¶ 262**

Defendants lack knowledge or information of the allegations in Paragraph 262 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 263**

D.L. paid for the Theranos tests out of pocket and/or through her health insurer.

**ANSWER TO COMPLAINT ¶ 263**

Defendants lack knowledge or information of the allegations in Paragraph 263 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 264**

Each time she purchased a Theranos test, one or more vials of blood were drawn from a vein in D.L.'s arm.  D.L. did not know that Walgreens drew her blood for the purpose of research and product development and she did not consent to such procedure for such purpose.  She believed that the purpose of the blood draws she submitted to was legitimate blood testing.

**ANSWER TO COMPLAINT ¶ 264**

Defendants deny the allegations in the second sentence of Paragraph 264. Defendants further answer that Defendants lack knowledge or information of the remaining allegations in Paragraph 264 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 265**

D.L. believed that Defendants' services were ready-for-market and reliable. She had no contemporaneous knowledge about the unreliability and litany of problems with Theranos testing, facilities, and equipment, alleged herein.  She relied on the Defendants' omissions in this respect.  Had she known of this concealed information, she would not have submitted to this testing.

**ANSWER TO COMPLAINT ¶ 265**

Defendants answer that Defendants lack knowledge or information of the allegations in the first sentence of Paragraph 265 sufficient to form a belief as to their truth and therefore deny them on that basis.  Defendants deny the remaining allegations in Paragraph 265.

**COMPLAINT ¶ 266**

On information and belief, tests of D.L. were conducted at Theranos's Newark, California and Scottsdale, Arizona laboratories.

**ANSWER TO COMPLAINT ¶ 266**

Theranos admits that D.L.'s blood samples were processed in part at Theranos' Newark, California, and Scottsdale Arizona laboratories. Theranos further answers that a portion of D.L.'s tests were processed by a third-party laboratory. Holmes and Balwani lack knowledge or information of the allegations in Paragraph 266 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 267**

Having been led to believe the results were reliable, D.L. relied on them, using the results to make decisions concerning her health.

**ANSWER TO COMPLAINT ¶ 267**

Defendants lack knowledge or information of the allegations in Paragraph 267 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 268**

Based on the results of her Theranos tests, D.L. tested positive for Sjogrens syndrome, which required her to seek treatment from her doctor, to be tested for food allergies, and to spend considerable time learning about Sjogrens syndrome and the impact her diagnosis would have on her lifestyle.

**ANSWER TO COMPLAINT ¶ 268**

Defendants lack knowledge or information of the allegations in Paragraph 268 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 269**

The Theranos tests that D.L. purchased were unreliable and/or inaccurate.

**ANSWER TO COMPLAINT ¶ 269**

Defendants deny the allegations in Paragraph 269.

**COMPLAINT ¶ 270**

After learning that her Theranos tests were unreliable and/or inaccurate, she had her blood tested by another company and consulted with her doctor, who after reviewing the new test results has now confirmed that she does not have Sjogrens

1   syndrome.

2   **ANSWER TO COMPLAINT ¶ 270**

3   　　　Defendants deny that D.L.'s Theranos tests were unreliable and/or inaccurate.

4   Defendants further answer that Defendants lack knowledge or information of the

5   remaining allegations in Paragraph 270 sufficient to form a belief as to their truth and

6   therefore deny them on that basis.

7   **COMPLAINT ¶ 271**

8   　　　Plaintiff D.L. would not have purchased any Theranos test if she had known

9   that the Theranos testing facilities were not as described, and that Theranos's tests

10  were inaccurate or unreliable.  Plaintiff D.L. would not have submitted to Theranos

11  tests if she had known that Walgreens and Theranos were using her blood tests for

12  research and product development.

13  **ANSWER TO COMPLAINT ¶ 271**

14  　　　Defendants deny the allegations in Paragraph 271.

15  **COMPLAINT ¶ 272**

16  　　　Plaintiff D.L. was injured, damaged and harmed by Defendants' misconduct.

17  **ANSWER TO COMPLAINT ¶ 272**

18  　　　No response is required to Paragraph 272, which consists of conclusions of law.

19  To the extent a response is required, Defendants deny the allegations in Paragraph 272.

20  **COMPLAINT ¶ 273**

21  　　　Plaintiff D.L. suffered damages as a result of Defendants' conduct, in an

22  amount to be proven at trial.

23  **ANSWER TO COMPLAINT ¶ 273**

24  　　　No response is required to Paragraph 273, which consists of conclusions of law.

25  To the extent a response is required, Defendants deny the allegations in Paragraph 273.

26  **COMPLAINT ¶ 274**

27  　　　In addition to the other harm described herein, Plaintiff D.L. suffered emotional

28  distress, stress, and anxiety as a result of the unreliable Theranos blood tests she

1    purchased and the invasion of her body under false pretenses and without her consent.

2    **ANSWER TO COMPLAINT ¶ 274**

3        No response is required to Paragraph 274, which consists of conclusions of law.

4    To the extent a response is required, Defendants deny the allegations in Paragraph 274.

5    **COMPLAINT ¶ 275**

6        Any purported consent by D.L. to have her blood drawn by Defendants was

7    induced by fraud, concealment and misrepresentation, and was not effective.

8    **ANSWER TO COMPLAINT ¶ 275**

9        No response is required to Paragraph 275, which consists of conclusions of law.

10   To the extent a response is required, Defendants deny the allegations in Paragraph 275.

11   **SUBHEADING "PLAINTIFF L.M."**

12       Plaintiff L.M.

13   **ANSWER TO SUBHEADING "PLAINTIFF L.M."**

14       No response is required to this subheading, which purports to identify a named

15   plaintiff in this action.

16   **COMPLAINT ¶ 276**

17       On or around October 5, 2015, Plaintiff L.M. purchased Theranos blood tests at

18   a Walgreens Pharmacy in Chandler, Arizona.  She had her blood drawn at this

19   Walgreens store.  The tests that she purchased included tests regarding her thyroid.

20   L.M. purchased Theranos tests to get accurate and reliable results about her health.

21   She trusted Theranos and Walgreens to provide accurate and reliable test results.

22   **ANSWER TO COMPLAINT ¶ 276**

23       Theranos admits that L.M. had her blood drawn on or around October 5, 2015

24   and visited a Walgreens store in Chandler, Arizona.  Theranos further answers that to

25   the extent Plaintiff L.M. received Theranos blood tests, the test report(s) L.M. received

26   speak for themselves.  Theranos lacks knowledge or information of the remaining

27   allegations in Paragraph 276 sufficient to form a belief as to their truth and therefore

28   denies them on that basis.

1    Holmes and Balwani lack knowledge or information of the allegations in

2  Paragraph 276 sufficient to form a belief as to their truth and therefore deny them on

3  that basis.

4  **COMPLAINT ¶ 277**

5    L.M. had received orders from her medical care provider to have blood testing

6  performed.  L.M. was informed by her physician that Theranos was the cheapest

7  alternative for the tests.  In choosing to have her blood tested by Theranos, she relied

8  on marketing by Theranos and Walgreens regarding the reliability of their services.

9  She also expected tests conducted at Walgreens to be trustworthy and reliable.

10  **ANSWER TO COMPLAINT ¶ 277**

11    Defendants lack knowledge or information of the allegations in Paragraph 277

12  sufficient to form a belief as to their truth and therefore deny them on that basis.

13  **COMPLAINT ¶ 278**

14    L.M. paid approximately $59.34 out of pocket for the Theranos tests.

15  **ANSWER TO COMPLAINT ¶ 278**

16    Defendants lack knowledge or information of the allegations in Paragraph 278

17  sufficient to form a belief as to their truth and therefore deny them on that basis.

18  **COMPLAINT ¶ 279**

19    L.M.'s best recollection is that when she purchased Theranos tests, one or more

20  vials of blood were drawn from a vein in L.M.'s arm.  L.M. did not know that

21  Defendants drew her blood for the purpose of research and product development and

22  she did not consent to such procedure for such purpose.

23  **ANSWER TO COMPLAINT ¶ 279**

24    Defendants lack knowledge or information of the allegations in the first

25  sentence of Paragraph 279 sufficient to form a belief as to their truth and therefore

26  deny them on that basis.  Defendants deny the remaining allegations in Paragraph 279.

27  **COMPLAINT ¶ 280**

28    L.M. believed that Defendants' services were ready-for-market and reliable.

She had no contemporaneous knowledge about the unreliability and litany of problems with Theranos testing, facilities, and equipment, alleged herein.  She relied on the Defendants' omissions in this respect.  Had she known of this concealed information, she would not have submitted to this testing.

**ANSWER TO COMPLAINT ¶ 280**

Defendants answer that Defendants lack knowledge or information of the allegations in the first sentence of Paragraph 280 sufficient to form a belief as to their truth and therefore deny them on that basis.  Defendants deny the remaining allegations in Paragraph 280.

**COMPLAINT ¶ 281**

Having been led to believe the results were reliable, L.M. relied on them, using the results to make decisions concerning her health.

**ANSWER TO COMPLAINT ¶ 281**

Defendants lack knowledge or information of the allegations in Paragraph 281 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 282**

Based on the results of her Theranos tests, L.M. was diagnosed by her physician as having Hashimoto's Disease, which was devastating to her and required lifestyle changes, medical appointments, and taking unnecessary medication.

**ANSWER TO COMPLAINT ¶ 282**

Defendants lack knowledge or information of the allegations in Paragraph 282 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 283**

The Theranos tests that L.M. purchased were unreliable and/or inaccurate.

**ANSWER TO COMPLAINT ¶ 283**

Defendants deny the allegations in Paragraph 283.

**COMPLAINT ¶ 284**

In approximately March 2016, at her physician's direction, L.M. had her blood

re-tested by a different testing company, repeating the same tests that Theranos had conducted.  These results were dramatically different than the Theranos test results, and as per her physician invalidated the diagnosis of Hashimoto's Disease, meaning L.M. had been needlessly pursuing a course of treatment for a condition she did not have.

**ANSWER TO COMPLAINT ¶ 284**

Defendants lack knowledge or information of the allegations in Paragraph 284 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 285**

Plaintiff L.M. would not have purchased any Theranos test if she had known that the Theranos testing facilities were not as described, and that Theranos's tests were inaccurate or unreliable.  Plaintiff L.M. would not have submitted to Theranos tests if she had known that Defendants were using her blood tests for research and product development.

**ANSWER TO COMPLAINT ¶ 285**

Defendants deny the allegations in Paragraph 285.

**COMPLAINT ¶ 286**

Plaintiff L.M. was injured, damaged and harmed by Defendants' misconduct.

**ANSWER TO COMPLAINT ¶ 286**

No response is required to Paragraph 286, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 286.

**COMPLAINT ¶ 287**

Plaintiff L.M. suffered damages as a result of Defendants' conduct, in an amount to be proven at trial.

**ANSWER TO COMPLAINT ¶ 287**

No response is required to Paragraph 287, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 287.

1   **COMPLAINT ¶ 288**

2       In addition to the other harm described herein, Plaintiff L.M. suffered emotional

3   distress, stress, and anxiety as a result of the unreliable Theranos blood tests she

4   purchased and the invasion of her body under false pretenses and without her consent.

5   **ANSWER TO COMPLAINT ¶ 288**

6       No response is required to Paragraph 288, which consists of conclusions of law.

7   To the extent a response is required, Defendants deny the allegations in Paragraph 288.

8   **COMPLAINT ¶ 289**

9       Any purported consent by L.M. to have her blood drawn by Defendants was

10  induced by fraud, concealment and misrepresentation, and was not effective.

11  **ANSWER TO COMPLAINT ¶ 289**

12      No response is required to Paragraph 289, which consists of conclusions of law.

13  To the extent a response is required, Defendants deny the allegations in Paragraph 289.

14  **SUBHEADING "PLAINTIFF M.P."**

15      Plaintiff M.P.

16  **ANSWER TO SUBHEADING "PLAINTIFF M.P."**

17      No response is required to this subheading, which purports to identify a named

18  plaintiff in this action.

19  **COMPLAINT ¶ 290**

20      On or around November 2015, Plaintiff M.P. purchased Theranos blood tests at

21  a Walgreens Pharmacy in Tempe, Arizona.  He had his blood drawn at this Walgreens

22  store.  The tests that he purchased included STI panels.  M.P. purchased Theranos tests

23  to get accurate and reliable results about his health.  He trusted Theranos and

24  Walgreens to provide reliable test results.

25  **ANSWER TO COMPLAINT ¶ 290**

26      Theranos answers that M.P. had his blood drawn on or around December 1,

27  2015 and that M.P. visited a Walgreens store in Tempe, Arizona.  Theranos further

28  answers that to the extent Plaintiff M.P. received Theranos blood tests, the test

report(s) M.P. received speak for themselves.  Theranos lacks knowledge or information of the remaining allegations in Paragraph 290 sufficient to form a belief as to their truth and therefore denies them on that basis.

Holmes and Balwani lack knowledge or information of the allegations in Paragraph 290 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 291**

In choosing to have his blood tested by Theranos, M.P. relied on marketing by Theranos and Walgreens regarding the reliability of their services, including, he specifically recalls, on the Theranos website that he viewed on or around November 2015 before visiting the Walgreens store, and at the Walgreens store.  He also expected tests conducted at Walgreens to be trustworthy and reliable.

**ANSWER TO COMPLAINT ¶ 291**

Defendants lack knowledge or information of the allegations in Paragraph 291 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 292**

M.P.'s best recollection is that when he purchased Theranos tests, he had one or more vials of blood drawn from a vein in his arm.  M.P. did not know that Defendants drew his blood for the purpose of research and product development and he did not consent to such procedure for such purpose.

**ANSWER TO COMPLAINT ¶ 292**

Defendants lack knowledge or information of the allegations in the first sentence of Paragraph 292 sufficient to form a belief as to their truth and therefore deny them on that basis.  Defendants deny the remaining allegations in Paragraph 292.

**COMPLAINT ¶ 293**

M.P. believed that Defendants' services were ready-for-market and reliable.  He had no contemporaneous knowledge about the unreliability and litany of problems with Theranos testing, facilities, and equipment, alleged herein.  He relied on the

1   Defendants' omissions in this respect.  Had he known of this concealed information,

2   he would not have submitted to this testing.

3   **ANSWER TO COMPLAINT ¶ 293**

4        Defendants answer that Defendants lack knowledge or information of the

5   allegations in the first sentence of Paragraph 293 sufficient to form a belief as to their

6   truth and therefore deny them on that basis.  Defendants deny the remaining

7   allegations in Paragraph 293.

8   **COMPLAINT ¶ 294**

9        M.P. paid for the Theranos tests out-of-pocket.

10  **ANSWER TO COMPLAINT ¶ 294**

11       Defendants lack knowledge or information of the allegations in Paragraph 294

12  sufficient to form a belief as to their truth and therefore deny them on that basis.

13  **COMPLAINT ¶ 295**

14       The tests that M.P. purchased were unreliable and/or inaccurate.

15  **ANSWER TO COMPLAINT ¶ 295**

16       Defendants deny the allegations in Paragraph 295.

17  **COMPLAINT ¶ 296**

18       M.P. paid out-of-pocket to be retested with STI panels after learning that the

19  Theranos tests were unreliable and/or inaccurate.

20  **ANSWER TO COMPLAINT ¶ 296**

21       Defendants deny that M.P.'s Theranos tests were unreliable and/or inaccurate.

22  Defendants lack knowledge or information of the remaining allegations in Paragraph

23  296 sufficient to form a belief as to their truth and therefore deny them on that basis.

24  **COMPLAINT ¶ 297**

25       Plaintiff M.P. would not have purchased any Theranos test if he had known that

26  the Theranos testing facilities were not as described, and that Theranos's tests were

27  inaccurate or unreliable.  Plaintiff M.P. would not have submitted to Theranos tests if

28  he had known that Defendants were using his blood tests for research and product

development.

**ANSWER TO COMPLAINT ¶ 297**

Defendants deny the allegations in Paragraph 297.

**COMPLAINT ¶ 298**

Plaintiff M.P. was injured, damaged and harmed by Defendants' misconduct.

**ANSWER TO COMPLAINT ¶ 298**

No response is required to Paragraph 298, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 298.

**COMPLAINT ¶ 299**

Plaintiff M.P. suffered damages as a result of Defendants' conduct, in an amount to be proven at trial.

**ANSWER TO COMPLAINT ¶ 299**

No response is required to Paragraph 299, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 299.

**COMPLAINT ¶ 300**

In addition to the other harm described herein, Plaintiff M.P. suffered emotional distress, stress, and anxiety as a result of the unreliable Theranos blood tests he purchased and the invasion of his body under false pretenses and without his consent.

**ANSWER TO COMPLAINT ¶ 300**

No response is required to Paragraph 300, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 300.

**COMPLAINT ¶ 301**

Any purported consent by M.P. to have his blood drawn by Defendants was induced by fraud, concealment and misrepresentation, and was not effective.

**ANSWER TO COMPLAINT ¶ 301**

No response is required to Paragraph 301, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 301.

1   **SUBHEADING "PLAINTIFF R.C."**

2        Plaintiff R.C.

3   **ANSWER TO SUBHEADING "PLAINTIFF R.C."**

4        No response is required to this subheading, as pursuant to Docket No. 186,

5   Plaintiff R.C. has voluntarily dismissed his claims in this action, and pursuant to

6   Docket No. 187, R.C. has thus been terminated as a plaintiff in this case.

7   **COMPLAINT ¶ 302**

8        On or around February 2015, Plaintiff R.C. purchased Theranos blood tests at a

9   Walgreens Pharmacy in Sun City West, Arizona.  He had his blood drawn at this

10  Walgreens store.  The tests that he purchased included tests regarding his heart health.

11  R.C. purchased Theranos tests to get accurate and reliable results about his health.  He

12  trusted Theranos and Walgreens to provide accurate and reliable test results.

13  **ANSWER TO COMPLAINT ¶ 302**

14       No response is required to Paragraph 302, as pursuant to Docket No. 186,

15  Plaintiff R.C. has voluntarily dismissed his claims in this action, and pursuant to

16  Docket No. 187, R.C. has thus been terminated as a plaintiff in this case.  To the extent

17  any response is required, Theranos denies that R.C. received Theranos testing, and

18  denies all remaining allegations in Paragraph 302.  Holmes and Balwani lack

19  knowledge or information of the allegations in Paragraph 302 sufficient to form a

20  belief as to their truth and therefore deny them on that basis.

21  **COMPLAINT ¶ 303**

22       R.C. had received orders from his medical care provider to have blood testing

23  performed to monitor his heart health.  In choosing to have his blood tested by

24  Theranos, he relied on marketing by Theranos and Walgreens regarding the nature and

25  reliability of their services, including, he specifically recalls, a television commercial

26  he saw before visiting the Walgreens store, and at the Walgreens store before having

27  his blood drawn, all of which portrayed and gave the clear impression that the services

28  being advertised were ready, reliable, and for legitimate testing purposes.  He also

expected tests conducted at Walgreens to be trustworthy and reliable.

**ANSWER TO COMPLAINT ¶ 303**

No response is required to Paragraph 303, as pursuant to Docket No. 186, Plaintiff R.C. has voluntarily dismissed his claims in this action, and pursuant to Docket No. 187, R.C. has thus been terminated as a plaintiff in this case.  To the extent any response is required, Defendants lack knowledge or information of the allegations in Paragraph 303 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 304**

R.C. paid for the Theranos tests through Medicare.

**ANSWER TO COMPLAINT ¶ 304**

No response is required to Paragraph 304, as pursuant to Docket No. 186, Plaintiff R.C. has voluntarily dismissed his claims in this action, and pursuant to Docket No. 187, R.C. has thus been terminated as a plaintiff in this case.  To the extent any response is required, Defendants lack knowledge or information of the allegations in Paragraph 304 sufficient to form a belief as to their truth, and therefore deny them on that basis.

**COMPLAINT ¶ 305**

When R.C. had his blood drawn at the Walgreens store, it was via "tiny" blood draws.  Pursuant to this, a first needle was stuck into his finger, penetrating his skin and tissue, and blood was drawn from his body.  The process was painful and was not quick as advertised.  The individual administering the draw struggled to secure enough blood from R.C.'s finger and had to repeat the painful process several times before collecting enough to test.  In each case, a needle was stuck into his finger, penetrating his skin and tissue, and blood was drawn from his body.  For each of these "tiny" blood draws, the blood draws were administered by an individual who worked at the Walgreens store, and who identified themselves as being affiliated with Theranos testing.  Plaintiff R.C. alleges that this individual was a Walgreens employee or

worked for both Walgreens and Theranos.

**ANSWER TO COMPLAINT ¶ 305**

No response is required to Paragraph 305, as pursuant to Docket No. 186, Plaintiff R.C. has voluntarily dismissed his claims in this action, and pursuant to Docket No. 187, R.C. has thus been terminated as a plaintiff in this case. To the extent any response is required, Defendants lack knowledge or information of the allegations in Paragraph 305 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 306**

Throughout his visits to the Walgreens store, and throughout the process of preparing for and having his blood drawn, he was consistently led to believe that the blood draws were for legitimate blood testing purposes. No suggestion was made to the contrary.

**ANSWER TO COMPLAINT ¶ 306**

No response is required to Paragraph 306, as pursuant to Docket No. 186, Plaintiff R.C. has voluntarily dismissed his claims in this action, and pursuant to Docket No. 187, R.C. has thus been terminated as a plaintiff in this case. To the extent any response is required, Defendants lack knowledge or information of the allegations in Paragraph 306 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 307**

When R.C. agreed to submit to the "tiny" blood draws, he understood and believed that the purpose of the blood draws was legitimate blood testing. His consent to these draws was based on this belief. This belief was based on, among other things, marketing from Walgreens and Theranos that he saw, including a television commercial and at the Walgreens store before having his blood drawn, which clearly portrayed and gave the impression that the services were market-ready and reliable, and the blood draws he was submitting to as being for legitimate testing purposes.

This belief was also based on the design and nature of, and the infrastructure and signage at, the Wellness Centers where his blood draws were conducted, which gave the definitive, if not obvious, impression that the purpose of the blood draws he was submitting to was legitimate blood testing.  The fact that these services were being offered at a Walgreens store, given its prominence and the nature of its business as a pharmacy, reinforced his belief that the service was market-ready and for legitimate testing purposes.

**ANSWER TO COMPLAINT ¶ 307**

No response is required to Paragraph 307, as pursuant to Docket No. 186, Plaintiff R.C. has voluntarily dismissed his claims in this action, and pursuant to Docket No. 187, R.C. has thus been terminated as a plaintiff in this case.  To the extent any response is required, Defendants lack knowledge or information of the allegations in Paragraph 307 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 308**

As alleged herein, the essential nature and purpose of the "tiny" blood draws R.C. submitted to was not legitimate blood testing, and indeed could not have been given the decidedly unready state of Edison.  R.C. agreed to submit to the "tiny" blood draws under false pretenses and under a substantial mistaken belief as to the essential nature and purpose of the draws.

