Mark D. Samson, Bar No. 011076
Ron Kilgard, Bar No. 005902
Alison E. Chase, Bar No. 028987
KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone:  (602) 248-0088
Facsimile:  (602) 248-2822
msamson@kellerrohrback.com
rkilgard@kellerrohrback.com
achase@kellerrohrback.com

Michael W. Sobol (*Pro Hac Vice*)
Roger N. Heller (*Pro Hac Vice*)
Melissa Gardner (*Pro Hac Vice*)
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008
msobol@lchb.com
rheller@lchb.com
mgardner@lchb.com

*Co-Lead Class Counsel*
[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

In re:

Arizona THERANOS, INC. Litigation,

**No. 2:16-cv-2138- DGC**

(Consolidated with)
No. 2:16-cv-2373- HRH
No. 2:16-cv-2660- HRH
No. 2:16-cv-2775- DGC
-and-
No. 2:16-cv-3599- DGC

**PLAINTIFFS' MEMORANDUM IN
SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENTS**

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ....................................................................................................1

II.    BACKGROUND .....................................................................................................2

III.   THE PROPOSED SETTLEMENT AGREEMENTS, NOTICE
       PROGRAM, AND PLAN OF ALLOCATION ....................................................4

IV.    LEGAL STANDARD .............................................................................................7

V.     THE SETTLEMENTS ARE FAIR, ADEQUATE, AND
       REASONABLE AND MERIT PRELIMINARY APPROVAL ...........................9

       A.     The Class Has Been Adequately Represented. ...........................................9

       B.     The Proposed Settlements Were Negotiated at Arm's Length. ................10

       C.     The Relief Provided for the Class is More Than Adequate. ....................11

              1.     The costs, risks, and delay of trial and appeal. ............................12

              2.     The effectiveness of any proposed method of
                     distributing relief to the Class, including the method of
                     processing Class-member claims. ..................................................14

              3.     The terms of any proposed award of attorney's fees,
                     including timing of payment. ........................................................14

              4.     Any agreement required to be identified under Rule
                     23(e)(3). .........................................................................................15

       D.     The Proposed Settlement Treats Class Members Equitably
              Relative to Each Other. ............................................................................16

VI.    THE PROPOSED NOTICE PROGRAM AND SETTLEMENT
       ADMINISTRATOR SHOULD BE APPROVED ...............................................17

VII.   CONCLUSION .....................................................................................................17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AdTrader, Inc. v. Google LLC*,
   2021 WL 2073816 (N.D. Cal. Mar. 23, 2021)...........................................................17

*In re Apple Inc. Device Performance Litig.*,
   50 F.4th 769 (9th Cir. 2022) .....................................................................................15

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) .............................................................................. 10, 15

*Briseno v. Henderson*,
   998 F.3d 1014 (9th Cir. 2021)...............................................................................8, 10

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., and Prods. Liab.
   Litig.*,
   2019 WL 536661 (N.D. Cal. Feb. 11, 2019) ............................................................11

*Churchill Vill. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ..................................................................8, 9, 11, 12

*Cotter v. Lyft, Inc.*,
   176 F. Supp. 3d 930 (N.D. Cal. 2016).........................................................................8

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006)......................................................................................17

*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*,
   213 F.3d 454 (9th Cir. 2000) ..............................................................................12, 16

*In re Flint Water Cases*,
   571 F. Supp. 3d 746 (E.D. Mich. 2021) ....................................................................10

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)...............................................................................8, 12

*Hesse v. Sprint Corp.*,
   598 F.3d 581 (9th Cir. 2010) .......................................................................................5

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) (*en banc*).....................................................................7

*Kim v. Allison*,
   8 F.4th 1170 (9th Cir. 2021) .............................................................................*passim*

*Low v. Trump Univ., LLC*,
  246 F. Supp. 3d 1295 (S.D. Cal. 2017) ....................................................... 17

*Low v. Trump Univ., LLC*,
  881 F.3d 1111 (9th Cir. 2018)................................................................... 17

*In re MGM Mirage Sec. Litig.*,
  708 F. App'x 894 (9th Cir. 2017) .............................................................. 11

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ............................................................... 10

*Novoa v. GEO Grp., Inc.*,
  2020 WL 6694349 (C.D. Cal. Sept. 14, 2020) ........................................... 17

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) .............................................................. 12, 17

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008).................................................... 16

*In re Oracle Sec. Litig.*,
  1994 WL 502054 (N.D. Cal. June 18, 1994)............................................. 16

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990)................................................................... 15

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ...................................................................... 8

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002).................................................................... 15

*Zwicky v. Diamond Resorts Mgmt. Inc.*,
  343 F.R.D. 101 (D. Ariz. 2022) .................................................................. 8

**Rules**

Fed. R. Civ. P. 23................................................................................ *passim*

**Other Authorities**

4 *Newberg on Class Actions* (4th ed. 2008).................................................. 16

4 *Newberg on Class Actions* (6th ed. 2022)......................................... 8, 9, 10

*Manual for Complex Litigation* (3d ed. 1995) .............................................. 8

