Mark D. Samson, Bar No. 011076
Ron Kilgard, Bar No. 005902
Alison E. Chase, Bar No. 028987
KELLER ROHRBACK L.L.P.
Telephone:  (602) 248-008
Facsimile:  (602) 248-2822
Email: msamson@kellerrohrback.com
Email: rkilgard@kellerrohrback.com
Email: achase@kellerrohrback.com

Michael W. Sobol (*Pro Hac Vice*)
Roger N. Heller (*Pro Hac Vice*)
Melissa Gardner (*Pro Hac Vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
Email: msobol@lchb.com
Email: rheller@lchb.com
Email: mgardner@lchb.com

*Co-Lead Class Counsel*

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| In re:<br><br>  Arizona THERANOS, INC. Litigation, | **No. 2:16-cv-2138- DGC**<br><br>(Consolidated with)<br>No. 2:16-cv-2373- HRH<br>No. 2:16-cv-2660- HRH<br>No. 2:16-cv-2775- DGC<br>-and-<br>No. 2:16-cv-3599-DGC<br><br>**STIPULATION OF CLASS ACTION SETTLEMENT AND GENERAL RELEASE** |
|---|---|

This Stipulation of Class Action Settlement and General Release, including all exhibits attached hereto (collectively, the "Settlement Agreement"), is entered into as of September 6, 2023, by and between the Plaintiffs (as defined below in paragraph 21), on behalf of themselves and all Class Members (as defined below in paragraph 8), on the one hand, and Defendants Walgreens Boots Alliance, Inc. and Walgreen Arizona Drug Co. (together, "Walgreens") on the other hand, subject to approval of the Court. Together, Plaintiffs and Walgreens are referred to for purposes of this Settlement Agreement as the "Settling Parties."

## I.     RECITALS

A.      In 2016, four putative class actions were filed in the U.S. District Court for the District of Arizona ("the Court") alleging deceptive, unfair, and unlawful conduct by Theranos, Inc. ("Theranos"), Walgreens, Elizabeth Holmes, and Ramesh "Sunny" Balwani, related to Theranos blood testing services. Those cases were consolidated, and amended consolidated complaints were filed in January and October of 2017. Discovery began on April 30, 2018.

B.      In March 2020, after extensive discovery—including depositions of the plaintiffs, current and former Walgreens and Theranos employees and executives, production of millions of pages of documents, and extensive third-party discovery—the Court certified a Class (as defined in paragraph 5), an Arizona Subclass, a California Subclass, and an Edison Subclass to pursue certain claims against the defendants. The Court appointed Class Counsel (as defined below in paragraph 6) as counsel for the Class and Subclasses. It also appointed Plaintiffs A.R., B.P., B.B., D.L., R.G., S.J., and S.L. as class representatives for the Class; Plaintiffs B.P., B.B., D.L., R.G., S.J. and S.L. as class representatives for the Arizona Subclass; Plaintiff A.R. as class representative for the California Subclass; and Plaintiffs B.P. and S.J. as class representatives for the Edison Subclass (Dkt. 369).

C.     From July through September 2022, notice of class certification was provided to members of the certified Class and Subclasses pursuant to a notice plan approved and directed by the Court and implemented by a Court-appointed third-party notice administrator ("2022 Notice"). The 2022 Notice included direct mail/email notice, supplemental notice via digital ads, a press release, a toll-free phone number, and a case website. The 2022 Notice identified the claims that were certified for class treatment and the relief being sought for each claim; noted that certain types of relief were not being pursued by the Class, including "damages or other relief for personal injury, emotional distress, retesting costs, or medical care costs"; and cautioned that if Class Members wanted to pursue such other relief, they needed to exclude themselves (Dkt. 447, 482). A total of 61 timely and valid requests for exclusion were submitted by the Court-ordered deadline (Dkt. 447, 482) and filed with the Court under seal (Dkt. 488).

D.     Additional merits discovery followed, including multiple depositions and additional third-party discovery. Plaintiffs and Walgreens also served expert reports, and five of the parties' designated experts were deposed. Motions to exclude experts were filed and fully briefed.

E.     On February 24, 2023, Walgreens moved for summary judgment on all certified claims. After briefing and oral argument, on May 4, 2023, the Court granted the motion insofar as it sought dismissal of Plaintiffs' request for punitive damages, but otherwise denied the motion (Dkt. 565).

F.     On May 18, 2023, with the trial in this Action (as defined below in paragraph 1) scheduled to begin on September 5, 2023, the Settling Parties, Elizabeth Holmes, and Ramesh "Sunny" Balwani participated in an all-day mediation session before the Hon. Layn R. Phillips (Ret.), during which Walgreens and Plaintiffs reached an agreement in principle to settle all claims between them. Plaintiffs, Holmes, and Balwani continued to participate in mediation discussions, with Plaintiffs and Balwani ultimately agreeing to settle all claims between them.

G.      Walgreens contends that Plaintiffs' and Class Members' claims and allegations of wrongdoing or liability against Walgreens are without merit. Walgreens denies and continues to deny all allegations of wrongdoing or liability, and contends that neither the Plaintiffs nor the Class Members are entitled to relief from Walgreens. It is expressly agreed that neither this Settlement Agreement, nor any document referred to herein, nor any action taken to carry out this Settlement Agreement, is, may be construed as, or may be used as, an admission by Walgreens of any fault, wrongdoing, or liability whatsoever.

H.      Plaintiffs and Class Counsel believe that further prosecution of the Action would be protracted and expensive and, considering the uncertainty and risks inherent in any such litigation, have determined that it is desirable to compromise and settle the claims described herein and to proceed to seek approval, implementation of, and administration of, this Settlement. Plaintiffs and Class Counsel are of the view that a settlement on the terms reflected in this Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Class Members.

I.      This Settlement Agreement supersedes and replaces the Confidential Term Sheet to which Plaintiffs and Walgreens agreed on May 18, 2023.

J.      This Settlement Agreement is contingent upon the issuance by the Court of both Preliminary Approval (as defined below in paragraph 27) and Final Approval (as defined below in paragraph 14). Should the Court not issue Preliminary Approval and Final Approval of the Settlement, the Settling Parties do not waive, and instead expressly reserve, all rights to prosecute and defend the Action as if this Settlement was never reached.

NOW, THEREFORE, in consideration of the promises and mutual covenants set forth herein, and of the releases and dismissals of claims described below, Plaintiffs, on behalf of themselves and as representatives of the Class, and Walgreens agree, subject to the approval of the Court and satisfaction of all the terms and conditions set forth herein, that Plaintiffs' Released Claims (as defined below in paragraph 23) and Walgreens'

Released Claims (as defined below in paragraph 42) shall be finally and fully settled, in the manner and upon the terms and conditions hereafter set forth in this Settlement Agreement.

