Mark D. Samson, Bar No. 011076
Ron Kilgard, Bar No. 005902
Alison E. Chase, Bar No. 028987
KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822
msamson@kellerrohrback.com
rkilgard@kellerrohrback.com
achase@kellerrohrback.com

Michael W. Sobol (*Pro Hac Vice*)
Roger N. Heller (*Pro Hac Vice*)
Melissa Gardner (*Pro Hac Vice*)
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
msobol@lchb.com
rheller@lchb.com
mgardner@lchb.com

*Co-Lead Class Counsel*
[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

In re:

Arizona THERANOS, INC. Litigation,

**No. 2:16-cv-2138- DGC**

(Consolidated with)
No. 2:16-cv-2373- HRH
No. 2:16-cv-2660- HRH
No. 2:16-cv-2775- DGC
-and-
No. 2:16-cv-3599- DGC

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS**

Hon. David G. Campbell
Courtroom 603
Date: February 6, 2024
Time: 1:00 p.m.

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 3

III.  ARGUMENT .................................................................................................... 8

      A.   The Requested Attorneys' Fees Are Reasonable and Appropriate. .............. 8

           1.   The requested fee is reasonable under a percentage-based
                approach. ......................................................................................... 8

                a.   The results for the Class are outstanding. .............................. 9

                b.   Class Counsel demonstrated superior skill and
                     experience. ........................................................................... 10

                c.   Class Counsel assumed enormous risk in litigating this
                     case for years despite the very real possibility that they
                     would receive nothing for their efforts. ............................... 13

                d.   Class Counsel's fee request is consistent with awards
                     made in comparable cases. ................................................... 16

           2.   Class Counsel's fee request is reasonable in view of the
                lodestar incurred. ............................................................................ 17

                a.   Class Counsel's hours worked are reasonable. .................... 17

                b.   Class Counsel's hourly rates are reasonable. ...................... 18

                c.   The requested fee represents a fraction of their
                     reasonable lodestar. ............................................................. 19

      B.   Counsel's Litigation Expenses Are Reasonable and Should Be
           Reimbursed. ....................................................................................... 20

      C.   The Requested Service Awards Are Justified in This Case. ..................... 21

IV.   CONCLUSION ............................................................................................... 22

i

1

## TABLE OF AUTHORITIES

2

3    **Cases**

4    *Andrews v. Plains All Am. Pipeline L.P.*,
        No. 15-4113, 2022 WL 4453864 (C.D. Cal. Sept. 20, 2022) .......................... 11, 16, 22
5
     *Avila v. LifeLock Inc.*,
6        No. 15-01398, 2020 WL 4362394 (D. Ariz. July 27, 2020)........................................ 18

7    *Benson v. DoubleDown Interactive, LLC*,
        No. 18-525, 2023 WL 3761929 (W.D. Wash. June 1, 2023) ..................................... 16
8
     *Blum v. Stenson*,
9        465 U.S. 886 (1984)................................................................................................... 18

10   *Brawner v. Bank of Am. Nat'l Ass'n*,
        No. 14-02702, 2016 WL 161295 (N.D. Cal. Jan. 14, 2016)...................................... 22
11
     *Camacho v. Bridgeport Fin., Inc.*,
12       523 F.3d 973 (9th Cir. 2008) .................................................................................... 19

13   *Corker v. Costco Wholesale Corp.*,
        No. 19-00290, 2023 WL 6215108 (W.D. Wash. Sept. 25, 2023) .............................. 19
14
     *Deluca v. Farmers Ins. Exch.*,
15       No. 17-00034, 2020 WL 5071700 (N.D. Cal. Aug. 24, 2020) ................................... 10

16   *Fischel v. Equitable Life Assur. Soc'y of U.S.*,
        307 F.3d 997 (9th Cir. 2002) .................................................................................... 20
17
     *Garner v. State Farm Mut. Auto. Ins. Co.*,
18       No. 08 1365, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ...................................... 22

19   *Hanlon v. Chrysler Corp.*,
        150 F.3d 1011 (9th Cir. 1998) .............................................................................. 17, 20
20
     *Harris v. Wells Fargo Bank, N.A.*,
21       No. 17-01146, 2019 WL 13254887 (D. Ariz. May 13, 2019)............................... 20, 22

22   *Hernandez v. Burrtec Waste & Recycling Servs., LLC*,
        No. 21-01490, 2023 WL 5725581 (C.D. Cal. Aug. 21, 2023) ................................... 10
23
     *In re Am. Apparel, Inc. S'holder Litig.*,
24       No. 10-6352, 2014 WL 10212865 (C.D. Cal. July 28, 2014)..................................... 11

25   *In re Apollo Grp. Inc. Sec. Litig.*,
        No. 04-2147, 2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ........................................ 16
26
     *In re Apple Inc. Device Performance Litig.*,
27       50 F.4th 769 (9th Cir. 2022) ..................................................................................... 21

28

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Banner Health Data Breach Litig.*,
No. 16-02696, 2020 WL 12574227 (D. Ariz. Apr. 21, 2020) ...................................... 19

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ........................................................................................ 8

*In re Heritage Bond Litig.*,
No. 02-ML-1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005).............................. 13

*In re Lenovo Adware Litig.*,
No. 15-MD-02624, 2019 WL 1791420 (N.D. Cal. Apr. 24, 2019) ........................... 16

*In re Lidoderm Antitrust Litig.*,
No. 14-02521, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018).................................. 16

*In re Lifelock, Inc. Mktg. & Sales Pracs. Litig.*,
No. 08-MD-1977, 2010 WL 3715138 (D. Ariz. Aug. 31, 2010).......................... 18, 20

*In re Limelight Networks, Inc. Sec. Litig.*,
No. 07-01603, 2011 WL 13185749 (D. Ariz. Mar. 23, 2011).................................... 10

*In re Media Vision Tech. Sec. Litig.*,
913 F. Supp. 1362 (N.D. Cal. 1996) ........................................................................... 21

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
No. 14-md-2541, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ................................ 22

*In re Optical Disk Drive Prod. Antitrust Litig.*,
959 F.3d 922 (9th Cir. 2020) ........................................................................................ 8

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ................................................................................... 13, 15

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ...................................................................................... 18

*Julian v. Swift Transportation Co. Inc.*,
No. 16-00576, 2020 WL 6063293 (D. Ariz. Oct. 14, 2020).................................. 21, 22

*Kerr v. Screen Extras Guild, Inc.*,
526 F.2d 67 (9th Cir. 1975) ........................................................................................ 20

*Koch v. Desert States Emps. & UFCW Unions Pension Plan*,
No. 20-02187, 2021 WL 6063534 (D. Ariz. Dec. 22, 2021) ................ 9, 12, 13, 15, 16

*Munoz v. Big Bus Tours Ltd.*,
No. 18-05761, 2020 WL 13533045 (N.D. Cal. Feb. 12, 2020) .................................. 16

*Ontiveros v. Zamora*,
303 F.R.D. 356 (E.D. Cal 2014) ................................................................................. 20