**ANSWER TO COMPLAINT ¶ 308**

No response is required to Paragraph 308, as pursuant to Docket No. 186, Plaintiff R.C. has voluntarily dismissed his claims in this action, and pursuant to Docket No. 187, R.C. has thus been terminated as a plaintiff in this case.  To the extent any response is required, Defendants deny the allegations in Paragraph 308.

**COMPLAINT ¶ 309**

R.C. had no contemporaneous knowledge that the Edison technology was still in-development, not market-ready, and not in a position to serve the purpose of blood

1   testing, nor did he have contemporaneous knowledge that the "tiny" blood draws he

2   was submitting to had a nature or purpose other than legitimate blood testing.  This

3   information was concealed from him and he relied on Defendants' omissions in this

4   respect.  Had he known the truth, he would not have consented to "tiny" blood draws.

5   **ANSWER TO COMPLAINT ¶ 309**

6   　　　No response is required to Paragraph 309, as pursuant to Docket No. 186,

7   Plaintiff R.C. has voluntarily dismissed his claims in this action, and pursuant to

8   Docket No. 187, R.C. has thus been terminated as a plaintiff in this case.  To the extent

9   any response is required, Defendants deny the allegations in Paragraph 309.

10  **COMPLAINT ¶ 310**

11  　　　R.C. did not know that Defendants drew his blood for the purpose of research

12  and product development and he did not consent to such procedure for such purpose.

13  **ANSWER TO COMPLAINT ¶ 310**

14  　　　No response is required to Paragraph 310, as pursuant to Docket No. 186,

15  Plaintiff R.C. has voluntarily dismissed his claims in this action, and pursuant to

16  Docket No. 187, R.C. has thus been terminated as a plaintiff in this case.  To the extent

17  any response is required, Defendants deny the allegations in Paragraph 310.

18  **COMPLAINT ¶ 311**

19  　　　R.C. believed that the services he got were ready-for-market and reliable.  He

20  had no contemporaneous knowledge about the unreliability and litany of problems

21  with Theranos testing, facilities, and equipment, alleged herein.  He relied on the

22  Defendants' omissions in this respect.  Had he known of this concealed information,

23  he would not have submitted to this "testing."

24  **ANSWER TO COMPLAINT ¶ 311**

25  　　　No response is required to Paragraph 311, as pursuant to Docket No. 186,

26  Plaintiff R.C. has voluntarily dismissed his claims in this action, and pursuant to

27  Docket No. 187, R.C. has thus been terminated as a plaintiff in this case.  To the extent

28  any response is required, Defendants answer that Defendants lack knowledge or

1   information of the allegations in the first sentence of Paragraph 311 sufficient to form

2   a belief as to their truth and therefore deny them on that basis.  Defendants deny the

3   remaining allegations in Paragraph 311.

4   **COMPLAINT ¶ 312**

5        On information and belief, R.C.'s "tiny" blood samples were utilized at

6   Theranos's Newark, California laboratory.

7   **ANSWER TO COMPLAINT ¶ 312**

8        No response is required to Paragraph 312, as pursuant to Docket No. 186,

9   Plaintiff R.C. has voluntarily dismissed his claims in this action, and pursuant to

10  Docket No. 187, R.C. has thus been terminated as a plaintiff in this case.  To the extent

11  any response is required, Defendants deny the allegations in Paragraph 312.

12  **COMPLAINT ¶ 313**

13       Having been led to believe the "test" results were reliable, R.C. relied on them,

14  using the results to make decisions concerning his health.

15  **ANSWER TO COMPLAINT ¶ 313**

16       No response is required to Paragraph 313, as pursuant to Docket No. 186,

17  Plaintiff R.C. has voluntarily dismissed his claims in this action, and pursuant to

18  Docket No. 187, R.C. has thus been terminated as a plaintiff in this case.  To the extent

19  any response is required, Defendants lack knowledge or information of the allegations

20  in Paragraph 313 sufficient to form a belief as to their truth and therefore deny them on

21  that basis.

22  **COMPLAINT ¶ 314**

23       The results from his Theranos tests indicated that R.C. was in good health.

24  Based on these results, his doctor recommended that R.C. maintain his current

25  medication regimen and to return in one year for repeat testing, and R.C. believed his

26  current lifestyle and medication regimen was working for him and that he had been

27  successful in getting his heart health under control.

28

1

**ANSWER TO COMPLAINT ¶ 314**

2

No response is required to Paragraph 314, as pursuant to Docket No. 186,

3

Plaintiff R.C. has voluntarily dismissed his claims in this action, and pursuant to

4

Docket No. 187, R.C. has thus been terminated as a plaintiff in this case.  To the extent

5

any response is required, Defendants lack knowledge or information of the allegations

6

in Paragraph 314 sufficient to form a belief as to their truth and therefore deny them on

7

that basis.

8

**COMPLAINT ¶ 315**

9

The Theranos tests that R.C. purchased were unreliable and/or inaccurate.

10

**ANSWER TO COMPLAINT ¶ 315**

11

No response is required to Paragraph 315, as pursuant to Docket No. 186,

12

Plaintiff R.C. has voluntarily dismissed his claims in this action, and pursuant to

13

Docket No. 187, R.C. has thus been terminated as a plaintiff in this case.  To the extent

14

any response is required, Defendants deny the allegations in Paragraph 315.

15

**COMPLAINT ¶ 316**

16

Less than one month later, R.C. suffered a heart attack.  R.C. was admitted to

17

the hospital, had two stents placed, and had numerous follow up medical

18

appointments.  R.C. and his cardiologist were particularly concerned that R.C. had

19

suffered a heart attack given that his blood panels came back clear (from his Theranos

20

tests) less than a month prior.  Additional blood work performed during his

21

hospitalization strongly suggested that the near-contemporaneous Theranos blood tests

22

were inaccurate.

23

**ANSWER TO COMPLAINT ¶ 316**

24

No response is required to Paragraph 316, as pursuant to Docket No. 186,

25

Plaintiff R.C. has voluntarily dismissed his claims in this action, and pursuant to

26

Docket No. 187, R.C. has thus been terminated as a plaintiff in this case.  To the extent

27

any response is required, Defendants lack knowledge or information of the allegations

28

in Paragraph 316 sufficient to form a belief as to their truth and therefore deny them on

1  that basis.

2  **COMPLAINT ¶ 317**

3      Subsequently, as alleged above, Theranos voided the results of all of the "tiny"

4  blood tests, including R.C.'s "tests."

5  **ANSWER TO COMPLAINT ¶ 317**

6      No response is required to Paragraph 317, as pursuant to Docket No. 186,

7  Plaintiff R.C. has voluntarily dismissed his claims in this action, and pursuant to

8  Docket No. 187, R.C. has thus been terminated as a plaintiff in this case.  To the extent

9  any response is required, Theranos denies the allegations in Paragraph 317.  Holmes

10  and Balwani lack knowledge or information of the allegations in Paragraph 317

11  sufficient to form a belief as to their truth and therefore deny them on that basis.

12  **COMPLAINT ¶ 318**

13      Since his 2015 heart attack, R.C. has been receiving medical care using

14  traditional blood testing procedures from companies other than Theranos.

15  **ANSWER TO COMPLAINT ¶ 318**

16      No response is required to Paragraph 318, as pursuant to Docket No. 186,

17  Plaintiff R.C. has voluntarily dismissed his claims in this action, and pursuant to

18  Docket No. 187, R.C. has thus been terminated as a plaintiff in this case.  To the extent

19  any response is required, Defendants lack knowledge or information of the allegations

20  in Paragraph 318 sufficient to form a belief as to their truth and therefore deny them on

21  that basis.

22  **COMPLAINT ¶ 319**

23      Plaintiff R.C. would not have purchased any Theranos test if he had known that

24  the Theranos testing facilities were not as described, and that Theranos's tests were

25  inaccurate or unreliable.  Plaintiff R.C. would not have submitted to Theranos tests if

26  he had known that Walgreens and Theranos were using his blood tests for research and

27  product development.

28

**ANSWER TO COMPLAINT ¶ 319**

No response is required to Paragraph 319, as pursuant to Docket No. 186, Plaintiff R.C. has voluntarily dismissed his claims in this action, and pursuant to Docket No. 187, R.C. has thus been terminated as a plaintiff in this case.  To the extent any response is required, Defendants deny the allegations in Paragraph 319.

**COMPLAINT ¶ 320**

Plaintiff R.C. was battered, injured, damaged and harmed by Defendants' misconduct.

**ANSWER TO COMPLAINT ¶ 320**

No response is required to Paragraph 320, as pursuant to Docket No. 186, Plaintiff R.C. has voluntarily dismissed his claims in this action, and pursuant to Docket No. 187, R.C. has thus been terminated as a plaintiff in this case.  To the extent any response is required, Defendants deny the allegations in Paragraph 320.

**COMPLAINT ¶ 321**

Plaintiff R.C. suffered damages as a result of Defendants' conduct, in an amount to be proven at trial.

**ANSWER TO COMPLAINT ¶ 321**

No response is required to Paragraph 321, as pursuant to Docket No. 186, Plaintiff R.C. has voluntarily dismissed his claims in this action, and pursuant to Docket No. 187, R.C. has thus been terminated as a plaintiff in this case.  To the extent any response is required, Defendants deny the allegations in Paragraph 321.

**COMPLAINT ¶ 322**

In addition to the other harm described herein, Plaintiff R.C. suffered pain, emotional distress, stress, anxiety as a result of the unreliable Theranos blood tests he purchased and the invasion of his body under false pretenses and without his consent, and harm to his human dignity connected to being subjected to battery.

**ANSWER TO COMPLAINT ¶ 322**

No response is required to Paragraph 322, as pursuant to Docket No. 186,

1   Plaintiff R.C. has voluntarily dismissed his claims in this action, and pursuant to

2   Docket No. 187, R.C. has thus been terminated as a plaintiff in this case.  To the extent

3   any response is required, Defendants deny the allegations in Paragraph 322.

4   **COMPLAINT ¶ 323**

5   Any purported consent by R.C. to have his blood drawn by Defendants was

6   induced by fraud, concealment and misrepresentation, and was not effective.

7   **ANSWER TO COMPLAINT ¶ 323**

8   No response is required to Paragraph 323, as pursuant to Docket No. 186,

9   Plaintiff R.C. has voluntarily dismissed his claims in this action, and pursuant to

10  Docket No. 187, R.C. has thus been terminated as a plaintiff in this case.  To the extent

11  any response is required, Defendants deny the allegations in Paragraph 323.

12  **SUBHEADING "PLAINTIFF R.G."**

13  Plaintiff R.G.

14  **ANSWER TO SUBHEADING "PLAINTIFF R.G."**

15  No response is required to this subheading, which purports to identify a named

16  plaintiff in this action.

17  **COMPLAINT ¶ 324**

18  On or around September 10, 2015, Plaintiff R.G. purchased Theranos blood

19  tests at a Walgreens Pharmacy in Gilbert, Arizona.  He had his blood drawn at this

20  Walgreens store.  The tests that he purchased included tests regarding his sexual

21  health.  R.G. purchased Theranos tests to get accurate and reliable results about his

22  health.  He trusted Theranos and Walgreens to provide accurate and reliable test

23  results.

24  **ANSWER TO COMPLAINT ¶ 324**

25  Theranos admits that R.G. received Theranos blood tests on or around

26  September 10, 2015 and visited a Walgreens store in Gilbert, Arizona.  Theranos

27  further answers that to the extent Plaintiff R.G. received Theranos blood tests, the test

28  report(s) R.G. received speak for themselves.  Theranos lacks knowledge or

1  information of the remaining allegations in Paragraph 324 sufficient to form a belief as

2  to their truth and therefore denies them on that basis.

3  Holmes and Balwani lack knowledge or information of the allegations in

4  Paragraph 324 sufficient to form a belief as to their truth and therefore deny them on

5  that basis.

6  **COMPLAINT ¶ 325**

7  R.G. had seen and heard advertisements for Theranos that caused him to believe

8  it was a revolutionary technology and market-ready.  R.G. specifically recalls hearing

9  advertisements for Theranos on the radio prior to September 2015, and viewing

10  advertisements on multiple occasions in 2015 at the baggage claim carousal of the

11  Phoenix International Airport.  In choosing to have his blood tested by Theranos, he

12  relied on marketing by Theranos and Walgreens regarding the reliability of their

13  services, including as specified above.  He also expected tests conducted at Walgreens

14  to be trustworthy and reliable.

15  **ANSWER TO COMPLAINT ¶ 325**

16  Defendants lack knowledge or information of the allegations in Paragraph 325

17  sufficient to form a belief as to their truth and therefore deny them on that basis.

18  **COMPLAINT ¶ 326**

19  R.G. paid approximately $121.63 out of pocket for the Theranos tests.

20  **ANSWER TO COMPLAINT ¶ 326**

21  Defendants lack knowledge or information of the allegations in Paragraph 326

22  sufficient to form a belief as to their truth and therefore deny them on that basis.

23  **COMPLAINT ¶ 327**

24  When he purchased Theranos tests, one or more vials of blood were drawn from

25  a vein in R.G.'s arm.  R.G. did not know that Defendants drew his blood for the

26  purpose of research and product development and he did not consent to such procedure

27  for such purpose.

28

**ANSWER TO COMPLAINT ¶ 327**

Defendants lack knowledge or information of the allegations in the first sentence of Paragraph 327 sufficient to form a belief as to their truth and therefore deny them on that basis.  Defendants deny the remaining allegations in Paragraph 327.

**COMPLAINT ¶ 328**

R.G. believed that Defendants' services were ready-for-market and reliable.  He had no contemporaneous knowledge about the unreliability and litany of problems with Theranos testing, facilities, and equipment, alleged herein.  He relied on the Defendants' omissions in this respect.  Had he known of this concealed information, he would not have submitted to this testing.

**ANSWER TO COMPLAINT ¶ 328**

Defendants answer that Defendants lack knowledge or information of the allegations in the first sentence of Paragraph 328 sufficient to form a belief as to their truth and therefore deny them on that basis.  Defendants deny the remaining allegations in Paragraph 328.

**COMPLAINT ¶ 329**

On information and belief, one or more of R.G.'s tests were conducted at Theranos's Newark, California laboratory.

**ANSWER TO COMPLAINT ¶ 329**

Theranos admits that one or more of R.G.'s tests were processed at Theranos' Newark, California laboratory.  Holmes and Balwani lack knowledge or information of the allegations in Paragraph 329 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 330**

Having been led to believe the results were reliable, R.G. relied on them, using the results to make decisions concerning his health.

**ANSWER TO COMPLAINT ¶ 330**

Defendants lack knowledge or information of the allegations in Paragraph 330

1   sufficient to form a belief as to their truth and therefore deny them on that basis.

2   **COMPLAINT ¶ 331**

3   　　The results from his Theranos tests indicated that he had tested positive for HIV

4   (specifically, the HIV 1+2 Antigen/Antibody Combo was "reactive").

5   **ANSWER TO COMPLAINT ¶ 331**

6   　　Defendants lack knowledge or information of the allegations in Paragraph 331

7   sufficient to form a belief as to their truth and therefore deny them on that basis.

8   **COMPLAINT ¶ 332**

9   　　After receiving the test results from Theranos, R.G., he was extremely

10  concerned and visited his physician, began doing research about HIV/AIDS, and had

11  his blood re-tested by two different companies.  These test results came back negative.

12  **ANSWER TO COMPLAINT ¶ 332**

13  　　Defendants lack knowledge or information of the allegations in Paragraph 332

14  sufficient to form a belief as to their truth and therefore deny them on that basis.

15  **COMPLAINT ¶ 333**

16  　　The Theranos tests that R.G. purchased were unreliable and/or inaccurate.

17  **ANSWER TO COMPLAINT ¶ 333**

18  　　Defendants deny the allegations in Paragraph 333.

19  **COMPLAINT ¶ 334**

20  　　Plaintiff R.G. would not have purchased any Theranos test if he had known that

21  the Theranos testing facilities were not as described, and that Theranos's tests were

22  inaccurate or unreliable.  Plaintiff R.G. would not have submitted to Theranos tests if

23  he had known that Walgreens and Theranos were using his blood tests for research and

24  product development.

25  **ANSWER TO COMPLAINT ¶ 334**

26  　　Defendants deny the allegations in Paragraph 334.

27  **COMPLAINT ¶ 335**

28  　　Plaintiff R.G. was injured, damaged and harmed by Defendants' misconduct.

1

**ANSWER TO COMPLAINT ¶ 335**

2

No response is required to Paragraph 335, which consists of conclusions of law.

3

To the extent a response is required, Defendants deny the allegations in Paragraph 335.

4

**COMPLAINT ¶ 336**

5

Plaintiff R.G. suffered damages as a result of Defendants' conduct, in an

6

amount to be proven at trial.

7

**ANSWER TO COMPLAINT ¶ 336**

8

No response is required to Paragraph 336, which consists of conclusions of law.

9

To the extent a response is required, Defendants deny the allegations in Paragraph 336.

10

**COMPLAINT ¶ 337**

11

In addition to the other harm described herein, Plaintiff R.G. suffered emotional

12

distress, stress, and anxiety as a result of the unreliable Theranos blood tests he

13

purchased and the invasion of his body under false pretenses and without his consent.

14

**ANSWER TO COMPLAINT ¶ 337**

15

No response is required to Paragraph 337, which consists of conclusions of law.

16

To the extent a response is required, Defendants deny the allegations in Paragraph 337.

17

**COMPLAINT ¶ 338**

18

Any purported consent by R.G. to have his blood drawn by Defendants was

19

induced by fraud, concealment and misrepresentation, and was not effective.

20

**ANSWER TO COMPLAINT ¶ 338**

21

No response is required to Paragraph 338, which consists of conclusions of law.

22

To the extent a response is required, Defendants deny the allegations in Paragraph 338.

23

**SUBHEADING "PLAINTIFF S.J."**

24

Plaintiff S.J.

25

**ANSWER TO SUBHEADING "PLAINTIFF S.J."**

26

No response is required to this subheading, which purports to identify a named

27

plaintiff in this action.

28

**COMPLAINT ¶ 339**

In or around July 2015, Plaintiff S.J. purchased her first Theranos blood test and urinalysis at a Theranos Wellness Center located at a Walgreens retail store in Mesa, Arizona.  She had her blood drawn and urine sample taken at this Walgreens store. The tests that she purchased were for a routine health check including diabetes and triglyceride levels.  S.J. purchased Theranos tests to get accurate and reliable results about her health.  She trusted Theranos and Walgreens to provide accurate and reliable test results.

**ANSWER TO COMPLAINT ¶ 339**

Theranos answers that S.J. received Theranos blood tests and urinalysis in or around August, 2015, and visited a Walgreens store in Mesa, Arizona.  Theranos further answers that to the extent Plaintiff S.J. received Theranos blood tests, the test report(s) S.J. received speak for themselves.  Theranos lacks knowledge or information of the remaining allegations in Paragraph 339 sufficient to form a belief as to their truth and therefore denies them on that basis.

Holmes and Balwani lack knowledge or information of the allegations in Paragraph 339 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 340**

S.J. was referred to Theranos by her physician, based on her financial needs and Theranos's reputation for affordable testing.  In choosing to have her blood tested by Theranos, S.J. relied on marketing by Theranos and Walgreens regarding the nature and reliability of their services, including, she specifically recalls, in materials that she saw at the Walgreens store, before having her blood drawn, which portrayed and gave the clear impression that the services being advertised were ready, reliable, and for legitimate testing purposes.  She also expected tests conducted at Walgreens to be trustworthy and reliable.

1

**ANSWER TO COMPLAINT ¶ 340**

2

3

Defendants lack knowledge or information of the allegations in Paragraph 340 sufficient to form a belief as to their truth and therefore deny them on that basis.

4

**COMPLAINT ¶ 341**

5

6

7

8

9

10

11

To the best of her recollection, the first time S.J. had her blood drawn at the Walgreens store, it was via "tiny" blood draws.  Pursuant to this, a needle was stuck into her finger, penetrating her skin and tissue, and blood was drawn from her body. The "tiny" blood draw was administered by an individual who worked at the Walgreens store and who identified themselves as being affiliated with Theranos testing.  Plaintiff S.J. alleges that this individual was a Walgreens employee or worked for both Walgreens and Theranos.

12

**ANSWER TO COMPLAINT ¶ 341**

13

14

Defendants lack knowledge or information of the allegations in Paragraph 341 sufficient to form a belief as to their truth and therefore deny them on that basis.

15

**COMPLAINT ¶ 342**

16

17

18

As discussed below, S.J. also purchased Theranos tests during a second visit to the same Walgreens store, in or around November 2015.  Her best recollection is that during this second visit, one or more vials of blood were drawn from a vein in her arm.

19

**ANSWER TO COMPLAINT ¶ 342**

20

21

22

Theranos denies the allegations in Paragraph 342.  Holmes and Balwani lack knowledge or information of the allegations in Paragraph 342 sufficient to form a belief as to their truth and therefore deny them on that basis.

23

**COMPLAINT ¶ 343**

24

25

26

27

Throughout her visits to the Walgreens store, and throughout the process of preparing for and having her blood drawn, S.J. was consistently led to believe that the blood draws were for legitimate blood testing purposes.  No suggestion was made to the contrary.

28

**ANSWER TO COMPLAINT ¶ 343**

Defendants lack knowledge or information of the allegations in Paragraph 343 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 344**

When S.J. agreed to submit to the "tiny" blood draw (and to the venous blood draw as well), she understood and believed that the purpose of the blood draws was legitimate blood testing.  Her consent to these draws was based on this belief.  This belief was based on, among other things, marketing from Walgreens and Theranos that she saw at the Walgreens stores before getting her blood drawn, which clearly portrayed and gave the impression that the services were market-ready and reliable, and the blood draws he was submitting to as being for legitimate testing purposes. This belief was also based on the design and nature of, and the infrastructure and signage at, the Wellness Centers where her blood draws were conducted, which gave the definitive, if not obvious, impression that the purpose of the blood draws she was submitting to was legitimate blood testing.  The fact that these services were being offered at a Walgreens store, given its prominence and the nature of its business as a pharmacy, reinforced her belief that the service was market-ready and for legitimate testing purposes.