## EXHIBITS

EXHIBIT A:                    WALGREENS SETTLEMENT AGREEMENT

         EXHIBIT A1:          EMAIL NOTICE A
         EXHIBIT A2:          EMAIL NOTICE B
         EXHIBIT A3:          POSTCARD NOTICE A
         EXHIBIT A4:          POSTCARD NOTICE B
         EXHIBIT A5:          DIGITAL NOTICE
         EXHIBIT A6:          LONG FORM NOTICE
         EXHIBIT A7:          PUBLICATION NOTICE
         EXHIBIT B:           PROPOSED PRELIMINARY APPROVAL ORDER
         EXHIBIT C:           PLAN OF ALLOCATION
         EXHIBIT D:           PROPOSED ORDER AND FINAL JUDGMENT

EXHIBIT E:                    BALWANI-PLAINTIFFS SETTLEMENT AGREEMENT

EXHIBIT F:                    THERANOS ASSIGNEE-PLAINTIFFS-WALGREENS
                             AGREEMENT RE: LIQUIDATION TRUST CLAIMS

EXHIBIT G:                    DECLARATION OF GRETCHEN FREEMAN CAPPIO
                             AND ROGER HELLER

EXHIBIT H:                    DECLARATION OF JENNIFER KEOUGH, JND LEGAL
                             ADMINISTRATION

EXHIBIT I:                    DECLARATION OF MARK SAMSON

# I.    INTRODUCTION

After nearly seven years of litigation, Plaintiff Class Representatives, on behalf of themselves and the certified Class ("Plaintiffs") have reached settlements with Defendants Walgreens Boots Alliance, Inc. and Walgreen Arizona Drug Co. (together, "Walgreens"), Ramesh ("Sunny") Balwani, and the entity that holds the remaining assets of the now-dissolved Theranos, Inc. (the "Theranos ABC"). By this Motion, Plaintiffs respectfully request that the Court enter the Preliminary Approval Order submitted herewith, direct issuance of class notice, and set a schedule for final approval.

*The Walgreens Settlement:* There is no hyperbole in describing this litigation as hard-fought and the settlement with Walgreens as hard-won: Plaintiffs saw this case through multiple pleading motions, extensive discovery, class certification, an interlocutory appeal, and summary judgment, with the trial date fast approaching when a settlement was reached. The Walgreens Settlement was negotiated at arm's length and ultimately resulted from a mediator's proposal by retired U.S. District Court Judge Layn R. Phillips.

Nor is there any hyperbole in describing the Walgreens Settlement—by which Walgreens will create a non-reversionary common fund of $44 million—as providing an outstanding result for the Class. The Walgreens Settlement is expected to provide Class members with approximately double their out-of-pocket damages (less amounts already received), and significant additional recoveries for those with battery claims against Walgreens. Class members will receive these payments directly and without a claims process. The Walgreens Settlement provides excellent relief to the Class and should be preliminarily approved.

*The Balwani Settlement and the ABC Agreement:* Plaintiffs have also reached a settlement with Mr. Balwani. Mr. Balwani is now incarcerated and has no meaningful assets available for settlement; however, he has substantial claims against the limited remaining assets of the Theranos ABC. Under the Balwani Settlement, Mr. Balwani will waive his claims against the Theranos ABC's assets—claims which are delaying the distribution of the remaining ABC funds to creditors. Plaintiffs, Walgreens, and the Theranos ABC have also

1

entered into an agreement (the "ABC Agreement") setting the relative value of the Class's and Walgreens's respective claims on the Theranos ABC's remaining assets and providing for the early payment of the Class's claim, which will result in an additional $1,331,094.88 being added to the $44 million common fund created by the Walgreens Settlement. These agreements provide, in Class Counsel's view, the only realistic pathway to secure monetary relief for the Class's claims against Mr. Balwani. Similarly, the early payment arrangement with the Theranos ABC presents the most efficient way to disseminate ABC funds to the Class, allowing them to be distributed with the Walgreens Settlement proceeds, avoiding the costs of a separate settlement administration process.

*Elizabeth Holmes*: Plaintiffs and the Theranos ABC worked diligently for months to reach a settlement with Defendant Holmes. Despite these substantial efforts, which were aided by Judge Phillips' mediation staff, it was ultimately not possible to reach a settlement with Ms. Holmes. Given that Ms. Holmes does not have material personal resources to contribute to a settlement or to pay any judgment against her, Plaintiffs will separately ask the Court to dismiss the claims against her without prejudice, so that any Class member who wishes to continue pursuing such claims against Ms. Holmes may do so.

## II.    BACKGROUND

Once promising to revolutionize health care and claiming a $9 billion valuation, Theranos collapsed spectacularly following a series of disclosures about the company and its technology. In 2016, consumers who had been subjected to Theranos's experimental testing filed four putative consumer class actions in this district. Those actions were consolidated before the Hon. H. Russel Holland. (Dkt. 62). *See* Exhibit G, Declaration of Gretchen Freeman Cappio and Roger Heller ("Cappio/Heller Decl.") at ¶6.

In January 2017, Plaintiffs filed their First Amended Consolidated Class Action Complaint. (Dkt. 107). Two rounds of Rule 12 motions practice followed. Defendants' first motion to dismiss was granted in part and denied in part. (Dkt. 139); Plaintiffs moved for reconsideration, which was granted part and denied in part in turn. (Dkt. 157). In October 2017, Plaintiffs filed the operative Second Amended Consolidated Class Action Complaint.