## II.    DEFINITIONS

The following capitalized terms and phrases shall have the following meanings under the provisions of this Settlement Agreement, whether used in the singular or plural, and whether in the possessive or non-possessive:

1.    "Action" means *In re Arizona Theranos Inc., Litigation*, No. 2:16-cv-2138-DGC (D. Ariz.), including all actions consolidated therein.

2.    "Allocation Amount" means an amount of money payable to an individual Class Member as the allocation of his or her share of the Net Settlement Fund pursuant to the Plan of Allocation.

3.    "Attorneys' Fees and Expenses" means those amount(s) awarded to Class Counsel for attorneys' fees and reimbursement of litigation expenses, in amount(s) to be determined by the Court. Any award of Attorneys' Fees and Expenses shall be paid from the Settlement Fund.

4.    "Attorneys' Fee and Expense Application" means any application that Class Counsel may submit for Attorneys' Fees and Expenses and/or for Service Awards.

5.    "Class" means all purchasers of Theranos testing services, including consumers who paid out-of-pocket, through health insurance, or through any other collateral source (collectively, "purchasers") between November 2013 and June 2016. The following are excluded from the Class and Subclasses: (i) Walgreens and its officers, directors, management, employees, subsidiaries, and affiliates; (ii) the judges in this case and members of their immediate families; and (iii) persons who timely and properly opted out pursuant to Federal Rule of Civil Procedure 23(c)(2)(B). A list of the individuals who timely and properly opted out was filed with the Court under seal (Dkt. 488).

5

6.      "Class Counsel" means Keller Rohrback, L.L.P. and Lieff Cabraser Heimann & Bernstein LLP, which were previously appointed by the Court as Class Counsel (Dkt. 369).

7.      "Class Data List" means the list of Theranos testing patients and their contact and related information reflected in Theranos' patient-testing data (as previously updated by JND Legal Administration for contact information) and compiled by Plaintiffs' database expert, Arthur Olsen.

8.      "Class Member" means a person who falls within the Class definition who has not timely and validly requested exclusion from the Class. For the avoidance of doubt: (a) members of any of the Subclasses are also Class Members; and (b) each Plaintiff is a Class Member.

9.      "Digital Notice" means notice of the settlement by digital ads pursuant to the Notice Plan. The digital ads shall be substantially in the form attached as Exhibit A5 to the Settlement Agreement.

10.     "Effective Date" means the later of (a) the expiration of the time to appeal the Judgment, with no appeal having being filed; and (b) if any such appeal has been filed, the date such appeal has been dismissed or the appellate court has affirmed the Judgment in all material respects and the prescribed time for commencing any further appeal or request for further review in any court has expired; provided, however, that a modification or reversal on appeal of the Attorneys' Fees and Expenses Award and/or any Service Award shall not prevent this Settlement from becoming final and effective if all other aspects of the Judgment have been affirmed.

11.     "Email Notice A" means the notice of settlement emailed to Class Members who are not also in the Walgreens Edison Subclass, substantially in the form of Exhibit A1 hereto.

12.    "Email Notice B" means the notice of settlement emailed to Class Members who are also in the Walgreens Edison Subclass, substantially in the form of Exhibit A2 hereto.

13.    "Fairness Hearing" means the proceedings to be held before the Court to determine whether the Settlement should be finally approved as fair, reasonable, and adequate pursuant to Rule 23(e)(2); whether the Judgment should be entered; and whether the Attorneys' Fee and Expense Application should be granted.

14.    "Final Approval" means issuance of the Judgment by the Court, substantially in the form of Exhibit D, granting final approval of this Settlement Agreement and the releases herein, as binding upon the Settling Parties.

15.    "Judgment" means the order of the District Court approving this Settlement in accordance with the terms of this Settlement Agreement, which shall be substantially in the form of Exhibit D hereto, granting final approval of this Settlement Agreement as binding upon the Settling Parties; holding this Settlement Agreement to be final, fair, reasonable, adequate, and binding on all Settlement Class Members who have not excluded themselves; ordering that the settlement payments be provided as set forth in this Settlement Agreement; ordering the releases as set forth in Section IX of this Settlement Agreement; entering judgment in this case; and retaining continuing jurisdiction over the interpretation, implementation, and enforcement of the Settlement.

16.    "Long-Form Notice" means the Court-approved notice of settlement to be posted by the Settlement Administrator on the Settlement Website, substantially in the form of Exhibit A6 hereto.

17.    "Net Settlement Fund" means the Settlement Fund less the following: any Attorneys' Fees and Expenses awarded by the Court; any Service Awards awarded by the Court; Notice and Administration Expenses; Taxes; Tax Expenses; and any other Court-approved deductions.

18. "Notice and Administration Expenses" means and includes the costs and expenses incurred by the Settlement Administrator (or its subcontractors) associated with implementing the Notice Plan, disseminating Allocation Amounts to Class Members, and carrying out its other responsibilities consistent with the terms of this Settlement Agreement.

19. "Notice Date" means 30 days after entry of the Preliminary Approval Order.

20. "Notice Plan" means the Settlement Administrator's dissemination of notice of the Settlement to the Class Members as set forth in Section VI of this Settlement Agreement, and includes Email Notices A and B, Postcard Notices A and B, Publication Notice, Long-Form Notice, Digital Notice, Settlement Website, and Toll-Free Number. In no event shall the Settlement Administrator disseminate notice in any manner materially different from that set forth in the forms of notice attached hereto, unless the Court so orders or the Settling Parties all agree in writing.

21. "Plaintiffs" means collectively plaintiffs A.J. (as personal representative of the estate of Plaintiff S.J.), A.R., B.B., B.P., D.L., R.G, and S.L. and (if applicable) their respective successors-in-interest, personal representatives, executors, guardians, or other legally appointed persons or entities responsible for handling the business affairs of a deceased person, deceased person's estate, or incapacitated person.

22. "Plaintiffs' Related Parties" means Plaintiffs' respective family members, children, parents, spouses, legal representatives, heirs, executors, administrators, predecessors, successors in interest, transferees, assignees, and anyone else claiming through Plaintiffs.

23. "Plaintiffs' Released Claims" means all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, local, common, statutory, administrative or foreign law, or any other law, rule or regulation, at law or in equity, whether class or individual in nature, whether accrued or unaccrued, whether liquidated or unliquidated, whether matured or unmatured, that Plaintiffs,

8

Plaintiffs' Related Parties, or the Class Members (i) asserted in this Action or (ii) could have asserted in any court or forum that arise out of or are based upon the same allegations, transactions, facts, matters, occurrences, representations, or omissions set forth in this Action and that relate to the purchase of Theranos testing services, including Unknown Claims. Plaintiffs' Released Claims shall in all respects be construed as broadly as possible as to the claims asserted, consistent with all applicable law, to effect complete finality over the Action. Once the settlement is approved, the Class Members will also be bound to the same release.