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Perez v. First Am. Title Ins. Co.*,
    No. 08-01184, 2012 WL 1681968 (D. Ariz. May 14, 2012) ........................... 17, 19, 20

*Quintana v. HealthPlanOne LLC*,
    No. 18-02169, 2019 WL 3342339 (D. Ariz. July 25, 2019)................................... 10, 20

*Reid v. I.C. Sys. Inc.*,
    No. 12-02661, 2018 WL 11352039 (D. Ariz. July 27, 2018)........................................ 9

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ...................................................................................... 21

*Rodriguez v. W. Publ'g Corp.*,
    602 F. App'x 385 (9th Cir. 2015) .............................................................................. 20

*Saliba v. KS Statebank Corp.*,
    No. 20-00503, 2021 WL 4775105 (D. Ariz. Oct. 13, 2021).................................... 22

*Schwartz v. TXU Corp.*,
    No. 02-2243, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ..................................... 11

*Schwarz v. Sec'y of Health & Human Serv.*,
    73 F.3d 895 (9th Cir. 1995) ......................................................................................... 18

*Singer v. Becton Dickinson & Co.*,
    No. 08-821, 2010 WL 2196104 (S.D. Cal. June 1, 2010) .......................................... 10

*Smilovits v. First Solar, Inc.*,
    No. 12-00555, 2020 WL 3636773 (D. Ariz. June 30, 2020)..................................... 16

*Sonoma Sol LLLP v. Truck Ins. Exch.*,
    No. 20-00069, 2021 WL 5238711 (D. Ariz. Nov. 9, 2021) ...................................... 19

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ................................................................... 1, 8, 9, 13, 16

*Zhu v. Taronis Techs. Inc.*,
    No. 19-04529, 2021 WL 871775 (D. Ariz. Mar. 9, 2021).......................................... 21

*Zubia v. Shamrock Foods Co.*,
    No. 16-03128, 2017 WL 10541431 (C.D. Cal. Dec. 21, 2017).................................. 10

**<u>Rules</u>**

Fed. R. Civ. P. 23(h) ........................................................................................................ 8

# I.    INTRODUCTION

After nearly seven years of high-risk litigation, Plaintiffs have achieved settlements with Defendants Walgreens Boots Alliance, Inc. and Walgreens Arizona Drug Co. (together, "Walgreens"), Defendant Ramesh "Sunny" Balwani, and Theranos (assignment for the benefit of creditors, LLC ("Theranos ABC") that will create a common fund of $45.33 million for the benefit of the Class and Subclass. As discussed in the accompanying Motion for Final Approval of Class Action Settlements ("Final Approval Motion"), these Settlements, if approved, will enable payments to the Class Members that compare very favorably to what they could have hoped to achieve if successful at trial and on appeal. In light of this result, Class Counsel[1] respectfully move for attorneys' fees of $13.2 million, reimbursement of approximately $1.16 million in litigation expenses, and service awards of $10,000 to each Class Representative.

These results were achieved against substantial odds and a vigorous, multi-party defense, requiring the prosecution of innovative legal claims and dogged persistence by clients and counsel in the face of many obstacles. Class Counsel request a fee equal to 30% of the Walgreens Settlement amount (which is 29.1% of the combined settlement fund). While this request is slightly higher than the 25% "benchmark" used as a starting point in this Circuit, it is well justified. Courts within the Ninth Circuit have awarded fees above the 25% benchmark where the award is justified by (1) the results achieved; (2) the effort, experience, and skill of counsel; (3) the riskiness of the case and the financial burden shouldered by counsel on a contingency basis; and (4) awards made in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). All of the *Vizcaino* factors firmly support the requested fee here, even before considering Class Counsel's lodestar:

- ***First, Plaintiffs achieved an outstanding monetary result***, even though: (a) Defendant Theranos Inc. ("Theranos") dissolved over five years ago; (b) the two individual Defendants are incarcerated and lack meaningful

---

[1] Class Counsel are the Court-appointed Class Counsel, Keller Rohrback L.L.P. ("Keller Rohrback") and Lieff Cabraser Heimann & Bernstein, LLP ("Lieff Cabraser").

resources to satisfy a judgment; and (c) many Class Members have already received payments from the 2018 Arizona Attorney General ("AZAG") Consent Decree. Indeed, the Settlements will provide payments that compare very favorably to the amounts that Plaintiffs might have hoped to recover at trial, if successful.

- *Second, Class Counsel are highly skilled and experienced, and worked long and hard to achieve this result.* In prosecuting this case since 2016, Class Counsel have demonstrated dedication and effort exceeding even what is required by a typical complex class action. These efforts encompassed numerous high-stakes motions, including multiple pleading motions, class certification, and summary judgment; conducting an exhaustive factual investigation that spanned pre-filing investigation to extensive fact and expert discovery; defending against an interlocutory appeal; identifying Class Members through a detailed analysis of thousands of spreadsheets in the face of Theranos's destruction of key data; extensive fact and expert discovery; and multiple mediation sessions.

- *Third, Class Counsel undertook substantial risks and incurred all expenses on a contingent basis.* In prosecuting this case on behalf of the Class for over seven years on a pure contingency basis, Class Counsel undertook substantial risk and shouldered more than $1 million in litigation expenses. These risks were heightened given the presence of multiple Defendants, highly skilled defense counsel, the novelty of the claims pursued (claims that were particularly innovative on a class basis), the destruction of patient data by Theranos, and the financial status of Theranos and the individual Defendants, Elizabeth Holmes and Balwani.

- *Fourth, the award here is supported by awards in similar cases.* A 30% fee here is justified by the awards in similar cases where the litigation settled shortly before trial, after lengthy and intense litigation, and in light of similar risks.

Counsel's lodestar also fully supports the requested fee. The fee request represents only 51.54% of counsel's lodestar: in all, counsel spent more than 40,856.9 hours litigating this matter, resulting in a total lodestar of more than $25.6 million to date. But counsel seek far less than their lodestar as a fee; the requested fee of $13.2 million thus represents a "negative" (or "fractional") multiplier of 0.52. The litigation expenses that Counsel incurred—including the costs of disseminating notice of class certification in 2022, expert costs, deposition and travel costs, and mediation costs—are modest in light of the

complexity and duration of this action. By any metric, counsel's requested fee is fair and reasonable.

Service awards are appropriate for each of the Class Representatives. Throughout this lengthy litigation, the Class Representatives remained committed to their duties on behalf of the Class. Over the course of seven years, the Class Representatives were called upon countless times for their input on substantive matters, to participate in discovery, and for their views on settlement issues. The Class Representatives participated in written discovery and each sat for a deposition that included extensive examination into their sensitive personal medical information. In short, the Class Representatives remained dedicated to this case throughout its long history, proved themselves to be conscientious representatives of the Class, and Class Counsel respectfully submit that their devoted service should be recognized.