**ANSWER TO COMPLAINT ¶ 344**

Defendants lack knowledge or information of the allegations in Paragraph 344 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 345**

As alleged herein, the essential nature and purpose of the "tiny" blood draw S.J. submitted to was not legitimate blood testing, and indeed could not have been given the decidedly unready state of Edison.  S.J. agreed to submit to the "tiny" blood draw under false pretenses and under a substantial mistaken belief as to the essential nature and purpose of the draw.

1    **ANSWER TO COMPLAINT ¶ 345**

2         No response is required to Paragraph 345, which consists of conclusions of law.

3    To the extent any response is required, Defendants deny the allegations in Paragraph

4    345.

5    **COMPLAINT ¶ 346**

6         S.J. had no contemporaneous knowledge that the Edison technology was still

7    in-development, not market-ready, and not in a position to serve the purpose of blood

8    testing, nor did she have contemporaneous knowledge that the "tiny" blood draw she

9    was submitting to had a nature or purpose other than legitimate blood testing.  This

10   information was concealed from her and she relied on Defendants' omissions in this

11   respect.  Had she known the truth, she would not have consented to "tiny" blood draw.

12   **ANSWER TO COMPLAINT ¶ 346**

13        Defendants deny the allegations in Paragraph 346.

14   **COMPLAINT ¶ 347**

15        S.J. did not know that Defendants drew her blood for the purpose of research

16   and product development and she did not consent to such procedure for such purpose.

17   **ANSWER TO COMPLAINT ¶ 347**

18        Defendants deny the allegations in Paragraph 347.

19   **COMPLAINT ¶ 348**

20        S.J. believed that the services she got were ready-for-market and reliable.  She

21   had no contemporaneous knowledge about the unreliability and litany of problems

22   with Theranos testing, facilities, and equipment, alleged herein.  She relied on the

23   Defendants' omissions in this respect.  Had she known of this concealed information,

24   she would not have submitted to this "testing."

25   **ANSWER TO COMPLAINT ¶ 348**

26        Defendants answer that Defendants lack knowledge or information of the

27   allegations in the first sentence of Paragraph 348 sufficient to form a belief as to their

28   truth and therefore deny them on that basis.  Defendants deny the remaining

1    allegations in Paragraph 348.

2    **COMPLAINT ¶ 349**

3        On information and belief, S.J.'s "tiny" blood samples were utilized at

4    Theranos's Newark, California laboratory.

5    **ANSWER TO COMPLAINT ¶ 349**

6        Defendants deny the allegations in Paragraph 349.

7    **COMPLAINT ¶ 350**

8        S.J.'s results from her first Theranos "test" indicated that she had diabetes, and

9    S.J.'s physician immediately ordered her to be placed on diabetic medications.

10   **ANSWER TO COMPLAINT ¶ 350**

11       Defendants lack knowledge or information of the allegations in Paragraph 350

12   sufficient to form a belief as to their truth and therefore deny them on that basis.

13   **COMPLAINT ¶ 351**

14       S.J. firmly believed she did not have diabetes and obtained a re-test.  For the re-

15   test, she went back to the same Theranos Wellness Center located at a Walgreens retail

16   store in Mesa, Arizona.  Again, she had her blood drawn at this Walgreens store.

17   **ANSWER TO COMPLAINT ¶ 351**

18       Theranos lacks knowledge or information of the allegations in the first sentence

19   of Paragraph 351 sufficient to form a belief as to their truth and therefore denies them

20   on that basis.  Theranos denies the remaining allegations in Paragraph 351.  Holmes

21   and Balwani lack knowledge or information of the allegations in Paragraph 351

22   sufficient to form a belief as to their truth and therefore deny them on that basis.

23   **COMPLAINT ¶ 352**

24       S.J. paid for her Theranos tests through Medicare.

25   **ANSWER TO COMPLAINT ¶ 352**

26       Defendants lack knowledge or information of the allegations in Paragraph 352

27   sufficient to form a belief as to their truth and therefore deny them on that basis.

28

**COMPLAINT ¶ 353**

Having been led to believe the "test" results were reliable, and following two similarly reported Theranos tests, S.J. and her physician relied on the results to make decisions concerning her health, including a course of medications which ultimately made S.J. very ill.  S.J. became so ill that she was treated at urgent care where she made the decision to cease all medications prescribed for diabetes.

**ANSWER TO COMPLAINT ¶ 353**

Theranos denies S.J. obtained Theranos testing on multiple occasions. Theranos further answers that it lacks knowledge or information of the remaining allegations in Paragraph 353 sufficient to form a belief as to their truth and therefore denies them on that basis.

Holmes and Balwani lack knowledge or information of the allegations in Paragraph 353 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 354**

Following her reaction to the diabetes medication, along with her original belief that she did not have diabetes, S.J. began seeing another physician who ordered repeat lab testing to be done at a non-Theranos facility.  The results confirmed that S.J. did not have diabetes, and had been improperly diagnosed and treated based on the Theranos test results.

**ANSWER TO COMPLAINT ¶ 354**

Defendants lack knowledge or information of the allegations in Paragraph 354 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 355**

The Theranos tests that S.J. purchased were unreliable and/or inaccurate.

**ANSWER TO COMPLAINT ¶ 355**

Defendants deny the allegations in Paragraph 355.

**COMPLAINT ¶ 356**

Subsequently, as alleged above, Theranos voided the results of all of the "tiny" blood tests, including S.J.'s "tiny" "tests."

**ANSWER TO COMPLAINT ¶ 356**

Theranos answers that one portion of S.J.'s test results was voided.  Theranos denies the remaining allegations in Paragraph 356.

Holmes and Balwani lack knowledge or information of the allegations in Paragraph 356 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 357**

Plaintiff S.J. would not have purchased any Theranos test if she had known that the Theranos testing facilities were not as described, and that Theranos's tests were inaccurate or unreliable.  Plaintiff S.J. would not have submitted to Theranos tests if she had known that Walgreens and Theranos were using her blood and urine tests for research and product development.

**ANSWER TO COMPLAINT ¶ 357**

Defendants deny the allegations in Paragraph 357.

**COMPLAINT ¶ 358**

Plaintiff S.J. was battered, injured, damaged and harmed by Defendants' misconduct.

**ANSWER TO COMPLAINT ¶ 358**

No response is required to Paragraph 358, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 358.

**COMPLAINT ¶ 359**

Plaintiff S.J. suffered damages as a result of Defendants' conduct, in an amount to be proven at trial.

**ANSWER TO COMPLAINT ¶ 359**

No response is required to Paragraph 359, which consists of conclusions of law.

1  To the extent a response is required, Defendants deny the allegations in Paragraph 359.

2  **COMPLAINT ¶ 360**

3      In addition to the other harm described herein, Plaintiff S.J. suffered emotional

4  distress, stress, and anxiety as a result of the unreliable Theranos tests she purchased

5  and the invasion of her body under false pretenses and without her consent, and harm

6  to her human dignity connected to being subjected to battery.

7  **ANSWER TO COMPLAINT ¶ 360**

8      No response is required to Paragraph 360, which consists of conclusions of law.

9  To the extent a response is required, Defendants deny the allegations in Paragraph 360.

10  **COMPLAINT ¶ 361**

11      Any purported consent by S.J. to have her blood drawn or her urine collected by

12  Defendants was induced by fraud, concealment and misrepresentation, and was not

13  effective.

14  **ANSWER TO COMPLAINT ¶ 361**

15      No response is required to Paragraph 361, which consists of conclusions of law.

16  To the extent a response is required, Defendants deny the allegations in Paragraph 361.

17  **SUBHEADING "PLAINTIFF S.L."**

18      Plaintiff S.L.

19  **ANSWER TO SUBHEADING "PLAINTIFF S.L."**

20      No response is required to this subheading, which purports to identify a named

21  plaintiff in this action.

22  **COMPLAINT ¶ 362**

23      On or about February 19, 2015, and October 5, 2015, Plaintiff S.L. purchased

24  Theranos blood tests at a Walgreens Pharmacy in Chandler, Arizona.  In both

25  instances, he had his blood drawn at this Walgreens store.  The tests that he purchased

26  included tests regarding diabetes and his liver.  S.L. purchased Theranos tests to get

27  accurate and reliable results about his health.  He trusted Theranos and Walgreens to

28  provide accurate and reliable test results.

**ANSWER TO COMPLAINT ¶ 362**

Theranos admits that S.L. received Theranos testing on or about February 19, 2015, and October 5, 2015 and that S.L. visited a Walgreens store in Chandler, Arizona.  Theranos further answers that to the extent Plaintiff S.L. received Theranos blood tests, the test report(s) S.L. received speak for themselves.  Theranos lacks knowledge or information of the remaining allegations in Paragraph 362 sufficient to form a belief as to their truth and therefore denies them on that basis.

Holmes and Balwani lack knowledge or information of the allegations in Paragraph 362 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 363**

Prior to each visit, S.L. had seen and heard advertisements for Theranos that caused him to believe that Theranos test results would be as reliable as other labs' results, and that Theranos was the cheapest and least invasive alternative option for blood testing.  S.L. specifically recalls seeing a pamphlet advertisement and visiting the Theranos website in or around January and October 2015 and viewing representations to the effect that Theranos was "as reliable" as other laboratories.  In choosing to have his blood tested by Theranos, he relied on marketing from Theranos and Walgreens regarding the reliability of their services, including as specified above. He also expected tests conducted at Walgreens to be trustworthy and reliable.

**ANSWER TO COMPLAINT ¶ 363**

Defendants lack knowledge or information of the allegations in Paragraph 363 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 364**

S.L. paid approximately $100 out of pocket for the Theranos tests.

**ANSWER TO COMPLAINT ¶ 364**

Defendants lack knowledge or information of the allegations in Paragraph 364 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 365**

When he purchased Theranos tests, one or more vials of blood were drawn from a vein in S.L.'s arm.  S.L. did not know that Defendants drew his blood for the purpose of research and product development and he did not consent to such procedure for such purpose.

**ANSWER TO COMPLAINT ¶ 365**

Defendants lack knowledge or information of the allegations in the first sentence of Paragraph 365 sufficient to form a belief as to their truth, and therefore deny them on that basis.  Defendants deny the remaining allegations in Paragraph 365.

**COMPLAINT ¶ 366**

S.L. believed that Defendants' services were ready-for-market and reliable.  He had no contemporaneous knowledge about the unreliability and litany of problems with Theranos testing, facilities, and equipment, alleged herein.  He relied on the Defendants' omissions in this respect.  Had he known of this concealed information, he would not have submitted to this testing.

**ANSWER TO COMPLAINT ¶ 366**

Defendants answer that Defendants lack knowledge or information of the allegations in the first sentence of Paragraph 366 sufficient to form a belief as to their truth and therefore deny them on that basis.  Defendants deny the remaining allegations in Paragraph 366.

**COMPLAINT ¶ 367**

Having been led to believe the results were reliable, S.L. relied on them, using the results to make decisions concerning his health.

**ANSWER TO COMPLAINT ¶ 367**

Defendants lack knowledge or information of the allegations in Paragraph 367 sufficient to form a belief as to their truth and therefore deny them on that basis.

**COMPLAINT ¶ 368**

The results from his Theranos test indicated certain levels that were elevated

1    from the prior year and that he was diabetic.  His doctor ordered an ultrasound of the

2    liver, and he took medication for diabetics.

3    **ANSWER TO COMPLAINT ¶ 368**

4         Defendants lack knowledge or information of the allegations in Paragraph 368

5    sufficient to form a belief as to their truth and therefore deny them on that basis.

6    **COMPLAINT ¶ 369**

7         The Theranos tests that S.L. purchased were unreliable and/or inaccurate.

8    **ANSWER TO COMPLAINT ¶ 369**

9         Defendants deny the allegations in Paragraph 369.

10   **COMPLAINT ¶ 370**

11        At his doctor's direction, S.L. had his blood re-tested by another company and

12   his results were in the normal range, including showing he was pre-diabetic,

13   significantly different from his Theranos tests.

14   **ANSWER TO COMPLAINT ¶ 370**

15        Defendants lack knowledge or information of the allegations in Paragraph 370

16   sufficient to form a belief as to their truth and therefore deny them on that basis.

17   **COMPLAINT ¶ 371**

18        Plaintiff S.L. would not have purchased any Theranos test if he had known that

19   the Theranos testing facilities were not as described, and that Theranos's tests were

20   inaccurate or unreliable.  Plaintiff S.L would not have submitted to Theranos tests if he

21   had known that Walgreens and Theranos were using his blood tests for research and

22   product development.

23   **ANSWER TO COMPLAINT ¶ 371**

24        Defendants deny the allegations in Paragraph 371.

25   **COMPLAINT ¶ 372**

26        Plaintiff S.L. was injured, damaged and harmed by Defendants' misconduct.

27   **ANSWER TO COMPLAINT ¶ 372**

28        No response is required to Paragraph 372, which consists of conclusions of law.

To the extent a response is required, Defendants deny the allegations in Paragraph 372.

**COMPLAINT ¶ 373**

Plaintiff S.L. suffered damages as a result of Defendants' conduct, in an amount to be proven at trial.

**ANSWER TO COMPLAINT ¶ 373**

No response is required to Paragraph 373, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 373.

**COMPLAINT ¶ 374**

In addition to the other harm described herein, Plaintiff S.L. suffered emotional distress, stress, and anxiety as a result of the unreliable Theranos blood tests he purchased and the invasion of his body under false pretenses and without his consent.

**ANSWER TO COMPLAINT ¶ 374**

No response is required to Paragraph 374, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 374.

**COMPLAINT ¶ 375**

Any purported consent by S.L. to have his blood drawn by Defendants was induced by fraud, concealment and misrepresentation, and was not effective.

**ANSWER TO COMPLAINT ¶ 375**

No response is required to Paragraph 375, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 375.

## V.    CLASS ACTION ALLEGATIONS

**COMPLAINT ¶ 376**

Plaintiffs bring this action on behalf of themselves and proposed the Class and Subclasses, pursuant to Federal Rules of Civil Procedure Rule 23, defined as follows:

**Class**: All purchasers of Theranos testing services, including consumers who paid out-of-pocket, through health insurance, or through any other collateral source (collectively, "purchasers").

**Arizona Subclass**: All purchasers of Theranos testing services in Arizona.

1    **California Subclass:** All purchasers of Theranos testing services in California.

2    **Edison Subclass:** All purchasers of Theranos testing services who were

3    subjected to "tiny" blood draws.

4    **ANSWER TO COMPLAINT ¶ 376**

5    No response is required to Paragraph 376, which consists of conclusions of law.

6    To the extent a response is required, Defendants deny the allegations in Paragraph 376.

7    **COMPLAINT ¶ 377**

8    This action is brought as a class action and may properly be so maintained

9    pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure.

10   Plaintiffs reserve the right to amend or modify the Class and Subclass descriptions

11   with greater specificity or further division into subclasses or limitation to particular

12   issues, based on the results of discovery.  Excluded from the Class and Subclasses are

13   Defendants, their affiliates, employees, officers and directors, persons or entities, and

14   the Judge(s) assigned to this case.

15   **ANSWER TO COMPLAINT ¶ 377**

16   No response is required to Paragraph 377, which consists of conclusions of law.

17   To the extent a response is required, Defendants deny the allegations in Paragraph 377.

18   **COMPLAINT ¶ 378**

19   **Numerosity** - The members of the Class and Subclasses are so numerous that

20   their individual joinder is impracticable.  On information and belief, there are at least

21   thousands of members in each Class/Subclass.  The membership of the Class and

22   Subclasses are determinable by objective criteria using Defendants' own records.

23   **ANSWER TO COMPLAINT ¶ 378**

24   No response is required to Paragraph 378, which consists of conclusions of law.

25   To the extent a response is required, Defendants deny the allegations in Paragraph 378.

26   **COMPLAINT ¶ 379**

27   **Common Question of Fact and Law** - There are questions of law and fact

28   common to the Class and Subclasses.  These questions predominate over any questions

affecting only individual Class members.  These common legal and factual issues

include, but are not limited to:

    a.   Whether Defendants intentionally concealed material information about the reliability of Theranos test results and/or about the compliance of Theranos's testing facilities and/or equipment;

    b.   Whether Defendants had a duty to disclose to Plaintiffs and the Class material information regarding the reliability of Theranos's testing services;

    c.   Whether Theranos and/or Walgreens had contractual obligations with Plaintiffs and the Class regarding Theranos's testing services;

    d.   Whether Theranos and Walgreens were obligated to provide testing services and test results that were reliable;

    e.   Whether Defendants together constitute an association-in-fact enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c);

    f.   Whether Theranos and Walgreens concealed, falsely portrayed and/or misrepresented the state of the Edison technology and the purpose of the "tiny" blood draws;

    g.   Whether legitimate blood testing was the essential nature and purpose of the "tiny" blood draws;

    h.   Whether Defendants' conduct violates the laws as set forth in the causes of action;

    i.   Whether Plaintiffs and the Class have been harmed as a result of Defendants' conduct alleged herein; and

    j.   Whether Defendants have been unjustly enriched as a result of their conduct alleged herein.

**ANSWER TO COMPLAINT ¶ 379**

       No response is required to Paragraph 379, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 379.

**COMPLAINT ¶ 380**

**Typicality** - The claims of the representative Plaintiffs are typical of the claims of the Class and corresponding Subclasses.  Plaintiffs and the Class and Subclasses were subject to the same common pattern of conduct by Defendants, and the Plaintiffs, like the other members of the Class and Subclasses, have sustained damages arising from Defendants' violations of the law, as alleged herein.

**ANSWER TO COMPLAINT ¶ 380**

No response is required to Paragraph 380, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 380.

**COMPLAINT ¶ 381**

**Adequacy** - The representative Plaintiffs will fairly and adequately represent and protect the interests of the Class and Subclass members and have retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation.  There are no material conflicts between the claims of the representative Plaintiffs and the members of the Class and Subclasses that would make class certification inappropriate.  Counsel for the classes will vigorously assert the claims of all Class and Subclass members.

**ANSWER TO COMPLAINT ¶ 381**

No response is required to Paragraph 381, which consists of conclusions of law.  To the extent a response is required, Defendants deny the allegations in Paragraph 381.

**COMPLAINT ¶ 382**

**Predominance and Superiority** - This suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the Class and Subclasses predominate over the questions affecting only individual members, and a class action is superior to other available means for the fair and efficient adjudication of this dispute.  The damages suffered by individual Class and Subclass members are small compared to the burden and

expense of individual prosecution of the complex and extensive litigation needed to address Defendants' conduct.  Further, it would be virtually impossible for each of the Class members to individually redress effectively the wrongs done to them.  Even if Class members themselves could afford such individual litigation, the court system could not.  In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual issues of the case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  By contrast, the class action device presents far fewer management difficulties; allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.  Plaintiffs anticipate no unusual difficulties in managing this class action.

**ANSWER TO COMPLAINT ¶ 382**

No response is required to Paragraph 382, which consists of conclusions of law.  To the extent a response is required, Defendants deny the allegations in Paragraph 382.

**COMPLAINT ¶ 383**

Plaintiffs contemplate the eventual issuance of notice to the proposed Class and Subclass members setting forth the subject and nature of the instant action.  On information and belief, Defendants' own business records and electronic media can be utilized for the contemplated notice.  To the extent that any further notice may be required, Plaintiffs would contemplate the use of additional media and/or mailings.

**ANSWER TO COMPLAINT ¶ 383**

No response is required to Paragraph 383, which consists of conclusions of law.  To the extent a response is required, Defendants deny the allegations in Paragraph 383.

# VI.    CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**COMPLAINT ¶ 384[2]**

   (**Arizona Consumer Fraud Act, A.R.S. § 44-1521, *et seq*.**)  Plaintiffs incorporate the substantive allegations contained in all prior and succeeding paragraphs as if fully set forth herein.

**ANSWER TO COMPLAINT ¶ 384**

   Defendants incorporate each and every answer to all prior and succeeding paragraphs as if fully set forth herein.

**COMPLAINT ¶ 385**

   To the extent this claim is based directly on affirmative misrepresentations, it is brought by Plaintiffs on behalf of themselves and the Arizona Subclass against Defendants Theranos and Walgreens.  Otherwise, Plaintiffs bring this claim on behalf of themselves and the Arizona Subclass against all Defendants.

**ANSWER TO COMPLAINT ¶ 385**

   No response is required to Paragraph 385, which purports to identify the plaintiffs and defendants for this cause of action.  To the extent a response is required, Defendants deny the allegations in Paragraph 385.

**COMPLAINT ¶ 386**

   Walgreens, Theranos, Holmes, and Balwani are "persons" within the meaning of A.R.S. § 44-1521(6).

**ANSWER TO COMPLAINT ¶ 386**

   No response is required to Paragraph 386, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 386.

---

[2] Please note that there is no Paragraph labeled 384 in the Complaint.  The heading preceding Paragraph 385 purports to incorporate the allegations of the prior and succeeding paragraphs in the Complaint.

1   **COMPLAINT ¶ 387**

2       Theranos lab panels and blood and other clinical tests sold in Arizona are

3   "merchandise" within the meaning of A.R.S. § 44-1521(5).

4   **ANSWER TO COMPLAINT ¶ 387**

5       No response is required to Paragraph 387, which consists of conclusions of law.

6   To the extent a response is required, Defendants deny the allegations in Paragraph 387.

7   **COMPLAINT ¶ 388**

8       As alleged herein, Walgreens, Theranos, Holmes, and Balwani have engaged in

9   deception, unfair acts or practices, fraud, false pretenses, false promises,

10  misrepresentation, concealment, suppression and omission of material facts, as

11  prohibited by A.R.S. § 44-1522(A).

12  **ANSWER TO COMPLAINT ¶ 388**

13      No response is required to Paragraph 388, which consists of conclusions of law.

14  To the extent a response is required, Defendants deny the allegations in Paragraph 388.

15  **COMPLAINT ¶ 389**

16      Throughout the relevant time period, Walgreens and Theranos marketed and

17  sold unreliable Theranos testing services that they knew to be unreliable and/or which

18  they failed to take sufficient steps to ensure the reliability of, and encouraged

19  consumers to rely on such tests to make decisions about their health and treatment.

20  **ANSWER TO COMPLAINT ¶ 389**

21      Defendants deny the allegations in Paragraph 389.

22  **COMPLAINT ¶ 390**

23      Throughout the relevant time period, Walgreens and Theranos marketed

24  Theranos testing services as being ready-for-market, when they knew such testing was

25  not ready for market.

26  **ANSWER TO COMPLAINT ¶ 390**

27      Defendants deny the allegations in Paragraph 390.

28

**COMPLAINT ¶ 391**

Throughout the time that "tiny" blood draws were being administered, and in the time leading up to same, Walgreens and Theranos pervasively advertised and portrayed, expressly and by clear implication, the Edison technology as being market-ready and reliable, and the "tiny" blood draws as being for blood testing purposes, when none of that was true.