(Dkt. 159). Defendants again moved to dismiss. After full briefing and oral argument, the Court allowed several of Plaintiffs' claims to proceed. (Dkt. 182).

Meanwhile, it became clear that Theranos could not continue operations. In June 2018, Holmes and Balwani were criminally indicted. Then, in September 2018, Theranos announced that the company would enter into an assignment for the benefit of creditors (as opposed to bankruptcy) and dissolve. This action then proceeded against Walgreens and the individual defendants, without Theranos's active participation.

In March 2020, after extensive discovery—including depositions of the plaintiffs, current and former Walgreens and Theranos executives and employees, production of millions of pages of documents, and substantial third-party discovery—the Court certified a Class and several Subclasses. (Dkt. 369). The Court also appointed Keller Rohrback L.L.P. and Lieff Cabraser Heimann & Bernstein, LLP as Class Counsel. *Id.* Walgreens and Balwani sought and obtained permission to appeal the class certification order pursuant to Federal Rule of Civil Procedure 23(f). In September 2021, the Ninth Circuit largely affirmed the Court's class certification order, but "reverse[d] class certification as to the battery and medical battery claims and remand[ed] to the district court to limit this class to plaintiffs who had blood drawn by Walgreens employees[.]" (Dkt. 396). On remand, the Court decertified the Theranos Edison Subclass and appointed JND Legal Administration ("JND") to provide notice to the certified Class and Subclasses. (Dkt. 447, 482).

The Parties then conducted more merits discovery, served several more expert reports, and took expert depositions. In February 2023, Walgreens sought summary judgment on all certified claims against it. Extensive briefing, including *Daubert* motions, followed. In May 2023, the Court issued its summary judgment order, mostly denying Walgreens' motion, but eliminating Plaintiffs' punitive damages claims. (Dkt. 565).

With a jury trial scheduled for September 2023, Plaintiffs and Walgreens agreed to another mediation, inviting Holmes and Balwani to participate. Cappio/Heller Decl. ¶16. The parties had first mediated with Hon. Layn R. Phillips (Ret.) in early 2017; these efforts were not fruitful. *Id.* ¶14. In November 2022, the parties participated in a settlement conference

with Magistrate Judge Michael T. Morrissey; this effort also did not result in a settlement. *Id.* ¶15. On May 18, 2023, the parties mediated again with Judge Phillips. After twelve hours of intense negotiations, Judge Phillips made a mediator's proposal to settle the case between Walgreens and Plaintiffs, which those parties accepted. *Id.* ¶¶16-17.

Subsequently, Judge Phillips' office continued to facilitate negotiations between Plaintiffs and Mr. Balwani and Ms. Holmes. Mr. Balwani's counsel and Ms. Holmes attended the May 2023 mediation, but settlement with them presented unique issues, *e.g.*, both lack any meaningful financial resources and are serving lengthy terms of incarceration, approximately thirteen years and eleven years, respectively. *Id.* ¶18. Plaintiffs therefore negotiated with counsel for the Theranos ABC about the release of the individual defendants' claims against it, the allowance of Plaintiffs' claims against the liquidation trust in a sum certain, and for the early payment of the Class's claim to facilitate distribution of funds from the Theranos ABC concurrently with the Walgreens Settlement. After much effort, the Balwani Settlement and ABC Agreement were reached. These agreements will result in the addition of approximately $1.33 million for distribution to the Class, on top of the $44 million fund created pursuant to the Walgreens Settlement. *Id.* ¶¶19-20. An agreement with Ms. Holmes, unfortunately, could not be reached.

## III.    THE PROPOSED SETTLEMENT AGREEMENTS, NOTICE PROGRAM, AND PLAN OF ALLOCATION

***Walgreens Settlement:*** The Walgreens Settlement, attached as Exhibit A, provides that Walgreens will pay $44 million (the "Settlement Amount") to create a non-reversionary common fund. After deduction of settlement-administration costs and any Court-approved award of attorneys' fees, reimbursement of litigation expenses, and service awards to the Class Representatives, the settlement funds will be distributed to the Class members in accordance with the proposed Plan of Allocation (Exhibit C), to be approved by the Court. Class members will release all claims against Walgreens with the same factual predicate that they could have asserted in this action, a scope of release consistent with Ninth Circuit precedent. *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010).

As discussed further below, under the proposed Plan of Allocation, all Class members will receive a payment calculated based on double the costs of their Theranos tests, minus any refund they received via the 2017 Arizona Attorney General consent decree, plus a $10 base payment amount. Further, all Walgreens Edison Subclass members will receive an additional payment, estimated between $700 and $1,000, as relief for their battery and medical battery claims. Class member payments will be made automatically by check sent via First Class U.S. mail; Class members need not complete a claim form or provide proof of their out-of-pocket expenditures to obtain their settlement payments.