24.     "Plan of Allocation" means the plan of allocation of the Net Settlement Fund to Class members, attached hereto as Exhibit C, or such other plan of allocation of Allocation Amounts from the Net Settlement Fund to Class Members as the Court may approve.

25.     "Postcard Notice A" means the notice of settlement mailed via postcard to persons in the Class who are <u>not</u> also in the Walgreens Edison Subclass, substantially in the form of Exhibit A3 hereto.

26.     "Postcard Notice B" means the notice of settlement mailed via postcard to persons in the Class who <u>are</u> also in the Walgreens Edison Subclass, substantially in the form of Exhibit A4 hereto.

27.     "Preliminary Approval" means issuance of an order, substantially in the form of Exhibit B, granting preliminary approval of the Settlement.

28.     "Preliminary Approval Order" means the order (or orders) of the Court (a) preliminarily approving this Settlement Agreement, (b) appointing the Settlement Administrator, (c) approving the Notice Plan, (d) enjoining any further prosecution of Plaintiffs' Released Claims, and (e) scheduling a Fairness Hearing. The Preliminary Approval Order shall provide that if this Settlement Agreement is not approved, or is voided, terminated, or fails to become effective for any reason, the Settling Parties shall be returned to the *status quo* that existed immediately prior to the date of execution of this

Settlement Agreement. The Preliminary Approval Order shall be substantially in the form of the order attached hereto as Exhibit B.

29.     "Publication Notice" means the notice of settlement to be published pursuant to the Notice Plan, substantially in the form of Exhibit A7 hereto.

30.     "Released Claims" means and includes the Walgreens' Released Claims and Plaintiffs' Released Claims.

31.     "Released Persons" means and includes all persons and entities released from either the Walgreens' Released Claims or the Plaintiffs' Released Claims pursuant to this Settlement Agreement.

32.     "Releasing Persons" means and includes all persons and entities releasing Walgreens' Released Claims or Plaintiffs' Released Claims.

33.     "Service Awards" means any awards approved by the Court to Plaintiffs as service awards in recognition of their efforts and commitment in the Action on behalf of the Class, in amount(s) to be determined by the Court. Any Service Awards shall be paid from the Settlement Fund.

34.     "Settlement" means the settlement between the Settling Parties in the Action, on the terms and conditions set forth in this Settlement Agreement.

35.     "Settlement Administrator" means JND Legal Administration, subject to Court approval.

36.     "Settlement Amount" means Forty-Four Million Dollars ($44,000,000.00) in cash that Walgreens shall cause to be paid, on a non-reversionary basis, to the Settlement Fund.

37.     "Settlement Fund" means an interest-bearing account, administered by the Settlement Administrator, into which Walgreens shall deposit or cause to be deposited the Settlement Amount.

38.     "Subclasses" refers to the following:

A.     The "Arizona Subclass," which means all purchasers of Theranos testing services in Arizona between November 2013 and June 2016;

B.     The "California Subclass," which means all purchasers of Theranos testing services in California between September 2013 and June 2016; and

C.     The "Walgreens Edison Subclass," which means all purchasers of Theranos testing services who were subjected to "tiny" blood draws by a Walgreens employee between November 2013 and March 2015.

39.     "Unknown Claims" means Released Claims that any of the Releasing Persons do not know or suspect to exist in his, her, or its favor at the time of the release, which if known by him, her, or it, might have affected his, her, or its decision not to object to this settlement or the releases contained herein. With respect to any and all Released Claims, the Releasing Persons stipulate and agree that upon the Effective Date, the Releasing Persons shall, to the fullest extent permitted by law, fully, finally, and forever expressly waive and relinquish with respect to such claims, any and all provisions, rights, and benefits of Section 1542 of the California Civil Code, and any and all similar provisions, rights, and benefits conferred by any law of any state or territory of the United States or principle of common law that is similar, comparable, or equivalent to Section 1542 of the California Civil Code, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY**.

40.     "Walgreens' Counsel" means Sidley Austin LLP and Papetti Samuels Weiss McKirgan LLP.

41.     "Walgreens Edison Subclass Member" means a person within the Walgreens Edison Subclass definition who has not timely and validly requested exclusion.

42.     "Walgreens' Released Claims" means all claims and causes of action of every nature and description against Plaintiffs, Class Members, or Plaintiffs' Related Parties, whether known or unknown, whether arising under federal, state, local, common, statutory, administrative or foreign law, or any other law, rule or regulation, at law or in equity, whether class or individual in nature, whether accrued or unaccrued, whether liquidated or unliquidated, whether matured or unmatured, based upon the institution, prosecution, or settlement of the claims asserted in the Action, except for claims relating to the enforcement of the Settlement.

43.     "Walgreens Released Parties" means Walgreens and all of Walgreens' current, former, and future, direct and indirect, parents, subsidiaries, affiliates, assigns, branches, divisions, owners, predecessors, and successors, and all of their respective former, present, and future directors, officers, members, administrators, agents, insurers, beneficiaries, contractors, trustees, employee benefit plans, representatives, servants, employees, attorneys, units, assignees, heirs, executors, shareholders, investors, and all other individuals and entities acting on Walgreens' behalf.

### III.     SETTLEMENT CONSIDERATION

44.     Within five (5) business days after the issuance of the Judgment, Walgreens shall deposit or cause to be deposited into the Settlement Fund an amount equal to the Settlement Amount less any amounts already paid by Walgreens for Notice and Administration Expenses.

45.     The obligations incurred pursuant to this Settlement Agreement shall be in full and final disposition and settlement of all of Plaintiffs' Released Claims. Once the payment provided for in paragraph 44 is made, Walgreens shall have no further monetary obligations of any sort or kind to Plaintiffs, Plaintiffs' Related Parties, Class Members, or any counsel for same, including Class Counsel. The Settlement Amount paid by Walgreens is Walgreens' sole monetary responsibility under this Settlement Agreement, and Class Members who have not timely excluded themselves from the Class shall not look to any of the Walgreens

Released Parties for satisfaction of any or all of Plaintiffs' Released Claims. Neither Walgreens nor the Walgreens Released Parties are responsible for payment of Notice and Administration Expenses, Attorneys' Fees and Expenses, or Service Awards, or any other type of payment pursuant to this Settlement Agreement, other than out of the Settlement Fund, as provided herein.

## IV.   TAXES

46.    The Settling Parties agree to, and shall, treat the Settlement Fund as a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. The Settlement Administrator shall timely make such elections as necessary or advisable to carry out the provisions of this Section IV, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

47.    For the purpose of §1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator. The Settlement Administrator shall timely and properly file or cause to be filed all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)). Such returns (as well as the election described in paragraph 46 hereof) shall be consistent with this Section IV and in all events shall reflect that all Taxes (including any estimated Taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund. The Settling Parties and their counsel shall have no responsibility or liability for the Settlement Fund's tax returns or other filings.