## II.     BACKGROUND

The Final Approval Motion, along with the Joint Declaration of Roger Heller and Gretchen Freeman Cappio filed therewith ("Heller/Cappio Decl."), describe Class Counsel's efforts over roughly seven years to achieve the Settlements. This outstanding result would not have been possible without Class Counsel's labor and devotion of resources and the dedication of the Class Representatives. The Heller/Cappio Declaration provides a detailed overview of the work of Class Counsel and the Class Representatives through twelve stages of this litigation, briefly summarized below:

**Stages 1–3, Prefiling Investigation, Pleadings, Motions to Dismiss, and Written Discovery (April 2016 – April 2018):** The first stages of this litigation encompassed thorough pre-filing investigation, initial complaints, a Consolidated Amended Complaint, a First Amended Complaint, and a Second Amended Complaint. During this period, in addition to investigating the Class's claims and drafting multiple complaints with input from the Class Representatives, counsel defended the action against numerous motions to dismiss and engaged in written discovery with the four Defendants. Each of them, represented by highly skilled counsel from reputable law firms experienced in class action

defense, vigorously defended this case, filing multiple rounds of separate and partially overlapping motions to dismiss the claims. *See* Heller/Cappio Decl. ¶ 8; Dkt. 122, 123, 166, 167. Collectively, these motions raised formidable legal arguments about the plausibility of the Plaintiffs' claims and damages. During the early stages of this case, Plaintiffs also successfully moved for reconsideration and litigated the issue of intervention in the AZAG's action.

Class Counsel devoted 5,221.6 hours to representing the Class during these Stages 1–3. Their efforts are described, and the hours devoted based upon the nature of this work summarized, in the Heller/Cappio Declaration ¶¶ 7–23.

**Stage 4, Document Review and Discovery (May 2018 – November 2018):** Commencing in May 2018—and continuing through December 2022 (Stage 10)—the parties engaged in exhaustive party and non-party document discovery.

Discovery here was unusual given the nature of the alleged enterprise and the fact of Theranos's dissolution in 2018. In total, Plaintiffs received and reviewed more than 7.8 million pages of documents produced by parties and non-parties. By far the largest portion of those came from Theranos. When formal document discovery opened, circumstances had changed significantly for Theranos, and rather than expend its limited resources in a responsiveness review, Theranos produced virtually every potentially relevant document it had. The productions were sizable, containing 1,271,614 documents totaling 7,693,952 pages, including 127,319 "native" Microsoft Excel, CSV, and similar files. The documents themselves were complex, concerning regulatory issues, scientific research, and other technical information that required assistance from industry experts to understand.

Class Counsel served third-party subpoenas on more than twenty business entities and individuals, and issued public records requests to state-level Departments of Health as well as to the FDA, FTC, and DOJ. Class Counsel also continuously monitored developments in other proceedings, including an investigation and complaints by the SEC against Theranos, Holmes, and Balwani (which has settled with Theranos and Holmes), a class action by Theranos investors, the AZAG's Complaint and Consent Decree with

Theranos, inquiries by Congress, and an investigation followed by the federal criminal trials of Holmes and Balwani.

Plaintiffs took nineteen fact witness depositions, including thirteen current or former Walgreens employees (three of whom were designated to testify on particular topics under Federal Rule 30(b)(6)), four former Theranos employees, and two non-party depositions. Topics covered during these depositions were complex, ranging from the nature of Walgreens' investment in Theranos, to regulatory requirements for operating a clinical laboratory, to the technical distinctions between different types of blood testing, and Theranos testing methodologies, among other topics.

Class Counsel devoted 5,480.0 hours to representing the Class during Stage 4. Their efforts are described, and the hours devoted based upon the nature of this work summarized, in the Heller/Cappio Declaration ¶¶ 24–29.

**Stages 5-7, Class Certification, Continued Discovery (December 2018 – May 2020)**: After conducting class certification-related discovery, Class Counsel worked hard to compile the evidence to support their Motion for Class Certification (Dkt. 258).

Walgreens, Balwani, and Holmes presented a formidable defense to class certification. All seven of the Class Representatives were deposed and met with counsel for a full day in advance, in addition to other preparation work. *See* Heller/Cappio Decl. ¶ 36 and Ex. 4 (Class Representative Declarations); Declaration of Matthew George (Kaplan Fox Kilsheimer, LLP, "George Decl.") ¶ 14. In their three briefs opposing certification, Defendants argued that variations in the manner of each Plaintiff's blood collection and subsequent treatment overwhelmed the common questions for the Class. Dkt. 288, 290, 322. Walgreens contended that no common evidence was available to determine which Defendant was responsible for performing the blood draws giving rise to the Subclass Members' battery cause of action. Dkt. 322. To support these arguments, both Walgreens and Balwani filed hundreds of pages of exhibits from discovery produced in this case and other litigations. Analyzing and refuting Defendants' arguments required substantial

additional document review and legal analysis. Dkt. 318. Following a hearing, the Court granted certification of a Class and subclasses on March 6, 2020. Dkt. 363, 368, 369.

Class Counsel devoted 16,561.1 hours to representing the Class during Stages 5-7. Their efforts are described, and the hours devoted based upon the nature of this work summarized, in the Heller/Cappio Declaration ¶¶ 30–42.

**Stage 8**, **Interlocutory Appeal of Class Certification (June 2020 – September 2021**): Walgreens and Balwani each filed Rule 23(f) petitions for interlocutory review of the class certification order, which were granted by the Ninth Circuit. Dkt. 373, 374, 377, 378. With the Class Representatives' concurrence, Class Counsel thereafter worked diligently to address the arguments raised in Walgreens' and Balwani's appellate briefs, which challenged, *inter alia*, Judge Holland's findings regarding the Plaintiffs' adequacy as Class Representatives, the predominance of common questions, and the superiority of a class action in light of the 2018 AZAG Consent Decree. *B.P. v. Balwani et al.*, No. 20-15974, Dkt. 18, 20, 57, 60, 61 (9th Cir.). Following briefing and an oral argument, the Ninth Circuit largely affirmed the class certification order. *Id.* Dkt. 90; *see also* Dkt. 396, 398.

Class Counsel devoted 2,307.8 hours to representing the Class during Stage 8. Their efforts are described, and the hours devoted based upon the nature of this work summarized, in the Heller/Cappio Declaration ¶¶ 43–48.

**Stage 9**, **Analysis of Class Data and Issuance of Class Notice (October 2021 – June 2022**): On remand, Walgreens sought to revisit the certification of the battery subclass in light of the Ninth Circuit's holding that battery claims against Walgreens could only be pursued on behalf of "tiny" blood draw subjects whose blood was drawn by a Walgreens employee. Walgreens argued that, with the LIS database inaccessible, there was no way to determine who fit those criteria.

Class Counsel, however, had analyzed thousands of spreadsheets produced by Theranos that were generated from the LIS database in the regular course of business when it was still accessible. Class Counsel leveraged this analysis to show that data still existed to identify Walgreens Edison Subclass Members and to demonstrate how that could be

done. Dkt. 416-418, 430. Ultimately, the Court denied Walgreens' effort to decertify the Walgreens Edison Subclass. Dkt. 436.