**ANSWER TO COMPLAINT ¶ 391**

Defendants admit that Theranos advertised its testing services, including Theranos' capillary (fingerstick) blood draws.  Defendants deny the remaining allegations in Paragraph 391.

**COMPLAINT ¶ 392**

Throughout the relevant time period, Walgreens and Theranos concealed the truth about the unready, still-in-development state of the Edison technology and the true essential nature and purposes of the "tiny" blood draws.

**ANSWER TO COMPLAINT ¶ 392**

Defendants deny the allegations in Paragraph 392.

**COMPLAINT ¶ 393**

Walgreens and Theranos owed a duty to the Edison Subclass to tell them this material information about Edison and the "tiny" blood draws.

**ANSWER TO COMPLAINT ¶ 393**

No response is required to Paragraph 393, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 393.

**COMPLAINT ¶ 394**

Walgreens, Theranos, Holmes, and Balwani each knew that Plaintiffs and the Arizona Subclass would reasonably expect Theranos tests to be reliable, given, *inter alia,* the nature and importance of blood and other clinical testing, Defendants' representations, and the involvement of Walgreens.

1

**ANSWER TO COMPLAINT ¶ 394**

2

Defendants deny the allegations in Paragraph 394.

3

**COMPLAINT ¶ 395**

4

Walgreens and Theranos made affirmative misrepresentations, as alleged

5

herein, including:

6

    a.  False and misleading statements that Theranos tests were reliable, CLIA-

7

        certified, and validated and compliant with federal guidelines;

8

    b.  False and misleading statements that Theranos's testing facilities and

9

        equipment were compliant with laws and regulations;

10

    c.  False and misleading statements that Theranos's testing services were

11

        industry leading in quality;

12

    d.  False and misleading statements that Theranos's testing services were ready-

13

        for-market;

14

    e.  False and misleading statements portraying, expressly and by clear

15

        implication, the Edison technology as being market-ready and reliable, and

16

        the "tiny" blood draws as being for blood testing purposes, when none of

17

        that was true.

18

**ANSWER TO COMPLAINT ¶ 395**

19

Defendants deny the allegations in Paragraph 395.

20

**COMPLAINT ¶ 396**

21

Theranos's and Walgreens' affirmative misrepresentations were pervasive, and

22

included their broad marketing campaign, as described herein, which was intended to

23

broadly reach consumers throughout the pertinent geographic areas and their medical

24

providers.  Plaintiffs and the Class were exposed to this broad marketing campaign.

25

**ANSWER TO COMPLAINT ¶ 396**

26

Defendants admit that Theranos advertised its testing services.  Defendants

27

deny the remaining allegations in Paragraph 396.

28

**COMPLAINT ¶ 397**

Although not the direct basis for their liability under this claim, Holmes and Balwani also knowingly made certain false and misleading statements regarding Theranos testing as alleged herein.

**ANSWER TO COMPLAINT ¶ 397**

Defendants deny the allegations in Paragraph 397.

**COMPLAINT ¶ 398**

Throughout the relevant time period, Theranos, Walgreens, Holmes and Balwani concealed material information from Plaintiffs and the Arizona Subclass, as alleged herein, including:

a. Failure to disclose and intentional concealment of known material information about the unreliability of Theranos's testing services;

b. Failure to disclose and intentional concealment of known material information about deficiencies and non-compliance of Theranos's testing facilities and/or equipment;

c. Failure to disclose and intentional concealment of the fact that Theranos's testing services were not ready-for-market and that Theranos and Walgreens were using the tests conducted on consumers for research and product development;

d. Failure to disclose and intentional concealment of the fact that Walgreens had agreed not to require or obtain objective proof that Theranos's testing services were reliable despite the fact that it had identified numerous red flags and concerns that put it on notice of the problems;

e. Failure to disclose and intentional concealment of the fact that Walgreens had agreed to conduct no oversight of Theranos's laboratory testing practices despite the fact that it had identified numerous red flags and concerns that put it on notice of the problems;

f. Failure to disclose and intentional concealment of the fact that Theranos

employees were not adequately trained to perform their job functions

without endangering patients, including as described in letters from CMS;

g. Failure to disclose and intentional concealment of the fact that Theranos

manipulated its internal proficiency testing process and covered up known

reliability problems; and

h. Failure to disclose and intentional concealment of the fact that Theranos's

internal validation tests showed that Theranos testing was unreliable.

i. Failure to disclose and Intentional concealment of the truth about the

unready, still-in-development state of the Edison technology and the true

essential nature and purposes of the "tiny" blood draws.

**ANSWER TO COMPLAINT ¶ 398**

No response is required to Paragraph 398, which consists of conclusions of law.
To the extent a response is required, Defendants answer that Defendants lack
knowledge or information of the allegations in subsections "d." and "e." of Paragraph
398 sufficient to form a belief as to their truth and therefore deny them on that basis.
Defendants deny the remaining allegations in Paragraph 398.

**COMPLAINT ¶ 399**

Walgreens and Theranos, Holmes, and Balwani knew that their promises and
representations were false and misleading and material, and that the facts they failed to
disclose and concealed were material.

**ANSWER TO COMPLAINT ¶ 399**

No response is required to Paragraph 399, which consists of conclusions of law.
To the extent a response is required, Defendants deny the allegations in Paragraph 399.

**COMPLAINT ¶ 400**

Walgreens, Theranos, Holmes, and Balwani owed a duty to Plaintiffs and the
Arizona Subclass to provide them material information about the unreliability of
Theranos tests, including but not limited to because they had exclusive and far superior
knowledge regarding the material information, because of the nature of the information

in question, because they knew that customers would rely on them to provide accurate and complete material information about the reliability and readiness of the tests, and because they had disseminated pervasive false and/or partial representations about Theranos testing that were misleading absent full disclosure.

**ANSWER TO COMPLAINT ¶ 400**

No response is required to Paragraph 400, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 400.

**COMPLAINT ¶ 401**

Walgreens, Theranos, Holmes, and Balwani's respective misrepresentations and omissions, alleged herein, were likely to deceive and had a tendency to deceive reasonable consumers, and have deceived Plaintiffs and the Arizona Subclass.  The facts misrepresented and concealed by Walgreens, Theranos, Holmes, and Balwani would be material to a reasonable consumer.  Defendants' misrepresentations and omissions were pervasive.

**ANSWER TO COMPLAINT ¶ 401**

No response is required to Paragraph 401, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 401.

**COMPLAINT ¶ 402**

Walgreens, Theranos, Holmes, and Balwani intended for Plaintiffs and Arizona Subclass members to rely on their misrepresentations, false promises, and omissions concerning Theranos testing.

**ANSWER TO COMPLAINT ¶ 402**

Defendants deny the allegations in Paragraph 402.

**COMPLAINT ¶ 403**

Plaintiffs and the Arizona Subclass members have reasonably relied on the false promises, material misrepresentations and omissions made by Defendants, including but not limited to by paying (out-of-pocket and/or through health insurance or another collateral source) for Theranos testing services, permitting Defendants to take blood

samples from them under false pretenses, and relying on unreliable Theranos test results to make decisions about their health.

**ANSWER TO COMPLAINT ¶ 403**

Defendants deny the allegations in Paragraph 403.

**COMPLAINT ¶ 404**

Defendants' conduct was wanton and reckless, and Defendants demonstrated reckless indifference to the rights, health, and safety of Plaintiffs and members of the Arizona Subclass.

**ANSWER TO COMPLAINT ¶ 404**

No response is required to Paragraph 404, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 404.

**COMPLAINT ¶ 405**

As a result of the A.R.S. § 44-1522(A) violations described above, Plaintiffs and each and every Arizona Subclass member have suffered actual damages.

**ANSWER TO COMPLAINT ¶ 405**

No response is required to Paragraph 405, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 405.

**COMPLAINT ¶ 406**

On behalf of themselves and Arizona Subclass members, Plaintiffs seek relief as prayed for below.

**ANSWER TO COMPLAINT ¶ 406**

No response is required to Paragraph 406, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 406.

<u>**SECOND CAUSE OF ACTION**</u>

<u>**(Fraud)**</u>

**COMPLAINT ¶ 407**

Plaintiffs incorporate the substantive allegations contained in all prior and succeeding paragraphs as if fully set forth herein.

**ANSWER TO COMPLAINT ¶ 407**

Defendants incorporate each and every answer to all prior and succeeding paragraphs as if fully set forth herein.

**COMPLAINT ¶ 408**

To the extent this claim is based directly on affirmative misrepresentations, it is brought by Plaintiffs on behalf of themselves and the Class against Defendants Theranos and Walgreens.  Otherwise, Plaintiffs bring this claim on behalf of themselves and the Class against all Defendants.

**ANSWER TO COMPLAINT ¶ 408**

No response is required to Paragraph 408, which purports to identify the plaintiffs and defendants for this cause of action.  To the extent a response is required, Defendants deny the allegations in Paragraph 408.

**COMPLAINT ¶ 409**

Throughout the relevant time period, Walgreens and Theranos marketed and sold unreliable Theranos testing services that they knew to be unreliable and/or which they failed to take sufficient steps to ensure the reliability of, and encouraged consumers to rely on such tests to make decisions about their health and treatment.

**ANSWER TO COMPLAINT ¶ 409**

Defendants deny the allegations in Paragraph 409.

**COMPLAINT ¶ 410**

Throughout the relevant time period, Walgreens and Theranos marketed Theranos testing services as being ready-for-market when they knew such testing was not ready for market.

**ANSWER TO COMPLAINT ¶ 410**

Defendants admit that Theranos advertised its testing services.  Defendants deny the remaining allegations in Paragraph 410.

**COMPLAINT ¶ 411**

Throughout the time that "tiny" blood draws were being administered, and in

the time leading up to same, Walgreens and Theranos pervasively advertised and portrayed, expressly and by clear implication, the Edison technology as being market-ready and reliable, and the "tiny" blood draws as being for blood testing purposes, when none of that was true.

**ANSWER TO COMPLAINT ¶ 411**

Defendants admit that Theranos advertised its testing services.  Defendants deny the remaining allegations in Paragraph 411.

**COMPLAINT ¶ 412**

Throughout the relevant time period, Walgreens and Theranos concealed the truth about the unready, still-in-development state of the Edison technology and the true essential nature and purposes of the "tiny" blood draws.

**ANSWER TO COMPLAINT ¶ 412**

Defendants deny the allegations in Paragraph 412.

**COMPLAINT ¶ 413**

Walgreens and Theranos owed a duty to the Edison Subclass to tell them this material information about Edison and the "tiny" blood draws.

**ANSWER TO COMPLAINT ¶ 413**

No response is required to Paragraph 413, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 413.

**COMPLAINT ¶ 414**

Walgreens, Theranos, Holmes, and Balwani each knew that Plaintiffs and the Class would reasonably expect Theranos tests to be reliable, given, *inter alia,* the nature and importance of blood and other clinical testing, Defendants' representations, and the involvement of Walgreens.

**ANSWER TO COMPLAINT ¶ 414**

Defendants deny the allegations in Paragraph 414.

**COMPLAINT ¶ 415**

Walgreens and Theranos made affirmative misrepresentations, as alleged

herein, including as summarized in the prior cause of action and described above.

**ANSWER TO COMPLAINT ¶ 415**

Defendants deny the allegations in Paragraph 415.

**COMPLAINT ¶ 416**

Theranos's and Walgreens' affirmative misrepresentations were pervasive, and included their broad marketing campaign, as described herein, which was intended to broadly reach consumers throughout the pertinent geographic areas and their medical providers.  Plaintiffs and the Class were exposed to this broad marketing campaign.

**ANSWER TO COMPLAINT ¶ 416**

Defendants deny the allegations in Paragraph 416.

**COMPLAINT ¶ 417**

Although not the direct basis for their liability for this claim, Holmes and Balwani also knowingly made certain false and misleading statements regarding Theranos testing as alleged herein.

**ANSWER TO COMPLAINT ¶ 417**

Defendants deny the allegations in Paragraph 417.

**COMPLAINT ¶ 418**

Throughout the relevant time period, Theranos Walgreens, Holmes and Balwani concealed material information from Plaintiffs and the Class, as alleged herein, including as summarized in the prior cause of action and described above.

**ANSWER TO COMPLAINT ¶ 418**

No response is required to Paragraph 418, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 418.

**COMPLAINT ¶ 419**

Walgreens, Theranos, Holmes, and Balwani knew that their promises and representations were false and misleading and material, and that the facts they failed to disclose and concealed were material.

1

**ANSWER TO COMPLAINT ¶ 419**

2

    No response is required to Paragraph 419, which consists of conclusions of law.

3

To the extent a response is required, Defendants deny the allegations in Paragraph 419.

4

**COMPLAINT ¶ 420**

5

    Walgreens, Theranos, Holmes, and Balwani owed a duty to Plaintiffs and the

6

Class to provide them material information about the unreliability of Theranos tests,

7

including but not limited to because of the reasons summarized in the prior cause of

8

action and described above.

9

**ANSWER TO COMPLAINT ¶ 420**

10

    No response is required to Paragraph 420, which consists of conclusions of law.

11

To the extent a response is required, Defendants deny the allegations in Paragraph 420.

12

**COMPLAINT ¶ 421**

13

    Walgreens, Theranos, Holmes, and Balwani's respective misrepresentations and

14

omissions, alleged herein, were likely to deceive and had a tendency to deceive

15

reasonable consumers, and have deceived Plaintiffs and the Class.  The facts

16

misrepresented and concealed by Walgreens, Theranos, Holmes, and Balwani would

17

be material to a reasonable consumer.  Defendants' misrepresentations and omissions

18

were pervasive.

19

**ANSWER TO COMPLAINT ¶ 421**

20

    Defendants deny the allegations in Paragraph 421.

21

**COMPLAINT ¶ 422**

22

    Walgreens, Theranos, Holmes, and Balwani intended for Plaintiffs and Class

23

members to rely on their misrepresentations, false promises, and omissions concerning

24

Theranos testing.

25

**ANSWER TO COMPLAINT ¶ 422**

26

    Defendants deny the allegations in Paragraph 422.

27

**COMPLAINT ¶ 423**

28

    Walgreens, Theranos, Holmes and Balwani, who had superior knowledge

regarding Theranos testing, were in a unique position to prevent harm to their customers.  Instead, Walgreens, Theranos, Holmes and Balwani made false and misleading representations to Plaintiffs and the Class about Theranos tests and the accuracy and reliability of same, and concealed material information from them regarding the true nature of Theranos tests and Theranos's facilities and equipment, as alleged herein.

**ANSWER TO COMPLAINT ¶ 423**

Defendants deny the allegations in Paragraph 423.

**COMPLAINT ¶ 424**

At all relevant times, Walgreens, Theranos, Holmes and Balwani had a duty to disclose all facts material to Plaintiffs' and the Class members' submission to Theranos testing, purchase of Theranos testing, and reliance upon Theranos test results.

**ANSWER TO COMPLAINT ¶ 424**

No response is required to Paragraph 424, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 424.

**COMPLAINT ¶ 425**

Walgreens also deliberately ignored and intentionally remained ignorant of details concerning the unreliability of Theranos testing.

**ANSWER TO COMPLAINT ¶ 425**

Defendants lack knowledge or information regarding Walgreens' alleged conduct referenced in Paragraph 425, and therefore deny these allegations on that basis.  Defendants deny the remaining allegations in Paragraph 425.

**COMPLAINT ¶ 426**

Plaintiffs and the Class members have reasonably relied on the false promises, material misrepresentations and omissions made by Defendants.  Plaintiffs and the Class were actually misled and deceived.  As a direct result of conduct by Walgreens, Theranos, Holmes and Balwani, they were induced to undergo blood draws they would

not have undergone, to pay for Theranos products and/or services that they would not have purchased (out-of-pocket and/or through health insurance or another collateral source), and to rely on unreliable Theranos test results they would not have relied upon had they known the truth, to make decisions concerning their health.

**ANSWER TO COMPLAINT ¶ 426**

No response is required to Paragraph 426, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 426.

**COMPLAINT ¶ 427**

As a foreseeable and natural consequence of conduct by Walgreens, Theranos, Holmes and Balwani, Plaintiffs and the Class have suffered actual damages.

**ANSWER TO COMPLAINT ¶ 427**

Defendants deny the allegations in Paragraph 427.

**COMPLAINT ¶ 428**

Defendants' misconduct alleged herein was intentional, deliberate, and willful.

**ANSWER TO COMPLAINT ¶ 428**

Defendants deny the allegations in Paragraph 428.

**COMPLAINT ¶ 429**

On behalf of themselves and the Class, Plaintiffs seek relief as prayed for below.

**ANSWER TO COMPLAINT ¶ 429**

No response is required to Paragraph 429, which consists of assertions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 429.

### THIRD CAUSE OF ACTION

#### (Battery)

**COMPLAINT ¶ 430**

Plaintiffs incorporate the substantive allegations contained in all prior and succeeding paragraphs as if fully set forth herein.

1   **ANSWER TO COMPLAINT ¶ 430**

2       Defendants incorporate each and every answer to all prior and succeeding

3   paragraphs as if fully set forth herein.

4   **COMPLAINT ¶ 431**

5       Plaintiffs B.P., R.C., and S.J. bring this claim on behalf of themselves and the

6   Edison Subclass against Defendants Walgreens and Theranos.

7   **ANSWER TO COMPLAINT ¶ 431**

8       No response is required to Paragraph 431, which purports to identify the

9   plaintiffs and defendants for this cause of action.  To the extent a response is required,

10  Theranos denies the allegations in Paragraph 431.

11  **COMPLAINT ¶ 432**

12      Defendants Walgreens and Theranos both engaged in acts that resulted in

13  harmful and offensive contact with Plaintiffs B.P., R.C., and S.J., and the members of

14  the Edison Subclass.

15  **ANSWER TO COMPLAINT ¶ 432**

16      Theranos denies the allegations in Paragraph 432.

17  **COMPLAINT ¶ 433**

18      Plaintiffs B.P., R.C., and S.J., and all of the Edison Subclass members each

19  submitted to one or more so-called "tiny" blood draws at the Wellness Centers.

20  Pursuant to these blood draws, a needle was stuck into their bodies, penetrating their

21  skin and tissue, and blood was drawn from their bodies.

22  **ANSWER TO COMPLAINT ¶ 433**

23      Theranos lacks knowledge or information of the allegations in Paragraph 433

24  sufficient to form a belief as to their truth and therefore denies them on that basis.

25  **COMPLAINT ¶ 434**

26      The vast majority of these "tiny" blood draws occurred in Walgreens stores, and

27  a small portion of them occurred in Theranos Wellness Centers.

28

**ANSWER TO COMPLAINT ¶ 434**

Theranos admits that capillary (fingerstick) blood draws occurred at Theranos Wellness Centers located within Walgreens stores.  Theranos lacks knowledge or information of the remaining allegations in Paragraph 434 sufficient to form a belief as to their truth and therefore denies them on that basis.

**COMPLAINT ¶ 435**

For the Edison Subclass member "tiny" blood draws that were conducted at Walgreens stores, the blood draws were administered by a Walgreens employee or an individual working for both Walgreens and Theranos, often with the assistance and in the presence of a Theranos employee.  In all such cases, ***both*** Walgreens ***and*** Theranos did acts that resulted in the blood draws and that encouraged the blood draws— including, but not limited to, through their pervasive marketing and encouragement of same, through their provision of the space, infrastructure, support, personnel, and equipment used for the blood draws and related services, and through their direct assistance and involvement with the blood draws and their in-store interactions with the subjects.  Both Walgreens and Theranos, including through their respective employees, did acts that caused the harmful and offensive touching of each of these subjects, and both companies caused each of these touchings to occur.

**ANSWER TO COMPLAINT ¶ 435**

Theranos lacks knowledge or information of the allegations in the first sentence of Paragraph 435 sufficient to form a belief as to their truth and therefore denies them on that basis.  Theranos denies the remaining allegations in Paragraph 435.

**COMPLAINT ¶ 436**

For the "tiny" blood draws that were conducted at Theranos Wellness Centers, the blood draws were administered by Theranos employees.

**ANSWER TO COMPLAINT ¶ 436**

Theranos lacks knowledge or information of the allegations in Paragraph 436 sufficient to form a belief as to their truth and therefore denies them on that basis.

**COMPLAINT ¶ 437**

The acts engaged in by Walgreens and Theranos that caused the "tiny" blood draws, were all done intentionally, and also with the intent and knowledge that they would result in harmful and offensive contact.

**ANSWER TO COMPLAINT ¶ 437**

Theranos admits the knowing taking of capillary (fingerstick) samples. Theranos denies the remaining allegations in Paragraph 437.

**COMPLAINT ¶ 438**

The touchings (i.e., the "tiny" blood draws) that Plaintiffs B.P., R.C., and S.J., and the Edison Subclass were subjected to were harmful and offensive.  A reasonable person in their situation would have been offended by the touchings under the circumstances.

**ANSWER TO COMPLAINT ¶ 438**

No response is required to Paragraph 438, which consists of conclusions of law. To the extent a response is required, Theranos denies the allegations in Paragraph 438.

**COMPLAINT ¶ 439**

Plaintiffs B.P., R.C., and S.J., and the Edison Subclass members did not consent to these touchings.  Any ostensible "consent" they provided was vitiated under the circumstances and not effective.

**ANSWER TO COMPLAINT ¶ 439**

No response is required to Paragraph 439, which consists of conclusions of law. To the extent a response is required, Theranos denies the allegations in Paragraph 439.

**COMPLAINT ¶ 440**

Plaintiffs B.P., R.C., and S.J., and the Edison Subclass members agreed to submit to these "tiny" blood draws," but, as alleged herein, they each did so under false pretenses and under a substantial mistaken belief as to the essential nature and purpose of the blood draws.  Moreover, as alleged herein, their consent was procured by fraud, misrepresentations, and material omissions by Theranos and Walgreens.

**ANSWER TO COMPLAINT ¶ 440**

Theranos denies the allegations in Paragraph 440.

**COMPLAINT ¶ 441**

Plaintiffs B.P., R.C., and S.J., and the Edison Subclass members reasonably believed, contemporaneously when they agreed to submit to their "tiny" blood draws, that the essential nature and purpose of such blood draws was legitimate blood testing.

**ANSWER TO COMPLAINT ¶ 441**

No response is required to Paragraph 441, which consists of conclusions of law. To the extent a response is required, Theranos lacks knowledge or information of the allegations in Paragraph 441 sufficient to form a belief as to their truth and therefore denies them on that basis.