**Balwani Settlement and the ABC Agreement:** The Class's settlement with Mr. Balwani, attached as Exhibit E, provides that he will release his claims against the Theranos ABC, which are delaying distribution of the limited remaining ABC assets to the Class and other Theranos creditors. Plaintiffs, Walgreens, and the Theranos ABC have also reached an agreement, attached as Exhibit F, regarding the relative value of the Class's and Walgreens' respective claims against the ABC. The ABC Agreement also provides for the early payment of the Class's claim, *id.*, which is necessary to cost-effectively distribute those funds. The ABC funds will be deposited into the Settlement Fund created for the Walgreens Settlement and administered in tandem. The ABC's distribution to the Class will add approximately $1.33 million to the Settlement Fund for the benefit of the Class (representing a significant proportion of the limited remaining ABC assets).

**Settlement Administrator:** Class Counsel propose that the Court appoint JND as Settlement Administrator. The Court previously appointed JND to provide litigation notice to the Class, and JND has fulfilled all of its responsibilities to date. JND has the requisite expertise and capabilities, as well as familiarity with this case.

The proposed notice plan is set forth in Section VI of the Walgreens Settlement and described in the accompanying Declaration of Jennifer Keough ("Keough Decl.") Exhibits A & H, respectively. To summarize: notice will be provided to the Class via direct-mail postcard or email (where available). Exhibits A1-A4. Separate forms of email and postcard notice will be sent to those who are and are not part of the Walgreens Edison Subclass. *See*

Exhibits A1 & A3 (email and postcard notices for non-Walgreens Edison Subclass members); Exhibits A2 & A4 (email and postcard notices for Walgreens Edison Subclass members). All forms of notice will provide the web address for the case-specific website maintained by JND ("Settlement Website").[1] The Long-Form Notice, Exhibit A6, will be available on the Settlement Website, along with other key case documents. The direct mail and email notice will be supplemented with publication and digital notice. Exhibits A7 & A5, respectively. Notice will be published in the *Arizona Republic* and online via a digital ad campaign targeted to reach approximately 8.3 million impressions. JND will also maintain a dedicated toll-free number and respond to email inquiries.[2]

**Plan of Allocation:** The Plan of Allocation, Exhibit C, contemplates that each member of the Class will receive a settlement payment ("Class Member Payment") calculated as: (a) two times the cost of the Class member's Theranos blood testing services ("Theranos Testing Costs"); minus (b) any refunds the Class member received pursuant to the April 1, 2017 Arizona Attorney General Consent Decree with Theranos (the "Class Member Offset"); plus (c) a base payment of $10. Plaintiffs' Expert Arthur Olsen has created a Class Data List that reflects the amount of each Class member's Theranos Testing Costs (based on Theranos's data), and Class Member Offset (based on data provided by the administrator of the Attorney General's Consent Decree refund program).[3] This payment is subject to *pro rata* adjustment, if necessary, as described below.

Members of the Walgreens Edison Subclass will also receive an additional payment as compensation for their battery and medical battery claims ("Walgreens Edison Subclass

---

[1] The address for the website—www.TheranosLawsuit.com—was established in connection with the litigation class notice and will remain the same.

[2] As set forth in Exhibit B hereto, Class Representatives respectfully request that the Court schedule the Fairness Hearing for a date 110 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter, to allow time for disseminating notice to Class Members and for complying with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 *et seq.*

[3] To the extent the Class Data List does not reflect a Class member's Theranos Testing Costs (*i.e.*, missing data), the calculation of those Class member's additional payment amounts will be based on the average Theranos Testing Costs and otherwise calculated in the same manner as the other Class Member Payments.

Member Payment"). The default amount of this payment will be $1,000, like the Class Member Payment, the Walgreens Edison Subclass Payment is subject to *pro rata* adjustment, if necessary, as set forth in the Plan of Allocation and described below. Class counsel estimate, based upon data from Expert Olsen, that the final amount of the Walgreens Edison Subclass Payment will be between $700-$1000. Although the data indicates that the Walgreens Edison Subclass Payment is likely to be closer to $1000, the range of possible payment is provided to be conservative.

Plaintiffs currently estimate that the Net Settlement Fund amount will be sufficient to make the Class Member Payments and Walgreens Edison Subclass Member Payments in the target amounts described above. Cappio/Heller Decl. ¶27. If, however, the total of Class Member Payments and Walgreens Edison Subclass Member Payments will exceed the amount of the Net Settlement Fund, all payments will be reduced proportionally (with the same proportional reduction applied to all Class Member Payments (other than the $10 base payment portion) and all Walgreens Edison Subclass Member Payments). *Id*. Conversely, if the sum of the Class Member Payments and all Walgreens Edison Subclass Member Payments is less than the Net Settlement Fund, all payments (other than the $10 base payment portion) will be proportionally increased. *Id.* Funds remaining in the Settlement Account one year after initial settlement payments issue ("Residual Funds"), will fund a second distribution to Class Members in amounts *pro rata* based on the amount of their initial payment checks, and, to the extent a second distribution is not feasible or does not exhaust the Residual Funds, shall be treated as unclaimed property of the corresponding Class members. No portion of the Settlement Fund will revert to Walgreens, and Walgreens played no role in determining the Plan of Allocation.