48.     All (a) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Settling Parties or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (b) expenses and costs incurred in connection with the operation and implementation of this Section IV (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing, or failing to file, the returns described in this Section IV) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events the Settling Parties and their counsel shall have no liability or responsibility for the Taxes or the Tax Expenses. The Settlement Fund shall indemnify and hold each of the Settling Parties and their counsel harmless for taxes and tax expenses (including, without limitation, taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Settlement Administrator out of the Settlement Fund without prior order from the Court, and the Settlement Administrator shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Class Members any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)(2)); neither the Settling Parties nor their counsel are responsible nor shall they have any liability for any Taxes or Tax Expenses, but Class Counsel will be responsible for supervising the Settlement Administrator in handling all tax obligations.

V.     **PROCEDURES CONNECTED WITH PRELIMINARY APPROVAL**

49.     Plaintiffs, by and through Class Counsel, shall submit the Settlement Agreement (including the exhibits thereto) to the Court and shall apply for entry of an order (the "Preliminary Approval Order"), substantially in the form of Exhibit B attached hereto,

requesting, among other things, preliminary approval of the Settlement set forth in the Settlement Agreement, and approval for the distribution of notice pursuant to the Notice Plan.

50.     The Court shall appoint the Settlement Administrator pursuant to the Preliminary Approval Order. The duties undertaken by the Settlement Administrator shall be as described herein and in the Preliminary Approval Order. All reasonable fees and expenses, including the compensation of the Settlement Administrator, for Notice and Administration Expenses shall be paid from the Settlement Fund, or if the Settlement Fund has not yet been established, shall be paid by Walgreens and any amounts so advanced by Walgreens shall be credited toward Walgreens' payment of the Settlement Amount.

## VI.   NOTICE PLAN

51.     Notice shall be provided according to the Notice Plan, substantially in the forms attached hereto as Exhibits A1–A7, except as may be modified by the Court.

52.     *Email Notice*. By no later than the Notice Date, the Settlement Administrator shall email notice to each person on the Class Data List for which an email address is included in the Class Data List ("Email Notice Recipients"). Email Notice Recipients whom the Class Data List identifies as not being in the Walgreens Edison Subclass shall be sent Email Notice A. Email Notice Recipients whom the Class Data List identifies as being in the Walgreens Edison Subclass shall be sent Email Notice B. Email Notice A and Email Notice B shall be substantially in the forms attached as Exhibits A1 and A2 hereto.

53.     *Postcard Notice*. By no later than the Notice Date, the Settlement Administrator shall send via U.S. Mail (postage pre-paid) notice via postcard to each person on the Class Data List for whom an email address is not included in the Class Data List ("Postcard Notice Recipients"). Postcard Notice Recipients whom the Class Data List identifies as not being in the Walgreens Edison Subclass shall be sent Postcard Notice A. Postcard Notice Recipients whom the Class Data List identifies as being in the Walgreens Edison Subclass shall be sent Postcard Notice B. Postcard Notice A and Postcard Notice B

shall be substantially in the forms attached as Exhibits A3 and A4 hereto. For any Postcard Notices that are returned with forwarding address information, the Settlement Administrator shall promptly re-mail the Postcard Notice to the new address indicated. For any Postcard Notices that are returned as undeliverable without a forwarding address, the Settlement Administrator shall conduct an industry standard "skip trace" to try to identify a more current address and re-mail the Postcard Notice to the extent an updated address is identified.

54.    *Publication Notice.* By no later than ten (10) business days after the Notice Date, the Settlement Administrator shall cause the Publication Notice, substantially in the form attached as Exhibit A7 hereto, to be published one time (at least 1/8 of a page) in the *Arizona Republic*.

55.    *Digital Notice.* Commencing on the Notice Date and continuing for 60 days following the Notice Date, the Settlement Administrator shall implement a social media and internet notice program utilizing the same structure as the social media and internet notice program implemented in connection with the 2022 Notice. (Dkt 445-1, ¶¶ 25–26.) The digital notice shall be in substantially the same form attached as Exhibit A5 hereto.

56.    *Settlement Website.* The Settlement Administrator shall continue to maintain the URL www.TheranosLawsuit.com ("Settlement Website") where Class Members can obtain further information about the terms of this Settlement Agreement, their rights, important dates and deadlines, and related information. The Settlement Website shall include, in PDF format, the Second Amended Consolidated Class Action Complaint, this Settlement Agreement, the Long-Form Notice (substantially in the form attached as Exhibit A6 hereto), the Preliminary Approval Order entered by the Court, Class Counsel's Attorneys' Fee and Expense Application (after it is filed), and other case documents as agreed upon by the Settling Parties and their respective counsel and/or required by the Court, and shall be updated to provide such information/materials before the Notice Date. The Settlement Website shall be optimized for display on mobile phones and shall also

16

contain answers to frequently asked questions. The Settlement Website shall remain operational until at least 180 days after the Effective Date or such other later date as the Settling Parties and their respective counsel may agree.

57.     *Toll-Free Number.* The Settlement Administrator shall continue to maintain a toll-free telephone number ("Toll-Free Number") where Class Members can obtain further information about the Settlement Agreement and their rights, and request that a hard copy Long-Form Notice be mailed to them. The Toll-Free Number shall be updated to provide such information before the Notice Date. The Toll-Free Number shall remain operational until at least 180 days after the Effective Date or such other later date as the Settling Parties and their respective counsel may agree.

58.     *CAFA Notice.* Pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1715 *et seq.* ("CAFA"), notice as required by CAFA shall be provided no later than ten (10) calendar days after this Settlement Agreement is filed with the Court. Walgreens is responsible for the preparation, service, and costs of the CAFA notice.

59.     Class Counsel shall supervise the Settlement Administrator in the performance of the notice functions set forth in this Section VI.

60.     By no later than seven (7) days before the Fairness Hearing, the Settlement Administrator shall certify to the Court that it has complied with the notice requirements set forth herein, and that the notice provided sufficient reach and frequency to alert Class Members to the pendency of the Action, this Settlement Agreement, and their rights thereunder.

## VII.   OPT-OUT REQUESTS AND OBJECTIONS

### A.     **Opt-Out Requests**

61.     Given that Class Members have already had one opportunity to exclude themselves in the Action, and pursuant to Ninth Circuit law, the Settling Parties agree, and shall propose to the Court, that there should not be a second opportunity for Class Members to opt out.

B.   **Objections**

62.    The Long-Form Notice, the Preliminary Approval Order, and the Settlement Website shall state that any objection to the Settlement, or any part of this Settlement Agreement, including any objection to Class Counsel's Attorneys' Fees and Expenses Application and/or Service Awards, be in writing and comply with all the requirements set forth herein and by the Court in the Preliminary Approval Order and in the Long-Form Notice.