Class Counsel devoted 2,479.0 hours to representing the Class during Stage 9. Their efforts are described, and the hours devoted based upon the nature of this work summarized, in the Heller/Cappio Declaration ¶¶ 49–51.

**Stages 10-11, Conclusion of Merits and Expert Discovery, Trial Setting, Summary Judgment, and Third Successful Mediation (July 2022 – May 2023)**: After the parties completed discovery and made their expert disclosures, Walgreens filed its Motion for Summary Judgment on February 24, 2023. Dkt. 521. Class Counsel again worked diligently to respond to the numerous challenging issues raised by Walgreens (Dkt. 538), analyzing the vast amount of documents and information to adduce the evidence they would present at trial. Following a hearing, the Court mostly denied Walgreens' summary judgment motion (but granted the motion as to punitive damages). Dkt. 577. Around the same time as the summary judgment briefing, the parties also briefed numerous *Daubert* motions regarding their respective experts (Dkt. 516, 517, 518, 519, 530, 531, 532, 535, 551, 552, 553, 554), and Class Counsel also began preparation for the trial, which was scheduled to begin in September 2023.

Through the merits discovery period, moreover, Plaintiffs engaged in extensive work with their experts and conducted expert discovery. Plaintiffs designated three experts (one of whom was designated at both class certification and for trial), while Walgreens designated four. Collectively, six depositions were conducted of the parties' experts, who served a total of eleven expert reports on topics ranging from the reliability of Theranos testing and clinical laboratory practices, to due diligence requirements, to the identifiability of Class and Subclass Members and the calculation of their damages.

After summary judgment briefing concluded, the parties engaged in another mediation effort. Following the mutual acceptance of Judge Layn Phillips' (Ret.) mediators' proposal, their efforts resulted in a settlement in principle between Walgreens and Plaintiffs. Class Counsel devoted 3,074.7 hours to representing the Class during Stages 10-11.  Their

efforts are described in the Heller/Cappio Declaration ¶¶ 52–60. Again, the Class representatives were informed, discussed, and finally approved the proposal.

**Stage 12**, **Settlement Documentation, Approval Briefing and Notice, and Continued Settlement Efforts with Holmes, Balwani, and the Theranos ABC (June 2023 – October 2023**): After accepting the mediator's proposal from the Hon. Layn Phillips, Ret., Plaintiffs and Walgreens turned their attention to documenting the settlement. At the same time, Class Counsel continued to seek a settlement with the individual Defendants, engaging in extensive negotiations with both those Defendants and the Theranos ABC. Through creativity and determination, agreements were reached with Mr. Balwani and the Theranos ABC that increased the funds available to the Class and Subclass. Throughout this period, Class Counsel also worked to implement an effective class notice program.

As of October 30, 2023 Class Counsel had devoted 1,353.3 hours to representing the Class during Stage 12. This work is described in the Heller/Cappio Declaration ¶¶ 61–65.

## III.   ARGUMENT

### A.   The Requested Attorneys' Fees Are Reasonable and Appropriate.

Under the Federal Rules of Civil Procedure, courts may award reasonable attorneys' fees to class counsel. Fed. R. Civ. P. 23(h); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."). In common fund cases like this one, district courts have discretion to award attorneys' fees using the percentage-of-recovery method or the lodestar method. *In re Optical Disk Drive Prod. Antitrust Litig.*, 959 F.3d 922, 929-30 (9th Cir. 2020); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *Vizcaino*, 290 F.3d at 1047. Here, the requested fee is reasonable under either approach.

#### 1.   The requested fee is reasonable under a percentage-based approach.

Under the percentage-of-recovery approach, Ninth Circuit courts use 25% as the "starting point for analysis." *Vizcaino*, 290 F.3d at 1047-48. A higher or lower percentage

may be appropriate based on consideration of "all of the circumstances of the case." *Id*. In determining the proper percentage to award, courts in this Circuit consider: (1) the results achieved; (2) the effort, experience, and skill of counsel; (3) whether the case was risky and the financial burden counsel experienced while litigating the case on a contingency basis; and (4) awards made in similar cases. *Id.*, at 1048–50; *see also Koch v. Desert States Emps. & UFCW Unions Pension Plan*, No. 20-02187, 2021 WL 6063534, at *4 (D. Ariz. Dec. 22, 2021); *Reid v. I.C. Sys. Inc.*, No. 12-02661, 2018 WL 11352039, at *4 (D. Ariz. July 27, 2018), *aff'd*, 795 F. App'x 509 (9th Cir. 2019).

Here, Class Counsel request a fee of $13.2 million, which is equal to 30% percent of the $44 million Walgreens Settlement amount, or 29.1% of the total combined $45.33 million common settlement fund achieved for the Class pursuant to the Settlements, is well justified in view of the *Vizcaino* factors.

### a.    The results for the Class are outstanding.

The combined $45.33 million settlement fund here is an outstanding result for the Class, particularly in comparison to the potential damages that could have been recovered at trial and in light of the remaining risks of trial and appeal. Under the proposed settlements, Class Members are expected to receive an average payment of $113.33 (Dkt. 598-2) which is approximately *double* the amount that they paid for Theranos testing (minus any previously reimbursed amounts), and Walgreens Edison Subclass Members will receive a substantial additional recovery of approximately $1,000 each. As discussed further in the Final Approval Motion, these amounts compare very favorably to what the Class may have recovered through trial. Moreover, the Settlements eliminate the risks that would have remained even if Plaintiffs prevailed at trial, given the inevitability of further appeals. Indeed, many Class Members have already received some payment from the 2018 AZAG Consent Decree (a fact Defendants had sought to exploit at various stages of this case to try to get the case dismissed in whole or part).

The result achieved for the Class here is particularly outstanding given that Theranos ceased to exist more than five years ago, and the two individual Defendants are incarcerated

with limited, if any, resources to satisfy a judgment. Obtaining any funds at all for the Class in connection with the settlement of Balwani's claims, and then having those additional funds distributed in a cost-effective manner together with the Walgreens settlement amount, was an achievement accomplished only after lengthy, complex negotiations by Class Counsel with Balwani and the Theranos ABC with the assistance of Judge Phillips and his co-mediators.

The fact that the Class will receive a very substantial portion of potentially recoverable damages through the Settlements supports counsel's fee request. *See Hernandez v. Burrtec Waste & Recycling Servs., LLC*, No. 21-01490, 2023 WL 5725581, at *6 (C.D. Cal. Aug. 21, 2023) (awarding 33.33% fee where "the payment . . . to each Class Member far exceeds that which is typical" for type of claims at issue); *Singer v. Becton Dickinson & Co.*, No. 08-821, 2010 WL 2196104, at *5, *8-9 (S.D. Cal. June 1, 2010) (awarding 33.33% fee with 28.84% of damages recovered); *Quintana v. HealthPlanOne LLC*, No. 18-02169, 2019 WL 3342339, at *3, *7 (D. Ariz. July 25, 2019) (awarding 30% fee with one-third to one-half of estimated damages recovered).