**COMPLAINT ¶ 442**

Theranos and Walgreens both knew contemporaneously that Plaintiffs B.P., R.C., and S.J., and the Edison Subclass members agreed to submit to the "tiny" blood draws under a substantial mistaken belief as to essential nature and purpose of such blood draws.  Theranos and Walgreens both knew that these consumers mistakenly and reasonably believed that the essential nature and purpose of these "tiny" blood draws was legitimate blood testing.

**ANSWER TO COMPLAINT ¶ 442**

Theranos denies the allegations in Paragraph 442.

**COMPLAINT ¶ 443**

As alleged herein, pervasive affirmative misrepresentations by Theranos and Walgreens, in the time leading up to and throughout the time the "tiny" blood draws were being administered, substantially contributed to Plaintiffs B.P., R.C., and S.J.'s, and the Edison Subclass members' mistaken belief regarding the essential nature and purpose of their "tiny" blood draws.  This included a pervasive joint marketing campaign carried out by Theranos and Walgreens throughout the relevant time period, that encouraged consumers to pay for and submit to "tiny" blood draws for the very

purpose of blood testing.  The fundamental premise of this campaign was the portrayal of the "tiny" blood draws and Edison, and of the services generally, as market-ready and reliable and being for legitimate blood testing purposes.

**ANSWER TO COMPLAINT ¶ 443**

Theranos denies the allegations in Paragraph 443.

**COMPLAINT ¶ 444**

As alleged herein, also substantially contributing to Plaintiffs' B.P., R.C., and S.J.'s, and the Edison Subclass members' mistaken belief regarding the essential nature and purpose of their "tiny" blood draws was the entire context, nature, design, and infrastructure of the Wellness Centers in which the "tiny" blood draws were conducted, which both Theranos and Walgreens designed, and which were intentionally designed by Theranos and Walgreens to give the impression, and which did give the clear impression to consumers, that the blood draws being conducted there were for legitimate blood testing purposes.

**ANSWER TO COMPLAINT ¶ 444**

Theranos denies the allegations in Paragraph 444.

**COMPLAINT ¶ 445**

As alleged herein, the concealment of material information by Theranos and Walgreens also substantially contributed to the Edison Subclass members' mistaken belief regarding the essential nature and purpose of their "tiny" blood draws. Throughout the relevant time period, even though both Walgreens and Theranos knew that the subjects of these "tiny" blood draws were agreeing to submit to them under a substantial mistaken belief as to the essential nature and purpose of the blood draws, and were thus going to be touched in a harmful and offensive way, neither Walgreens nor Theranos took any steps to correct this mistaken belief or to avoid the harmful and offensive contact.  To the contrary, both companies intentionally concealed material information about Edison and the "tiny" blood draws, and actively encouraged, caused, and assisted the contact.

**ANSWER TO COMPLAINT ¶ 445**

Theranos denies the allegations in Paragraph 445.

**COMPLAINT ¶ 446**

Both Walgreens and Theranos intentionally concealed and failed to disclose, *inter alia:* the truth about the unready Edison technology; that the essential nature and purpose of the "tiny" blood draws was not, and could not have been, legitimate blood testing; and the true essential nature and purposes of the "tiny" blood draws.

**ANSWER TO COMPLAINT ¶ 446**

Theranos denies the allegations in Paragraph 446.

**COMPLAINT ¶ 447**

The "tiny" blood draws were not intended by Walgreens and Theranos to provide reliable blood test results (i.e., "legitimate blood testing").

**ANSWER TO COMPLAINT ¶ 447**

Theranos denies the allegations in Paragraph 447.

**COMPLAINT ¶ 448**

The essential nature and purpose of the "tiny" blood draws was not legitimate blood testing and, indeed, could not have been legitimate blood testing because, as alleged herein and unbeknownst to the subjects at the time they gave their consent, the Edison technology was still in development, still in prototype, not ready-for-market, and nowhere near in a position to serve that purpose. Theranos and Walgreens each knew this to be the case throughout the entire time "tiny" blood draws were being conducted at Walgreens and Theranos facilities. To the extent Walgreens lacked any more detailed knowledge, it was by virtue of its own deliberate choices to ignore and/or avoid such details.

**ANSWER TO COMPLAINT ¶ 448**

Theranos lacks knowledge or information of the allegations in the last sentence of Paragraph 448 sufficient to form a belief as to their truth and therefore denies them on that basis. Theranos denies the remaining allegations in Paragraph 448.

1    **COMPLAINT ¶ 449**

2         As alleged in more detail herein, the true essential nature and purposes of the

3    "tiny" blood draws was to assist efforts to research and develop the still-in-

4    development Edison technology, expedite the narrative of Edison as a "disruptive"

5    technology in the industry, and woo and appease investors, potential investors, and co-

6    investors by creating the false impression that Edison was a market-ready,

7    breakthrough technology.

8    **ANSWER TO COMPLAINT ¶ 449**

9         Theranos denies the allegations in Paragraph 449.

10   **COMPLAINT ¶ 450**

11        Theranos and Walgreens knew, but Plaintiffs B.P., R.C., and S.J., and the

12   Edison Subclass members could not reasonably have known, the true nature and

13   purposes of the "tiny" blood draws.

14   **ANSWER TO COMPLAINT ¶ 450**

15        Theranos denies the allegations in Paragraph 450.

16   **COMPLAINT ¶ 451**

17        Any purported consent that Plaintiffs B.P., R.C., and S.J. and the Edison

18   Subclass members gave for the "tiny" blood draws, was given under a substantial

19   mistake as to the essential nature and purpose of the draws, was induced by fraud,

20   concealment, and misrepresentations, and was not effective.

21   **ANSWER TO COMPLAINT ¶ 451**

22        No response is required to Paragraph 451, which consists of conclusions of law.

23   To the extent a response is required, Theranos denies the allegations in Paragraph 451.

24   **COMPLAINT ¶ 452**

25        Plaintiffs B.P., R.C., and S.J., and Edison Subclass members did not consent to

26   be subjects for experimentation, research, product development, or other undisclosed

27   objectives.

28

**ANSWER TO COMPLAINT ¶ 452**

No response is required to Paragraph 452, which consists of conclusions of law. To the extent a response is required, Theranos denies the allegations in Paragraph 452.

**COMPLAINT ¶ 453**

Theranos and Walgreens willfully and tortiously battered B.P., R.C., and S.J., and the Edison Subclass members.

**ANSWER TO COMPLAINT ¶ 453**

No response is required to Paragraph 453, which consists of conclusions of law. To the extent a response is required, Theranos denies the allegations in Paragraph 453.

**COMPLAINT ¶ 454**

Moreover, Theranos and Walgreens each aided and abetted the other in committing the battery through their conduct alleged herein. Both had actual knowledge of the harmful and offensive, non-consensual contact that was occurring, and both took steps that enabled, substantially assisted, encouraged, and were a substantial factor in, the other carrying out the touching and causing the touching to occur. Both Theranos and Walgreens are directly liable for battery as to the Edison Subclass members, and are also liable as aiders and abettors.

**ANSWER TO COMPLAINT ¶ 454**

No response is required to Paragraph 454, which consists of conclusions of law. To the extent a response is required, Theranos denies the allegations in Paragraph 454.

**COMPLAINT ¶ 455**

Theranos and Walgreens knew or should have known that their conduct alleged herein regarding the "tiny" blood draws, including but not limited to sticking them with needles, drawing their blood, and willfully experimenting upon Plaintiffs and the Edison Subclass under false pretenses and without obtaining their consent, would be an affront to the dignity of Plaintiffs B.P., R.C., S.J., and the Edison Subclass members as human beings.

1    **ANSWER TO COMPLAINT ¶ 455**

2            Theranos denies the allegations in Paragraph 455.

3    **COMPLAINT ¶ 456**

4            Theranos's and Walgreens' misconduct alleged herein was intentional,

5    deliberate, and willful.

6    **ANSWER TO COMPLAINT ¶ 456**

7            Theranos denies the allegations in Paragraph 456.

8    **COMPLAINT ¶ 457**

9            Plaintiffs B.P., R.C., and S.J., and the members of the Edison Subclass were

10   harmed and injured by this harmful and offensive touching.

11   **ANSWER TO COMPLAINT ¶ 457**

12           No response is required to Paragraph 457, which consists of conclusions of law.

13   To the extent a response is required, Theranos denies the allegations in Paragraph 457.

14   **COMPLAINT ¶ 458**

15           As a foreseeable, proximate, and direct result of Theranos's and Walgreens'

16   conduct, Plaintiffs B.P., R.C., and S.J. and the Edison Subclass members each have

17   suffered a battery and have been damaged, including as otherwise set forth in this

18   Complaint, and by invasion of their privacy and bodily integrity without their consent,

19   severe emotional stress and anxiety, and harm to their human dignity and

20   corresponding damages therefrom.

21   **ANSWER TO COMPLAINT ¶ 458**

22           No response is required to Paragraph 458, which consists of conclusions of law.

23   To the extent a response is required, Theranos denies the allegations in Paragraph 458.

24   **COMPLAINT ¶ 459**

25           On behalf of themselves and the Edison Subclass, Plaintiffs B.P., R.C., and S.J.

26   seek relief as prayed for below.

27   **ANSWER TO COMPLAINT ¶ 459**

28           No response is required to Paragraph 459, which consists of assertions of law.

ANSWER TO PLAINTIFFS' SECOND
                                                        AMENDED COMPLAINT

To the extent a response is required, Theranos denies the allegations in Paragraph 459.

## FOURTH CAUSE OF ACTION

### (Negligence)

**COMPLAINT ¶ 460**

Plaintiffs incorporate the substantive allegations contained in all prior and succeeding paragraphs as if fully set forth herein.

**ANSWER TO COMPLAINT ¶ 460**

Defendants incorporate each and every answer to all prior and succeeding paragraphs as if fully set forth herein.

**COMPLAINT ¶ 461**

Plaintiffs bring this claim on behalf of themselves and the Class against Defendants Walgreens and Theranos, and as appropriate bring this claim in the alternative.

**ANSWER TO COMPLAINT ¶ 461**

No response is required to Paragraph 461, which purports to identify the plaintiffs and defendants for this cause of action.  To the extent a response is required, Theranos denies the allegations in Paragraph 461.

**COMPLAINT ¶ 462**

Walgreens and Theranos owed a duty of care to Plaintiffs and the Class, to provide testing services that were safe, reliable, and compliant with applicable laws and regulations.  Such duty arose from, *inter alia,* the nature of their relationship to, and bargain with, the consumers, the medical related nature of the services at issue, and the special position of trust occupied by Theranos and Walgreens in the context of blood and clinical testing.

**ANSWER TO COMPLAINT ¶ 462**

No response is required to Paragraph 462, which consists of conclusions of law. To the extent a response is required, Theranos denies the allegations in Paragraph 462.

**COMPLAINT ¶ 463**

Walgreens and Theranos both breached their duty of care by designing and/or selling services that were unreliable, not ready-for-market, not safe for consumers to rely on, conducted in a manner that did not satisfy applicable laws, regulations, and/or standards for quality control, conducted in laboratories that did not meet applicable laws, regulations, and/or standards for safety and training, and conducted on inadequately maintained and calibrated equipment.

**ANSWER TO COMPLAINT ¶ 463**

No response is required to Paragraph 463, which consists of conclusions of law. To the extent a response is required, Theranos denies the allegations in Paragraph 463.

**COMPLAINT ¶ 464**

Theranos additionally breached these duties by conducting "tests" on known unready technology, and in a manner that did not satisfy applicable laws, regulations, and/or standards for quality control, in laboratories that did not meet applicable laws, regulations, and/or standards for safety and training, and on inadequately maintained and calibrated equipment.

**ANSWER TO COMPLAINT ¶ 464**

No response is required to Paragraph 464, which consists of conclusions of law. To the extent a response is required, Theranos denies the allegations in Paragraph 464.

**COMPLAINT ¶ 465**

At all relevant times, Walgreens additionally had a duty to Plaintiffs and the Class to take reasonable steps to ensure that Theranos testing was reliable and safe prior to offering Theranos services for sale in its stores.

**ANSWER TO COMPLAINT ¶ 465**

No response is required to Paragraph 465, which consists of conclusions of law. To the extent a response is required, Theranos denies the allegations in Paragraph 465.

**COMPLAINT ¶ 466**

Walgreens breached this duty and acted unreasonably by deliberately ignoring

and intentionally remaining ignorant of material facts about Theranos testing, despite the fact that it had identified numerous red flags and concerns that put it on notice of the problems, without requiring objective evidence from Theranos that the tests were reliable, and while deliberately and knowingly maintaining no oversight of Theranos's testing services.

**ANSWER TO COMPLAINT ¶ 466**

No response is required to Paragraph 466, which consists of conclusions of law. To the extent a response is required, Theranos denies the allegations in Paragraph 466.

**COMPLAINT ¶ 467**

With full knowledge that consumers would rely on its endorsement of Theranos, Walgreens failed to take reasonable steps to prevent consumers from submitting to, paying for, and relying upon unreliable and unsafe Theranos testing services.

**ANSWER TO COMPLAINT ¶ 467**

Theranos denies the allegations in the Paragraph 467.

**COMPLAINT ¶ 468**

By permitting Theranos tests to be conducted in Walgreens stores, despite identifying numerous red flags and concerns that put it on notice about the unreliability of Theranos tests, and when it had knowledge that the tests were in fact unreliable, Walgreens acted unreasonably under the circumstances.

**ANSWER TO COMPLAINT ¶ 468**

Theranos denies the allegations in the Paragraph 468.

**COMPLAINT ¶ 469**

Plaintiffs and the Class were damaged as a direct and proximate result of Walgreens' and Theranos's negligent conduct.

**ANSWER TO COMPLAINT ¶ 469**

No response is required to Paragraph 469, which consists of conclusions of law. To the extent a response is required, Theranos denies the allegations in Paragraph 469.

ANSWER TO PLAINTIFFS' SECOND
                                                   AMENDED COMPLAINT

**COMPLAINT ¶ 470**

On behalf of themselves and the Class, Plaintiffs seek relief as prayed for below.

**ANSWER TO COMPLAINT ¶ 470**

No response is required to Paragraph 470, which consists of assertions of law. To the extent a response is required, Theranos denies the allegations in Paragraph 470.

<u>**FIFTH CAUSE OF ACTION**</u>

**(Negligent Misrepresentation)**

**COMPLAINT ¶ 471**

Plaintiffs incorporate the substantive allegations contained in all prior and succeeding paragraphs as if fully set forth herein.

**ANSWER TO COMPLAINT ¶ 471**

Defendants incorporate each and every answer to all prior and succeeding paragraphs as if fully set forth herein.

**COMPLAINT ¶ 472**

Plaintiffs bring this claim on behalf of themselves and the Class against Defendants Walgreens and Theranos, and as appropriate bring this claim in the alternative to their claims alleging affirmative misrepresentations.

**ANSWER TO COMPLAINT ¶ 472**

No response is required to Paragraph 472, which purports to identify the plaintiffs and defendants for this cause of action.  To the extent a response is required, Theranos denies the allegations in Paragraph 472.

**COMPLAINT ¶ 473**

Walgreens and Theranos each made false statements of fact and provided false information to Plaintiffs and the Class regarding Theranos testing, including as summarized in the First Cause of Action and as described above.  These false statements and false information included pervasive marketing by both companies which falsely portrayed Edison and the "tiny" blood draws as being market-ready and

for legitimate blood testing purposes, as well as pervasive marketing which falsely characterized Theranos testing as reliable and certified by and compliant with government and industry standards.

**ANSWER TO COMPLAINT ¶ 473**

Theranos denies the allegations in Paragraph 473.

**COMPLAINT ¶ 474**

These false statements and false information were provided in the context of a business transaction—namely, to induce Plaintiffs and the Class to purchase testing services.

**ANSWER TO COMPLAINT ¶ 474**

Theranos denies the allegations in Paragraph 474.

**COMPLAINT ¶ 475**

Theranos and Walgreens knew that Plaintiffs and the Class would rely on these false statements and false information, and intended for them to do so.

**ANSWER TO COMPLAINT ¶ 475**

Theranos denies the allegations in Paragraph 475.

**COMPLAINT ¶ 476**

Theranos and Walgreens failed to exercise reasonable care in obtaining and communicating the false statements and false information.

**ANSWER TO COMPLAINT ¶ 476**

No response is required to Paragraph 476, which consists of conclusions of law. To the extent a response is required, Theranos denies the allegations in Paragraph 476.

**COMPLAINT ¶ 477**

At all relevant times, Walgreens and Theranos had a duty to disclose all facts material to Plaintiffs' and the Class members' submission to Theranos testing, purchase of Theranos testing, and reliance upon Theranos test results.

**ANSWER TO COMPLAINT ¶ 477**

No response is required to Paragraph 477, which consists of conclusions of law.

ANSWER TO PLAINTIFFS' SECOND
                                              AMENDED COMPLAINT

1   To the extent a response is required, Theranos denies the allegations in Paragraph 477.

2   **COMPLAINT ¶ 478**

3         Walgreens and Theranos specifically and expressly misrepresented material

4   facts to Plaintiffs and the Class, as alleged herein, including by, *inter alia,* promoting

5   and selling as safe and reliable, tests that were unreliable, not ready-for-market, not

6   safe for consumers to rely on, conducted in a manner that did not satisfy applicable

7   laws, regulations, and/or standards for quality control, conducted in laboratories that

8   did not meet applicable laws, regulations, and/or standards for safety and training, and

9   conducted on inadequately maintained and calibrated equipment.

10  **ANSWER TO COMPLAINT ¶ 478**

11        No response is required to Paragraph 478, which consists of conclusions of law.

12  To the extent a response is required, Theranos denies the allegations in Paragraph 478.

13  **COMPLAINT ¶ 479**

14        Walgreens and Theranos knew, or in the exercise of reasonable diligence should

15  have known, that their express representations regarding Theranos testing were false

16  and misleading.  Walgreens and Theranos made such statements without reasonable

17  grounds for believing them to be true.

18  **ANSWER TO COMPLAINT ¶ 479**

19        No response is required to Paragraph 479, which consists of conclusions of law.

20  To the extent a response is required, Theranos denies the allegations in Paragraph 479.

21  **COMPLAINT ¶ 480**

22        The misrepresentations made by Walgreens and Theranos were pervasive.

23  **ANSWER TO COMPLAINT ¶ 480**

24        Defendants deny the allegations in Paragraph 480.

25  **COMPLAINT ¶ 481**

26        The misrepresentations made by Walgreens and Theranos were likely to

27  deceive and had a tendency to deceive reasonable consumers, and have deceived

28  Plaintiffs and the Class.  The facts misrepresented by Walgreens and Theranos would

1  be material to a reasonable consumer.

2  **ANSWER TO COMPLAINT ¶ 481**

3      No response is required to Paragraph 481, which consists of conclusions of law.

4  To the extent a response is required, Theranos denies the allegations in Paragraph 481.

5  **COMPLAINT ¶ 482**

6      Plaintiffs and the Class reasonably and justifiably relied on Walgreens' and

7  Theranos's false statements and false information, in purchasing and submitting to

8  Theranos testing.

9  **ANSWER TO COMPLAINT ¶ 482**

10     No response is required to Paragraph 482, which consists of conclusions of law.

11 To the extent a response is required, Theranos denies the allegations in Paragraph 482.

12 **COMPLAINT ¶ 483**

13     As a result of Walgreens' and Theranos's conduct, Plaintiffs and the Class have

14 suffered actual damages.

15 **ANSWER TO COMPLAINT ¶ 483**

16     No response is required to Paragraph 483, which consists of conclusions of law.

17 To the extent a response is required, Theranos denies the allegations in Paragraph 483.

18 **COMPLAINT ¶ 484**

19     On behalf of themselves and the Class, Plaintiffs seek relief as prayed for

20 below.

21 **ANSWER TO COMPLAINT ¶ 484**

22     No response is required to Paragraph 484, which consists of assertions of law.

23 To the extent a response is required, Theranos denies the allegations in Paragraph 484.

24 <u>**SIXTH CAUSE OF ACTION**</u>

25 **(Breach of Contract)**

26 **COMPLAINT ¶ 485**

27     Plaintiffs incorporate the substantive allegations contained in all prior and

28 succeeding paragraphs as if fully set forth herein.

1    **ANSWER TO COMPLAINT ¶ 485**

2           Defendants incorporate each and every answer to all prior and succeeding

3    paragraphs as if fully set forth herein.

4    **COMPLAINT ¶ 486**

5           Plaintiffs bring this claim on behalf of themselves and the Class against

6    Defendants Walgreens and Theranos.

7    **ANSWER TO COMPLAINT ¶ 486**

8           No response is required to Paragraph 486, which purports to identify the

9    plaintiffs and defendants for this cause of action.  To the extent a response is required,

10   Theranos denies the allegations in Paragraph 486.

11   **COMPLAINT ¶ 487**

12          To Plaintiffs and the Class, Walgreens and Theranos offered to provide reliable,

13   ready-for-market testing services in exchange for submission to blood draws and other

14   clinical procedures and payment of financial compensation, paid out-of-pocket by the

15   consumer and/or paid through the consumer's health insurance or other collateral

16   sources.

17   **ANSWER TO COMPLAINT ¶ 487**

18          Defendants admit that Theranos testing services were offered commercially.

19   Theranos denies Plaintiffs' framing of these issues, and denies the remaining

20   allegations in Paragraph 487.

21   **COMPLAINT ¶ 488**

22          The promises and obligations by Walgreens and Theranos were set forth in

23   pervasive marketing materials disseminated by Walgreens and Theranos regarding

24   Theranos's testing services, as alleged herein.  Moreover, the direct testing order forms

25   and guide to direct testing (Ex. 11) that some Class members (whose test orders did not

26   come directly from a physician (including Plaintiffs M.P. and R.G.)) received and

27   submitted at the Wellness Centers reinforced some of these assurances, including that

28   blood samples were collected "for the purpose of clinical laboratory tests," in order to

1 "get vital information about [patients'] health when it matters most," among other

2 things.

3 **ANSWER TO COMPLAINT ¶ 488**

4 Theranos admits that it advertised its testing services. Theranos further admits

5 that it published a "direct testing menu" that could be used by Arizona consumers to

6 order its tests in some circumstances, the contents of which speak for themselves.

7 Theranos further denies that Plaintiffs' characterization of these documents is accurate,

8 and denies Plaintiffs' framing of these issues. Theranos denies the remaining

9 allegations in Paragraph 488.