## IV.   LEGAL STANDARD

Judicial policy strongly favors settlements, "particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (*en banc*). Approval of a class action settlement is a two-step process. The first step is preliminary approval. Per Rule 23(e)(1)(B)(i), at the preliminary approval stage, a reviewing

court must determine whether it will likely be able to approve the proposed settlement under the factors set forth in Rule 23(e)(2). Generally speaking, the preliminary approval analysis weighs whether the proposed settlement shows "grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval…". *Manual for Complex Litigation* § 30.41 (3d ed. 1995); *see also Zwicky v. Diamond Resorts Mgmt. Inc.*, 343 F.R.D. 101, 119 (D. Ariz. 2022); *Cotter v. Lyft, Inc*., 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016).

Rule 23(e)(2), in turn, directs consideration of the following factors in the approval of a class settlement:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

*See also Briseno v. Henderson*, 998 F.3d 1014, 1025 (9th Cir. 2021) (describing the Ninth Circuit's eight factor test as "fall[ing] within the ambit of the revised Rule [23(e)]").[4] Two of these factors—adequate representation and arm's length negotiation—are "procedural." Fed. R. Civ. P. 23(e)(2) Advisory Comm. Note to 2018 Amendment. The remaining factors

---

[4] Prior to the amendment of Rule 23(e) in 2018, the Ninth Circuit directed consideration of eight factors—often called the *Hanlon* (*Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998)), *Staton* (*Staton v. Boeing Co*., 327 F.3d 938, 960 (9th Cir. 2003)), or *Churchill* (*Churchill Vill. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)) factors—which overlap in substantial respects with the Rule 23(e) factors: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (internal citations and quotation marks omitted).

1   are "substantive" and "look at the adequacy of the class's relief and the equity of its

2   distribution across the class." 4 *Newberg on Class Actions* § 13:13 (6th ed. 2022).

3   **V.   THE SETTLEMENTS MERIT PRELIMINARY APPROVAL**

4   The settlements warrant preliminary approval. The settlements came only after years

5   of hard-fought litigation and were negotiated by experienced Class Counsel, who were well-

6   positioned to understand the risks of the approaching trial. The settlements were the product

7   of serious, arm's-length negotiations, with the Walgreens Settlement resulting from the

8   proposal of one of the country's most respected mediators. The settlements present no

9   deficiencies, treat Class members equitably, and represent an excellent result.

10   **A.   The Class Has Been Adequately Represented.**

11   The Class Representatives and Class Counsel have adequately represented the Class.

12   *See* Fed. R. Civ. P. 23(e)(2)(A). The Advisory Committee's notes state that the nature and

13   amount of discovery conducted, and the adequacy of counsel's information, are factors to

14   consider in the approval of a class settlement. 4 *Newberg on Class Actions* § 13:49 (6th ed.

15   2022). The Ninth Circuit has similarly instructed that "the extent of discovery completed and

16   the stage of the proceedings" should be considered in analyzing the fairness of a proposed

17   class settlement. *Kim*, 8 F.4th at 1178; *Churchill Vill.*, 361 F.3d at 575.

18   Class Counsel have vigorously prosecuted this action for nearly seven years.

19   Cappio/Heller Decl. § B. Walgreens, in particular, vigorously defended this action with the

20   assistance of top-notch and highly experienced counsel. There has been very substantial

21   discovery in this case, during both the class certification and merits phases, which included

22   the production of over 7.8 million pages of documents, 26 fact witness depositions, and 6

23   expert depositions. The parties each retained several expert witnesses, receiving guidance on

24   the diagnostic testing industry, scientific and medical topics, due diligence and financial

25   issues, and more. The settlements were reached only after discovery had closed.

26   Class Counsel are highly qualified lawyers with extensive experience successfully

27   prosecuting complex cases and consumer class actions. Cappio/Heller Decl. § A. Class

28   Counsel were well-versed in the applicable law from the outset, and have become only more

so after two rounds of Rule 12 motions, class certification briefing, an interlocutory appeal, and summary judgment practice. Class Counsel are also well-versed in the facts of this case from the documentary record, depositions, and expert analysis. Class Counsel are well-positioned to assess the benefits of the proposed settlements against the risks of further litigation. Indeed, in certifying the class, the Court found that Class Counsel had and would continue to vigorously prosecute the action. (Dkt. 369 at 12).[5]

**B.     The Proposed Settlements Were Negotiated at Arm's Length.**

The settlements are the product of serious, informed, and non-collusive negotiations at arm's length, satisfying Rule 23(e)(2)(B). Rule 23 directs courts to watch for any signs of collusion, such as a settlement that benefits counsel at the expense of the class. *See* 4 *Newberg on Class Actions* § 13:50 (6th ed. 2022). The Ninth Circuit has similarly advised district courts to pay close attention to signs of collusion, such as the presence of a clear sailing arrangement, a disproportionate distribution of the settlement to counsel, and/or the presence of a reverter clause. *Briseno*, 998 F.3d at 1023; *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). The settlements bear no hallmark of collusion, such as a clear sailing provision, disproportionate payment of the settlement amount to counsel, or a reverter.