63.    To be valid, any objection must: (a) state the case name and number of the Action, *In re Arizona Theranos, Inc. Litigation*, No. 2:16-cv-2138-DGC (D. Ariz.); (b) state the name, address, and telephone number of the objector and must be signed by the objector even if represented by counsel; (c) state whether the objector is objecting to the proposed Settlement, Plan of Allocation, the Attorneys' Fees and Expenses Application, and/or the application for Service Awards; (d) state the objection(s) and the specific reason(s) for each objection, including any legal and evidentiary support the objector wishes to bring to the Court's attention; (e) identify all class actions to which the objector or his or her counsel has previously objected in the previous five years; (f) state the objector's basis for his or her belief that he or she is a Class Member; (g) state whether the objector intends to appear at the Fairness Hearing; (h) if the objector intends to appear at the Fairness Hearing through counsel, state the identity of all attorneys who will appear on the objector's behalf at the Fairness Hearing; and (i) state that the objector submits to the jurisdiction of the Court with respect to the objection or request to be heard and the subject matter of the Settlement of the Action, including, but not limited to, enforcement of the terms of the Settlement Agreement.

64.    Any Class Member who fails to timely file and serve such written statement and provide the required information will not be permitted to present any objections at the Fairness Hearing and such failure will render any such attempted objection untimely and of no effect, including as to any appeal, unless otherwise ordered by the Court. If any

objection is received by the Settlement Administrator, the Settlement Administrator shall immediately forward the objection and all supporting documentation to counsel for the Settling Parties. The failure of the Class Member to comply with the filing requirements herein shall be grounds for striking and/or overruling the objection, even if the objection is submitted to the Settlement Administrator or to counsel for the Settling Parties.

65.    A Class Member's compliance with the foregoing requirements does not in any way guarantee a Class Member the ability to present evidence or testimony at the Fairness Hearing. The decision whether to allow any testimony, argument, or evidence, as well as the scope and duration of any presentations of objections at the Fairness Hearing, will be in the sole discretion of the Court.

66.    If the Court grants Final Approval, Class Counsel shall represent the Class as a whole in all future proceedings in district court or on appeal, even if some Class Members have objected to the Settlement or to Class Counsel's Attorney's Fees and Expenses Application (or any part thereof).

## VIII.   ATTORNEYS' FEES AND EXPENSES, AND SERVICE AWARDS

67.    Class Counsel may submit an Attorneys' Fee and Expense Application requesting an award of Attorneys' Fees and Expenses and/or Service Awards.

68.    Attorneys' Fees and Expenses as awarded by the Court shall be paid to Class Counsel, as ordered, within ten (10) calendar days after the date of Judgment or the order awarding Attorneys' Fees and Expenses (whichever comes last), notwithstanding the existence of any timely filed objections or potential for appeal therefrom, or collateral attack on the Settlement or any part hereof. Attorneys' Fees and Expenses shall be paid solely from the Settlement Fund. Walgreens and the Walgreens Released Parties shall have no responsibility for any payment of attorneys' fees and/or expenses to Class Counsel or Plaintiffs separate from the Settlement Fund. The Attorneys' Fees and Expenses awarded by the Court shall be the total obligation of Walgreens or the Walgreens Released Parties

to pay attorneys' fees and expenses of any kind to Class Counsel in connection with the Action and this Settlement Agreement.

69. In the event that the Effective Date does not occur, or the Judgment or the order awarding Attorneys' Fees and Expenses is reversed or modified, or the Settlement Agreement is canceled or terminated for any other reason, and such reversal, modification, cancellation, or termination becomes Final and Non-Appealable, and in the event that the Attorneys' Fees and Expenses have been paid to any extent, then Class Counsel who received any portion of the Attorneys' Fees and Expenses shall be obligated, within ten (10) calendar days from receiving notice from Walgreens' Counsel or from a court of appropriate jurisdiction, to refund to the Settlement Fund such fees and expenses as have been previously paid to them from the Settlement Fund plus interest thereon at the same rate as earned on the Settlement Fund in an amount consistent with such reversal or modification. Each law firm receiving Attorneys' Fees and Expenses, as a condition of receiving such Attorneys' Fees and Expenses, agrees, on behalf of itself and each partner and/or shareholder of it, that the law firm and its partners and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing this provision, and are each severally liable and responsible for any required repayment.

70. The Settling Parties agree that the Court has authority under this Settlement Agreement to make discretionary Service Awards. Plaintiffs and Class Counsel may ask the Court, as part of the Attorneys' Fee and Expense Application, to award Service Awards to Plaintiffs. Any request for Service Awards will be based on Plaintiffs' time, effort, and commitment in this Action, and will not be based or conditioned upon Plaintiffs' support for the Settlement. Any Service Awards awarded by the Court shall be paid solely from the Settlement Fund, within five (5) calendar days of the Effective Date. Any Service Award awarded by the Court shall be the total obligation of Walgreens or the Walgreens Released Parties to pay money to Plaintiffs in connection with the Action and this Settlement

Agreement, other than amounts due to the Plaintiffs for any Allocation Amounts paid from the Net Settlement Fund.

71.     The Settling Parties agree that the effectiveness of this Settlement Agreement is not contingent upon the Court's approval of any Attorneys' Fees and Expenses Application. If the Court declines to approve, in whole or in part, the Attorneys' Fee and Expense Application, all remaining provisions of the Settlement Agreement shall remain in full force and effect. No decision by the Court, or modification, reversal, or appeal of any decision by the Court, concerning the payment of any Attorneys' Fees and Expenses or Service Awards shall be grounds for cancellation or termination of this Settlement Agreement.

## IX.    RELEASES AND DISMISSAL

72.     Upon the Effective Date, each Plaintiff and each Class Member shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Plaintiffs' Released Claims, including Unknown Claims, against Walgreens, Walgreens' Released Parties, and Walgreens' counsel, whether or not such Plaintiff or Class Member receives a payment from the Settlement Fund. Claims solely to enforce the terms of this Settlement Agreement are not released. For the sake of clarity, any claims that Plaintiffs and the Class Members may have against Elizabeth Holmes, Ramesh ("Sunny") Balawni, and/or Theranos are not released by virtue of this Settlement Agreement.

73.     Upon the Effective Date, Walgreens shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Walgreens' Released Claims against Plaintiffs and Class Counsel. Claims solely to enforce the terms of this Settlement Agreement are not released. For the sake of clarity, any claims that Walgreens may have against Elizabeth Holmes, Ramesh "Sunny" Balwani, and/or Theranos are not released by virtue of this Settlement Agreement.

74.     Upon entry of the Preliminary Approval Order, and as will be provided in the Preliminary Approval Order, pending determination of whether the settlement shall receive Final Approval, all Plaintiffs, Class Members, and Plaintiffs' Related Parties and anyone claiming through or on behalf of any of them, are barred and enjoined from commencing, instituting, prosecuting, or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, either directly, representatively, derivatively, or in any other capacity, asserting the Plaintiffs' Released Claims against any of the Walgreens Released Parties.