### b.    Class Counsel demonstrated superior skill and experience.

Class Counsel prosecuted this action "with skill, perseverance and diligent advocacy." *See In re Limelight Networks, Inc. Sec. Litig.*, No. 07-01603, 2011 WL 13185749, at *2 (D. Ariz. Mar. 23, 2011); *see also Deluca v. Farmers Ins. Exch.*, No. 17-00034, 2020 WL 5071700, at *6 (N.D. Cal. Aug. 24, 2020) ("Complex class actions require unique legal skills and abilities," (quoting *Zubia v. Shamrock Foods Co.*, No. 16-03128, 2017 WL 10541431, at *17 (C.D. Cal. Dec. 21, 2017))). Indeed, Class Counsel's expertise and vigorous pursuit of the action were on full display against first-rate defense counsel from multiple nationwide law firms, including Sidley Austin LLP, Cooley LLP, Davis Wright Tremaine LLP, Wilmer Cutler Pickering Hale & Dorr LLP, and Weil Gotshal & Manges LLP during each of the many stages of this case. "The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation." *Schwartz v. TXU Corp.*,

No. 02-2243, 2005 WL 3148350, at *30 (N.D. Tex. Nov. 8, 2005); *see In re Am. Apparel, Inc. S'holder Litig.*, No. 10-6352, 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) ("In addition to the difficulty of the legal and factual issues raised, the court should also consider the quality of opposing counsel as a measure of the skill required to litigate the case successfully."); *accord Andrews v. Plains All Am. Pipeline L.P.*, No. 15-4113, 2022 WL 4453864, at *3 (C.D. Cal. Sept. 20, 2022).  *See* Heller/Cappio Decl. ¶ 8.

Among the many challenges Class Counsel faced, demonstrating their skill and experience, were the litigation of numerous high-stakes motions, including: multiple rounds of motions to dismiss (each involving motions filed by multiple Defendants), Plaintiffs' motion for reconsideration (which resurrected the battery claims that ultimately yielded the additional payment for the subclass here), Plaintiffs' motion for class certification and a related *Daubert* motion, Rule 23(f) petitions and the subsequent interlocutory appeals by Walgreens and Balwani, Walgreens' partial decertification motion upon remand, Walgreens' summary judgment motion, and numerous *Daubert* motions filed in advance of trial, which was just months away from commencing when Plaintiffs reached a settlement in principle with Walgreens. Many of these motions involved novel legal issues and complex factual ones.

Counsel's skill and experience was also demonstrated through the extensive discovery conducted here, which included reviewing more than 7.8 million pages of documents from four Defendants (many produced indiscriminately by Theranos), taking twenty-two depositions and defending ten, extensive third-party discovery, public records requests, and written discovery practice. Particularly thorny issues were presented by the dissolution of Theranos. Theranos was no longer available to provide clarification of its document production through interrogatory responses, and the only way to question its employees was through third-party subpoenas, which proved difficult to serve. From the large volumes of documents produced in discovery, Class Counsel meticulously uncovered how Theranos had violated its regulatory requirements and deceived regulators; compiled information regarding the accuracy and reliability of blood tests; conducted detailed review

of the scientific work performed in Theranos's research labs for evidence that paying patients' blood was being used; gathered evidence about the structure of Theranos's partnership with Walgreens, and how and where records regarding blood tests were kept; and identified the roles each of the four Defendants played in the alleged RICO enterprise, and facts concerning each Defendant's knowledge at particular points of time. All of this required an investment of time and effort, as well as a clear strategy. Heller/Cappio Decl. ¶¶ 15, 24–27, 31–33.

The destruction of the Theranos LIS database presented a particular challenge. In a typical class action case, the defendant provides the data required to identify Class Members in an organized format. In this case, however, Defendants raised doubts about the identifiability of Class Members, particularly the identifiability of Walgreens Edison Subclass Members. Heller/Cappio Decl. ¶¶ 27, 34, 41, 45–46, 49–50, 108. These issues could have single-handedly ended the litigation. But through creativity and persistence, Class Counsel compiled the pertinent data points by locating each potentially relevant report and re-combining the data points for the hundreds of thousands of blood tests during the Class period. Class Counsel succeeded in establishing, through their detailed, exhaustive analysis of thousands of spreadsheets, the ability to identify Theranos testing patients and the pertinent details of their testing. Through these extraordinary efforts, Class Counsel successfully recovered data that appeared irretrievably lost. These efforts played a critical role in Class Counsel's ability to secure the excellent result for the Class, and in helping to ensure that settlement funds will be delivered to them as expeditiously as possible.

Successful resolution of this case would not have been possible without the effort, experience, skill, and committed persistence of Class Counsel. The fact that Class Counsel were able to navigate around the many hazards that arose, and arrive at a substantial recovery for the Class, further supports the fee request. *See Koch*, 2021 WL 6063534, at *5.

**c.**   **Class Counsel assumed enormous risk in litigating this case for years despite the very real possibility that they would receive nothing for their efforts.**

The requested fee is also strongly supported by the fact that Class Counsel pursued this litigation for nearly seven years, on a pure contingency basis, despite the very real possibility that they might ultimately receive no compensation at all. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995); *see also Koch*, 2021 WL 6063534, at *6. Counsel invested very substantial resources—**over forty-thousand hours** of staff and attorney time that could have been devoted to other litigation, and **over one million dollars** hiring industry experts and a Notice administrator, among other things—on a contingent basis throughout the lifespan of this litigation. *Vizcaino*, 290 F.3d at 1050; *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 WL 1594403, at *21 (C.D. Cal. June 10, 2005); Heller/Cappio Decl. ¶¶ 67, 105–06.

This was a risky endeavor for Class Counsel from the start, particularly given the nature of the alleged scheme, the subject matter (scientific testing), and the involvement of multiple Defendants represented by highly skilled defense counsel.

Defendants' legal arguments were potent. When this action commenced, it is fair to say the allegations were shocking. Plaintiffs alleged that the public had been deliberately misled by a Silicon Valley corporation whose CEO had been lauded for years for her achievements, and whose Board of Directors included a former Secretary of State and multiple retired military leaders. From the beginning, Theranos, Holmes, and Balwani argued that their business was legitimate, and that the errors identified by the media were isolated and exaggerated. *See* Heller/Cappio Decl. ¶¶ 15, 20.

Walgreens, for its part, is an established well-regarded company and had itself lost a lot of money on this enterprise (some of which it recovered through a settlement with Theranos), and argued that it was a victim, not a perpetrator, of the alleged fraud. It was clear to Class Counsel, from the start, that proving their claims—all of which raised complex legal and factual issues—was very from a sure thing, and that just to be in a position to credibly pursue these claims would require Class Counsel to expend an

13

enormous effort. Heller/Cappio Decl. ¶¶ 20, 37. Nonetheless, Class Counsel took this case on and committed to doggedly litigating on behalf of Plaintiffs.