10 **COMPLAINT ¶ 489**

11 Each Plaintiff and Class member accepted Theranos's and Walgreens' offer for

12 services, and thereby formed an express and/or implied contract. For those who

13 purchased services at a Walgreens store, their acceptance formed an express and/or

14 implied contract between themselves and both Walgreens and Theranos. For those

15 who purchased services at a Theranos-owned facility, their acceptance formed an

16 express and/or implied contract between themselves and Theranos.

17 **ANSWER TO COMPLAINT ¶ 489**

18 No response is required to Paragraph 489, which consists of conclusions of law.

19 To the extent a response is required, Theranos denies the allegations in Paragraph 489.

20 **COMPLAINT ¶ 490**

21 In the context of consumer purchases of blood and clinical testing services,

22 even if Walgreens and Theranos had not represented and promised that their testing

23 services were ready-for-market and reliable (which they did), such attributes are

24 implied terms of the purchase contract. A reasonable consumer would not purchase

25 blood or clinical testing services unless such services were expected to be reliable.

26 **ANSWER TO COMPLAINT ¶ 490**

27 No response is required to Paragraph 490, which consists of conclusions of law.

28 To the extent a response is required, Theranos answers that it lacks knowledge or

1    information of the allegations in Paragraph 490 sufficient to form a belief as to their

2    truth and therefore denies them on that basis.

3    **COMPLAINT ¶ 491**

4          Plaintiffs and the Class relied on Theranos's and Walgreens' promises and

5    covenants regarding Theranos testing services in agreeing to have their blood and urine

6    tested by Theranos.

7    **ANSWER TO COMPLAINT ¶ 491**

8          No response is required to Paragraph 491, which consists of conclusions of law.

9    To the extent a response is required, Theranos denies the allegations in Paragraph 491.

10   **COMPLAINT ¶ 492**

11         Plaintiffs and the Class performed all of their obligations under their contracts

12   with Theranos and/or Walgreens.  They each submitted to blood draws and/or other

13   clinical procedures.  They each paid money for the services, either out of pocket or

14   through their health insurance or other collateral sources.  Revenue from services

15   purchased at Walgreens stores were divided between Walgreens and Theranos.

16   **ANSWER TO COMPLAINT ¶ 492**

17         No response is required to the first sentence of Paragraph 492, which consists of

18   conclusions of law.  To the extent any response is required, Theranos answers that it

19   lacks knowledge or information of the allegations in the first sentence of Paragraph

20   492 sufficient to form a belief as to their truth and therefore deny them on that basis.

21   Theranos further answers that it admits that certain of the named Plaintiffs in this

22   action submitted to blood draws and/or other laboratory testing.  Theranos denies the

23   remaining allegations in Paragraph 492.

24   **COMPLAINT ¶ 493**

25         Walgreens and Theranos breached their respective contracts with Plaintiffs and

26   the Class by, *inter alia:* (1) failing to deliver testing services that were ready-for-

27   market or, at least in some cases, even for legitimate testing purposes; (2) failing to

28   deliver testing services and test results that were reliable or of the quality promised; (3)

not ensuring that Theranos's equipment met its own and/or reasonable quality standards; (4) not ensuring that their services were tendered with reasonable care and workmanlike effort, including by failing to comply with applicable laws, regulations, and standards for laboratory testing services; and (5) failing to timely notify customers of the test results' unreliability and known inaccuracies.

**ANSWER TO COMPLAINT ¶ 493**

No response is required to Paragraph 493, which consists of conclusions of law. To the extent a response is required, Theranos denies the allegations in Paragraph 493.

**COMPLAINT ¶ 494**

Each Class member did not receive the benefit of their bargain—including reliable test results.

**ANSWER TO COMPLAINT ¶ 494**

No response is required to Paragraph 494, which consists of conclusions of law. To the extent a response is required, Theranos denies the allegations in Paragraph 494.

**COMPLAINT ¶ 495**

As a result of Defendants' breaches described above, Plaintiffs and the Class have suffered damages.

**ANSWER TO COMPLAINT ¶ 495**

No response is required to Paragraph 495, which consists of conclusions of law. To the extent a response is required, Theranos denies the allegations in Paragraph 495.

**COMPLAINT ¶ 496**

On behalf of themselves and the Class, Plaintiffs seek relief as prayed for below.

**ANSWER TO COMPLAINT ¶ 496**

No response is required to Paragraph 496, which consists of assertions of law. To the extent a response is required, Theranos denies the allegations in Paragraph 496.

**SEVENTH CAUSE OF ACTION**

**(Unjust Enrichment)**

**COMPLAINT ¶ 497**

Plaintiffs incorporate the substantive allegations contained in all prior and succeeding paragraphs as if fully set forth herein.

**ANSWER TO COMPLAINT ¶ 497**

Defendants incorporate each and every answer to all prior and succeeding paragraphs as if fully set forth herein.

**COMPLAINT ¶ 498**

Plaintiffs bring this claim on behalf of themselves and the Class against all Defendants, and as appropriate bring this claim in the alternative to their legal claims.

**ANSWER TO COMPLAINT ¶ 498**

No response is required to Paragraph 498, which purports to identify the plaintiffs and defendants for this cause of action.  To the extent a response is required, Defendants deny the allegations in Paragraph 498.

**COMPLAINT ¶ 499**

Plaintiffs lost money as a result of Defendants' conduct alleged herein.

**ANSWER TO COMPLAINT ¶ 499**

Defendants deny the allegations in Paragraph 499.

**COMPLAINT ¶ 500**

Walgreens, Theranos, Balwani and Holmes were each unjustly enriched by their conduct alleged herein, including but not limited through revenues received in connection with Plaintiffs' and the Class members' Theranos tests, through development of their products, accumulation and storage of valuable patient information and usable blood samples, and through additional business and revenues that Walgreens received by virtue of having Wellness Centers in their stores.

**ANSWER TO COMPLAINT ¶ 500**

No response is required to Paragraph 500, which consists of conclusions of law.

To the extent a response is required, Defendants deny the allegations in Paragraph 500.

**COMPLAINT ¶ 501**

All Defendants were unjustly enriched, including Holmes and Balwani, who on information and belief personally received at least millions of dollars each as a direct result of their personal conduct alleged herein, which conduct constituted a fundamental part of Theranos's operations and business.

**ANSWER TO COMPLAINT ¶ 501**

No response is required to Paragraph 501, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 501.

**COMPLAINT ¶ 502**

It would be inequitable and unjust for any of Walgreens, Theranos, Holmes, or Balwani to retain the money that they have received by their conduct.

**ANSWER TO COMPLAINT ¶ 502**

No response is required to Paragraph 502, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 502.

**COMPLAINT ¶ 503**

On behalf of themselves and the Class, Plaintiffs seek relief as prayed for below.

**ANSWER TO COMPLAINT ¶ 503**

No response is required to Paragraph 503, which consists of assertions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 503.

<u>**EIGHTH CAUSE OF ACTION**</u>

**(Aiding and Abetting Fraud)**

**COMPLAINT ¶ 504**

Plaintiffs incorporate the substantive allegations contained in all prior and succeeding paragraphs as if fully set forth herein.

**ANSWER TO COMPLAINT ¶ 504**

Defendants incorporate each and every answer to all prior and succeeding

1   paragraphs as if fully set forth herein.

2   **COMPLAINT ¶ 505**

3       Plaintiffs bring this claim on behalf of themselves and the Class against

4   Defendant Walgreens.

5   **ANSWER TO COMPLAINT ¶ 505**

6       No response is required to Paragraph 505, which purports to identify the

7   plaintiffs and defendants for this cause of action, which is not against Defendants.

8   **COMPLAINT ¶ 506**

9       Theranos, Holmes, and Balwani committed fraud resulting in injury to Plaintiffs

10   and the Class, as alleged herein.  Walgreens' conduct alleged herein enabled,

11   substantially assisted, encouraged, and was a substantial factor in, the commission of

12   such fraud.

13   **ANSWER TO COMPLAINT ¶ 506**

14       No response is required to Paragraph 506, which consists of conclusions of law.

15   To the extent a response is required, Defendants deny the allegations in Paragraph 506.

16   **COMPLAINT ¶ 507**

17       Walgreens knew that Theranos testing was not reliable and that consumers

18   should not be relying on Theranos testing in making health and treatment decisions.

19   **ANSWER TO COMPLAINT ¶ 507**

20       Defendants deny the allegations in Paragraph 507.

21   **COMPLAINT ¶ 508**

22       Walgreens knew that the Edison technology was still-in-development and not

23   market-ready throughout the time the "tiny" blood draws were being administered.

24   **ANSWER TO COMPLAINT ¶ 508**

25       Defendants deny the allegations in Paragraph 508.

26   **COMPLAINT ¶ 509**

27       Walgreens identified numerous red flags and concerns about Theranos testing

28   that put it on notice of the problems, but nevertheless made the deliberate choice to

partner with Theranos, offer Theranos testing to customers at its stores, administer blood draws, and facilitate the transfer of blood samples and other clinical samples from Walgreens customers to Theranos for use in research and product development.

**ANSWER TO COMPLAINT ¶ 509**

Defendants deny the allegations in Paragraph 509.

**COMPLAINT ¶ 510**

Walgreens had actual knowledge of the truth and had access to more than sufficient information to understand that Theranos tests were not reliable and were unsafe for consumers, and that the purpose of the "tiny" blood draws was not and could not have been legitimate blood testing.  To the extent Walgreens lacked any more detailed knowledge, it was by virtue of Walgreens' own deliberate choices and conduct in ignoring the problems it identified, deliberately failing to follow up on the concerns and information it had, and ceding to Theranos's requests to carry on without further information being provided.

**ANSWER TO COMPLAINT ¶ 510**

Defendants deny the allegations in Paragraph 510.

**COMPLAINT ¶ 511**

Walgreens had actual knowledge of measures that it could have taken to prevent Walgreens clinics and marketing from being used to perpetrate fraud, to provide consumers with accurate information, and to reduce the reach of Theranos's, Holmes' and Balwani's fraudulent conduct, but nevertheless knowingly and deliberately decided not to adopt such measures, and instead chose to maintain policies and practices that enabled and assisted the fraud.

**ANSWER TO COMPLAINT ¶ 511**

Defendants deny the allegations in Paragraph 511.

**COMPLAINT ¶ 512**

Before and during the commission of the fraud, Walgreens intended to aid and abet, and did substantially assist, Theranos, Holmes, and Balwani in fraud perpetrated

on Plaintiffs and the Class members by, *inter alia,* marketing, promoting, and otherwise treating Theranos testing as reliable and compliant with applicable laws and standards, and portraying Edison and the "tiny" blood tests as market-ready, although Walgreens knew and/or knowingly and deliberately failed to discover that this information was false, by concealing material information about the reliability and safety of Theranos tests and the unready state of Edison, by allowing Theranos tests to be sold and conducted in its pharmacies, by administering blood draws, and by making available Walgreens employees to facilitate the sale and conducting of Theranos testing services, and transmission of blood samples from Walgreens customers to Theranos for use in research and product development.

**ANSWER TO COMPLAINT ¶ 512**

No response is required to Paragraph 512, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 512.

**COMPLAINT ¶ 513**

Walgreens' conduct alleged herein was knowing and intentional, and was carried out by Walgreens in order to benefit Walgreens, including in the form of ill-gotten revenues.  Walgreens received revenue from assisting in the perpetration of fraud by Theranos, Holmes and Balwani, including through sales of Theranos tests and through increased sales of other Walgreens products to new and existing customers. Walgreens also benefited financially and reputationally as a result of being the first national retail store to provide direct-to-consumer testing services.

**ANSWER TO COMPLAINT ¶ 513**

Defendants deny the allegations of Paragraph 513.

**COMPLAINT ¶ 514**

Plaintiffs and the Class suffered actual damages as a result of Walgreens' conduct in aiding and abetting fraud.

**ANSWER TO COMPLAINT ¶ 514**

No response is required to Paragraph 514, which consists of conclusions of law.

1   To the extent a response is required, Defendants deny the allegations in Paragraph 514.

2   **COMPLAINT ¶ 515**

3       Walgreens' misconduct alleged herein was intentional, deliberate, and willful.

4   **ANSWER TO COMPLAINT ¶ 515**

5       Defendants deny the allegations in Paragraph 515.

6   **COMPLAINT ¶ 516**

7       On behalf of themselves and the Class, Plaintiffs seek relief as prayed for

8   below.

9   **ANSWER TO COMPLAINT ¶ 516**

10      No response is required to Paragraph 516, which consists of assertions of law.

11  To the extent a response is required, Defendants deny the allegations in Paragraph 516.

12  <u>**NINTH CAUSE OF ACTION**</u>

13  **(Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c))**

14  **COMPLAINT ¶ 517**

15      Plaintiffs incorporate the substantive allegations contained in all prior and

16  succeeding paragraphs as if fully set forth herein.

17  **ANSWER TO COMPLAINT ¶ 517**

18      Defendants incorporate each and every answer to all prior and succeeding

19  paragraphs as if fully set forth herein.

20  **COMPLAINT ¶ 518**

21      Plaintiffs bring this claim on behalf of themselves and the Class against

22  Defendants Walgreens, Theranos, Balwani and Holmes.

23  **ANSWER TO COMPLAINT ¶ 518**

24      No response is required to Paragraph 518, which purports to identify the

25  plaintiffs and defendants for this cause of action.  To the extent a response is required,

26  Defendants deny the allegations in Paragraph 518.

27  **COMPLAINT ¶ 519**

28      18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or

associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

**ANSWER TO COMPLAINT ¶ 519**

No response is required to Paragraph 519, which consists of a statement of the law.  To the extent any response is required, Defendants deny the allegations in Paragraph 519.

**COMPLAINT ¶ 520**

Theranos, Walgreens, Holmes, and Balwani are "persons" within the meaning of 18 U.S.C. § 1961(3).

**ANSWER TO COMPLAINT ¶ 520**

No response is required to Paragraph 520, which consists of conclusions of law. To the extent any response is required, Defendants deny the allegations in Paragraph 520.

**COMPLAINT ¶ 521**

Theranos, Walgreens, Holmes, and Balwani together constitute an association-in-fact enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), and will be referred to herein as the "Clinic RICO Enterprise."

**ANSWER TO COMPLAINT ¶ 521**

No response is required to Paragraph 521, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 521.

**COMPLAINT ¶ 522**

The Clinic RICO Enterprise engaged in and affected interstate commerce within the meaning of 18 U.S.C. § 1962(c), including but not limited to commerce on the internet, and between residents of California, Arizona, and Pennsylvania.

**ANSWER TO COMPLAINT ¶ 522**

No response is required to Paragraph 522, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 522.

1

**COMPLAINT ¶ 523**

2

The Clinic RICO Enterprise had an ongoing organization with an ascertainable

3

structure, and functioned as a continuing unit with separate roles and responsibilities.

4

For example: Theranos concealed material information from consumers and advertised

5

Theranos testing services as revolutionary, ready-for-market, for legitimate testing

6

purposes, and reliable, when in fact its laboratories were staffed by inadequately

7

trained personnel, used improperly calibrated equipment, at least some of the "tests"

8

were not for legitimate testing purposes, and its test results were unreliable.

9

Walgreens concealed material information from consumers, promoted and agreed to

10

assist in promoting Theranos testing services to consumers, agreed to refrain from

11

conducting any oversight or rigorous investigation regarding Theranos or its facilities

12

and equipment, agreed to provide space for Theranos inside its stores to drive retail

13

consumers toward its services and administer blood draws, and agreed to make

14

available Walgreens employees who would facilitate the sale and performance of

15

Theranos testing services.  Holmes agreed to falsely promote Theranos testing as

16

reliable, ready-for-market, and for legitimate blood testing purposes, and compliant

17

with applicable laws and regulations, to cover up internally known problems, to

18

conceal material information from consumers, and to dismiss, deny and downplay

19

reported problems once Defendants' scheme began to collapse.  Balwani agreed to use

20

consumer tests that were being falsely marketed as being ready-for-market, in order to

21

conduct research and product development and for other undisclosed purposes, cover

22

up internally known problems, conceal material information from consumers, spread,

23

repeat, and otherwise reinforce misleading representations and omissions about

24

Theranos testing, cover up quality control failures and falsify information submitted to

25

regulatory authorities, and to make every effort to prevent Defendants' scheme from

26

being reported by employees or otherwise discovered.

27

**ANSWER TO COMPLAINT ¶ 523**

28

Defendants deny the allegations in Paragraph 523.

**COMPLAINT ¶ 524**

At all relevant times, Defendants operated, controlled, or managed the Clinic RICO Enterprise, and profited from the Clinic RICO Enterprise.  Defendants were responsible for the content of all marketing, advertisements, and other public-facing representations regarding Theranos, and for the material omissions alleged herein.

**ANSWER TO COMPLAINT ¶ 524**

Defendants deny the allegations in Paragraph 524.

**COMPLAINT ¶ 525**

The Clinic RICO Enterprise has had a common purpose: to perpetrate fraud, and in particular to market and sell testing services that were unreliable and not ready-for-market to unwitting consumers, obtain under false pretenses blood and other clinical samples for research and product development purposes, and assure customers and the public that the tests were reliable—thereby becoming the primary participants in the new, profitable, national market for direct-to-consumer testing services—while concealing that Theranos's testing services were unreliable, unsafe, at least in some cases not for legitimate testing purposes, and should not be used by consumers to make decisions about their health.

**ANSWER TO COMPLAINT ¶ 525**

Defendants deny the allegations in Paragraph 525.

**COMPLAINT ¶ 526**

Defendants conducted and participated in the conduct of the affairs of the Clinic RICO Enterprise through a pattern of racketeering activity, beginning at the latest in 2013, and continuing until at least 2016, and consisting of numerous and repeated violations of the federal mail and wire fraud statutes, which prohibit the use of any interstate or foreign mail or wire facility for the purpose of executing a scheme to defraud, in violation of 18 U.S.C. §§ 1341 and 1343.  Violations of the federal mail and wire fraud included, but were not limited to, to: (a) the specific false statements in press releases and other media statements alleged herein (the time and place of which

are identified herein); (b) the other specific, pervasive misrepresentations, alleged

herein, that Walgreens and Theranos made on their respective websites and in

electronic advertisements leading up to and during the time the services were being

offered; and (c) the transmission of purported Edison "test results," which were used to

perpetuate the mistaken belief that the "tiny" blood draws were for legitimate testing

purposes.

**ANSWER TO COMPLAINT ¶ 526**

No response is required to Paragraph 526, which consists of conclusions of law.

To the extent a response is required, Defendants deny the allegations in Paragraph 526.

**COMPLAINT ¶ 527**

All Defendants devised and furthered the scheme to defraud by use of the mail,

telephone, and internet, and caused to be transmitted, by means of mail and wire

communications traveling in interstate commerce, writing(s), and/or signal(s),

including the Walgreens and Theranos websites, online, mailed, televised, or other

advertising, press releases, and Theranos "test results."

**ANSWER TO COMPLAINT ¶ 527**

Defendants deny the allegations in Paragraph 527.

**COMPLAINT ¶ 528**

The conduct alleged herein was part of a scheme that Walgreens, Theranos,

Balwani and Holmes formulated to defraud Plaintiffs and the Class, to receive

financial and other benefits, and to make Theranos and Walgreens the primary

participants in the new, profitable, national market for direct-to-consumer testing

services.  Defendants perpetrated this scheme with the specific intent to deceive and

defraud Plaintiffs and the Class, and Defendants did deceive and defraud Plaintiffs and

the Class.

**ANSWER TO COMPLAINT ¶ 528**

Defendants deny the allegations in Paragraph 528.

1  **COMPLAINT ¶ 529**

2      These acts of racketeering spanned at least three years and are not isolated or

3  long-ago completed events.  Through the conduct of the Clinic RICO Enterprise,

4  Defendants have fraudulently sold at least many thousands of unreliable and dangerous

5  Theranos tests to consumers.

6  **ANSWER TO COMPLAINT ¶ 529**

7      Defendants deny the allegations in Paragraph 529.

8  **COMPLAINT ¶ 530**

9      As a foreseeable and natural consequence of Defendants' scheme, Defendants

10  injured Plaintiffs and the Class, including but not limited to in the form of their

11  submission to and payment, out-of-pocket and/or through their health insurance or

12  other collateral sources, for testing services that were unreliable, did not hold the

13  promised value and were dangerous when used for their advertised purposes, and in

14  the form of steps taken and not taken by Plaintiffs and the Class in reliance upon the

15  test results and the corresponding monetary and other damages therefrom.

16  **ANSWER TO COMPLAINT ¶ 530**

17      Defendants deny the allegations in Paragraph 530.

18  **COMPLAINT ¶ 531**

19      Defendants' acts also present a threat of continued racketeering activity,

20  including but not limited to insofar as the Clinic RICO Enterprise has not issued

21  formal invalidation notices for all Theranos test results.

22  **ANSWER TO COMPLAINT ¶ 531**

23      Defendants deny the allegations in Paragraph 531.

24  **COMPLAINT ¶ 532**

25      On behalf of themselves and the Class, Plaintiffs seek relief as prayed for

26  below.

27  **ANSWER TO COMPLAINT ¶ 532**

28      No response is required to Paragraph 532, which consists of assertions of law.

1   To the extent a response is required, Defendants deny the allegations in Paragraph 532.

2   **TENTH CAUSE OF ACTION**

3   **(Violation of California Business & Professions Code §§ 17200, *et seq.*)**

4   **COMPLAINT ¶ 533**

5        Plaintiffs incorporate the substantive allegations contained in all prior and

6   succeeding paragraphs as if fully set forth herein.

7   **ANSWER TO COMPLAINT ¶ 533**

8        Defendants incorporate each and every answer to all prior and succeeding

9   paragraphs as if fully set forth herein.

10   **COMPLAINT ¶ 534**

11        To the extent this claim is based directly on affirmative misrepresentations, it is

12   brought by Plaintiff A.R. on behalf of himself and the California Subclass against

13   Defendants Theranos and Walgreens.  Otherwise, Plaintiff A.R. brings this claim on

14   behalf of himself and the California Subclass against all Defendants.

15   **ANSWER TO COMPLAINT ¶ 534**

16        No response is required to Paragraph 534, which purports to identify the

17   plaintiffs and defendants for this cause of action. To the extent a response is required,

18   Defendants deny the allegations in Paragraph 534.

19   **COMPLAINT ¶ 535**

20        California's Unfair Competition Law ("UCL") defines unfair business

21   competition to include any "unfair," "unlawful," or "fraudulent" business act or

22   practice.