Rather, the settlements came only after extensive discovery, years of adversarial litigation, and several attempts at mediation. "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citations omitted); *see also* 4 *Newberg on Class Actions* § 13:14 (6th ed. 2022) The involvement of Ret. U.S. District Judge Layn Phillips as mediator further confirms that the Settlements were reached at arms' length. *See id.* ("Courts have also found collusion less likely when settlement negotiations are conducted by a third-party mediator."). There is "no better evidence" of a "truly adversarial bargaining process" than the presence of a neutral third-party mediator. *In re*

---

[5] All of the Class Representatives are Class members and B.P. is a Walgreens Edison Subclass member, such that the Class and Subclass are represented adequately.

*Flint Water Cases*, 571 F. Supp. 3d 746, 780 (E.D. Mich. 2021). Judge Phillips oversaw two mediation sessions—occurring years apart—and Magistrate Judge Morrissey also conducted a settlement conference with the parties. Before each of these mediations, the parties prepared substantial briefing and presented evidence for the mediators' consideration.

Plaintiffs' settlement with Walgreens was the result of a mediator's recommendation, further demonstrating the absence of any collusion. *See, e.g.*, *In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 897 (9th Cir. 2017) (finding a settlement was not collusive where "the parties reached a settlement after extensive negotiations before a nationally recognized mediator, retired U.S. District Judge Layn R. Phillips"); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., and Prods. Liab. Litig.*, No. 17-md-02777, 2019 WL 536661, *8 (N.D. Cal. Feb. 11, 2019) (finding "procedural indicators confirm adequacy" where "[t]he settlement was vigorously negotiated at arm's length and with the assistance of one of the country's preeminent settlement masters").

Judge Phillips's office was closely engaged in mediation efforts with Mr. Balwani (and Ms. Holmes) as well. Mr. Balwani was represented by counsel at the May 2023 mediation and Ms. Holmes attended personally. Although a settlement was not reached with either individual defendant during that mediation, Judge Phillips's office remained engaged, facilitating ongoing discussions with them under the unusual circumstances presented here, ultimately resulting in the Balwani Settlement and ABC Agreement.

**C.    The Relief Provided for the Class is More Than Adequate.**

The next set of Rule 23(e) factors looks to the substantive fairness of the proposed settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv), Advisory Committee's Note to 2018 Amendment. The Ninth Circuit's case law likewise directs consideration of, *inter alia*, the strength of plaintiffs' case; the risk, expense, and duration of further litigation, including the risk of maintaining class action status through trial; and the amount offered in settlement. *Kim*, 8 F.4th at 1178; *Churchill*, 361 F.3d at 575.

Settlements (particularly class settlements) usually provide only a fraction of potential recovery. It is the very nature of a settlement that a litigant must compromise the amount

they are willing to pay or receive, so "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982). Here, however, the settlements provide relief that is estimated to be approximately *double* the amount of Class members' unreimbursed Theranos Testing Costs (less amounts received) and a *substantial* additional recovery for the Walgreens Edison Subclass members, in an amount estimated at $700-$1,000 *each*.

The settlements are not only adequate—they might fairly be described as outstanding. Indeed, the outcome of the Arizona Attorney General's action against Theranos underscores the exceptional recovery obtained here, as the proposed Walgreens Settlement standing alone provides substantially greater relief for the Class than that consent agreement. *Cf., e.g.*, *Kim*, 8 F.4th at 1178; *Churchill*, 361 F.3d at 575 (considering presence of governmental participant as relevant factor in settlement approval calculus).

  **1. The costs, risks, and delay of trial and appeal.**

The risk of continued litigation must be balanced against the certainty and immediacy of recovery from the settlements. *See Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 458 (9th Cir. 2000); *Hanlon*, 150 F.3d at 1026. Given the benefit to the Class provided by the settlements—making them whole plus a substantial additional payment for those with battery claims—continued litigation is simply a risk not worth taking. As to Walgreens, further litigation presents not only the risk that the Class might lose liability at trial or on appeal, but also the risk that the Class might recover less through trial than is being offered through settlement. As to Mr. Balwani, further litigation carries an overwhelming likelihood of no recovery at all. The Balwani Settlement presents the only realistic chance for the Class to obtain any benefit from their claims against him.

Focusing on Walgreens, Class Counsel believe that the evidence strongly supports a jury finding that Walgreens acted at least with willful ignorance. But Class Counsel also recognize the risks of proceeding to trial. Walgreens asserts both legal and factual defenses to Plaintiffs' claims, including that it was a victim of Theranos's fraud and did not know that

Theranos's tests were not market-ready. Walgreens is likewise defended by experienced counsel who have vigorously defended this case. Indeed, this Court noted, in its Summary Judgment Order, that Walgreens presented "potent arguments" that "may well persuade a jury to rule in favor of Walgreens at trial." (Dkt. 565 at 23). Plaintiffs' battery and medical battery claims against Walgreens present additional uncertainties of fact and law.

Even if Plaintiffs were successful in establishing Walgreens' liability, a jury might well return a verdict smaller than the Settlement Amount. This is particularly so for the Walgreens Edison Subclass, given uncertainty around the assessment of damages for the bodily invasion. The battery giving rise to the potential dignitary damage involved a finger prick. There is a real risk that—even if Walgreens were found liable—the Class would recover less through a trial, while incurring substantial additional expenses and fees that would be deducted from the benefit to Class members.