## X.     NO ADMISSIONS OF LIABILITY

75.     While retaining their right to deny liability, Walgreens agrees that the Action is being settled voluntarily and after consultation with competent legal counsel. The Settling Parties agree that throughout the course of the litigation of the Action, the Settling Parties and their counsel vigorously prosecuted their claims and/or defenses consistent with the applicable rules of procedure.

76.     The Settling Parties and the Class agree to settle the Released Claims and to execute this Settlement Agreement solely to compromise and settle protracted, complicated, and expensive litigation. Entering into or carrying out this Settlement Agreement, and any negotiations or proceedings related thereto, are not, shall not be construed as, or deemed to be evidence of, an admission or concession by any of the Settling Parties, and shall not be offered or received in evidence in any action or proceeding by or against any Settling Party hereto in any court, administrative agency, or other tribunal for any purpose other than to enforce the provisions of the Settlement, the provisions of this Settlement Agreement, or the provisions of any related agreement, order, judgment, or release. The Settlement Agreement shall not be offered as evidence in the Action except upon Court order to show that the Settling Parties have settled, and for what amount.

## XI.   WITHDRAWAL OR TERMINATION

77.   The Settling Parties shall each have the right to terminate this Settlement Agreement by providing written notice of their election to do so to the other within thirty (30) days of:

(a)   the Court declining to enter the Preliminary Approval Order in substantially the form attached hereto as Exhibit B or failing to grant or maintain preliminary approval of the Settlement Agreement on the material terms provided for in this Settlement Agreement;

(b)   the Court materially modifying the Settlement Agreement in any manner, including, without limitation, one that increases the financial costs to Walgreens, to be determined in Walgreens' sole discretion;

(c)   the Court declining to enter Final Approval in substantially the form attached hereto as Exhibit D or failing to grant or maintain final approval of the Settlement Agreement on the material terms provided for in this Settlement Agreement; or

(d)   the Final Approval of this Settlement Agreement not being affirmed on appeal.

78.   If this Settlement Agreement is not approved, or is voided, terminated, or canceled, or fails to become effective for any reason then: (a) all orders of the Court preliminarily or otherwise approving the Settlement shall be vacated; (b) the Settling Parties shall be returned to the *status quo* that existed in the Action immediately prior to the date of execution of this Settlement Agreement (subject to appropriate extensions of deadlines to enable the Action to proceed); (c) the Settling Parties shall retain their respective rights and defenses as of immediately prior to the date of execution of this Settlement Agreement; and (d) the Settlement Amount, less any Notice and Administration Expenses, Taxes, or Tax Expenses paid, incurred, or due and owing pursuant to this

Settlement Agreement in connection with the Settlement provided for herein, shall be promptly refunded to Walgreens pursuant to written instructions from Walgreens' Counsel.

79.   Alternatively, if the Court declines to enter the Preliminary Approval Order or declines to grant Final Approval (or enters any order that substantially increases the cost or burden of the settlement to Walgreens beyond what is set forth in this Settlement Agreement), the Settling Parties may, but are not required to, modify this Settlement Agreement. Such a modification shall be binding only if it is in writing and executed by Class Counsel and Walgreens' Counsel.

80.   The Settling Parties agree that any settlement between Plaintiffs and any or all of the other Defendants in this Action to settle Plaintiffs' claims in the Action, and any approval or lack of approval (in whole or in part, and by any court) of such settlements between Plaintiffs and the other Defendants, are not material terms of the Settlement Agreement, and that neither such approval or lack of approval shall be a basis for terminating this Settlement Agreement.

## XII.   ADMINISTRATION AND DISTRIBUTION OF THE SETTLEMENT FUND

81.   The Plan of Allocation is set forth in Exhibit C to this Settlement Agreement.

82.   The Settling Parties agree that the Plan of Allocation is not a material term of the Settlement Agreement. Any decision by the Court concerning the Plan of Allocation shall not affect the validity or finality of the Settlement Agreement. Further, it is not a condition of this Settlement Agreement that any particular plan of allocation be approved by the Court. Notwithstanding paragraph 83, any order relating solely to the allocation of the Net Settlement Fund among Class Members, or any request for further judicial review from any order relating solely thereto or reversal or modification of the Plan of Application, shall not operate to terminate the Settlement Agreement.

83.   The Settlement Administrator, subject to the supervision and direction of Class Counsel, and, as may be necessary and appropriate or as circumstances may require,

the Court, shall administer and calculate the Allocation Amounts and shall oversee distribution of the Net Settlement Fund to Class Members.

84.     The Settlement Fund shall be used for the following: (a) to pay Notice and Administration Expenses, to the extent not already paid; (b) to pay Taxes and Tax Expenses; (c) to pay any Attorneys' Fees and Expenses to Class Counsel awarded by the Court; (d) to pay any Service Awards to Plaintiffs awarded by the Court; (e) to pay any other Court-approved expenses; and (f) after the Effective Date, to distribute the Net Settlement Fund to Class Members as provided in the Plan of Allocation or as otherwise directed by the Court.

85.     Each Class Member shall be eligible to receive a distribution from the Net Settlement Fund according to the Plan of Allocation or as otherwise directed by the Court.

86.     After the Effective Date, and in accordance with the terms of the Settlement Agreement and such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Class Members, subject to and in accordance with the Plan of Allocation or as otherwise directed by the Court.

87.     No deductions for taxes will be taken from any payment to Class Members at the time of distribution. Class Members are responsible for paying all taxes due on such payment. Under no circumstance shall Walgreens or the Walgreens Released Parties be held liable for any tax payments with respect to payment, if any. All payments shall be deemed to be paid solely in the year in which such payments are issued. Neither Class Counsel nor Walgreens Counsel purport to provide legal advice on tax matters.

88.     Walgreens and Plaintiffs agree that the Net Settlement Fund shall be only for the benefit of the Class (subject to Attorneys' Fees and Expenses and the other distributions and dispositions provided for in this Settlement Agreement), which does not include those who timely and properly opted out.

89.     This Settlement is a non-reversionary settlement and, if all conditions of the Settlement Agreement are satisfied and the Effective Date occurs, no portion of the Settlement Fund will be returned to Walgreens.

90.     None of the Walgreens Released Parties shall have responsibility for, interest in, or liability whatsoever with respect to the allocation or distribution of the Net Settlement Fund; the Plan of Allocation; the determination, administration, or calculation of Allocation Amounts; the payment or withholding of Taxes or Tax Expenses; or any losses incurred in connection therewith. It is the intention of the Parties that all amounts allocated to the Walgreens Edison Subclass, over and above their allocations as members of the Class, are in settlement of their claims for the torts of battery and medical battery. Neither Walgreens nor Class Counsel make any representation or warranty, or provide any advice, regarding the tax consequences, if any, of this Settlement Agreement.