Additional risks and challenges continued to present themselves as this years-long litigation went on. Not least of those challenges was that Theranos, one of the primary Defendants, ceased to exist in 2018. And before it dissolved, it entered a Consent Decree with the AZAG, pursuant to which refunds or partial refunds were paid to certain Arizona Theranos customers. After these refund checks issued and had been cashed, Theranos and the other Defendants argued that the Consent Decree rendered Plaintiffs' claims moot and "extinguished," and that the case should be dismissed. Dkt. 167, 175. Class Counsel vigorously defended Class Members' due process rights not to have their claims released in this manner, and even sought leave to intervene in the AZAG action to obtain a judgment that their claims were still viable. Heller/Cappio Decl. ¶¶ 17, 21, 37. As to dismissal, Judge Holland ruled that Plaintiffs' claims "currently" were not moot or extinguished, but indicated the Court might revisit the ruling if circumstances changed. Dkt. 182 at 13. Walgreens and Balwani raised the issue again at class certification, arguing that a class action was not "superior" given that the Consent Decree already obtained what they claimed to be adequate relief for the Class. Dkt. 288, 290, 322. Class Counsel vigorously opposed that argument, and while the argument was rejected, it remained an ongoing risk as the case continued. Heller/Cappio Decl. ¶¶ 21, 37; Dkt. 369.

Class Counsel also faced considerable risk regarding class certification. Even after the Court granted class certification, the risks on this issue remained, as was made clear, for example, by the Ninth Circuit's decision to grant permission to Walgreens and Balwani to appeal the class certification order. Dkt. 377, 378. Even after the Ninth Circuit mostly affirmed class certification, the risks remained as Walgreens, on remand, asked this Court to revisit certification of the Walgreens Edison Subclass in light of the Ninth Circuit's opinion. Heller/Cappio Decl. ¶ 49; Dkt. 427, 463.

There were also very substantial, unique risks on the merits. Among other things, Plaintiffs pursued a novel class battery claim that was, as far as Class Counsel can tell,

unprecedented. Plaintiffs also had the task of establishing that Theranos testing could not properly serve the purpose of reliable blood testing. And under all of their triable claims against Walgreens, Plaintiffs would need to prove that Walgreens acted with actual knowledge or at least deliberate indifference. While Class Counsel was able to put up sufficient evidence to overcome Walgreens' motion for summary judgment, and while Class Counsel were confident they could prevail at trial on their claims, Walgreens' defense on these issues was, as the Court noted, "vigorous" and "potent." Dkt. 565 at 22-23. It was far from guaranteed that Plaintiffs could clear the relatively high evidentiary hurdle needed to win at trial. *See* Heller/Cappio Decl. ¶¶ 56, 58.

Other risks of obtaining zero recovery loomed over every stage of this case, growing larger as Defendants became insolvent and incarcerated, creating an increasing, serious risk that the parties perhaps most likely to be found liable would not be able to pay the Class (or Class Counsel) anything. The risks also increased as the sole remaining Defendant with the ability to compensate Class Members gathered factual support for its defense that it was a victim. Class Counsel fought on, recognizing full well that even if they were successful in establishing Walgreens' liability at trial, a jury might well return a relatively small damages verdict given the presence of other at-fault Defendants, the refunds to some Class Members under the 2018 AZAG Consent Decree, and uncertainty regarding how the battery damages might be valued. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d at 379; *see also Koch*, 2021 WL 6063534, at *6 (upward departure from benchmark justified where "Class Counsel litigated this case despite a significant risk that [plaintiff] would not prevail on all claims.").

The prospect (if not likelihood) of further appellate proceedings also posed considerable risk. Walgreens petitioned for interlocutory appeal of this Court's summary judgment order. Dkt. 575. Even if the Court's summary judgment order were appealed and affirmed, there is little doubt that a Plaintiffs' verdict at trial (if that occurred) would also have been appealed, posing additional ongoing risks and burden on the judicial system.

The uncertainties inherent in this very complex class action, and the fact that Class Counsel pursued this challenging case for years without any payment and with the real risk

there may be no payment, strongly support the requested fee. *Koch*, 2021 WL 6063534, at *5 (awarding an upward-adjusted fee because "Class Counsel litigated this case for over three years, advanced all the costs and expenses, and would not have been compensated had Class Counsel not achieved success"); *Smilovits v. First Solar, Inc.*, No. 12-00555, 2020 WL 3636773, at *2 (D. Ariz. June 30, 2020) ("Lead Counsel pursued the Litigation on a contingent basis, having received no compensation during the Litigation, and any fee amount has been contingent on the result achieved.").

### d.   Class Counsel's fee request is consistent with awards made in comparable cases.

Class Counsel's fee request of 30% of the Walgreens Settlement amount (and 29.1% of the total settlement fund) "is within the 'usual range'" of fee awards that Ninth Circuit courts award in common fund cases. *Munoz v. Big Bus Tours Ltd.*, No. 18-05761, 2020 WL 13533045, at *4 (N.D. Cal. Feb. 12, 2020) (citing *Vizcaino*, 290 F.3d at 1047). This request is consistent with awards in similarly complex cases, particularly where favorable recoveries have been achieved in the late stages of litigation. *See, e.g.*, *Andrews*, 2022 WL 4453864, at *2-4; *id.* Dkt. 655 (awarding 32% fee award after seven years of litigation, which included extensive discovery, certification of two classes, efforts to decertify the classes, and an order on summary judgment); *In re Lenovo Adware Litig.*, No. 15-MD-02624, 2019 WL 1791420, at *7-9 (N.D. Cal. Apr. 24, 2019) (awarding 30% fee award after four years of litigation, including class certification); *In re Lidoderm Antitrust Litig.*, No. 14-02521, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) at *1 (awarding 33.33% fee award where plaintiffs litigated for several years and survived summary judgment); *In re Apollo Grp. Inc. Sec. Litig.*, No. 04-2147, 2012 WL 1378677, at *7 (D. Ariz. Apr. 20, 2012) (awarding 33.33% fee award where class counsel pursued litigation for seven years, obtaining a favorable jury verdict and successfully appealing district court's entry of judgment as a matter of law in favor of defendants); *Benson v. DoubleDown Interactive, LLC*, No. 18-525, 2023 WL 3761929, at *3 (W.D. Wash. June 1, 2023) (awarding 29.3% fee award after four years of litigation).

**2.      Class Counsel's fee request is reasonable in view of the lodestar incurred.**

Class Counsel's fee request is also reasonable under the lodestar approach (or when considering Class Counsel's lodestar as a cross-check of a percentage-based award). Here, Counsel have already expended more than 40,856.9 hours, for a total lodestar of more than $25,609,643.00, by five law firms during the seven-plus years of this case. While Class Counsel will continue to have to expend substantial additional time obtaining settlement approval and, should the settlements be approved, further implementation efforts, using just the time incurred through October 30, 2023, the requested fee ($13.2 million) represents a "negative" (or "fractional") lodestar multiplier of 0.52.[2]   The requested fee is reasonable under the circumstances of this case.