23   **ANSWER TO COMPLAINT ¶ 535**

24        No response is required to Paragraph 535, which consists of conclusions of law.

25   **COMPLAINT ¶ 536**

26        Defendants' respective unlawful, unfair, and fraudulent business acts and

27   practices are described throughout this Complaint and include, but are not limited to:

28   (a) Theranos and Walgreens making affirmative misrepresentations as summarized in

the First Cause of Action and described above; (b) all Defendants concealing material information as summarized in the First Cause of Action and described above; and (c) all Defendants marketing and selling unreliable Theranos tests that they knew to be unreliable and/or which they failed to take sufficient steps to ensure the reliability of, and encouraging consumers to rely on such tests to make decisions about their health and treatment.

**ANSWER TO COMPLAINT ¶ 536**

Defendants deny the allegations in Paragraph 536.

**COMPLAINT ¶ 537**

Defendants' conduct alleged herein constitutes unlawful, unfair, and fraudulent business practices.

**ANSWER TO COMPLAINT ¶ 537**

No response is required to Paragraph 537, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 537.

**COMPLAINT ¶ 538**

Walgreens, Theranos, Balwani and Holmes have violated the "fraudulent" prong of the UCL through their respective conduct, misrepresentations, and omissions alleged herein. These Defendants' misrepresentations and omissions were pervasive. Their respective misrepresentations and omissions are likely to deceive and have a tendency to deceive reasonable consumers, and have deceived Plaintiff A.R. and the California Subclass. The facts misrepresented and concealed by Walgreens, Theranos, Balwani and Holmes would be material to a reasonable consumer.

**ANSWER TO COMPLAINT ¶ 538**

No response is required to Paragraph 538, which consist of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 538.

**COMPLAINT ¶ 539**

Walgreens, Theranos, Balwani and Holmes had exclusive and superior knowledge regarding the material information that they concealed.

**ANSWER TO COMPLAINT ¶ 539**

Defendants deny the allegations in Paragraph 539.

**COMPLAINT ¶ 540**

Plaintiff A.R. and the California Subclass reasonably relied upon Walgreens' and Theranos's misrepresentations and on all of the Defendants' omissions to their detriment.

**ANSWER TO COMPLAINT ¶ 540**

No response is required to Paragraph 540, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 540.

**COMPLAINT ¶ 541**

Plaintiff A.R. specifically relied on the omissions by Walgreens, Theranos, Holmes, and Balwani alleged herein.  Had he known the information that was concealed, he would not have submitted to Theranos testing.

**ANSWER TO COMPLAINT ¶ 541**

Defendants deny the allegations in Paragraph 541.

**COMPLAINT ¶ 542**

All of the Defendants have also violated the "unfair" prong of the UCL through their misconduct alleged herein, under both the Cel-Tech "tethering" test  and "balancing" test.

**ANSWER TO COMPLAINT ¶ 542**

No response is required to Paragraph 542, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 542.

**COMPLAINT ¶ 543**

Defendants' conduct alleged herein violates California public policy, including but not limited to as such policy is reflected in California's Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*), Cal. Civ. Code § 1710, Cal. Comm. Code §§ 2314-2315, and in California common law.

**ANSWER TO COMPLAINT ¶ 543**

No response is required to Paragraph 543, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 543.

**COMPLAINT ¶ 544**

Defendants' conduct alleged herein is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.  Defendants have engaged in a years-long, pervasive scheme of: (a) marketing and selling unreliable Theranos tests and encouraging consumers to rely on those tests in making decisions about their health; (b) misrepresenting the reliability and other details about Theranos testing services, including that they were ready-for-market when that was not the case; and (c) concealing from consumers material information about the reliability of Theranos tests and the compliance of Theranos testing with applicable laws and standards.  This conduct is immoral, unethical, and unscrupulous.  Moreover, Defendants' conduct is oppressive and substantially injurious to consumers.  Among other things, as a direct result of Defendants' conduct alleged herein, Plaintiff A.R. and the California Subclass have paid money and submitted to Theranos testing that was not only unreliable, but put their health and lives at risk.  There is no countervailing utility to Defendants' conduct, and certainly none that outweighs the substantial detriment to Plaintiff A.R. and the California Subclass.

**ANSWER TO COMPLAINT ¶ 544**

No response is required to Paragraph 544, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 544.

**COMPLAINT ¶ 545**

Defendants' conduct is also unlawful in that it violates Civil RICO; California's False Advertising Law, (Cal. Bus. & Prof. Code §§ 17500, *et seq.*), California's Consumer Legal Remedies Act, (Cal. Civ. Code § 1750, *et seq.*), statutory deceit, (Cal. Civ. Code § 1710), the Arizona Racketeering Act, (A.R.S. §§ 13-2301-04), and common law fraud, battery, medical battery, negligence, and negligent

1    misrepresentation, which not only result in liability as to the individual causes of

2    action, they also provide a basis for a finding of liability under the UCL.

3    **ANSWER TO COMPLAINT ¶ 545**

4           No response is required to Paragraph 545, which consists of conclusions of law.

5    To the extent a response is required, Defendants deny the allegations in Paragraph 545.

6    **COMPLAINT ¶ 546**

7           Furthermore, Defendants' conduct violates declared legislative policies as set

8    forth by the federal government in 40 C.F.R. § 600.307(a)(ii)(A); 40 C.F.R. § 600.302-

9    08(b)(4) and 16 C.F.R. § 259.2(a).

10   **ANSWER TO COMPLAINT ¶ 546**

11          No response is required to Paragraph 546, which consists of conclusions of law.

12   To the extent a response is required, Defendants deny the allegations in Paragraph 546.

13   **COMPLAINT ¶ 547**

14          As a result of Defendants' violations of California's Unfair Competition Law,

15   Plaintiff A.R. and the California Subclass have suffered actual damages, including the

16   loss of money and/or property in exchange for testing they would not, with knowledge

17   of the truth, have allowed to be performed, and which is unreliable, not worth the

18   promised value, and dangerous, and other money they have spent out-of-pocket as a

19   result of the unreliable test results they received.

20   **ANSWER TO COMPLAINT ¶ 547**

21          No response is required to Paragraph 547, which consists of conclusions of law.

22   To the extent a response is required, Defendants deny the allegations in Paragraph 547.

23   **COMPLAINT ¶ 548**

24          Pursuant to California Business and Professions Code §§ 17200 and 17203, on

25   behalf of himself and the California Subclass, Plaintiff A.R. seeks relief as prayed for

26   below.

27   **ANSWER TO COMPLAINT ¶ 548**

28          No response is required to Paragraph 548, which consists of assertions of law.

To the extent a response is required, Defendants deny the allegations in Paragraph 548.

## ELEVENTH CAUSE OF ACTION

**(Violation of California Business & Professions Code §§ 17500, *et seq.*)**

**COMPLAINT ¶ 549**

Plaintiffs incorporate the substantive allegations contained in all prior and succeeding paragraphs as if fully set forth herein.

**ANSWER TO COMPLAINT ¶ 549**

Defendants incorporate each and every answer to all prior and succeeding paragraphs as if fully set forth herein.

**COMPLAINT ¶ 550**

To the extent this claim is based directly on affirmative misrepresentations, it is brought by Plaintiff A.R. on behalf of himself and the California Subclass against Defendants Theranos and Walgreens.  Otherwise, Plaintiff A.R. brings this claim on behalf of himself and the California Subclass against all Defendants.

**ANSWER TO COMPLAINT ¶ 550**

No response is required to Paragraph 550, which purports to identify the plaintiffs and defendants for this cause of action.  To the extent a response is required, Defendants deny the allegations in Paragraph 550.

**COMPLAINT ¶ 551**

California Bus. & Prof. Code § 17500 (the "FAL") states: "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or in any other manner or means whatever, including over the Internet, any statement, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

**ANSWER TO COMPLAINT ¶ 551**

No response is required to Paragraph 551, which consists of a statement of the law.

**COMPLAINT ¶ 552**

Defendants have committed acts of untrue and misleading advertising by disseminating materially misleading and deceptive information (Theranos and Walgreens), and omitting material information (all Defendants), as alleged herein, for purposes of inducing consumers to purchase and submit to Theranos testing services.

**ANSWER TO COMPLAINT ¶ 552**

Defendants deny the allegations in Paragraph 552.

**COMPLAINT ¶ 553**

Defendants' misrepresentations and omissions were pervasive.

**ANSWER TO COMPLAINT ¶ 553**

Defendants deny the allegations in Paragraph 553.

**COMPLAINT ¶ 554**

Defendants' respective misrepresentations and omissions are likely to deceive and have a tendency to deceive reasonable consumers, and have deceived Plaintiff A.R. and the California Subclass.  The facts misrepresented and concealed by Walgreens, Theranos, Balwani and Holmes would be material to a reasonable consumer.  A reasonable person would attach importance to them and would be induced to act on the information in making decisions.

**ANSWER TO COMPLAINT ¶ 554**

No response is required to Paragraph 554, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 554.

**COMPLAINT ¶ 555**

The Defendants had exclusive and superior knowledge regarding the material information that they concealed.

**ANSWER TO COMPLAINT ¶ 555**

Defendants deny the allegations in Paragraph 555.

**COMPLAINT ¶ 556**

Plaintiff A.R. and the California Subclass reasonably relied on Walgreens' and Theranos's misrepresentations and on all of the Defendants' omissions to their detriment.

**ANSWER TO COMPLAINT ¶ 556**

Defendants deny the allegations in Paragraph 556.

**COMPLAINT ¶ 557**

Plaintiff A.R. specifically relied on the omissions by Walgreens, Theranos, Holmes, and Balwani alleged herein.  Had he known the information that was concealed, he would not have submitted to Theranos testing.

**ANSWER TO COMPLAINT ¶ 557**

Defendants deny the allegations in Paragraph 557.

**COMPLAINT ¶ 558**

As a result of Defendants' violations, Plaintiff A.R. and the California Subclass have suffered actual damages, including the loss of money and/or property, received by the Defendants, in exchange for testing they would not, with knowledge of the truth, have allowed to be performed, and which is unreliable and dangerous, and other money they have spent out-of-pocket as a result of the unreliable test results they received.

**ANSWER TO COMPLAINT ¶ 558**

No response is required to Paragraph 558, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 558.

**COMPLAINT ¶ 559**

On behalf of himself and the California Subclass, Plaintiff A.R. seeks relief as prayed for below.

**ANSWER TO COMPLAINT ¶ 559**

No response is required to Paragraph 559, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 559.

## TWELFTH CAUSE OF ACTION

### (Violation of California Civil Code §§ 1750 *et seq.*)

**COMPLAINT ¶ 560**

Plaintiffs incorporate the substantive allegations contained in all prior and succeeding paragraphs as if fully set forth herein.

**ANSWER TO COMPLAINT ¶ 560**

Defendants incorporate each and every answer to all prior and succeeding paragraphs as if fully set forth herein.

**COMPLAINT ¶ 561**

To the extent this claim is based directly on affirmative misrepresentations, it is brought by Plaintiff A.R. on behalf of himself and the California Subclass against Defendants Theranos and Walgreens.  Otherwise, Plaintiff A.R. brings this claim on behalf of himself and the California Subclass against all Defendants.

**ANSWER TO COMPLAINT ¶ 561**

No response is required to Paragraph 561, which purports to identify the plaintiffs and defendants for this cause of action.  To the extent a response is required, Defendants deny the allegations in Paragraph 561.

**COMPLAINT ¶ 562**

Walgreens, Theranos, Holmes, and Balwani are "persons" under Cal. Civ. Code § 1761(c).

**ANSWER TO COMPLAINT ¶ 562**

No response is required to Paragraph 562, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 562.

**COMPLAINT ¶ 563**

Plaintiff A.R. and the members of the California Subclass are "consumers"

1 under Cal. Civ. Code § 1761(d).

2 **ANSWER TO COMPLAINT ¶ 563**

3 No response is required to Paragraph 563, which consists of conclusions of law.

4 To the extent a response is required, Defendants deny the allegations in Paragraph 563.

5 **COMPLAINT ¶ 564**

6 Plaintiff A.R. and each California Subclass member's purchase of Theranos

7 tests constitute "transactions" under Cal. Civ. Code § 1761(e).

8 **ANSWER TO COMPLAINT ¶ 564**

9 No response is required to Paragraph 564, which consists of conclusions of law.

10 To the extent a response is required, Defendants deny the allegations in Paragraph 564.

11 **COMPLAINT ¶ 565**

12 Theranos tests are "goods" and/or "services" under Cal. Civ. Code § 1761(a-b).

13 **ANSWER TO COMPLAINT ¶ 565**

14 No response is required to Paragraph 565, which consists of conclusions of law.

15 To the extent a response is required, Defendants deny the allegations in Paragraph 565.

16 **COMPLAINT ¶ 566**

17 Plaintiff A.R. and the California Subclass members purchased Theranos tests

18 for personal, family, and household purposes within the meaning of California Civil

19 Code § 1761(d).

20 **ANSWER TO COMPLAINT ¶ 566**

21 No response is required to Paragraph 566, which consists of conclusions of law.

22 To the extent a response is required, Defendants deny the allegations in Paragraph 566.

23 **COMPLAINT ¶ 567**

24 As alleged herein, Walgreens and Theranos have engaged in unfair or deceptive

25 acts or practices that violated California's Consumer Legal Remedies Act ("CLRA"),

26 Cal. Civ. Code § 1750, *et seq.* by, among other things, representing that Theranos

27 testing services have characteristics, uses, benefits, and qualities which they do not

28 have; representing that Theranos testing services are of a particular standard, quality,

and grade when they are not; and advertising Theranos testing services with the intent not to sell them as advertised.  Cal Civ. Code § 1770 (5), (7), and (9).

**ANSWER TO COMPLAINT ¶ 567**

No response is required to Paragraph 567, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 567.

**COMPLAINT ¶ 568**

Moreover, Walgreens, Theranos, Holmes, and Balwani actively failed to disclose and concealed material facts about Theranos tests, and otherwise engaged in activities with a tendency or capacity to deceive, as described herein.

**ANSWER TO COMPLAINT ¶ 568**

Defendants deny the allegations in Paragraph 568.

**COMPLAINT ¶ 569**

Defendants' misrepresentations and omissions were pervasive.

**ANSWER TO COMPLAINT ¶ 569**

Defendants deny the allegations in Paragraph 569.

**COMPLAINT ¶ 570**

Defendants' CLRA violations materially affected the decisions of Plaintiff A.R. and the California Subclass members.  Plaintiff A.R. and the California Subclass members reasonably relied upon Defendants' respective material misrepresentations and omissions, and would not have purchased Theranos tests or submitted their blood for testing to Defendants had they known the truth.

**ANSWER TO COMPLAINT ¶ 570**

Defendants deny the allegations in Paragraph 570.

**COMPLAINT ¶ 571**

Plaintiff A.R. specifically relied on the omissions by Walgreens, Theranos, Holmes, and Balwani alleged herein.  Had he known the information that was concealed, he would not have submitted to Theranos testing.

1   **ANSWER TO COMPLAINT ¶ 571**

2        Defendants deny the allegations in Paragraph 571.

3   **COMPLAINT ¶ 572**

4        As a result of the CLRA violations described herein, Plaintiff A.R. and the

5   California Subclass have suffered actual damages.

6   **ANSWER TO COMPLAINT ¶ 572**

7        No response is required to Paragraph 572, which consists of conclusions of law.

8   To the extent a response is required, Defendants deny the allegations in Paragraph 572.

9   **COMPLAINT ¶ 573**

10        On behalf of himself and the California Subclass, Plaintiff A.R. seeks attorneys'

11   fees and costs.

12   **ANSWER TO COMPLAINT ¶ 573**

13        No response is required to Paragraph 573, which sets forth a prayer for relief.

14   To the extent a response is required, Defendants deny the allegations in Paragraph 573.

15   **COMPLAINT ¶ 574**

16        In accordance with California Civil Code § 1782(a), Theranos, Walgreens

17   (including Walgreen Arizona Drug Company), Balwani, and Holmes were sent notice

18   of their CLRA violations by certified mail, return receipt requested.  (See Ex. 27

19   hereto).  Each of these Defendants has failed to provide appropriate relief for their

20   CLRA violations within 30 days of these notification letters.  On behalf of himself and

21   the California Subclass, Plaintiff seeks actual and punitive damages for the CLRA

22   violations alleged herein.

23   **ANSWER TO COMPLAINT ¶ 574**

24        No response is required to Paragraph 574, which purports to describe a cause of

25   action in this Complaint.  To the extent a response is required, Defendants deny the

26   allegations in Paragraph 574.

27   **COMPLAINT ¶ 575**

28        Venue is proper under California Civil Code § 1780(d) because Defendants do

business in this county and a substantial portion of the transactions at issue occurred in this county.  Plaintiffs' declaration establishing that this Court has proper venue for this action was attached as Exhibit Q to Plaintiffs' Consolidated Class Action Complaint (Dkt. 88).

**ANSWER TO COMPLAINT ¶ 575**

No response is required to Paragraph 575, which consists of conclusions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 575.

**THIRTEENTH CAUSE OF ACTION**

**(California Civil Code §§ 1709-1710 - Deceit)**

**COMPLAINT ¶ 576**

Plaintiffs incorporate the substantive allegations contained in all prior and succeeding paragraphs as if fully set forth herein.

**ANSWER TO COMPLAINT ¶ 576**

Defendants incorporate each and every answer to all prior and succeeding paragraphs as if fully set forth herein.

**COMPLAINT ¶ 577**

To the extent this claim is based directly on affirmative misrepresentations, it is brought by Plaintiff A.R. on behalf of himself and the California Subclass against Defendants Theranos and Walgreens.  Otherwise, Plaintiff A.R. brings this claim on behalf of himself and the California Subclass against all Defendants.

**ANSWER TO COMPLAINT ¶ 577**

No response is required to Paragraph 577, which purports to identify the plaintiffs and defendants for this cause of action.  To the extent a response is required, Defendants deny the allegations in Paragraph 577.

**COMPLAINT ¶ 578**

California Civil Code § 1709 provides that "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

1    **ANSWER TO COMPLAINT ¶ 578**

2         No response is required to Paragraph 578, which consists of a statement of the

3    law.

4    **COMPLAINT ¶ 579**

5         California Civil Code § 1710 defines "deceit" as (1) The suggestion, as a fact,

6    of that which is not true, by one who does not believe it to be true; (2) The assertion, as

7    a fact, of that which is not true, by one who has no reasonable ground for believing it

8    to be true; (3) The suppression of a fact, by one who is bound to disclose it, or who

9    gives information of other facts which are likely to mislead for want of communication

10   of that fact; or, (4) A promise, made without any intention of performing it.

11   **ANSWER TO COMPLAINT ¶ 579**

12        No response is required to Paragraph 579, which consists of a statement of the

13   law.

14   **COMPLAINT ¶ 580**

15        The material misrepresentations by Theranos and Walgreens and the omissions

16   by Walgreens, Theranos, Holmes, and Balwani alleged herein constitute deceit under

17   California Civil Code § 1710.  Defendants' misrepresentations and omissions were

18   pervasive.  Plaintiff A.R. and the California Subclass have reasonably relied on the

19   material misrepresentations and omissions made by Defendants.  As a result, Plaintiff

20   A.R. and the California Subclass have suffered actual damages.

21   **ANSWER TO COMPLAINT ¶ 580**

22        Defendants deny the allegations in Paragraph 580.

23   **COMPLAINT ¶ 581**

24        Plaintiff A.R. specifically relied on the omissions by Walgreens, Theranos,

25   Holmes, and Balwani alleged herein.  Had he known the information that was

26   concealed, he would not have submitted to Theranos testing.

27   **ANSWER TO COMPLAINT ¶ 581**

28        Defendants deny the allegations in Paragraph 581.

**COMPLAINT ¶ 582**

Each Defendant's misconduct alleged herein was intentional, deliberate, and willful, and was perpetrated by the Defendants with the intent to, inter alia, cause Plaintiff A.R. and the California Subclass to rely on Theranos's unreliable test results in making decisions about their health and treatment.

**ANSWER TO COMPLAINT ¶ 582**

Defendants deny the allegations in Paragraph 582.

**COMPLAINT ¶ 583**

On behalf of himself and the California Subclass, Plaintiff A.R. seeks relief as prayed for below.

**ANSWER TO COMPLAINT ¶ 583**

No response is required to Paragraph 583, which consists of assertions of law. To the extent a response is required, Defendants deny the allegations in Paragraph 583.

## FOURTEENTH CAUSE OF ACTION

### (Medical Battery)

**COMPLAINT ¶ 584**

Plaintiffs incorporate the substantive allegations contained in all prior and succeeding paragraphs as if fully set forth herein.

**ANSWER TO COMPLAINT ¶ 584**

Defendants incorporate each and every answer to all prior and succeeding paragraphs as if fully set forth herein.

**COMPLAINT ¶ 585**

Plaintiffs B.P., R.C., and S.J. bring this claim on behalf of themselves and the Edison Subclass against Defendants Walgreens and Theranos.

**ANSWER TO COMPLAINT ¶ 585**

No response is required to Paragraph 585, which purports to identify the plaintiffs and defendants for this cause of action. To the extent a response is required, Theranos denies the allegations in Paragraph 585.

1    **COMPLAINT ¶ 586**

2        Walgreens and Theranos are, and acted as, medical providers in conducting,

3    overseeing, and assisting with the administration of the "tiny" blood draws and "tests"

4    conducted on Plaintiffs B.P., R.C., and S.J. and the Edison Subclass.

5    **ANSWER TO COMPLAINT ¶ 586**

6        No response is required to Paragraph 586, which consists of conclusions of law.

7    To the extent a response is required, Theranos denies the allegations in Paragraph 586.

8    **COMPLAINT ¶ 587**

9        The "tiny" blood draws conducted on Plaintiffs B.P., R.C., and S.J. and the

10   Edison Subclass, and research and experimentation conducted of the samples

11   collected, constitute medical procedures.

12   **ANSWER TO COMPLAINT ¶ 587**

13       No response is required to Paragraph 587, which consists of conclusions of law.

14   To the extent a response is required, Theranos denies the allegations in Paragraph 587.

15   **COMPLAINT ¶ 588**

16       Defendants Walgreens and Theranos both engaged in non-consensual medical

17   procedures, as alleged herein, that resulted in harmful and offensive contact with

18   Plaintiffs B.P., R.C., and S.J., and the members of the Edison Subclass.

19   **ANSWER TO COMPLAINT ¶ 588**

20       No response is required to Paragraph 588, which consists of conclusions of law.

21   To the extent a response is required, Theranos denies the allegations in Paragraph 588.

22   **COMPLAINT ¶ 589**

23       Plaintiffs B.P., R.C., and S.J., and all of the Edison Subclass members each

24   submitted to one or more so-called "tiny" blood draws at the Wellness Centers.