Walgreens, to be sure, also argues that Plaintiffs' claims implicate unsettled questions of law, and that Plaintiffs cannot prove Walgreens' knowledge to the requisite legal standard. This view was represented in Walgreens' petition for interlocutory appeal of this Court's summary judgment order. (Dkt. 575). While Plaintiffs disagree with Walgreens' legal positions, they raise the specter of an appeal. A trial and a possible appeal could delay Class members' recoveries for several more years. Given how long this action has been pending, there would have to be a compelling reason to choose continued litigation over the Walgreens Settlement. There is none.

The risks of continued litigation are arguably even greater with respect to Mr. Balwani. He has no meaningful assets to satisfy a judgment, nor is he likely to gain any during his long incarceration. A victory at trial against Mr. Balwani would be hollow at best. The Balwani Settlement presents, in Class Counsel's assessment, the best possibility for obtaining some actual, monetary benefit for the Class for their claims against Mr. Balwani. The ABC Agreement, which would not exist but for Mr. Balwani's agreement to release his claims against the remaining Theranos ABC assets, provides that the funds made available by virtue of the Balwani Settlement will be available in time for distribution with the

Walgreens' Settlement funds, reducing the costs of notice and administration to the Class.

Class Counsel possess an extensive background in consumer litigation and a deep understanding of the facts of this case. In Class Counsel's informed opinion, further litigation would be contrary to the Class's interests, given the excellent benefits provided by the settlements, and the risk that trial might result in a lesser recovery or a judgment that is simply uncollectable. *See Kim*, 8 F.4th at 1178 (noting that the views "the experience and views of counsel" is a factor in weighing approval of a class settlement).

### 2.    The effectiveness of any proposed method of distributing relief to the Class, including the method of processing Class-member claims.

The settlements' benefits will also be distributed effectively and fairly. A Class Data List has already been created by Plaintiffs' retained expert, based upon data produced in this litigation, and the contact information therein will be updated prior to the sending of settlement notices. The Class Data List reflects the Theranos Testing Costs according to Theranos's records and the amounts of the refunds previously received pursuant to the 2017 Arizona Attorney General Consent Decree. Because of this data, there will be no need for Class members to fill out a claim form, or provide proof of purchase or other documentation, a step that often complicates the distribution of class settlements. Class members' payments will be calculated based upon the available data and a check will be mailed to them.

### 3.    The terms of any proposed award of attorney's fees, including timing of payment.

The Walgreens Settlement provides for a non-reversionary common settlement fund of $44,000,000. Class Counsel intend to seek the Court's approval of a fee measured as one-third of the Walgreens Settlement common fund and will also ask the Court to approve reimbursement of their litigation expenses. Class Counsel will not seek any additional fees from the Balwani Settlement or ABC Agreement, even though those agreements will add additional funds for distribution to the Class members. Under the terms of the Walgreens Settlement, any fees and expenses awarded by the Court will be paid to Class Counsel ten (10) calendar days after the date of Judgment or the order awarding Attorneys' Fees and

Expenses (whichever comes last). *See* Exhibit A at ¶68.

In the Ninth Circuit, attorneys' fees in common fund cases may be calculated by the percentage-of-the-recovery method or the lodestar method. *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784 (9th Cir. 2022); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Although 25% is the starting point (or "benchmark") for a percentage-of-the-recovery award, adjustments are warranted where "circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). The anticipated request here is consistent with applicable standards and justified by the circumstances in this case, including Class Counsel's lodestar in this case which is substantially higher than the fee amount that will be requested. As of the date of this motion, Class Counsel's lodestar exceeds one-third of the Walgreens Settlement Amount; fees will of course continue to increase as Class Counsel continue to work on settlement approval and implementation. To reiterate: Class Counsel will not request any additional fees in connection with the Balwani Settlement or ABC Agreement, although those agreements will result in additional funds for the Class.[6]

### 4.   Any agreement required to be identified under Rule 23(e)(3).

Pursuant to Rule 23(e)(3), Class Counsel have identified all agreements made in connection with the Settlements. For the sake of clarity, these include the ABC Agreement, attached hereto as Exhibit F. The ABC Agreement is entirely separate and independent of Plaintiffs' settlement with Walgreens, and Plaintiffs' settlement with Walgreens is in no way dependent upon the ABC Agreement, the Balwani Agreement, or any other proceedings regarding Balwani or the ABC. Rather, as noted above, Plaintiffs' settlement with Walgreens was the result of a mediator's proposal and the settlement with Mr. Balwani was reached after the mediation, with the further assistance of the mediator's staff.

---

[6] As noted above, none of the *Bluetooth* collusion factors are implicated here.

**D.   The Proposed Settlement Treats Class Members Equitably Relative to Each Other.**

Plaintiffs' proposed Plan of Allocation is reasonable. It is estimated that the settlements will provide Class members with approximately double their respective Theranos Testing Costs, minus amounts already received. The Settlements will also provide additional payments (estimated at $700-$1,000) to each Walgreens Edison Subclass member for their battery claims. As set forth in the Declaration of Mark Samson, filed herewith, these payments to the Walgreens Edison Subclass are more than fair and adequate. *Id.* at ¶¶ 5-8.