91.     No Person shall have any claim against Plaintiffs, Class Counsel, Walgreens, Walgreens Released Parties, or the Settlement Administrator, based on allocation and distributions made substantially in accordance with the Settlement Agreement and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court. This does not include any claim by any party for breach of this Settlement Agreement.

92.     Plaintiffs and Class Members agree that neither Walgreens, the Walgreens Released Parties, nor Walgreens' Counsel have any responsibility to pay more than the Settlement Amount, including for any liens or subrogation interests related to Plaintiffs' Released Claims.

## XIII.  CONFIDENTIALITY

93.     The Settling Parties and their respective counsel agree that they will not, at any time, make public statements (which includes press releases, communication to the press or other media, statements in the Internet, speeches, or other communications in public fora) concerning the Settlement or the terms of the Settlement apart from their submissions to the Court, except that (i) the Settling Parties shall have the right to disclose

the Settlement as necessary to comply with their financial, legal, reporting, and securities obligations, (ii) the Settling Parties shall have the right to take actions to enforce the Settlement to the extent necessary; (iii) nothing about this provision shall prevent Class Counsel from communicating with Class Members as necessary to effectuate the Settlement or from identifying this case or the Settlement on their firm websites, using language that does not disparage Walgreens or the Settlement Agreement; and (iv) nothing about this provision shall prevent Walgreens' counsel from identifying this case or the Settlement on their firm websites, using language that does not disparage Plaintiffs or the Settlement Agreement. If asked by any media outlet about the case, the Settling Parties are only to state that the case has settled.

## XIV.  MISCELLANEOUS

94.     **Best Efforts.** The Settling Parties and their respective counsel shall use their best efforts to cause this Settlement Agreement to be approved and consummated. The Settling Parties and their respective counsel shall promptly take such actions as may be reasonably required to obtain Final Approval by the Court of this Settlement Agreement, and to carry out the terms of this Settlement Agreement.

95.     **Finality and Entire Agreement.** The Settling Parties intend this settlement to be a final and complete resolution of all disputes between them with respect to the Action.

96.     **Integration of Exhibits.** This Settlement Agreement, including its exhibits, constitutes the entire agreement among the Settling Parties hereto related to the Action and no representations, warranties, or inducements have been made to any Settling Party concerning this Settlement Agreement other than the representations, warranties, and covenants contained and memorialized in this Settlement Agreement, including the exhibits thereto. The exhibits to this Settlement Agreement are:

Exhibit A     Forms of Notice (Exhibits A1-A7)
Exhibit B     Form of Preliminary Approval Order
Exhibit C     Plan of Allocation

27

Exhibit D       Form of Judgment

97.     **Modification.** The terms and provisions of this Settlement Agreement may not be altered, amended, or modified except in writing signed by all Settling Parties. To the extent there is a conflict between the provisions of this Settlement Agreement, the Preliminary Approval Order, and the Judgment, each such document shall have controlling effect in the following rank order: (1) the Judgment, (2) the Preliminary Approval Order, and (3) this Settlement Agreement.

98.     **Time for Compliance**.  If the date for performance of any act required by or under this Agreement falls on a Saturday, Sunday, or court holiday, that act may be performed on the next business day with the same effect as if it had been performed on the day or within the time specified by or under this Agreement. The Settling Parties reserve the right, by agreement and subject to the Court's approval if the deadline is contained in a Court order, to grant any reasonable extension of time that might be needed to carry out any of the provisions of this Settlement Agreement, without notice to Class Members except that the Settlement Administrator shall ensure that such dates are posted on the Settlement Website.

99.     **Execution in Counterparts.** This Settlement Agreement may be executed in one or more counterparts, and may be exchanged by facsimile, pdf, and/or other imaged signatures, which shall be as effective as original signatures. All executed counterparts taken together shall be deemed to be one and the same instrument. Counsel for the Settling Parties shall exchange among themselves signed counterparts and a complete, assembled executed counterpart shall be filed with the Court.

100.    **Captions**. Captions and section numbers herein are inserted merely for the reader's convenience, and in no way define, limit, construe, or otherwise describe the scope or intent of the provisions of this Settlement Agreement.

101.    **Interpretation.** The Settling Parties and their respective counsel have mutually contributed to the preparation of this Settlement Agreement. No provision of this

Settlement Agreement shall be construed against any Settling Party on the ground that one of the Settling Parties or its counsel drafted the provision. Except as otherwise provided herein, the Settling Parties shall bear their own attorneys' fees and other litigation expenses and costs.

102. **Binding Agreement.** This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties.

103. **Authorization.** Each of the undersigned represents that he or she is fully authorized to execute this Settlement Agreement on behalf of the party for which he or she signs.

104. **Enforcement**. The Court shall retain jurisdiction to enforce, interpret, and implement this Settlement Agreement.

105. **Dispute Resolution and Choice of Law.** The exclusive forum for any dispute arising under or related to this Settlement Agreement, or to enforce the terms of this Settlement Agreement, will be the United States District Court for the District of Arizona. This Settlement Agreement and the exhibits hereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Arizona, and the rights and obligations of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Arizona without giving effect to that State's choice-of-law principles.

106. **No Waiver.** No delay or omission by any Settling Party in exercising any rights under this Settlement Agreement will operate as a waiver of that or any other right. A waiver or consent given by a Settling Party on any one occasion is effective only in that instance and will not be construed as a bar or waiver of any right on any other occasion, unless otherwise agreed in writing.

107. **Notices**. All notices to the Settling Parties or their respective counsel required by this Settlement Agreement shall be made in writing and communicated by mail and fax or email to the following addresses:

If to Plaintiffs or Class Counsel:

Lieff Cabraser Heimann & Bernstein LLP
Attn: Roger N. Heller
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
rheller@lchb.com

Keller Rohrback L.L.P.
Attn: Gretchen Freeman Cappio
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
gcappio@kellerrohrback.com

If to Walgreens Counsel:

Sidley Austin LLP
Attn: Kara L. McCall
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
kmccall@sidley.com

108.    **Protective Orders**. All orders and designations regarding the confidentiality of documents and information ("Protective Orders") remain in effect, and all Settling Parties and counsel remain bound to comply with the Protective Orders, including the provision to certify the destruction of "Confidential" documents.

109.    **No Rescission on Grounds of Mistake**. The Settling Parties acknowledge that they have made their own investigations of the matters covered by this Agreement to the extent they have deemed it necessary to do so. Therefore, the Settling Parties agree that they will not seek to set aside any part of this Settlement Agreement on the grounds of mistake. Moreover, the Settling Parties understand, agree, and expressly assume the risk that any fact not recited, contained, or embodied in this Settlement Agreement may turn

out hereinafter to be other than, different from, or contrary to the facts now known to them or believed by them to be true, and further agree that this Settlement Agreement shall be effective in all respects notwithstanding and shall not be subject to termination, modification, or rescission by reason of any such difference in facts.