**a.      Class Counsel's hours worked are reasonable.**

"The lodestar calculation begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (citation omitted); *Perez v. First Am. Title Ins. Co.*, No. 08-01184, 2012 WL 1681968, at *1 (D. Ariz. May 14, 2012).

With respect to hours expended, the accompanying Heller/Cappio Declaration details the significant case events and associated work performed across twelve stages of this litigation, accompanied by charts identifying the individuals and law firms who performed this work, the nature of the work, and the hours. These hours were reasonably expended and necessary to secure the results achieved in the settlements. *See Perez*, 2012 WL 1681968, at *1 ("The hours must be reasonable in relation to the success achieved."). Class Counsel took all reasonable efforts to maximize efficiency, including by assigning work to appropriately skilled personnel, avoiding duplication, and ensuring clear and frequent communication among the litigation team. These efforts are documented in the accompanying counsel declarations, which describe the number of hours spent on various

---

[2] Even if only the time of the two Class Counsel firms—Lieff Cabraser and Keller Rohrback—were considered, the requested fee would be a 0.55 "negative" multiplier on that lodestar ($23,874,324.50).

1    task categories by each timekeeper, together with hourly billing rate information. *See*

2    Heller/Cappio Decl. ¶¶ 66–104, Exs. 1-3; George Decl. ¶¶ 4–12; Declaration of David

3    Wright (McCune Wright Arevalo, LLP) ¶¶ 2–9; Declaration of Leonard Aragon (Hagens

4    Berman Sobol Shapiro LLP) ¶ 3.

5                    **b.    Class Counsel's hourly rates are reasonable.**

6          Counsel's hourly rates, ranging from $600 to $1,320 for partners, from $350 to $660

7    for associates, from $350 to $525 for staff and project-based attorneys, and from $225 to

8    $535 for paralegals and other specialized professional staff, as set forth in the accompanying

9    counsel declarations, are also reasonable. *See* Heller/Cappio Decl. ¶¶ 73, 91, Ex. 3. In

10   making this assessment, courts look to whether the rates submitted are "in line with those

11   prevailing in the community for similar services of lawyers of reasonably comparable skill

12   and reputation." *Schwarz v. Sec'y of Health & Human Serv.*, 73 F.3d 895, 908 (9th Cir.

13   1995) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)); *In re Lifelock, Inc. Mktg. &*

14   *Sales Pracs. Litig.*, No. 08-MD-1977, 2010 WL 3715138, at *9 (D. Ariz. Aug. 31, 2010).

15   It is appropriate to use counsel's current billing rates for this analysis. Full compensation

16   requires charging current rates for all work done during the litigation, or by using historical

17   rates enhanced by an interest factor. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19

18   F.3d 1291, 1305 (9th Cir. 1994). Class Counsel's now- and then-current rates have

19   repeatedly been approved by federal courts in the Ninth Circuit and elsewhere.

20   Heller/Cappio Decl. ¶¶ 75, 93. And courts in this District have recently approved fee

21   requests based on rates that are similar to those submitted here (particularly after adjusting

22   for inflation during the years since those orders issued). *See, e.g.*, *Avila v. LifeLock Inc.*,

23   No. 15-01398, 2020 WL 4362394, at *2 (D. Ariz. July 27, 2020) (granting fee award in

24   2020 based on hourly rates of $725 to $1,150 for partners, $650 to $900 for senior counsel,

25   $425 to $650 for associates, $335 to $435 for staff attorneys, and $190 to $550 for staff);[3]

26   ───────────────
     [3] *See, e.g.*, *Avila*, No. 15-0139 (D. Ariz. June 16, 2020), ECF Nos. 141-5, Ex. A; 141-6, Ex.

27     A; 141-7, Ex. A (setting forth hourly rates for national plaintiff-side law firms).

28

*In re Banner Health Data Breach Litig.*, No. 16-02696, 2020 WL 12574227, at *6 (D. Ariz. Apr. 21, 2020) (2020 order approving hourly rates of $425 to $1,035 for partners, $250 to $550 for associates, and $158 to $350 for staff).[4]

Particularly given the relative scope, complexity, and risks inherent in this litigation (*see* Section A-I-C, *supra*), few national law plaintiffs-side firms would have had the resources, sophistication, expertise, and willingness to prosecute this case to a successful conclusion. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) ("[R]ates outside the forum may be used if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." (citation omitted)); *Corker v. Costco Wholesale Corp.*, No. 19-00290, 2023 WL 6215108, at *1 (W.D. Wash. Sept. 25, 2023) (finding "[LCHB's 2023] hourly rates, while steep, are not unreasonable given the nature of this litigation."). Indeed, the scale and complexity of this litigation is also reflected in Defendants' selection of counsel from numerous large national law firms based outside the District. Heller/Cappio Decl. ¶ 8.

### c.   The requested fee represents a fraction of their reasonable lodestar.

The requested fee ($13.2 million) would result in a lodestar multiplier of 0.52—*i.e.*, about *half* of the total lodestar to date—further supporting the reasonableness of the requested amount. *Sonoma Sol LLLP v. Truck Ins. Exch.*, No. 20-00069, 2021 WL 5238711, at *6 (D. Ariz. Nov. 9, 2021) (for purposes of a lodestar cross-check, fractional or "negative" multipliers "confirm[] the reasonableness of the requested fee."); *Perez*, 2012 WL 1681968, at *2 (approving rates "at the high end of the reasonable range" as reasonable, where the fee resulted in a fractional lodestar multiplier).

Under the lodestar approach, there is a "strong presumption" that Class Counsel's lodestar figure would represent a reasonable attorneys' fee. *Rodriguez v. W. Publ'g Corp.*,

---

[4] *See, e.g.*, *Banner Health*, No. 16-02696 (D. Ariz. Feb. 10, 2020), ECF Nos. 183-1, Ex. A; 183-3, Ex. A; 183-4, Ex. A; 183-9, Ex. A (setting forth hourly rates for plaintiff-side law firms, including Keller Rohrback and Hagens Berman Sobol Shapiro LLP).

602 F. App'x 385, 387 (9th Cir. 2015); *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002). The requested $13.2 million fee here represents a 48% discount off the presumptively reasonable amount, and an effective (*i.e.*, actually requested) blended hourly rate of $323.08. In determining the appropriate fee to award under the lodestar approach (either as a cross-check or as the primary basis for the award), courts in this Circuit consider many of the same factors that are considered under the percentage-of-recovery approach, "including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Hanlon*, 150 F.3d at 1029 (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)); *Perez*, 2012 WL 1681968, at *2; *In re Lifelock*, 2010 WL 3715138, at *9. Application of those factors to the circumstances here—including the outstanding result achieved for the Class (particularly given the fate of Theranos and the individual Defendants), the significant risk of non-payment that Class Counsel assumed in litigating this risky case for nearly seven years on a contingency basis, the novelty and complexity of the of the battery, RICO and other claims and issues in this case, and the quality of representation—confirms that the requested fee is reasonable. *See* Section III.A.1, *supra*.