25   Pursuant to these blood draws, a needle was stuck into their bodies, penetrating their

26   skin and tissue, and blood was drawn from their bodies.

27   **ANSWER TO COMPLAINT ¶ 589**

28       Theranos admits that its capillary (fingerstick) blood draws involved a

1   penetration of a consumer's skin so as to procure a capillary blood sample from the

2   consumer.  Theranos lacks knowledge or information of the remaining allegations in

3   Paragraph 589 sufficient to form a belief as to their truth and therefore denies them on

4   that basis.

5   **COMPLAINT ¶ 590**

6       The vast majority of these "tiny" blood draws occurred in Walgreens stores, and

7   a small portion of them occurred in Theranos Wellness Centers.

8   **ANSWER TO COMPLAINT ¶ 590**

9       Theranos admits that capillary (fingerstick) blood draws occurred at Theranos

10  Wellness Centers located within Walgreens stores.  Theranos lacks knowledge or

11  information of the remaining allegations in Paragraph 590 sufficient to form a belief as

12  to their truth and therefore denies them on that basis.

13  **COMPLAINT ¶ 591**

14      For the Edison Subclass member "tiny" blood draws that were conducted at

15  Walgreens stores, the blood draws were administered by a Walgreens employee or an

16  individual working for both Walgreens and Theranos, often with the assistance and in

17  the presence of a Theranos employee.  In all such cases, both Walgreens and Theranos

18  did acts that resulted in the blood draws and that encouraged the blood draws—

19  including, but not limited to, through their pervasive marketing and encouragement of

20  same, through their provision of the space, infrastructure, support, personnel, and

21  equipment used for the blood draws and related services, and through their direct

22  assistance and involvement with the blood draws and their in-store interactions with

23  the subjects.  Both Walgreens and Theranos, including through their respective

24  employees, did acts that caused the non-consensual "tiny" procedures on each of these

25  subjects, and both companies caused each to occur.

26  **ANSWER TO COMPLAINT ¶ 591**

27      Theranos lacks knowledge or information of the allegations in the first sentence

28  of Paragraph 591 sufficient to form a belief as to their truth and therefore denies them

1   on that basis.  Theranos denies the remaining allegations in Paragraph 591.

2   **COMPLAINT ¶ 592**

3       For the "tiny" blood draws that were conducted at Theranos Wellness Centers,

4   the blood draws were administered by Theranos employees.

5   **ANSWER TO COMPLAINT ¶ 592**

6       Theranos lacks knowledge or information of the allegations in Paragraph 592

7   sufficient to form a belief as to their truth and therefore denies them on that basis.

8   **COMPLAINT ¶ 593**

9       The acts engaged in by Walgreens and Theranos that caused the non-consensual

10  "tiny" procedures were all done intentionally, and also with the intent and knowledge

11  that they would result in harmful and offensive contact.

12  **ANSWER TO COMPLAINT ¶ 593**

13      Theranos admits the knowing taking of capillary (fingerstick) samples.

14  Theranos denies the remaining allegations in Paragraph 593.

15  **COMPLAINT ¶ 594**

16      The non-consensual "tiny" procedures alleged herein that Plaintiffs B.P., R.C.,

17  and S.J., and the Edison Subclass were subjected to were harmful and offensive.  A

18  reasonable person in their situation would have been offended under the

19  circumstances.

20  **ANSWER TO COMPLAINT ¶ 594**

21      Theranos denies the allegations in Paragraph 594.

22  **COMPLAINT ¶ 595**

23      Plaintiffs B.P., R.C., and S.J., and the Edison Subclass members did not consent

24  to these procedures.  Any ostensible "consent" they provided was vitiated under the

25  circumstances and not effective.

26  **ANSWER TO COMPLAINT ¶ 595**

27      Theranos denies the allegations in Paragraph 595.

28

**COMPLAINT ¶ 596**

Plaintiffs B.P., R.C., and S.J., and the Edison Subclass members agreed to submit to these procedures but, as alleged herein, they each did so under false pretenses and under a substantial mistaken belief as to the essential nature and purpose of these procedures.  Moreover, as alleged herein, their consent was procured by fraud, misrepresentations, and material omissions by Theranos and Walgreens.

**ANSWER TO COMPLAINT ¶ 596**

Theranos denies the allegations in Paragraph 596.

**COMPLAINT ¶ 597**

Plaintiffs B.P., R.C., and S.J., and the Edison Subclass members reasonably believed, contemporaneously when they agreed to submit to these "tiny" procedures, that the essential nature and purpose of such procedures was legitimate blood testing.

**ANSWER TO COMPLAINT ¶ 597**

Theranos lacks knowledge or information of the allegations in Paragraph 597 sufficient to form a belief as to their truth and therefore denies them on that basis.

**COMPLAINT ¶ 598**

Theranos and Walgreens both knew contemporaneously that Plaintiffs B.P., R.C., and S.J.'s, and the Edison Subclass members agreed to submit to these procedures under a substantial mistaken belief as to their essential nature and purpose. Theranos and Walgreens both knew that these consumers mistakenly and reasonably believed that the essential nature and purpose of these "tiny" procedures was legitimate blood testing.

**ANSWER TO COMPLAINT ¶ 598**

Theranos denies the allegations in Paragraph 598.

**COMPLAINT ¶ 599**

As alleged herein, pervasive affirmative misrepresentations by Theranos and Walgreens, in the time leading up to and throughout the time these "tiny" procedures were being administered, substantially contributed to Plaintiffs B.P., R.C., and S.J.,

and the Edison Subclass members' mistaken belief regarding the essential nature and purpose.  This included a pervasive joint marketing campaign carried out by Theranos and Walgreens throughout the relevant time period, that encouraged consumers to pay for and submit to "tiny" blood draws for the very purpose of blood testing.  The fundamental premise of this campaign was the portrayal of the "tiny" blood draws and Edison, and of the services generally, as market-ready and reliable and being for legitimate blood testing purposes.

**ANSWER TO COMPLAINT ¶ 599**

Theranos admits that it advertised its blood testing services.  Theranos denies the remaining allegations in Paragraph 599, and denies Plaintiffs' framing of these issues.

**COMPLAINT ¶ 600**

As alleged herein, also substantially contributing to Plaintiffs' B.P., R.C., and S.J., and the Edison Subclass members' mistaken belief regarding the essential nature and purpose of these "tiny" procedures was the entire context, nature, design, and infrastructure of the Wellness Centers in which the "tiny" blood draws were conducted, which both Theranos and Walgreens designed, and which were intentionally designed by Theranos and Walgreens to give the impression, and which did give the clear impression to consumers, that the blood draws being conducted there were for legitimate blood testing purposes.

**ANSWER TO COMPLAINT ¶ 600**

Theranos denies the allegations in Paragraph 600.

**COMPLAINT ¶ 601**

As alleged herein, the concealment of material information by Theranos and Walgreens also substantially contributed to the Edison Subclass members' mistaken belief regarding the essential nature and purpose of these "tiny" procedures. Throughout the relevant time period, even though both Walgreens and Theranos knew that the subjects of these "tiny" blood draws were agreeing to submit to them under a

1  substantial mistaken belief as to the essential nature and purpose, and were thus going

2  to be subject to non- consensual medical procedures in a harmful and offensive way,

3  neither Walgreens nor Theranos took any steps to correct this mistaken belief or to

4  avoid the harmful and offensive contact.  To the contrary, both companies intentionally

5  concealed material information about Edison and the "tiny" blood draws, and actively

6  encouraged, caused, and assisted these procedures.

7  **ANSWER TO COMPLAINT ¶ 601**

8      Theranos denies the allegations in Paragraph 601.

9  **COMPLAINT ¶ 602**

10      Both Walgreens and Theranos intentionally concealed and failed to disclose,

11  inter alia: the truth about the unready Edison technology; that the essential nature and

12  purpose of the "tiny" blood draws was not, and could not have been, legitimate blood

13  testing; and the true essential nature and purposes of the "tiny" blood draws.

14  **ANSWER TO COMPLAINT ¶ 602**

15      Theranos denies the allegations in Paragraph 602.

16  **COMPLAINT ¶ 603**

17      The "tiny" blood draws were not intended by Walgreens and Theranos to

18  provide reliable blood test results (i.e., "legitimate blood testing").

19  **ANSWER TO COMPLAINT ¶ 603**

20      Theranos denies the allegations in Paragraph 603.

21  **COMPLAINT ¶ 604**

22      The essential nature and purpose of the "tiny" blood draws was not legitimate

23  blood testing and, indeed, could not have been legitimate blood testing because, as

24  alleged herein and unbeknownst to the subjects at the time they gave their consent, the

25  Edison technology was still in development, still in prototype, not ready-for-market,

26  and nowhere near in a position to serve that purpose.  Theranos and Walgreens each

27  knew this to be the case throughout the entire time "tiny" blood draws were being

28  conducted at Walgreens and Theranos facilities.  To the extent Walgreens lacked any

ANSWER TO PLAINTIFFS' SECOND
                                            AMENDED COMPLAINT

more detailed knowledge, it was by virtue of its own deliberate choices to ignore and/or avoid such details.

**ANSWER TO COMPLAINT ¶ 604**

Theranos denies the allegations in Paragraph 604.

**COMPLAINT ¶ 605**

As alleged in more detail herein, the true essential nature and purposes of the "tiny" blood draws was to assist efforts to research and develop the still-in-development Edison technology, expedite the narrative of Edison as a "disruptive" technology in the industry, and woo and appease investors, potential investors, and co-investors by creating the false impression that Edison was a market-ready, breakthrough technology.

**ANSWER TO COMPLAINT ¶ 605**

Theranos denies the allegations in Paragraph 605.

**COMPLAINT ¶ 606**

Theranos and Walgreens knew, but Plaintiffs B.P., R.C., and S.J., and the Edison Subclass members could not reasonably have known, the true nature and purposes of these "tiny" procedures.

**ANSWER TO COMPLAINT ¶ 606**

Theranos denies the allegations in Paragraph 606.

**COMPLAINT ¶ 607**

Any purported consent that Plaintiffs B.P., R.C., and S.J. and the Edison Subclass members gave for these procedures was given under a substantial mistake as to their essential nature and purpose, was induced by fraud, concealment, and misrepresentations, and was not effective.

**ANSWER TO COMPLAINT ¶ 607**

No response is required to Paragraph 607, which consists of conclusions of law. To the extent a response is required, Theranos denies the allegations in Paragraph 607.

**COMPLAINT ¶ 608**

Plaintiffs B.P., R.C., and S.J., and Edison Subclass members did not consent to be subjects for experimentation, research, product development, or other undisclosed objectives.

**ANSWER TO COMPLAINT ¶ 608**

Theranos lacks knowledge or information of the allegations in Paragraph 608 sufficient to form a belief as to their truth and therefore denies them on that basis.

**COMPLAINT ¶ 609**

Theranos and Walgreens willfully and tortiously battered Plaintiffs B.P., R.C., and S.J., and the Edison Subclass members.

**ANSWER TO COMPLAINT ¶ 609**

Theranos denies the allegations in Paragraph 609.

**COMPLAINT ¶ 610**

Theranos and Walgreens willfully and tortiously experimented on Plaintiffs B.P., R.C., and S.J., and the Edison Subclass members.

**ANSWER TO COMPLAINT ¶ 610**

Theranos denies the allegations in Paragraph 610.

**COMPLAINT ¶ 611**

Moreover, Theranos and Walgreens each aided and abetted the other in committing the medical battery through their conduct alleged herein.  Both had actual knowledge of the harmful and offensive "tiny" procedures that were occurring, and both took steps that enabled, substantially assisted, encouraged, and were a substantial factor in, the other carrying out these procedures and causing these procedures to occur.  Both Theranos and Walgreens are directly liable for medical battery as to the Edison Subclass members, and are also liable as aiders and abettors.

**ANSWER TO COMPLAINT ¶ 611**

Theranos denies the remaining allegations in Paragraph 611.

**COMPLAINT ¶ 612**

Theranos and Walgreens knew or should have known that their conduct alleged herein regarding the "tiny" blood draws, including but not limited to sticking them with needles, drawing their blood, and willfully experimenting upon Plaintiffs and the Edison Subclass under false pretenses and without obtaining their consent, would be an affront to the dignity of Plaintiffs B.P., R.C., S.J., and the Edison Subclass members as human beings.

**ANSWER TO COMPLAINT ¶ 612**

Theranos denies the allegations in Paragraph 612.

**COMPLAINT ¶ 613**

Theranos's and Walgreens' misconduct alleged herein was intentional, deliberate, and willful.

**ANSWER TO COMPLAINT ¶ 613**

Theranos denies the allegations in Paragraph 613.

**COMPLAINT ¶ 614**

Plaintiffs B.P., R.C., and S.J., and the members of the Edison Subclass were harmed and injured by this conduct.

**ANSWER TO COMPLAINT ¶ 614**

Theranos denies the allegations in Paragraph 614.

**COMPLAINT ¶ 615**

As a foreseeable, proximate, and direct result of Theranos's and Walgreens' conduct, Plaintiffs B.P., R.C., and S.J. and the Edison Subclass members each have suffered a medical battery and have been damaged, including as otherwise set forth in this Complaint, and by invasion of their privacy and bodily integrity without their consent, severe emotional stress and anxiety, and harm to their human dignity and corresponding damages therefrom.

**ANSWER TO COMPLAINT ¶ 615**

No response is required to Paragraph 615, which consists of conclusions of law.

To the extent a response is required, Theranos denies the allegations in Paragraph 615.

**COMPLAINT ¶ 616**

On behalf of themselves and the Edison Subclass, Plaintiffs B.P., R.C., and S.J. seek relief as prayed for below.

**ANSWER TO COMPLAINT ¶ 616**

No response is required to Paragraph 616, which consists of assertions of law. To the extent a response is required, Theranos denies the allegations in Paragraph 616.

<strong>AFFIRMATIVE DEFENSES</strong>

Defendants assert the following defenses and reserve the right to assert other defenses or claims when and if they become appropriate and/or available in this Action.  The statement of any defense herein does not assume the burden of proof for any issue, fact, or element of a claim to which the applicable law places the burden of proof on Plaintiffs.

**1. First Affirmative Defense**

Plaintiffs, and putative class members, fail to state a claim upon which relief can be granted.

**2. Second Affirmative Defense**

If any alleged misrepresentation or omission occurred, which Defendants deny, it was not material as a matter of law.

**3. Third Affirmative Defense**

To the extent Plaintiffs and putative class members allege that they have suffered any damages, such damages are too speculative to be awarded.

**4. Fourth Affirmative Defense**

Plaintiffs' claims, and the claims of putative class members, fail because they seek double-recovery.

**5. Fifth Affirmative Defense**

Plaintiffs' UCL claims, and the UCL claims of putative class members, are barred to the extent Plaintiffs and putative class members have available legal

1    claims for the same alleged misconduct.

2    **6.  Sixth Affirmative Defense**

3       Plaintiffs and putative class members lack standing to pursue their claims.

4    **7.  Seventh Affirmative Defense**

5       Plaintiffs' claims, and the claims of putative class members, fail because, if any

6       alleged misrepresentation or omission occurred, which Defendants deny,

7       Plaintiffs did not rely on those misrepresentations or omissions.

8    **8.  Eighth Affirmative Defense**

9       Plaintiffs' claims, and the claims of putative class members, are barred and/or

10      moot, in whole or in part, as a result of the settlement reached between the

11      Arizona Attorney General and Theranos and/or as a result of the amounts paid

12      by Theranos to the Attorney General of Arizona for refunds to Arizona

13      consumers.

14   **9.  Ninth Affirmative Defense**

15      Plaintiffs' claims, and the claims of putative class members, are barred by the

16      defenses of laches, waiver, ratification, unclean hands, acquiescence, and/or

17      estoppel.

18   **10. Tenth Affirmative Defense**

19      The action is barred, in whole or in part, because Plaintiffs and/or putative class

20      members have failed to establish causation.

21   **11. Eleventh Affirmative Defense**

22      The action is barred, in whole or in part, because Plaintiffs and/or putative class

23      members have failed to establish damages and/or unlawful profits.

24   **12. Twelfth Affirmative Defense**

25      Plaintiffs' UCL claims, and the UCL claims of putative class members, fail

26      because Plaintiffs have no restitutionary remedy available as to Defendants.

27   **13. Thirteenth Affirmative Defense**

28      Plaintiffs and putative class members are not entitled to recover punitive

damages because an award of punitive damages would be unjust, arbitrary and oppressive, confiscatory, and in violation of substantive due process principles under the United States Constitution.

14. **Fourteenth Affirmative Defense**

Plaintiffs and some or all putative class members have waived and/or released their rights and/or are estopped from asserting their claims by virtue of their own acts and conduct, and the acts and conduct of some or all putative class members.  For example, Plaintiffs and some or all putative class members may have received full payment for damages sought in this lawsuit when they cashed refund checks received as a result of the Arizona Attorney General's settlement with Theranos.

15. **Fifteenth Affirmative Defense**

Plaintiffs' claims, and the claims of putative class members, may be barred by an applicable statute, including but not limited to an applicable statute of limitations.

16. **Sixteenth Affirmative Defense**

Plaintiffs' claims, and/or the claims of putative class members, are barred, in whole or in part, by the failure of Plaintiffs to mitigate, minimize, or avoid any damage they allegedly sustained.  For example, Plaintiffs individually, or any other member of any putative class, may have failed to seek the refund they are entitled to as a result of Theranos' settlement with the Arizona Attorney General.

17. **Seventeenth Affirmative Defense**

Plaintiffs' claims, and/or the claims of putative class members, in whole or in part, are barred by the doctrines of res judicata, collateral estoppel, claim preclusion, and/or issue preclusion.

18. **Eighteenth Affirmative Defense**

To the extent the evidence reveals that Plaintiffs' claims, and/or the claims of

putative class members, are barred by the doctrine of Accord and Satisfaction, Defendants asserts this defense as a bar, in whole or in part, to the claims.

19. **Nineteenth Affirmative Defense**

This suit may not be maintained as a class action because:  (1) Plaintiffs will not fairly and adequately protect the interests of the putative class; (2) common issues of fact or law do not predominate over questions affecting only individual members; (3) a class action is not an appropriate method for the fair and efficient adjudication of the controversy; (4) the other requirements of maintaining a class action have not been met; (5) a class action is not an appropriate or superior method for addressing the claims brought by Plaintiffs as individual questions exceed the common questions; and (6) aggregation of claims would deny Defendants due process by depriving Defendants of their rights to discover and present bona fide legal and factual defenses unique to a specific putative class members and transactions.

20. **Twentieth Affirmative Defense**

This action may be barred, in whole or in part, by the pendency of prior filed actions, or through the resolution of individual claims.

21. **Twenty-First Affirmative Defense**

In the absence of specific statutory authorization, Plaintiffs are not entitled to their attorneys' fees, costs, or expenses in this matter.

22. **Twenty-Second Affirmative Defense**

Plaintiffs' claims, and the claims of putative class members, for battery and medical battery are barred by virtue of Plaintiffs' express and/or implied consent to the blood draws.

23. **Twenty-Third Affirmative Defense**

The damages sought by Plaintiffs, and the damages sought by putative class members, are barred because these damages are the result of pre-existing conditions, which were unrelated to Defendants' conduct.

24. **Twenty-Fourth Affirmative Defense**

Plaintiffs, and the putative class members, cannot prove reliance due to the presence of an intervening cause. For example, Plaintiffs, and putitive class members, may have relied on the advice of their doctors or other medical professionals following the provision of Theranos test results.

25. **Twenty-Fifth Affirmative Defense**

If any alleged misstatements or omissions were made (which Defendants deny), the claims of Plaintiffs and/or putative class members are barred as Plaintiffs and/or putative class members failed to exercise reasonable care to discover the facts related to these alleged misstatements/omissions.

26. **Twenty-Sixth Affirmative Defense**

The claims of Plaintiffs and/or putative class members are barred in whole or in part by Plaintiffs' assumption of the risk.

27. **Twenty-Seventh Affirmative Defense**

The claims of Plaintiffs and/or putative class members are barred in whole or in part because Plaintiffs' damages were caused by the actions of other parties and not the Defendants.

28. **Twenty-Eighth Affirmative Defense**

The claims of Plaintiffs and/or putative class members that sound in fraud fail because Plaintiffs have not pled their claims with the requisite particularity.

**ADDITIONAL DEFENSES**

Defendants adopt and incorporate by reference any and all other defenses asserted, or to be asserted, by any other defendant joined in this Action to the extent that Defendants may share in such defenses. Defendants hereby give notice that they intend to rely upon such other and further defenses as may become available or apparent at any time and hereby reserve all rights to amend and/or supplement any and all defenses set forth herein.

**PRAYER FOR RELIEF**

ANSWER TO PLAINTIFFS' SECOND
                                                           AMENDED COMPLAINT

1        Wherefore, Defendants respectfully request that the Court enter an Order:

2    A.   That the Court deny any request to certify this as a class action;

3    B.   Denying Plaintiffs' Prayer for Relief;

4    C.   Entering judgment against Plaintiffs and in favor of Defendants;

5    D.   Dismissing the Complaint with prejudice;

6    E.   Awarding Defendants their reasonable costs and expenses, including reasonable

7         attorney's fees, incurred in connection with this Action; and

8    F.   Granting Defendants any such other and further relief that this Court deems just

9         and proper.

10

11   DATED:  May 10, 2018                    Respectfully submitted,

12                                           WILMER CUTLER PICKERING
                                             HALE AND DORR LLP
13
                                    By:      */s/ Christopher T. Casamassima*
14                                           Christopher T. Casamassima

15

16                                           Christopher T. Casamassima
                                             Michael A. Mugmon
17                                           Matthew D. Benedetto
                                             Katie Moran
18                                           WILMER CUTLER PICKERING
                                             HALE AND DORR LLP
19
20                                           *Counsel for Defendant Theranos, Inc.*

21                                           */s/ Kathleen H. Goodhart*
22                                           Kathleen H. Goodhart

23
                                             Stephen C. Neal
24                                           Kathleen H. Goodhart
                                             COOLEY LLP
25
26                                           *Counsel for Defendant Elizabeth
                                             Holmes*
27
                                             */s/ Stephen M. Rummage*
28                                           Stephen M. Rummage

                                  227        ANSWER TO PLAINTIFFS' SECOND
                                             AMENDED COMPLAINT

1

2
Stephen M. Rummage
3
Ben Byer
DAVIS WRIGHT TREMAINE LLP
4
*Counsel for Defendant Ramesh Balwani*
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANSWER TO PLAINTIFFS' SECOND
AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2018, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

By:   _/s/  Christopher T. Casamassima_
Christopher T. Casamassima