The Plan of Allocation's proposed method of dividing the Settlement proceeds is fair, reasonable, and based upon the judgment of Class Counsel. "Approval of a plan of allocation of settlement proceeds in a class action ... is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re Oracle Sec. Litig.*, No. 90-0931, 1994 WL 502054, at *1-2 (N.D. Cal. June 18, 1994) (citing *Class Pls. v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992)); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 460 (district court's approval of plan of allocation in a class action is subject to abuse of discretion review). It is reasonable to allocate settlement funds to class members based on the extent of their injuries, their potential recoveries, or the strength of their claims. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008).

The fact that Plaintiffs intend to seek service awards in no way implicates unfairness or raises the specter of inequitable treatment. Incentive awards are typical in class action cases. *See* 4 *Newberg on Class Actions* § 11:38 (4th ed. 2008). Indeed, because the named plaintiffs here have devoted time to this action for nearly seven years—time that no other Class members have had to devote—some compensation for that time, which has led to the creation of a fund benefitting approximately 170,000 other consumers, is both fair and equitable. While discretionary, such awards compensate class representatives for the work they have done on behalf of the class and risks they might undertake in bringing the action. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463.

## VI.   THE PROPOSED NOTICE PROGRAM AND SETTLEMENT ADMINISTRATOR SHOULD BE APPROVED

The proposed notice program comports with Rule 23 and the requirements of due process. This comprehensive plan for disseminating notice—including the direct notice and supplemental forms of notice—is well-designed to reach the Class members and constitutes the best notice practicable under the circumstances. This Court previously approved a similar notice plan (Dkt. 447), and other courts within the Ninth Circuit have approved analogous notice programs. *See, e.g.*, *AdTrader, Inc. v. Google LLC*, No. 17-07082, 2021 WL 2073816 (N.D. Cal. Mar. 23, 2021) (approving notice plan that included direct mailings, emails, and a case-specific website); *Novoa v. GEO Grp., Inc.*, No. 17-2514, 2020 WL 6694349 (C.D. Cal. Sept. 14, 2020) (approving notice plan that included a digital media campaign, emails, publication of notice, and a case specific website).

As notice of pendency was already provided, the parties' agreements do not contemplate an additional period for Class members to opt-out. Ninth Circuit authority is clear that due process does not require a second opt-out period. *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018) ("Our precedent squarely forecloses this argument [that due process requires a second opt-out opportunity"). Nor does Rule 23(e) require an additional opportunity to opt-out after settlement. *Officers for Just.*, 688 F.2d at 622-23; *see also Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1309 (S.D. Cal. 2017) (noting "Rule 23(e) does not require a court to allow a new opportunity to opt out at the settlement stage"). Although discretionary, a second opt-out period is neither required nor necessary under the circumstances of this case. The case has been pending for a lengthy period, the Settlement provides excellent benefits, and there is no reason to delay relief to the Class. *See* Adv. Committee Note to Rule 23(e); *Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006).

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order granting preliminary approval of the proposed settlements, directing dissemination of notice to the Class, and set a schedule for remaining settlement approval proceedings.

DATED this 6th day of September, 2023.

KELLER ROHRBACK L.L.P.


By *s/ Alison E. Chase*
   Mark D. Samson, Bar No. 011076
   Ron Kilgard, Bar No. 005902
   Alison E. Chase, Bar No. 028987
   3101 North Central Avenue, Suite 1400
   Phoenix, AZ 85012
   Telephone:  (602) 248-0088
   Facsimile:  (602) 248-2822
   Email: msamson@kellerrohrback.com
   Email: rkilgard@kellerrohrback.com
   Email: achase@kellerrohrback.com

   Lynn Lincoln Sarko, Bar No. 35345 (*Pro Hac Vice*)
   Gretchen Freeman Cappio (*Pro Hac Vice*)
   Benjamin B. Gould (*Pro Hac Vice*)
   Sydney Read (*Pro Hac Vice*)
   KELLER ROHRBACK L.L.P.
   1201 3rd Ave., Ste. 3200
   Seattle, WA 98101
   Telephone: (206) 623-1900
   Facsimile: (206) 623-3384
   Email: lsarko@kellerrohrback.com
   Email: gcappio@kellerrohrback.com
   Email: bgould@kellerrohrback.com
   Email: sread@kellerrohrback.com

   Michael W. Sobol (*Pro Hac Vice*)
   Roger N. Heller (*Pro Hac Vice*)
   Melissa Gardner (*Pro Hac Vice*)
   Michael K. Sheen (*Pro Hac Vice*)
   John D. Maher (*Pro Hac Vice*)
   Amelia Haselkorn (*Pro Hac Vice*)
   LIEFF CABRASER HEIMANN
   & BERNSTEIN LLP
   275 Battery St, 29th Floor
   San Francisco, CA 94111
   Telephone (415) 956-1000
   Facsimile (415) 956-1008
   Email: msobol@lchb.com
   Email: rheller@lchb.com

Email: mgardner@lchb.com
Email: msheen@lchb.com
Email: jmaher@lchb.com
Email: ehaselkorn@lchb.com

*Co-Lead Class Counsel*

1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 6, 2023, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

*s/ Alison E. Chase*