IN WITNESS HEREOF the undersigned, being duly authorized, have caused this Settlement Agreement to be executed on the dates shown below and agree that it shall take effect on the last date it is executed by the undersigned.

**APPROVED AS TO FORM**:

Dated:   9/6/2023            **KELLER ROHRBACK LLP**

_____
Lynn Lincoln Sarko
Gretchen Freeman Cappio
lsarko@kellerrohrback.com
gcappio@kellerrohrback.com
KELLER ROHRBACK LLP
1201 Third Ave., Ste. 3200
Seattle, WA 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384

Mark D. Samson
Ron Kilgard
Alison Chase
msamson@kellerrohrback.com
rkilgard@kellerrohrback.com
achase@kellerrohrback.com
KELLER ROHRBACK LLP
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

1

Dated:     9/6/23

LIEFF CABRASER HEIMANN
& BERNSTEIN LLP

2

3

Michael W. Sobol
Roger N. Heller
Melissa Gardner
msobol@lchb.com
rheller@lchb.com
mgardner@lchb.com
LIEFF CABRASER HEIMANN
& BERNSTEIN LLP
275 Battery St, 29th Floor
San Francisco, CA 94111
Telephone (415) 956-1000
Facsimile: (415) 956-1008

*Co-Lead Class Counsel*

4

5

6

7

8

9

10

11

12

13

Dated:     9/6/23

SIDLEY AUSTIN LLP

14

15

Kristen R. Seeger
Kara L. McCall
Lawrence P. Fogel
Stephanie C. Stern
Andrew F. Rodheim
kseeger@sidley.com
kmccall@sidley.com
lawrence.fogel@sidley.com
sstern@sidley.com
arodheim@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Telephone: (321) 853-7000
Facsimile: (312) 853-7036

*Counsel for Defendants Walgreens Boots
Alliance, Inc. and Walgreen Arizona Drug Co.*

16

17

18

19

20

21

22

23

24

25

26

27

28

32

1    IN WITNESS WHEREOF, the Settling Parties have executed this Settlement

2    Agreement in several counterpart originals on the date set forth opposite their names.

3

4    Dated: _September 5, 2023_    _____

5    A.J. (as personal representative for the estate of S.J.)

6

7    Dated: _____    _____

8    B.P.

9

10   Dated: _____    _____

11   D.L.

12

13   Dated: _____    _____

14   A.R.

15

16   Dated: _____    _____

17   R.G.

18

19   Dated: _____    _____

20   S.L.

21

22   Dated: _____    _____

23   B.B.

24

25   Dated: _____    _____

26   for Walgreens Boots Alliance, Inc.

27

28

IN WITNESS WHEREOF, the Settling Parties have executed this Settlement Agreement in several counterpart originals on the date set forth opposite their names.

Dated: _____          _____
                                A.J. (as personal representative for the estate of S.J.)

Dated: 09/06/23 | 11:27 AM PDT  _____
                                B.P.

Dated: _____          _____
                                D.L.

Dated: _____          _____
                                A.R.

Dated: _____          _____
                                R.G.

Dated: _____          _____
                                S.L.

Dated: _____          _____
                                B.B.

Dated: _____          _____
                                for Walgreens Boots Alliance, Inc.

IN WITNESS WHEREOF, the Settling Parties have executed this Settlement Agreement in several counterpart originals on the date set forth opposite their names.

Dated: _____

_____
A.J. (as personal representative for the estate of S.J.)

Dated: _____

_____
B.P.

Dated: 09/05/23 | 2:49 PM PDT
_____

_____
D.L.

Dated: _____

_____
A.R.

Dated: _____

_____
R.G.

Dated: _____

_____
S.L.

Dated: _____

_____
B.B.

Dated: _____

_____
for Walgreens Boots Alliance, Inc.

1       IN WITNESS WHEREOF, the Settling Parties have executed this Settlement

2  Agreement in several counterpart originals on the date set forth opposite their names.

3

4  Dated: _____

5                                      A.J. (as personal representative for the estate of S.J.)

6

7  Dated: _____

8                                      B.P.

9

10  Dated: _____

11                                     D.L.

12

13  Dated: _____09/06/2023_____

14                                    A.R.

15

16  Dated: _____

17                                     R.G.

18

19  Dated: _____

20                                     S.L.

21

22  Dated: _____

23                                     B.B.

24

25  Dated: _____

26                                     for Walgreens Boots Alliance, Inc.

27

28

IN WITNESS WHEREOF, the Settling Parties have executed this Settlement Agreement in several counterpart originals on the date set forth opposite their names.

Dated: _____

_____
A.J. (as personal representative for the estate of S.J.)

Dated: _____

_____
B.P.

Dated: _____

_____
D.L.

Dated: _____

_____
A.R.

Dated: ___09/06/2023___

_____
R.G.

Dated: _____

_____
S.L.

Dated: _____

_____
B.B.

Dated: _____

_____
for Walgreens Boots Alliance, Inc.

1          IN WITNESS WHEREOF, the Settling Parties have executed this Settlement

2    Agreement in several counterpart originals on the date set forth opposite their names.

3

4    Dated: _____

5    _____
    A.J. (as personal representative for the estate of S.J.)

6

7    Dated: _____

    _____
8        B.P.

9

10   Dated: _____

    _____
11       D.L.

12

13   Dated: _____

    _____
14       A.R.

15

16   Dated: _____

    _____
17       R.G.

18

    _S.L._____
19   Dated: _09/06/2023___
    s.l. (Sep 6, 2023 08:40 PDT)

20       S.L.

21

22   Dated: _____

    _____
23       B.B.

24

25   Dated: _____

    _____
26       for Walgreens Boots Alliance, Inc.

27

28

IN WITNESS WHEREOF, the Settling Parties have executed this Settlement Agreement in several counterpart originals on the date set forth opposite their names.

Dated: _____

_____
A.J. (as personal representative for the estate of S.J.)

Dated: _____

_____
B.P.

Dated: _____

_____
D.L.

Dated: _____

_____
A.R.

Dated: _____

_____
R.G.

Dated: _____

_____
S.L.

Dated: _09/05/2023____

*BB*
BB (Sep 5, 2023 16:23 PDT)
_____
B.B.

Dated: _____

_____
for Walgreens Boots Alliance, Inc.

IN WITNESS WHEREOF, the Settling Parties have executed this Settlement Agreement in several counterpart originals on the date set forth opposite their names.

Dated: _____    _____
                          A.J. (as personal representative for the estate of S.J.)

Dated: _____    _____
                          B.P.

Dated: _____    _____
                          D.L.

Dated: _____    _____
                          A.R.

Dated: _____    _____
                          R.G.

Dated: _____    _____
                          S.L.

Dated: _____    _____
                          B.B.

Dated: __9/5/2023_____    _____
                          for Walgreens Boots Alliance, Inc.

Dated: ___9/5/2023___          _____

for Walgreen Arizona Drug Co.