**B.    Counsel's Litigation Expenses Are Reasonable and Should Be Reimbursed.**

Reimbursement for litigation expenses of $1,160,911.20 is also reasonable. *Harris v. Wells Fargo Bank, N.A.*, No. 17-01146, 2019 WL 13254887, at *9 (D. Ariz. May 13, 2019) ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund.") (quoting *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal 2014))); *accord Quintana*, 2019 WL 3342339, at *7. Counsel's expenses incurred to date in this case have included: $675,532.62 for experts and consultants, including liability, damages, and database experts; $322,820.12 for distribution of Court-ordered notice to the Class regarding class certification; $99,538.03 for deposition-related expenses, excluding travel; $84,016.76 for expenses incurred in maintaining, processing, and analyzing documents produced in discovery; $80,995.00 for mediation costs; and $76,982.04 for travel (air and ground

transportation, hotel expenses, and meals). *See* Heller/Cappio Decl. ¶¶ 105–08; George Decl. ¶ 13; Wright Decl. ¶¶ 10–11; Aragon Decl. ¶¶ 5–8 (summarizing all expenses). Reimbursement of these expenses from the common settlement fund is appropriate. *See, e.g.*, *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366-72 (N.D. Cal. 1996) (expert/consultant fees, photocopies, postage, telephone, travel, messenger services, computerized legal research, deposition costs, filing and court fees appropriate to reimburse).

These expenses were reasonably necessary for the prosecution and resolution of this litigation and were incurred for the benefit of the Class with no guarantee of recovery. Accordingly, the Court should approve reimbursement of these expenses.

## C.     The Requested Service Awards Are Justified in This Case.

None of the achievements on behalf of the Class discussed herein would have been possible if the Class Representatives had not stepped forward to represent other Theranos testing patients. Plaintiffs request service awards of $10,000 each ($70,000 total) to compensate them for the time and effort they spent pursuing this matter and achieving a remarkable recovery for the Class, all the while pursuing high-stakes litigation that put their personal medical information at issue. *See* Heller/Cappio Decl. ¶¶ 109-11; Ex. 4 (Class Representative Declarations). Service awards are "fairly typical" and are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009); *accord In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 785 (9th Cir. 2022) ("We have repeatedly held that reasonable incentive awards to class representatives are permitted." (citations and internal quotation marks omitted)); *Zhu v. Taronis Techs. Inc.*, No. 19-04529, 2021 WL 871775, at *2 (D. Ariz. Mar. 9, 2021); *Julian v. Swift Transportation Co. Inc.*, No. 16-00576, 2020 WL 6063293, at *3 (D. Ariz. Oct. 14, 2020).

The requested service awards are well justified here. The Plaintiffs put their personal medical information at issue in a high-profile litigation, had their depositions taken by counsel for Defendants, and spent long hours in preparing for their depositions, assisting with discovery, providing information about their experiences, reviewing pleadings, and staying abreast of proceedings that continued over seven years. The Class has greatly benefitted from their efforts and the amounts requested are in line with awards in other cases. *See, e.g.*, *Saliba v. KS Statebank Corp.*, No. 20-00503, 2021 WL 4775105, at *7 (D. Ariz. Oct. 13, 2021) ($10,000 service award); *Julian*, No. 2020 WL 6063293, at *3 ($15,000 service award); *Harris*, 2019 WL 13254887, at *9 ($10,000 service awards); *Andrews*, 2022 WL 4453864, at *4-5 ($15,000 service awards); *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 14-md-2541, 2017 WL 6040065, at *11 (N.D. Cal. Dec. 6, 2017) (awarding $20,000 service awards, and collecting cases), *aff'd*, 768 F. App'x 651 (9th Cir. 2019); *Brawner v. Bank of Am. Nat'l Ass'n*, No. 14-02702, 2016 WL 161295, at *6 (N.D. Cal. Jan. 14, 2016) ($15,000 service award); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08 1365, 2010 WL 1687832, at *17 n.8 (N.D. Cal. Apr. 22, 2010) (collecting Ninth Circuit cases with service awards of $20,000 or higher). Accordingly, the Court should approve the requested service awards.

## IV.   CONCLUSION

For the reasons set forth above, Class Counsel and Plaintiffs respectfully request that the Court: (1) award Class Counsel attorneys' fees in the amount of $13,200,000; (2) award Class Counsel $1,160,911.20 in reimbursement of litigation expenses; and (3) award the seven Plaintiffs service awards of $10,000 each, with such amounts to be paid from the common settlement fund.

1

DATED this 22nd day of November, 2023.

2

LIEFF CABRASER HEIMANN & BERNSTEIN LLP

3

4

By: *s/ Roger Heller*
    Michael W. Sobol (*Pro Hac Vice*)
    Roger N. Heller (*Pro Hac Vice*)

5

    Melissa Gardner (*Pro Hac Vice*)
    Michael K. Sheen (*Pro Hac Vice*)

6

    John D. Maher (*Pro Hac Vice*)
    Amelia A. Haselkorn (*Pro Hac Vice*)

7

    275 Battery St, 29th Floor
    San Francisco, CA 94111

8

    Telephone: (415) 956-1000
    Facsimile: (415) 956-1008

9

    Email: msobol@lchb.com
    Email: rheller@lchb.com

10

    Email: mgardner@lchb.com
    Email: msheen@lchb.com

11

    Email: jmaher@lchb.com
    Email: ahaselkorn@lchb.com

12

13

    Mark D. Samson, Bar No. 011076
    Ron Kilgard, Bar No. 005902

14

    Alison E. Chase, Bar No. 028987
    KELLER ROHRBACK L.L.P.

15

    3101 North Central Avenue, Suite 1400
    Phoenix, AZ 85012

16

    Telephone: (602) 248-0088
    Facsimile: (602) 248-2822

17

    Email: msamson@kellerrohrback.com
    Email: rkilgard@kellerrohrback.com

18

    Email: achase@kellerrohrback.com

19

    Lynn Lincoln Sarko, Bar No. 35345 (*Pro Hac Vice*)
    Gretchen Freeman Cappio (*Pro Hac Vice*)

20

    Benjamin B. Gould (*Pro Hac Vice*)
    Sydney Read (*Pro Hac Vice*)

21

    KELLER ROHRBACK L.L.P.
    1201 3rd Ave., Ste. 3200

22

    Seattle, WA 98101
    Telephone: (206) 623-1900

23

    Facsimile: (206) 623-3384
    Email: lsarko@kellerrohrback.com

24

    Email: gcappio@kellerrohrback.com
    Email: bgould@kellerrohrback.com

25

    Email: sread@kellerrohrback.com

26

    *Co-Lead Class Counsel*

27

28

23

1

## **<u>CERTIFICATE OF SERVICE</u>**

2

I hereby certify that on November 22, 2023 I electronically transmitted the foregoing

3

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4

Notice of Electronic Filing to all CM/ECF registrants.

5

*s/ Roger Heller*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28